Emily Johnson Henn (Bar No. 269482)
Kathryn E. Cahoy (Bar No. 298777)
COVINGTON & BURLING LLP
3000 El Camino Real
5 Palo Alto Square, 10th Floor
Palo Alto, California 94306
Telephone: + 1 (650) 632-4700
Facsimile: + 1 (650) 632-4800
Email: ehenn@cov.com
Email: kcahoy@cov.com

Isaac D. Chaput (Bar No. 326923)
Alexander Setzepfandt (Bar No. 340207)
COVINGTON & BURLING LLP
Salesforce Tower
415 Mission Street, Suite 5400
San Francisco, California 94105
Telephone: + 1 (415) 591-6000
Facsimile: + 1 (415) 591-6091
Email: ichaput@cov.com
Email:  asetzepfandt@cov.com

Ashley M. Simonsen (Bar No. 275203)
COVINGTON & BURLING LLP
1999 Avenue of the Stars
Los Angeles, California 90067
Telephone: + 1 (424) 332-4800
Facsimile: + 1 (424) 332-4749
Email:  asimonsen@cov.com

*Attorneys for Defendant Microsoft Corporation*

# UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| PLAINTIFFS A.T., J.H., individually, and on behalf of all others similarly situated,<br><br>    Plaintiffs,<br><br>    v.<br><br>OPENAI LP, OPENAI INCORPORATED, OPENAI GP, LLC, OPENAI STARTUP FUND I, LP, OPENAI STARTUP FUND GP I, LLC, OPENAI STARTUP FUND MANAGEMENT LLC, MICROSOFT CORPORATION and DOES 1 through 20, inclusive,<br><br>    Defendants. | Civil Case No.: 3:23-cv-4557-VC<br><br>**MICROSOFT CORPORATION'S NOTICE OF MOTION AND MOTION TO DISMISS COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Date: January 18, 2024<br>Time: 10:00 a.m.<br>Place: Courtroom 4<br><br>Judge: The Honorable Vince Chhabria |

# TABLE OF CONTENTS

NOTICE OF MOTION AND MOTION TO DISMISS ..............................................................1

MEMORANDUM OF POINTS AND AUTHORITIES ......................................................1

I.      INTRODUCTION AND STATEMENT OF ISSUES ....................................................1

II.     BACKGROUND ..............................................................................................................3

      A.    OpenAI and ChatGPT ............................................................................................3

      B.    Microsoft ................................................................................................................4

      C.    Plaintiffs ................................................................................................................5

III.    LEGAL STANDARD .......................................................................................................6

IV.    ARGUMENT ...................................................................................................................6

      A.    Plaintiffs Fail to Allege They Were Affected by the Alleged Conduct. ...............6

      B.    Plaintiffs' Sparse Microsoft-Specific Allegations Fail to State a Claim. ............8

            1.    Plaintiffs Cannot State a Claim Against Microsoft Based on Services Plaintiffs Do Not Claim to Have Used. ...................................................9

            2.    Plaintiffs Fail to State an "Interception" Claim Against Microsoft. ........9

      C.    Plaintiffs Cannot State a Claim Against Microsoft Through Shotgun Pleading. .............10

            1.    Plaintiffs Fail to Satisfy Rule 8. ............................................................10

            2.    Plaintiffs' "Defendants" Allegations Do Not State a Claim Against Microsoft. ..............................................................................................11

      D.    The Court Should Dismiss Plaintiffs' Frivolous Injunctive Relief Demand. ...................15

V.     CONCLUSION...............................................................................................................15

# TABLE OF AUTHORITIES

CASES                                                                                          Page(s)

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)........................................................................................................6, 10

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)............................................................................................................6

*Bradshaw v. City of Los Angeles*,
   2023 WL 3400634 (C.D. Cal. Mar. 10, 2023) .....................................................................8

*Brown v. Google, LLC*,
   2023 WL 4336718 (N.D. Cal. May 1, 2023) ......................................................................15

*Classic Liquor Importers, Ltd. v. Spirits Int'l B.V.*,
   201 F. Supp. 3d 428 (S.D.N.Y. 2016)................................................................................11

*Cook v. GameStop, Inc.*,
   2023 WL 5529772 (W.D. Pa. Aug. 28, 2020) ...................................................................10

*Custom Packaging Supply, Inc. v. Phillips*,
   2015 WL 8334793 (C.D. Cal. Dec. 7, 2015) ......................................................................8

*Davenport v. Litton Loan Servicing, LP*,
   725 F. Supp. 2d 862 (N.D. Cal. 2010) ..............................................................................12

*Deteresa v. Am. Broad. Companies, Inc.*,
   121 F.3d 460 (9th Cir. 1997) ............................................................................................11

*Faulkner v. ADT Sec. Servs., Inc.*,
   706 F.3d 1017 (9th Cir. 2013) ............................................................................................9

*Gabor v. Cnty. of Santa Clara Bd. of Sup'rs*,
   2008 WL 902407 (N.D. Cal. Mar. 31, 2008).....................................................................12

*In re Gilead Scis. Sec. Litig.*,
   536 F.3d 1049 (9th Cir. 2008) ............................................................................................6

*In re Google Assistant Privacy Litig.*,
   2020 WL 2219022 (N.D. Cal. May 6, 2020) ................................................................8, 10

*Graham v. Noom, Inc.*,
   2021 WL 3602215 (N.D. Cal. Aug. 13, 2021) ....................................................................7

*Greenstein v. Noblr Reciprocal Exchange*,
   585 F. Supp.3d 1220 (N.D. Cal. 2022) .............................................................................15

*Hill v. Nat'l Collegiate Athletic Assn.*,
7 Cal. 4th 1 (1994) ........................................................................................................11

*Holland v. Related Companies, L.P.*,
2017 WL 11651046 (N.D. Cal. Mar. 1, 2017) ...............................................................14

*Jackson-Mau v. Walgreen Co.*,
652 F. Supp. 3d 349 (E.D.N.Y. 2023) .............................................................................7

*Jet Parts Eng'g, Inc. v. Quest Aviation Supply, Inc.*,
2017 WL 1093205 (W.D. Wash. Mar. 23, 2017) ...........................................................13

*Khoros, LLC v. Lenovo (U.S.), Inc.*,
2020 WL 12655516 (N.D. Cal. Oct. 5, 2020) ......................................................13, 14, 15

*Lightoller v. Jetblue Airways Corp.*,
2023 WL 3963823 (S.D. Cal. June 12, 2023) ..................................................................8

*Low v. LinkedIn Corp.*,
900 F. Supp. 2d 1010 (N.D. Cal. 2012) ...........................................................................8

*Masimo Corp. v. Sotera Wireless, Inc.*,
2020 WL 7260660 (S.D. Cal. Dec. 10, 2020) ...........................................................12, 13

*Miami Prod. & Chem. Co. v. Olin Corp.*,
449 F. Supp. 3d 136 (W.D.N.Y. 2020) ...........................................................................13

*Moody v. Rodriguez*,
2022 WL 5236820 (S.D. Cal. Oct. 4, 2022) .....................................................................8

*Motul S.A. v. USA Wholesale Lubricant, Inc.*,
2023 WL 5061945 (N.D. Cal. Aug. 8, 2023) .......................................................12, 13, 14

*P.M., et al. v. OpenAI LP*,
No. 3:23-cv-3199, Dkt. No. 1 (N.D. Cal.) ........................................................................7

*Payoda, Inc. v. Photon Infotech, Inc.*,
2015 WL 4593911 (N.D. Cal. July 30, 2015) .................................................................14

*Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*,
494 F.3d 788 (9th Cir. 2007) ..........................................................................................14

*Peterson v. Cellco P'ship*,
164 Cal. App. 4th 1583 (2008) .......................................................................................11

*Regent All. Ltd. v. Rabizadeh*,
231 Cal. App. 4th 1177 (2014) .......................................................................................11

*Resh, Inc. v. Skimlite Mfg. Inc.*,
2023 WL 2744423 (N.D. Cal. Mar. 31, 2023) ................................................................10

iii

*Romero v. Los Angeles Rams*,
    91 Cal. App. 5th 562 (2023) ...........................................................................................11

*Russo v. Microsoft Corp.*,
    2021 WL 2688850 (N.D. Cal. June 30, 2021) ............................................................7, 8, 9

*Schulz v. Neovi Data Corp.*,
    152 Cal. App. 4th 86 (2007) ........................................................................................7, 9

*Seltzer v. Chesley*,
    512 F.2d 1030 (9th Cir. 1975) ......................................................................................12

*Sonora Diamond Corp. v. Super. Ct.*,
    83 Cal. App. 4th 523 (2000) ....................................................................................13, 14

*Tanner v. Acushnet Co.*,
    2023 WL 8152104 (C.D. Cal. Nov. 20, 2023) ................................................................8

*United States v. Bestfoods*,
    524 U.S. 51 (1998) ......................................................................................................13

*Warth v. Seldin*,
    422 U.S. 490 (1975) ......................................................................................................8

*Xyience Beverage Co., LLC v. Statewide Beverage Co., Inc.*,
    2015 WL 13333486 (C.D. Cal. Sept. 24, 2015) ............................................................13

## STATUTES

18 U.S.C. § 1030(g) ...........................................................................................................11

18 U.S.C. § 2520(a) ...........................................................................................................11

Cal. Bus. & Prof. Code §§ 17203–17206 ..........................................................................11

Cal. Pen. Code § 484(a) .....................................................................................................11

Cal. Pen. Code § 631(a) .....................................................................................................11

## OTHER AUTHORITIES

Exec. Order No. 14110, 88 FR 75191, *available at*
    https://www.federalregister.gov/d/2023-24283 ........................................................3, 15

S. 3312, 118th Cong. (2023), *available at* https://www.congress.gov/bill/118th-
    congress/senate-bill/3312/..........................................................................................15

## NOTICE OF MOTION AND MOTION TO DISMISS

PLEASE TAKE NOTICE that, on January 18, 2024 at 10:00 a.m., Defendant Microsoft Corporation will and hereby does move for an order dismissing with prejudice the claims against Microsoft in Plaintiffs' Complaint (Dkt. 1) under Rule 12(b)(6). This Motion is based on this Notice; the accompanying Memorandum; the Complaint; the OpenAI Defendants' Motion to Dismiss; and any other matters presented at the time of the hearing.

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION AND STATEMENT OF ISSUES

Microsoft's mission is to empower every person and organization on the planet to achieve more. After nearly five decades of providing products that delight customers and make the world more productive, Microsoft invested in OpenAI because it recognized the potential of OpenAI's revolutionary generative artificial intelligence tools. Those groundbreaking services, like ChatGPT, can generate text, images, and other media in response to short prompts. This new technology is the next major wave of computing—one that promises to significantly change the way we find and parse information, and the way in which content and art is created. Microsoft has publicly committed itself—to its customers, regulators, and the public as a whole—to deploy these tools in a secure, trustworthy, and transparent manner, and has published a publicly available Responsible AI Standard.[1]

While Plaintiffs acknowledge at the outset that this technology has "the potential to do much good in the world," Compl. ¶ 5, their pleading devotes 117 pages to hyperbole about the survival of civilization. Despite containing hundreds of paragraphs and footnotes, the Complaint lacks any coherent allegations to support cognizable legal claims against Microsoft. The Court should dismiss Plaintiffs' claims against Microsoft with prejudice.

---

[1] Our commitments to advance safe, secure, and trustworthy AI (July 21, 2023), https://blogs.microsoft.com/on-the-issues/2023/07/21/commitment-safe-secure-ai/; Progress with our AI commitments (Oct. 27, 2023), https://blogs.microsoft.com/on-the-issues/2023/10/27/uk-ai-safety-summit-responsible/; Microsoft Responsible AI Standard (June 2022), *available at* https://blogs.microsoft.com/wp-content/uploads/prod/sites/5/2022/06/Microsoft-Responsible-AI-Standard-v2-General-Requirements-3.pdf.

Plaintiffs do not plead any facts plausibly showing they have been affected by any of the supposed "scraping," "intercepting," and "eavesdropping." Nowhere do they say what of *their* private information was ever improperly collected or used, much less by *Microsoft*; nor do they anywhere identify any harm *they* individually suffered from anything that Microsoft allegedly did. Plaintiffs cannot state a claim based on the hypothetical experiences of others. This alone requires dismissing Plaintiffs' claims.

Even if that were otherwise, Plaintiffs plead only two theories of liability that depend on any factual allegations tied specifically to Microsoft, but neither states a claim for relief. For one, they claim Microsoft violated Plaintiffs' privacy rights by "integrating" OpenAI's ChatGPT with certain Microsoft services like Bing search and Microsoft Teams. But this theory fails for the simple reason that Plaintiffs do not allege they used *any* Microsoft service, much less one "integrated" with ChatGPT. This failure underpins each of Plaintiffs' eleven claims[2] against Microsoft. The second Microsoft-directed theory is that Microsoft "intercepted" unspecified "communications" that Plaintiffs assert they had on certain non-Microsoft websites. This theory pertains to Plaintiffs' first five claims and fails because Plaintiffs offer no non-conclusory factual allegations to support it.

The remaining allegations lump together Microsoft and OpenAI—distinct companies—leaving unstated which company allegedly did what. Such shotgun pleading does not satisfy Rule 8. Plaintiffs attempt to gloss over this flaw by hinting that Microsoft and OpenAI are essentially a single entity, presumably based on Microsoft's investment in and other collaboration with OpenAI. But Plaintiffs do not plead facts anywhere near sufficient to support this leap, and, in any event, Plaintiffs have failed to state any claim against OpenAI for the reasons explained in OpenAI's Motion to Dismiss.

Finally, Plaintiffs ask the Court to "pause" development of generative AI and empanel—and presumably oversee—"an independent body of thought leaders" to set the future of that development. *Id.*

---

[2] Plaintiffs assert eleven claims against all Defendants: violation of the Electronic Communications Privacy Act ("ECPA") (18 U.S.C. § 2510, *et seq.*), violation of the Computer Fraud and Abuse Act ("CFAA") (18 U.S.C. § 1030), violation of the California Invasion of Privacy Act ("CIPA") (Cal. Penal Code, § 631), violation of California's Unfair Competition Law ("UCL"), Negligence, Invasion of Privacy, Intrusion Upon Seclusion, Larceny/Receipt of Stolen Property, Conversion, Unjust Enrichment, and violation of New York General Business Law § 349.

Prayer for Relief.  In other words, Plaintiffs ask the Court to make policy decisions and to issue an advisory opinion about how, when, and by whom this technology should be developed, and they do so without tethering that relief to any supposed harms they experienced.  Microsoft agrees the government should regulate AI and has publicly called for such legislation.[3]  And indeed, the President recently took steps to do so, issuing the Executive Order on the Safe, Secure, and Trustworthy Development and Use of Artificial Intelligence on October 30, 2023.[4]  The legislative and executive branches are exactly who should be engaged in this policy-making debate, and the Court should dismiss Plaintiffs' baseless injunctive relief demand with prejudice.

## II.    BACKGROUND[5]

### A.    OpenAI and ChatGPT

Plaintiffs allege that Defendants OpenAI Incorporated and OpenAI Limited Partnership (collectively, "OpenAI") are an artificial intelligence research laboratory.  Compl. ¶ 34.  They allege OpenAI has developed and released several generative AI systems, including ChatGPT.  *Id.*  ChatGPT is a "chatbot":  when a user inputs a prompt to ChatGPT, the system produces a text response based on a model that was developed from a set of training data.  *Id.* ¶ 61.  According to Plaintiffs, ChatGPT was trained with text data "from the internet containing hundreds of billions of words."  *Id.* ¶ 63.

**"Scraping" Allegations.**  Plaintiffs allege OpenAI "systematically scraped 300 billion words from the internet," taking unidentified data that allegedly could instead have been purchased.  *Id.* ¶¶ 70–71.  While they sometimes allege vaguely that "Defendants" did this, *e.g.*, *id.* ¶ 17, and other times that OpenAI did, *e.g.*, *id.* ¶¶ 71, 76, Plaintiffs do not offer any specific allegations about how Microsoft participated in the supposed "scraping."  Critically, Plaintiffs do not allege what, if any, of their personal information was "scraped" from the internet by ChatGPT or included in other data sets used to train ChatGPT (e.g.,

---

[3] Developing and deploying AI responsibly (Sept. 12, 2023), https://blogs.microsoft.com/on-the-issues/2023/09/12/developing-and-deploying-ai-responsibly-elements-of-an-effective-legislative-framework-to-regulate-ai/.

[4] Exec. Order No. 14110, 88 FR 75191, *available at* https://www.federalregister.gov/d/2023-24283.

[5] For purposes of this Motion only, Microsoft accepts as true the non-conclusory factual allegations in the Complaint.  Microsoft does not concede the accuracy of these allegations.

Common Crawl).  *See id.* ¶¶ 19–33, 82.  For example, Plaintiffs allege that OpenAI scraped certain data from the social media site Reddit, and that Reddit's CEO "found it unacceptable" that OpenAI scraped this data.  *Id.* ¶¶ 77–78.  But Plaintiffs nowhere allege that any of that supposed data contained their private information.  Plaintiffs also allege that a non-party digital artist concluded that certain of her medical information "ended up online" and was then "memorialized in the Common Crawl archive."  *Id.* ¶¶ 81–82.  But they do not claim any such thing happened to them.

**Operation of ChatGPT and "Integration" of ChatGPT with Non-Microsoft Services.** Plaintiffs allege that OpenAI also trained ChatGPT with data "from ChatGPT's registered users," as well as with data from "users of ChatGPT plug-ins with sponsoring applications."  *Id.* ¶¶ 85–87.  Plaintiffs alternate between generally alleging that "Defendants" did this, *id.* ¶ 86, and specifying that OpenAI did, *id.* ¶ 87, but offer no specific allegations as to Microsoft.  They assert that "OpenAI integrated" ChatGPT into various services and companies, including Amazon, Buzzfeed, Google, Instacart, KAYAK, and Snapchat.  *Id.* ¶ 102.  They allege these "integrations" violated the rights of the users of those services by intercepting or eavesdropping on users, and collecting and using their personal information to further train AI systems without consent.  *Id.* ¶ 86.  Plaintiffs do not allege that Microsoft had any involvement in "integrating" ChatGPT into these services.  And they do not allege facts plausibly showing that any of their personal information from non-Microsoft services was taken or used by Microsoft.

**"Integration" of ChatGPT into Microsoft Services.**  As discussed below, Plaintiffs allege that ChatGPT is "integrated" into certain Microsoft services and Defendants used data from those services to train OpenAI.  *Id.* ¶ 93.  But Plaintiffs do not allege ever using any such Microsoft services.

**"Existential Threat" Allegations.**  Plaintiffs assert that absent injunctive relief, AI such as ChatGPT could cause "civilizational collapse," but they do not tie that demand to any of their actual claims.  *See, e.g.*, ¶¶ 2, 124, 165.

**B.    Microsoft**

Microsoft operates a suite of software and online services, including Microsoft 365 (Word, Excel, PowerPoint, Teams, and Outlook) and the Bing internet search engine.  *See* ¶¶ 41, 376(c).  Plaintiffs allege that Microsoft invested billions of dollars in OpenAI and "became the exclusive licensee of OpenAI's

GPT-3 language model." *Id.* ¶ 40.  They state that Microsoft is a "service provider" for OpenAI because OpenAI uses Microsoft's Azure "as the exclusive cloud service" for OpenAI.  *Id.* ¶ 41.  Plaintiffs do not explain how the provision of cloud services is relevant to their claims.  Plaintiffs conclude that because Microsoft is OpenAI's "largest investor" and "largest service provider," Microsoft "exerts considerable control over OpenAI." *Id.* ¶ 42.

Plaintiffs claim that Microsoft has "integrated" ChatGPT into "almost all of its cardinal products and services." *Id.* ¶ 93.  They allege that Microsoft has "integrated" ChatGPT into Bing, Teams, Dynamics 365, Cortana, and Outlook.  *See id.* ¶¶ 94–96, 376(c).  According to them, Microsoft and/or OpenAI use(s) Microsoft customer information to further train the generative AI models that are "integrated" into these Microsoft services.  *Id.* ¶ 86.  Plaintiffs do not allege they have used any Microsoft service, much less any of the Microsoft services into which ChatGPT is allegedly "integrated."[6]  Plaintiffs also conclude without any factual explanation that "Microsoft intentionally intercepted the contents of Plaintiffs' and ChatGPT User Class Members' communications."  Compl. ¶ 303; *see also id.* ¶¶ 297–306, 322, 352–362, 376(d).

### C.    Plaintiffs

Plaintiffs allege they are residents of California and New York and are current users of ChatGPT-3.5 and ChatGPT-4.0.  Compl. ¶¶ 20, 28.[7]  They allege having "engaged with a variety of websites and social media applications," including, variously, Crunchbase, Discord, Facebook, Instagram, LinkedIn,[8] Reddit, Snapchat, Spotify, TikTok, Twitter, Webflow, and Yelp.  *Id.* ¶¶ 21–22, 29–30.  Neither Plaintiff

---

[6] To the extent Plaintiffs contend they used Microsoft consumer online services, they will have agreed to the Microsoft Services Agreement ("MSA").  The MSA includes an individual arbitration agreement.  Because Plaintiffs do not allege having used any Microsoft services and have not provided sufficient information to Microsoft from which it could determine at this time whether either Plaintiff accepted the MSA, Microsoft is not at this time moving to enforce the arbitration agreement.  Microsoft reserves the right to make such a motion if it discovers either Plaintiff accepted the MSA.

[7] Plaintiffs filed their Complaint pseudonymously but never moved for leave to do so, despite Microsoft noting Plaintiffs' obligation to file such a motion.  Microsoft does not concede that Plaintiffs have satisfied their burden to prosecute this case pseudonymously.

[8] While LinkedIn is a subsidiary of Microsoft, Plaintiffs do not name LinkedIn as a defendant, do not allege that ChatGPT has been integrated into LinkedIn, and do not allege any conduct by LinkedIn.  Only A.T. alleges he uses LinkedIn, but he does not allege facts showing any of his LinkedIn data was implicated in any of the alleged conduct.

alleges ever using any Microsoft service, "integrated" with ChatGPT or otherwise. *See id.* ¶¶ 19–33.

The same three general theories of liability underpin Plaintiffs' eleven claims:  First, Plaintiffs allege that "Defendants" generally violated their privacy rights by (i) "scraping" the internet, (ii) operating ChatGPT, and/or (iii) "integrating" ChatGPT into non-Microsoft services. *See, e.g.*, Compl. ¶¶ 69–103, 280, 320–322, 343 & 361, 376, 420, 432, 446, 462, 474, 478, 487(b).  While some of the eleven counts appear to omit the "scraping" allegations,[9] they otherwise depend on the same alleged conduct.  Second, Plaintiffs allege that Defendants violated their privacy rights by "integrating" ChatGPT into Microsoft services.  *See, e.g., id.* ¶¶ 93–95, 310, 321, 369, 376(c), 420, 432, 446, 462, 474, 478, 487(b).  Finally, Plaintiffs' first five counts appear to depend in part on their allegations that Microsoft "intercepted" Chat-GPT users' communications.  *See, e.g., id.* ¶¶ 297, 300-306, 321-322, 324, 352, 355-360, 376, 420-425.

## III.   LEGAL STANDARD

To survive a motion to dismiss, a complaint must plead sufficient "facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (cleaned up).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*  Nor should the Court "credit a complaint's conclusory statements without reference to its factual context." *Id.* at 686.  Similarly, the Court should not credit "unwarranted deductions of fact" or "unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).

## IV.   ARGUMENT

### A.   Plaintiffs Fail to Allege They Were Affected by the Alleged Conduct.

Plaintiffs cannot state a claim by asserting generalized complaints about Defendants' or Microsoft's alleged conduct—they must state sufficient facts to show that the practices they claim

---

[9] Counts 4, 5, 8, 9, 10, and 11 appear to be based in part on the "scraping" allegations, while Counts 1, 2, 3, 6, and 7, do not appear to incorporate those allegations. *Compare id.* ¶¶ 376(a)–(d) (Count 4), ¶ 425 (Count 5), ¶¶ 459 & 462 (Count 8), ¶ 474 (Count 9 is based on Count 8), ¶ 478 (Count 10), ¶ 487(b) (Count 11) *with id.* ¶¶ 280(a)–(c) (Count 1), ¶¶ 320–322 (Count 2), ¶¶ 343, 352, 363 (Count 3), ¶¶ 432(a)–(b) (Count 6 references Counts 1 and 2), ¶ 446 (Count 7).

Defendants and Microsoft allegedly engaged in actually impacted them.  Here, Plaintiffs plead wide-sweeping allegations about others and the public at large and seek industry-wide relief, but nowhere do they plead facts identifying any data of *theirs* that was supposedly collected or used by Defendants collectively, or Microsoft specifically.  And while the Complaint devotes over ten pages to a "brief, non-exhaustive list" of the purported "risks" from generative AI services, Compl. ¶¶ 125–164, Plaintiffs nowhere allege they experienced any of the purported harms described in those paragraphs.  Rather, they rest on conclusory statements that they posted unspecified information online or entered unspecified prompts into ChatGPT.  *Id.* ¶¶ 19–33.  The lack of allegations about *these* Plaintiffs is particularly conspicuous because their Complaint is largely a copy of one filed earlier (and since dismissed) by different plaintiffs and counsel.  *See P.M., et al. v. OpenAI LP*, No. 3:23-cv-3199, Dkt. No. 1 (N.D. Cal.).

As courts faced with similar wiretap and privacy claims have held, plaintiffs must allege facts plausibly showing that the defendant engaged in the allegedly wrongful conduct as to *them*—not as to other hypothetical members of the public or purported class.  *See, e.g.*, *Russo v. Microsoft Corp.*, 2021 WL 2688850, at *4 (N.D. Cal. June 30, 2021) (dismissing Wiretap Act claims premised on conduct plaintiffs failed to allege happened to them).  A plaintiff who fails to allege the defendant's challenged conduct affected them cannot establish causation or injury.  *See id.*; *Schulz v. Neovi Data Corp.*, 152 Cal. App. 4th 86, 92 (2007) (dismissing claim because plaintiffs did not allege suffering any damage in fact).

That is precisely the case here—Plaintiffs do not identify any information of theirs they claim Microsoft unlawfully collected and used, and do not plead facts plausibly showing either of them suffered any harm from any conduct by Microsoft.  Because Plaintiffs have not suffered any damage in fact as a result of Microsoft's alleged conduct, they lack statutory standing under the UCL.  *Schulz*, 152 Cal. App. 4th at 92.  Similarly, their lack of any injury as a result of Microsoft's conduct means they have no private right of action under CIPA.  *Graham v. Noom, Inc.*, 2021 WL 3602215, at *1 (N.D. Cal. Aug. 13, 2021) (dismissing CIPA § 631 claim where there was "no injury [to create] a private right of action under the statute").  This pleading failure also dooms their ECPA claim, *see Russo*, 2021 WL 2688850, at *4, and

their other claims.[10]

Plaintiffs cannot circumvent this requirement by filing a class action.  Even in a class action, the named plaintiffs "must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class."  *Warth v. Seldin*, 422 U.S. 490, 502 (1975); *Russo*, 2021 WL 2688850, at *3 (granting motion to dismiss based on "sparse and conclusory" allegations that "generically state that Microsoft used and shared Plaintiffs' and Class Members data"); *In re Google Assistant Privacy Litig.*, 2020 WL 2219022, at *7 (N.D. Cal. May 6, 2020) (granting motion to dismiss class action complaint where the allegations did "not suffice to show that Plaintiffs' own oral communications were intercepted").  On this basis, alone, the Court should dismiss all claims.

### B.    Plaintiffs' Sparse Microsoft-Specific Allegations Fail to State a Claim.

Although much of Plaintiffs' Complaint is devoted to vague allegations directed generally at "Defendants," *infra* Part IV.C.1, they appear to make two sets of allegations specific to Microsoft.  First, Plaintiffs assert that Microsoft is liable for "integrating" ChatGPT into Microsoft services and collecting and using data from customers who use those services.  *See* Compl. ¶¶ 94–96.  Each of Plaintiffs' claims appears to incorporate this theory.  *See id.* ¶¶ 310, 321, 369, 376(c), 420, 432, 446, 462, 474, 478, 487(b).  Second, in conclusory statements in the first five causes of action (ECPA, CFAA, CIPA, UCL, and negligence), Plaintiffs conclude that "Microsoft intentionally intercepted the contents of Plaintiffs' and

---

[10] *See also Jackson-Mau v. Walgreen Co.*, 652 F. Supp. 3d 349, 361 (E.D.N.Y. 2023) (dismissing New York General Business Law § 349 claim where plaintiff was "unable to adduce evidence of having suffered a cognizable injury"); *Tanner v. Acushnet Co.*, 2023 WL 8152104, at *10 (C.D. Cal. Nov. 20, 2023) (dismissing statutory California larceny claims because "Plaintiff does not allege actual damages"); *Lightoller v. Jetblue Airways Corp.*, 2023 WL 3963823, at *4–5 (S.D. Cal. June 12, 2023) (dismissing intrusion upon seclusion claim where plaintiff failed to allege she "suffered any concrete harm" related to the right of privacy); *Bradshaw v. City of Los Angeles*, 2023 WL 3400634, at *14 (C.D. Cal. Mar. 10, 2023) (dismissing unjust enrichment claim where plaintiff did not allege how defendants' retention of fees "comes at his expense"); *Moody v. Rodriguez*, 2022 WL 5236820, at *4 (S.D. Cal. Oct. 4, 2022) (granting summary judgment dismissal of negligence claim where plaintiff was "unable to demonstrate any actual damages"); *Custom Packaging Supply, Inc. v. Phillips*, 2015 WL 8334793, at *3 (C.D. Cal. Dec. 7, 2015) (dismissing CFAA claims because "a plaintiff must 'identify impairment of or damage to the computer system' resulting from the unauthorized access"); *Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010, 1025–1026, 1030 (N.D. Cal. 2012) (dismissing California invasion of privacy claim for failure to allege facts to satisfy "high bar" to establish injury; dismissing conversion claim for failure to plead the "requisite claim for damages" because plaintiff failed to explain how the value of his personal information was harmed).

ChatGPT User Class Members' communications" on non-Microsoft platforms.  *Id.* ¶ 303; *see also id.* ¶¶ 297–306, 322, 352–362, 376(d).  Neither assertion survives scrutiny.

### 1.  Plaintiffs Cannot State a Claim Against Microsoft Based on Services Plaintiffs Do Not Claim to Have Used.

Plaintiffs' first theory of liability against Microsoft fails because they do not allege they used any Microsoft service, much less one in which ChatGPT is allegedly "integrated."  *See* Compl. ¶¶ 19–33.  Plaintiffs cannot have been injured by services they did not use.  *See, e.g.*, *Schulz*, 152 Cal. App. 4th at 92 (dismissing UCL claim against defendants where plaintiff "did not use the services of" those defendants); *Russo*, 2021 WL 2688850, at *5 (dismissing Wiretap Act claim except "to the extent that plaintiffs can allege that their specific emails were scanned" by Microsoft); *see also supra* Part IV.A (explaining Plaintiffs must allege causation and injury as a result of the defendant's conduct to state each of their claims).  The Court should dismiss all of Plaintiffs' claims to the extent they depend on the use of Microsoft services (as each of the claims does).[11]

### 2.  Plaintiffs Fail to State an "Interception" Claim Against Microsoft.

It is unclear what Plaintiffs mean by their bald assertions in the first five causes of action that Microsoft "intercept[s]" "communications" on ChatGPT.  Compl. ¶ 297.  Their theory seems to be that as part of Microsoft's business relationship with OpenAI, Microsoft "taps" "communications" on OpenAI's ChatGPT service or on third-party services "integrated" with ChatGPT.  *See id.*  The Complaint lacks well-pleaded factual allegations about how Microsoft has performed this alleged "intercept[ion]." Plaintiffs do not identify any specific "communications" *of theirs* that Microsoft allegedly intercepted, and do not allege any facts to support that Microsoft actually had any ability to intercept Plaintiffs' alleged "communications" with non-Microsoft platforms.  The Court should disregard and dismiss Plaintiffs'

---

[11] Plaintiffs cannot cure this pleading defect as to their current claims: to the extent they used Microsoft's consumer services (e.g., Bing) but neglected to allege that simple fact, they are bound by the MSA, which bars each of their claims.  The MSA incorporates the Microsoft [Privacy Statement](), which expressly authorizes Microsoft to use certain types of data to improve Microsoft's services, including to improve artificial intelligence.  And the Privacy Statement instructs users on how to make choices about the use of their information.  Plaintiffs' agreement to the Privacy Statement would, among other things, vitiate the allegations in each of their claims that Microsoft acted "without authorization," "without consent," and/or "without permission." Compl. ¶¶ 275, 323, 333, 397, 420, 436, 447, 459, 474, 482, 487(a).

claims based on such conclusory allegations.  *See Faulkner v. ADT Sec. Servs., Inc.*, 706 F.3d 1017, 1020 (9th Cir. 2013) ("Under *Iqbal*, such bald legal conclusions are not entitled to be accepted as true and thus 'do not suffice' to prevail over a motion to dismiss."); *see also Google Assistant*, 457 F. Supp. 3d at 816–17 (dismissing federal wiretap claims where plaintiffs failed to plead sufficient facts to show they interacted with defendant's technology and were recorded); *Cook v. GameStop, Inc.*, 2023 WL 5529772, at *6–7 (W.D. Pa. Aug. 28, 2020) (dismissing Pennsylvania wiretap claims where plaintiff alleged only "potential capabilities" of the technology).

Were the Court to credit Plaintiffs' legal conclusions of interception, the first five claims would still fail because Plaintiffs fail to allege they were affected by the supposed conduct (*supra* Part IV.A) and for the same reasons articulated in the OpenAI Defendants' motion to dismiss—including, among other reasons, that:  (i) in every instance at least one party consented to any interception (dispositive of their ECPA claim); (ii) Plaintiffs fail to explain how Microsoft intercepted their "communications"—much less confidential ones—during transmission (dispositive of their ECPA and CIPA claims); (iii) Plaintiffs nowhere allege that Microsoft "hacked" their computers or that their damages exceed the $5,000 statutory threshold (dispositive of their CFAA claim); (iv) Plaintiffs do not allege economic injury as a result of Microsoft's conduct or that they lack an adequate remedy at law (dispositive of their UCL claim); and (v) Plaintiffs fail to allege non-conclusory facts showing Microsoft owed them a duty of care (dispositive of their negligence claim).  *See* OpenAI Defendants' Motion, Parts III.B–III.F.

### C.     Plaintiffs Cannot State a Claim Against Microsoft Through Shotgun Pleading.

Plaintiffs cannot state a claim against Microsoft based on allegations about "Defendants" generally, as such an approach runs afoul of Rule 8 and lacks any legal basis under long-standing principles governing corporate liability.

### 1.     Plaintiffs Fail to Satisfy Rule 8.

Plaintiffs lump Defendants together throughout both the factual allegations, *e.g.*, Compl. ¶¶ 172–179, and the causes of action, *e.g.*, *id.* ¶¶ 272–279.  This is "plainly impermissible under the well-established law in this circuit that so-called 'shotgun pleadings' do not satisfy Rule 8's notice requirement."  *Resh, Inc. v. Skimlite Mfg. Inc.*, 2023 WL 2744423, at *2 (N.D. Cal. Mar. 31, 2023).

Plaintiffs' attempt to evade Rule 8 through shotgun pleading pervades all eleven of their claims, to the extent based on the alleged conduct other than the Microsoft-specific theories discussed above: (i) "scraping" the internet, (ii) operation of ChatGPT, and/or (iii) "integrating" ChatGPT into non-Microsoft services, including Plaintiffs' allegations of interception by "Defendants" and by "OpenAI." Plaintiffs nowhere plead any facts specific to Microsoft to support those theories of liability, and their non-specific allegations directed at "Defendants" cannot support claims against Microsoft.[12]

## 2. Plaintiffs' "Defendants" Allegations Do Not State a Claim Against Microsoft.

At times, Plaintiffs appear to use "Defendants" and "OpenAI" interchangeably, and in ways that are internally inconsistent. For example, they refer to "Defendants' ChatGPT platform," Compl. ¶ 342, but elsewhere acknowledge that OpenAI built and trained ChatGPT, *id.* ¶ 54. Similarly, Plaintiffs claim that "Defendants" integrated ChatGPT on third-party platforms, *id.* ¶ 299, but also specify that OpenAI allegedly did the integration into particular sites, *id.* ¶ 102. Likewise, in the span of a single paragraph, they allege that "OpenAI" scraped the internet "in secret," and also assert that "Defendants" engaged in "theft" by doing that. *Id.* ¶ 71. And finally, Plaintiffs refer to "Defendants' admissions within their Privacy Policy," and then proceed only to discuss OpenAI's privacy policy, making no mention of

---

[12] *See* 18 U.S.C. § 2520(a) (ECPA only allows actions against entities that "engage[] in th[e] violation"); 18 U.S.C. § 1030(g) (CFAA only allows actions for damage or loss "against the violator"); Cal. Pen. Code § 631(a) (CIPA only allows actions against the "person" that "taps, or makes any unauthorized connection" or "reads" without consent during transit, or conspires or aids and abets those violations); Cal. Bus. & Prof. Code §§ 17203–17206 (UCL only allows actions against the party that "engages, has engaged or proposed to engage in unfair competition"); *Romero v. Los Angeles Rams*, 91 Cal. App. 5th 562, 567 (2023) (negligence claim requires "injury to the plaintiff caused by the defendant's breach" of a duty); *Hill v. Nat'l Collegiate Athletic Assn.*, 7 Cal. 4th 1, 40 (1994) (invasion of privacy requires "conduct by defendant" that invaded privacy interest); *Deteresa v. Am. Broad. Companies, Inc.*, 121 F.3d 460, 465 (9th Cir. 1997) (intrusion into seclusion can only be brought against the "[o]ne who intentionally intrudes" on solitude); Cal. Pen. Code § 484(a) (larceny can only be brought against the "person who shall feloniously steal, take, carry, lead or drive away the personal property of another" and other related acts); *Regent All. Ltd. v. Rabizadeh*, 231 Cal. App. 4th 1177, 1181 (2014) (conversion requires "the defendant's disposition of the property in a manner that is inconsistent with the plaintiff's property rights; and . . . resulting damages"); *Peterson v. Cellco P'ship*, 164 Cal. App. 4th 1583, 1593 (2008) (unjust enrichment requires receipt of benefit by defendant from a plaintiff); *Classic Liquor Importers, Ltd. v. Spirits Int'l B.V.*, 201 F. Supp. 3d 428, 454 (S.D.N.Y. 2016) (New York General Business Law § 349 requires that a plaintiff have "suffered injury as a result of the deceptive act" of the defendant).

Microsoft's <u>Privacy Statement</u>.  *Id.* ¶¶ 225–229.  As these inconsistencies show, either Plaintiffs were intentionally sloppy in their pleading, which should result in dismissal under Rule 8, or they are seeking to ignore the separate corporate existence between Microsoft and OpenAI, without pleading sufficient facts to supplant the general rule that companies are legally responsible only for their own alleged conduct. *Motul S.A. v. USA Wholesale Lubricant, Inc.*, 2023 WL 5061945, at *6 (N.D. Cal. Aug. 8, 2023).[13]  While their Complaint is not entirely clear, to the extent Plaintiffs seek to pursue the latter theory, they seem to advance three bases for ignoring this general rule:  agency, conspiracy, and alter ego.  The Complaint does not plausibly allege facts to support any of the three.

**Plaintiffs Cannot Plead an Agency Relationship.**  Although they include boilerplate language about the acts of agents being covered by their Complaint, Compl. ¶ 43, Plaintiffs allege no facts plausibly establishing an agency relationship between Microsoft and OpenAI.  This matters, because the "[t]he law indulges no presumption that an agency exists but instead presumes that a person is acting for himself and not as agent for another."  *Davenport v. Litton Loan Servicing, LP*, 725 F. Supp. 2d 862, 882 (N.D. Cal. 2010).  Even in a corporate parent-subsidiary relationship (which Plaintiffs do not and cannot allege here), courts will not find an agency relationship unless the parent's control is "so extensive that the subsidiary becomes 'only a means through which the parent acts, or nothing more than an incorporated department of the parent.'"  *Masimo Corp. v. Sotera Wireless, Inc.*, 2020 WL 7260660, at *16 (S.D. Cal. Dec. 10, 2020).  Plaintiffs did not, and cannot, allege any facts supporting such an extreme conclusion.

**Plaintiffs Cannot Plead a Conspiracy.**  Similarly, while Plaintiffs suggest the existence of a conspiracy in a handful of conclusory statements, *e.g.*, Compl. ¶ 43, they offer no factual allegations to plausibly support that theory.  In particular, Plaintiffs do not allege that Microsoft and OpenAI reached an agreement to accomplish some unlawful objective for the purpose of harming others.  *Gabor v. Cnty. of Santa Clara Bd. of Sup'rs*, 2008 WL 902407, at *4 (N.D. Cal. Mar. 31, 2008) (dismissing civil conspiracy

---

[13] In any event, even if Plaintiffs are permitted to lump the two defendants together, claims against Microsoft fail for the same reasons as explained in the OpenAI Defendants' separate motion.  If the Court grants any aspect of OpenAI's separate motion, claims against Microsoft premised on the same conduct must also be dismissed.  *Seltzer v. Chesley*, 512 F.2d 1030, 1036 (9th Cir. 1975) ("[I]n the absence of primary liability, there can be no derivative liability.").

claims, including because "plaintiffs fail to assert any specific fact demonstrating either concerted action among the defendants or unlawful objective"), *aff'd sub nom. Gabor v. Cnty. of Santa Clara Bd. of Sup'rs*, 363 F. App'x 456 (9th Cir. 2010).   To the contrary, Plaintiffs acknowledge repeatedly that there are numerous benefits to generative AI, undermining the notion that there is any agreement between Microsoft and OpenAI with an unlawful objective for the purpose of harming others.  Compl. ¶¶ 5, 166, 167.

**Plaintiffs Cannot Plead Alter Ego.**  Finally, Plaintiffs allege that Microsoft "exerts considerable control" over OpenAI based on its investment in OpenAI.  *See, e.g.*, Compl. ¶ 42.  Investment in a company does not give rise to liability for the actions of the company.  *See United States v. Bestfoods*, 524 U.S. 51, 61–62 (1998).  This is so because investors and companies "have legal independence from each other and each can only be held liable for its own acts or omissions."  *Khoros, LLC v. Lenovo (U.S.), Inc.*, 2020 WL 12655516, at *14 (N.D. Cal. Oct. 5, 2020); *Motul*, 2023 WL 5061945, at *1.

Under California law, the narrow alter ego exception to this general rule applies only under "extreme" circumstances that do not exist here.  *See Sonora Diamond Corp. v. Super. Ct.*, 83 Cal. App. 4th 523, 539 (2000).[14]  Conclusory allegations of "considerable control," "stock ownership," or even a parent-subsidiary relationship alone will not suffice.  *See Xyience Beverage Co., LLC v. Statewide Beverage Co., Inc.*, 2015 WL 13333486, at *8 (C.D. Cal. Sept. 24, 2015).  Rather, Plaintiffs must plead (1) "such a unity of interest and ownership" that "separate personalities of the corporation and the shareholder do not in reality exist" and (2) "an inequitable result if the acts in question are treated as those of the corporation alone."  *Sonora*, 83 Cal. App. 4th at 538; *see also Masimo*, 2020 WL 7260660, at *11 (plaintiff "must allege specific facts supporting both . . . elements for alter ego").

---

[14] Plaintiffs allege California law applies.  *See* Compl. ¶ 266.  Without waiving any future choice or conflict of law arguments, Microsoft assumes for purposes of this motion that California law applies to explain why Plaintiffs cannot state a claim under the law they seek to invoke.  The outcome would also be no different if the law of New York (where one Plaintiff lives, as the MSA, among other things, would require), Delaware (where OpenAI is based), or Washington (where Microsoft is based) applied.  *See Miami Prod. & Chem. Co. v. Olin Corp.*, 449 F. Supp. 3d 136, 172–174 (W.D.N.Y. 2020) (dismissing claims brought under "alter ego" theory under New York law); *Khoros*, 2020 WL 12655516, at *14 (same under Delaware law); *Jet Parts Eng'g, Inc. v. Quest Aviation Supply, Inc.*, 2017 WL 1093051, at *7 (W.D. Wash. Mar. 23, 2017) (same under Washington law).

Plaintiffs' sole allegation as to the first prong is that because Microsoft "invested" in OpenAI, it "exerts considerable control over OpenAI." *See* Compl. ¶¶ 40–42. That bare allegation does not show that Microsoft and OpenAI lack "separate personalities." *See Sonora*, 83 Cal. App. 4th at 538. Courts routinely decline to apply alter ego even where there is far greater alleged integration and control. *E.g.*, *Motul S.A.*, 2023 WL 5061945, at *5; *Payoda, Inc. v. Photon Infotech, Inc.*, 2015 WL 4593911, *3 (N.D. Cal. July 30, 2015); *Holland v. Related Companies, L.P.*, 2017 WL 11651046, at *6 (N.D. Cal. Mar. 1, 2017). *Motul* is instructive. There, Plaintiff alleged trademark claims against three companies and brought vicarious liability claims against the individual owner of those companies, who was alleged to "own, operate, dominate, and control" the three companies. *Id.* at *1. The individual defendant was also an officer of two of the companies and a director of the third. *Id.* Even under those facts, "[t]otal ownership and shared management personnel [were] insufficient to establish the requisite level of control" to invoke the alter ego doctrine. *Id.* at *4–7. Here, since Plaintiffs do not allege Microsoft is even a *majority* shareholder of OpenAI, *see* Compl. ¶ 40, and they do not allege that Microsoft and OpenAI have shared management (because they do not), Plaintiffs' allegations fall far short of the required showing to ignore the separate legal personalities. Notably, Plaintiffs cannot amend around this flaw.

Lacking any well-pleaded facts to support the requisite control to establish alter ego liability, Plaintiffs imply that other "business connections" between Microsoft and OpenAI suffice. This novel theory would turn the alter ego doctrine on its head, making it a rule rather than the exception. Businesses routinely have close connections to or relationships with other organizations, but those connections do not mean that alleged conduct by one business partner is automatically imputed onto another. *See Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*, 494 F.3d 788, 806 (9th Cir. 2007) (companies providing services to the public are not generally liable for the alleged tortious conduct of their customers).

The second prong requires Plaintiffs to allege "an activity that amounts to fraud or one that courts have described in similar terms to fraud or intentional deception." *Khoros*, 2020 WL 12655516, at *15. Plaintiffs do not, and cannot, allege that Microsoft and OpenAI exist as separate entities to perpetrate some fraud or injustice. In *Khoros*, the plaintiff argued the defendant (a US subsidiary of a foreign corporation) was an alter ego of various related foreign entities. *Id.* at *14. The court held that alter ego did not apply

14

because the plaintiff did not allege facts showing that the U.S. entity "existed separately from the other entities to perpetrate fraud or similarly unjust activities—as opposed to incorporating in different countries to operate more easily internationally." *Id.* at *16.   Similarly here, Plaintiffs themselves allege that OpenAI was formed and operated extensively as an independent entity prior to Microsoft's investment. Compl. ¶¶ 5, 49–50.   They therefore could not claim that OpenAI was "formed or exist[s] to carry out fraud or similarly inequitable activities" on Microsoft's behalf.   *Khoros*, 2020 WL 12655516, at *15.

**D.    The Court Should Dismiss Plaintiffs' Frivolous Injunctive Relief Demand.**

Plaintiffs ask the Court to impose a "commercial pause" on AI-related activities and to empanel "an independent body of thought leaders" to decide the future of AI.   This injunctive relief request is extraordinary in its reach.   In some respects, such as their demand for "technological safety measures to . . . prevent the technology from surpassing human intelligence," (Compl. at Prayer for Relief), Plaintiffs seek an advisory order about future hypothetical conduct, which is wholly improper and should be denied on that basis alone.   *See, e.g.*, *Brown v. Google, LLC*, 2023 WL 4336718, at *1 (N.D. Cal. May 1, 2023) ("[T]he Court does not have the constitutional authority to clarify a hypothetical situation not before it."). Other injunctive demands ask the Court to engage in policy making in order to identify and oversee various panels of thought leaders who would evaluate future product features.   And Plaintiffs' request for an indeterminate "pause on the commercial deployment" of AI products, Compl. ¶ 170–171, asks the Court do so something that neither the Executive nor Legislative Branch of the U.S. Government has seen fit to propose.[15]   What's more, Plaintiffs fail to tether their requested injunctive relief in any respect to their actual causes of action, all of which depend on alleged past violations of their privacy rights.   *See, e.g.*, *Greenstein v. Noblr Reciprocal Exchange*, 585 F. Supp.3d 1220, 1232 (N.D. Cal. 2022) (dismissing claims where requested injunctive relief "would have little impact" on the prior disclosure of the plaintiff's personal information).   The Court should dismiss Plaintiffs' request for injunctive relief.

**V.    CONCLUSION**

Microsoft respectfully requests that the Court dismiss all claims against it with prejudice.

---

[15] Exec. Order No. 14110, 88 FR 75191, *available at* https://www.federalregister.gov/d/2023-22250; S. 3312, 118th Cong. (2023), *available at* https://www.congress.gov/bill/118th-congress/senate-bill/3312/.

DATED:  December 4, 2023

Respectfully submitted,

 /s/ Isaac D. Chaput

Emily Johnson Henn (Bar No. 269482)
Kathryn E. Cahoy (Bar No. 298777)
COVINGTON & BURLING LLP
3000 El Camino Real
5 Palo Alto Square, 10th Floor
Palo Alto, California 94306
Telephone: + 1 (650) 632-4700
Facsimile: + 1 (650) 632-4800
Email:  ehenn@cov.com
Email:  kcahoy@cov.com

Ashley M. Simonsen (Bar No. 275203)
COVINGTON & BURLING LLP
1999 Avenue of the Stars
Los Angeles, California 90067
Telephone: + 1 (424) 332-4800
Facsimile: + 1 (424) 332-4749
Email:  asimonsen@cov.com

Isaac D. Chaput (Bar No. 326923)
Alexander Setzepfandt (Bar No. 340207)
COVINGTON & BURLING LLP
Salesforce Tower
415 Mission Street, Suite 5400
San Francisco, California 94105
Telephone: + 1 (415) 591-6000
Facsimile: + 1 (415) 591-6091
Email:  ichaput@cov.com
Email:  asetzepfandt@cov.com

*Attorneys for Defendant Microsoft Corporation*

MICROSOFT'S MOTION TO DISMISS COMPLAINT

Case No. 3:23-cv-04557-VC