COOLEY LLP
MICHAEL G. RHODES (116127) (rhodesmg@cooley.com)
MATTHEW D. BROWN (196972) (mbrown@cooley.com)
BETHANY C. LOBO (248109) (blobo@cooley.com)
HARRISON B. PARK (347839) (hpark@cooley.com)
3 Embarcadero Center, 20th Floor
San Francisco, California 94111-4004
Telephone:     +1 415 693 2000
Facsimile:      +1 415 693 2222

ALEXANDRA R. MAYHUGH (300446) (amayhugh@cooley.com)
MAXIMILIAN SLADEK DE LA CAL (324961) (msladekdelacal@cooley.com)
1333 2nd Street, Suite 400
Santa Monica, California 90401-4100
Telephone:     +1 310 883 6400
Facsimile:      +1 310 883 6500

BARRETT J. ANDERSON (318539) (banderson@cooley.com)
NACHI A. BARU (345978) (nbaru@cooley.com)
10265 Science Center Drive
San Diego, California 92121-1117
Telephone:     +1 858 550-6000
Facsimile:      +1 858 550-6420

Attorneys for Defendants
OPENAI LP, OPENAI INCORPORATED, OPENAI GP, LLC, OPENAI STARTUP
FUND I, LP, OPENAI STARTUP FUND GP I, LLC and OPENAI STARTUP FUND
MANAGEMENT LLC

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| A.T., J.H., individually, and on behalf of all others similarly situated,<br><br>             Plaintiffs,<br><br>   v.<br><br>OPENAI LP, OPENAI INCORPORATED, OPENAI GP, LLC, OPENAI STARTUP FUND I, LP, OPENAI STARTUP FUND GP I, LLC, OPENAI STARTUP FUND MANAGEMENT LLC, MICROSOFT CORPORATION and DOES 1 through 20, inclusive,<br><br>             Defendants. | Case No. 3:23-cv-04557-VC<br><br>**OPENAI DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS COMPLAINT**<br><br><br>Date: January 18, 2024<br>Time: 10:00 a.m.<br>Dept: Courtroom 4, 17th Floor<br>Judge: Hon. Vince Chhabria<br><br>Date Action Filed: September 5, 2023<br>Trial Date: None |

**TABLE OF CONTENTS**

Page

NOTICE OF MOTION AND MOTION .................................................................................. 1

STATEMENT OF REQUESTED RELIEF ............................................................................. 1

MEMORANDUM OF POINTS AND AUTHORITIES ........................................................... 1

I.     INTRODUCTION ........................................................................................................ 1

II.    BACKGROUND .......................................................................................................... 5

III.   ARGUMENT ............................................................................................................... 6

       A.     The Complaint Violates Rule 8 .......................................................................... 6

       B.     Plaintiffs Have Not Stated a Claim for Relief Based on Data Interception
              or Access to User Devices. ................................................................................. 7

              1.     Electronic Communications Privacy Act ("ECPA") (Count 1) ................. 7

              2.     California Invasion of Privacy Act ("CIPA") (Count 3) ........................... 9

              3.     Computer Fraud and Abuse Act ("CFAA") (Count 2) ........................... 11

       C.     Plaintiffs Cannot State an Unfair Competition or Negligence Claim Based
              on Plaintiffs' Data Scraping or Interception. .................................................... 13

              1.     California Unfair Competition Law ("UCL") (Count 4) ......................... 13

              2.     New York General Business Law ("GBL") § 349 (Count 11) ............... 16

              3.     Negligence (Count 5) ............................................................................... 19

       D.     Plaintiffs Have Not Stated a Claim for Invasion of Privacy or Intrusion
              Upon Seclusion Based on a Reasonable Expectation of Privacy (Counts 6
              & 7). ................................................................................................................... 22

       E.     Plaintiffs Cannot State a Claim Based on Defendants' Alleged Profiting
              from Scraping and Interception of Their Data. .................................................. 24

              1.     Larceny and Conversion (Counts 8 & 9) ................................................ 24

              2.     Unjust Enrichment (Count 10) ................................................................ 26

       F.     The California Uniform Trade Secrets Act ("CUTSA") Supersedes Claims
              Premised on Misappropriation of Plaintiffs' Personal Data. ............................ 27

IV.    CONCLUSION .......................................................................................................... 30

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aguilar v. Hartford Accident & Indem. Co.*,
    2019 WL 29128671 (C.D. Cal. Mar. 13, 2019) ............................................................22

*Aleksick v. 7-Eleven, Inc.*,
    205 Cal. App. 4th 1176 (2012) ...........................................................................................14

*Andrews v. Sirius XM Radio Inc.*,
    932 F.3d 1253 (9th Cir. 2019) ............................................................................................12

*Antoine v. Berkshire Hathaway Guard Ins.*,
    2023 U.S. Dist. LEXIS 13087 (C.D. Cal. Jan. 25, 2023) ...................................................15

*In re Apple Inc. Device Performance Litig.*,
    347 F. Supp. 3d 434 (N.D. Cal. 2018) ................................................................................17

*Archer v. United Rentals, Inc.*,
    195 Cal. App. 4th 807 (2011) .............................................................................................13

*Armstrong-Harris v. Wells Fargo Bank, N.A.*,
    2022 WL 3348426 (N.D. Cal. Aug. 12, 2022) ...................................................................13

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ...........................................................................................................10

*Astiana v. Hain Celestial Grp., Inc.*,
    783 F.3d 753 (9th Cir. 2015) ..............................................................................................26

*ATS Prods., Inc. v. Champion Fiberglass, Inc.*,
    2015 WL 224815 (N.D. Cal. Jan. 15, 2015) ......................................................................29

*Brodsky v. Apple Inc.*,
    2019 WL 4141936 (N.D. Cal. Aug. 3, 2019) .....................................................................13

*Brodsky v. Apple Inc.*,
    445 F. Supp. 3d 110 (N.D. Cal. 2020) ..................................................................................9

*Cafasso v. Gen. Dynamics C4 Sys., Inc.*,
    637 F.3d 1047 (9th Cir. 2011) ..............................................................................................7

*Calhoun v. Google LLC*,
    526 F. Supp. 3d 605 (N.D. Cal. 2021) ...............................................................................25

*Campbell v. Facebook Inc.*,
   77 F. Supp. 3d 836 (N.D. Cal. 2014) ...................................................................10

*Cappello v. Walmart, Inc.*,
   2019 WL 11687705 (N.D. Cal. Apr. 5, 2019) .......................................................13

*Cervantes v. Countrywide Home Loans, Inc.*,
   656 F.3d 1034 (9th Cir. 2011) .............................................................................30

*Cherny v. Emigrant Bank*,
   604 F. Supp. 2d 605 (S.D.N.Y. 2009) ..................................................................18

*Davidson v. Hewlett-Packard Co.*,
   2021 WL 4222130 (N.D. Cal. Sept. 16, 2021) .....................................................23

*Davis v. RiverSource Life Ins. Co.*,
   240 F. Supp. 3d 1011 (N.D. Cal. 2017) ...............................................................13

*Digital Envoy, Inc. v. Google, Inc.*,
   370 F. Supp. 2d 1025 (N.D. Cal. 2005) ...............................................................29

*In re Facebook Biometric Information Privacy Litigation*,
   185 F. Supp. 3d 1155 (N.D. Cal. 2016) ...............................................................17

*In re Facebook Internet Tracking Litig.*,
   140 F. Supp. 3d 922 (N.D. Cal. 2015) ...................................................................9

*In re Facebook, Inc., Consumer Priv. User Profile Litig.*,
   402 F. Supp. 3d 767 (N.D. Cal. 2019) .................................................................25

*Farmers Ins. Exch. v. Steele Ins. Agency, Inc.*,
   2013 WL 3872950 (E.D. Cal. July 25, 2013) .......................................................29

*Fraser v. Mint Mobile, LLC*,
   2022 WL 1240864 (N.D. Cal. Apr. 27, 2022) ......................................................12

*Gardiner v. Walmart, Inc.*,
   2021 WL 4992539 (N.D. Cal. July 28, 2021)........................................................25

*Genasys Inc. v. Vector Acoustics, LLC*,
   2023 WL 4414222 (S.D. Cal. July 7, 2023) .........................................................30

*Glam & Glits Nail Design, Inc. v. #NotPolish, Inc.*,
  2021 WL 2317410 (S.D. Cal. June 7, 2021) .......................................................30

*Gonzales v. Uber Techs., Inc.*,
  305 F. Supp. 3d 1078 (N.D. Cal. 2018) ..............................................................23

*Goshen v. Mut. Life Ins. Co. of New York*,
  98 N.Y.2d 314 (2002) .........................................................................................17

*Green Desert Oil Grp. v. BP W. Coast Prods.*,
  2011 WL 5521005 (N.D. Cal. Nov. 14, 2011), *aff'd*, 571 F. App'x 633 (9th
  Cir. 2014) ......................................................................................................19, 20

*Hadley v. Kellogg Sales Co.*,
  243 F. Supp. 3d 1074 (N.D. Cal. 2017) ..............................................................16

*Hall v. SeaWorld Ent., Inc.*,
  2015 WL 9659911 (S.D. Cal. Dec. 23, 2015) ................................................15, 16

*Hammerling v. Google LLC*,
  615 F. Supp. 3d 1069 (N.D. Cal. 2022) ..........................................................23, 24

*Heeger v. Facebook, Inc.*,
  509 F. Supp. 3d 1182 (N.D. Cal. 2020) ..............................................................23

*Heldt v. Guardian Life Ins. Co. of Am.*,
  2019 WL 651503 (S.D. Cal. Feb. 15, 2019) ........................................................23

*Heller v. Cepia, L.L.C.*,
  2012 WL 13572 (N.D. Cal. Jan. 4, 2012) ...............................................27, 28, 29

*Hill v. Nat'l Collegiate Athletic Ass'n*,
  76 Cal. 4th 1 (1994) ............................................................................................22

*hiQ Labs, Inc. v. LinkedIn Corp.*,
  31 F.4th 1180 (9th Cir. 2022) .............................................................................11

*Hodges v. Apple Inc.*,
  2013 WL 4393545 (N.D. Cal. Aug. 12, 2013) ....................................................16

*Holmes v. Johnson & Johnson*,
  617 F. App'x 639 (9th Cir. 2015) .......................................................................16

*In re iPhone Application Litig.*,
844 F. Supp. 2d 1040 (N.D. Cal. 2012) ...............................................21, 24, 25, 26

*J'Aire Corp. v. Gregory*,
24 Cal. 3d 799 (1979) ...............................................................................................21

*Johnson v. Maker Ecosystem Growth Holdings, Inc.*,
2023 WL 2191214 (N.D. Cal. Feb. 22, 2023) ........................................................20

*K.C. Multimedia, Inc. v. Bank of Am. Tech. & Operations, Inc.*,
171 Cal. App. 4th 939 (2009) .............................................................................28, 29

*Kadrey, et al. v. Meta Platforms, Inc.*,
No. 23-3417, ECF 56 (N.D. Cal. Nov. 20, 2023) ..................................................21

*Kalitta Air, LLC v. Cent. Tex. Airborne Sys., Inc.*,
315 App'x 603 (9th Cir. 2008) ................................................................................21

*Katz-Lacabe v. Oracle Am., Inc.*,
2023 WL 2838118 (N.D. Cal. Apr. 6, 2023) ......................................................8, 13

*Kearns v. Ford Motor Co.*,
567 F.3d 1120 (9th Cir. 2009) .................................................................................15

*Klein v. Chevron U.S.A., Inc.*,
202 Cal. App. 4th 1342 (2012) ................................................................................27

*Knuttel v. Omaze, Inc.*,
2022 WL 1843138 (C.D. Cal. Feb. 22, 2022) ........................................................16

*Konop v. Hawaiian Airlines, Inc.*,
302 F.3d 868 (9th Cir. 2002) .....................................................................................8

*Korea Supply Co. v. Lockheed Martin Corp.*,
29 Cal. 4th 1134 (2003) ...........................................................................................14

*In re Lenovo Adware Litig.*,
2018 WL 620145 (N.D. Cal. Jan. 30, 2018) ...........................................................17

*Lloyd v. Facebook, Inc.*,
2022 WL 4913347 (N.D. Cal. Oct. 3, 2022)...........................................................22

*Low v. LinkedIn Corp.*,
    900 F. Supp. 2d 1010 (N.D. Cal. 2012) ........................................................21, 23, 25

*Marolda v. Symantec Corp.*,
    672 F. Supp. 2d 992 (N.D. Cal. 2009) ...................................................................16

*Martin v. Sephora USA, Inc.*,
    2023 WL 2717636 (E.D. Cal. Mar. 30, 2023) ......................................6, 10, 11, 21

*Mattel, Inc. v. MGA Ent., Inc.*,
    782 F. Supp. 2d 911 (C.D. Cal. 2011) ............................................................27, 28

*McCluskey v. Hendricks*,
    2023 WL 3376564 (9th Cir. May 11, 2023) ...........................................................23

*McGowan v. Weinstein*,
    505 F. Supp. 3d 1000 (C.D. Cal. 2020) ...........................................................24, 26

*McHenry v. Renne*,
    84 F.3d 1172 (9th Cir. 1996) .................................................................................7

*MedImpact Healthcare Sys., Inc. v. IQVIA Inc.*,
    2020 WL 5064253 (S.D. Cal. Aug. 27, 2020) .......................................................29

*Mount v. PulsePoint, Inc.*,
    684 F. App'x 32 (2d Cir. 2017) ............................................................................18

*N. State Autobahn, Inc. v. Progressive Ins. Grp. Co.*,
    102 A.D.3d 5 (2012) ..............................................................................................19

*NetApp, Inc. v. Nimble Storage, Inc.*,
    41 F. Supp. 3d 816 (N.D. Cal. 2014) ...................................................................28

*New Show Studios LLC v. Needle*,
    2014 WL 2988271 (C.D. Cal. June 30, 2014) .......................................................30

*Patisso v. Law Offices of Bruce E. Baldinger*,
    2011 WL 5117604 (E.D.N.Y. Oct. 24, 2011) .......................................................18

*Pena v. GameStop, Inc.*,
    2023 WL 3170047 (S.D. Cal. Apr. 27, 2023) .......................................................10

*Race Winning Brands, Inc. v. Gearhart*,
2023 WL 4681539 (C.D. Cal. Apr. 21, 2023) ........................................................29

*Revitch v. New Moosejaw, LLC*,
2019 WL 5485330 (N.D. Cal. Oct. 23, 2019) .........................................................10

*Rodriguez v. Google LLC*,
2021 WL 2026726 (N.D. Cal. May 21, 2021) .............................................7, 8, 10

*Roe v. Skillz*,
858 F. App'x 240 (9th Cir. 2021) ............................................................................5

*Rojas-Lozano v. Google, Inc.*,
159 F. Supp. 3d 1101 (N.D. Cal. 2016) ..................................................................27

*S. Cal. Gas Leak Cases*, 7 Cal. 5th 391 (2019) ..............................................................20

*Saffron Rewards, Inc. v. Rossie*,
2022 WL 2918907 (N.D. Cal. July 25, 2022) ........................................................12

*Sateriale v. R.J. Reynolds Tobacco Co.*,
697 F.3d 777 (9th Cir. 2012) .................................................................................16

*Shostack v. Diller*,
2016 WL 958687 (S.D.N.Y. Mar. 8, 2016) ............................................................18

*Shroyer v. New Cingular Wireless Servs., Inc.*,
622 F.3d 1035 (9th Cir. 2010) ...............................................................................15

*Silvaco Data Sys. v. Intel Corp.*,
184 Cal. App. 4th 210 (2010) ................................................................................28

*Silver v. Stripe Inc.*,
2021 WL 3191752 (N.D. Cal. July 28, 2021) ........................................................14

*Silvercrest Realty, Inc. v. Great Am. E&S Ins. Co.*,
2012 WL 13028094 (C.D. Cal. Apr. 4, 2012) ........................................................14

*In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*,
903 F. Supp. 2d 942 (S.D. Cal. 2012) ....................................................................22

*Sugarfina, Inc. v. Sweet Pete's LLC*,
2017 WL 4271133 (C.D. Cal. Sept. 25, 2017) .......................................................26

*Troyk v. Farmers Grp., Inc.*,
   171 Cal. App. 4th 1305 (2009) ...................................................................13

*United States v. Abouammo*,
   2022 WL 17584238 (N.D. Cal. Dec. 12, 2022)..........................................24

*United States v. Nosal*,
   676 F.3d 854 (9th Cir. 2012) .....................................................................11

*Van Buren v. United States*,
   141 S. Ct. 1648 (2021) ...............................................................................12

*Varnado v. Midland Funding LLC*,
   43 F. Supp. 3d 985 (N.D. Cal. 2014) .........................................................22

*Vassigh v. Bai Brands LLC*,
   2015 WL 4238886 (N.D. Cal. July 13, 2015)............................................15

*Vess v. Ciba-Geigy Corp. USA*,
   317 F.3d 1097 (9th Cir. 2003) ...................................................................15

*In re Vizio, Inc., Consumer Priv. Litig.*,
   238 F. Supp. 3d 1204 (C.D. Cal. 2017) ........................................................9

*West v. City & Cnty. of San Francisco*,
   2022 WL 1556415 (N.D. Cal. May 17, 2022) ...........................................20

*Williams v. Facebook, Inc.*,
   384 F. Supp. 3d 1055 (N.C. Cal. 2018) .................................................16, 17

*Young v. Facebook, Inc.*,
   790 F. Supp. 2d 1110 (N.D. Cal. 2011) .....................................................20

*Yumul v. Smart Balance, Inc.*,
   733 F. Supp. 2d 1117 (C.D. Cal. 2010) .....................................................16

*Yunker v. Pandora Media, Inc.*,
   2013 WL 1282980 (N.D. Cal. Mar. 26, 2013)........................................24, 25

**Statutes**

18 U.S.C.
  § 1030(a)(2)(C) ............................................................................................................11
  § 1030(c)(4)(A)(i)(I) ....................................................................................................12
  § 1030(e)(11) ...............................................................................................................12
  § 1030(g) ......................................................................................................................12

Cal. Bus. & Prof. Code § 17204 .......................................................................................13

Cal. Civ. Code
  § 1798.99.80 ................................................................................................................15
  § 1798.99.80(e) ...........................................................................................................15
  § 1798.140(v)(2) ..........................................................................................................15
  § 1798.150(c) ...............................................................................................................14

Cal. Penal Code
  § 496 .............................................................................................................................26
  § 496(a) ........................................................................................................................24
  § 496(c) ...................................................................................................................24, 26
  § 631(a) ..................................................................................................................10, 11
  § 632 .............................................................................................................................10
  § 632(a) ........................................................................................................................10

N.Y. General Business Law § 349 .....................................................................4, 16, 17, 18

**Other Authorities**

*35 Ways Real People Are Using A.I. Right Now*, N.Y. Times (Apr. 14, 2023),
  https://www.nytimes.com/ interactive/2023/04/14/upshot/up-ai-uses.html .............................1

Andrew Chow, *Why Bill Gates Believes Generative AI Will Be 'Revolutionary,'*
  Time (Mar. 21, 2023), https://time.com/6264801/bill-gates-ai ................................................1

Fed. R. Civ. P.
  8 .............................................................................................................................1, 3, 6, 7
  8(a)(2) ............................................................................................................................6
  8(d)(1) ............................................................................................................................6
  9(b) .........................................................................................................................15, 16
  12(b)(6) .....................................................................................................................1, 3

**PLEASE TAKE NOTICE** that on January 18, 2024 at 10:00 a.m., before the Honorable Vince Chhabria, the OpenAI Defendants ("OpenAI")[1] will, and hereby do, move this Court for an order dismissing Plaintiffs' Complaint pursuant to Federal Rules of Civil Procedure 8 and 12(b)(6).

## STATEMENT OF REQUESTED RELIEF

OpenAI respectfully requests that the Court dismiss the Complaint in full and with prejudice for failure to meet the minimum pleading standards of Rule 8 and failure to state a claim upon which relief can be granted under Rule 12(b)(6).

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.      INTRODUCTION

OpenAI's mission is to ensure that generative artificial intelligence ("AI") benefits all humanity through safe and responsible development and deployment of AI technology.  OpenAI does not train or use any of its AI services to target users for advertising or marketing, and it is strongly committed to protecting individuals' consumer and privacy rights while developing and deploying AI models and services.

OpenAI's products are already providing benefits to society: such as combatting fraud, providing language translations, facilitating scientific research, helping with transcriptions, and assisting with everyday tasks.[2]  As Plaintiffs themselves allege, OpenAI's products "have the potential to do much good in the world, like aiding life-saving scientific research and ushering in discoveries that can improve the lives of everyday Americans."  Compl. ¶ 5; *see also* Andrew

---

[1] The OpenAI Defendants are OpenAI LP, OpenAI Incorporated, OpenAI GP, LLC, OpenAI Startup Fund I, LP, OpenAI Startup Fund GP I, LLC, and OpenAI Startup Fund Management LLC. The Complaint does not specify which OpenAI entities engaged in the alleged conduct.

[2] *35 Ways Real People Are Using A.I. Right Now*, N.Y. Times (Apr. 14, 2023), https://www.nytimes.com/interactive/2023/04/14/upshot/up-ai-uses.html.

Chow, *Why Bill Gates Believes Generative AI Will Be 'Revolutionary,'* Time (Mar. 21, 2023), https://time.com/6264801/bill-gates-ai (forecasting that technologies like OpenAI's may help to remedy "some of the world's worst inequities, from unequal access to health care, to global educational disparities and beyond").

To that end, OpenAI offers its most popular AI service, ChatGPT, at no cost and ad-free. ChatGPT is an online chat interface that allows users to interact with AI models in a conversational manner by generating text responses to user queries. It was released to the public on November 30, 2022 as a free research preview based on a large language model ("LLM") called GPT-3.5.[3] Just like someone who reads a book and then disposes of it, or a person who learns how to play tennis from a tennis coach and then plays without the coach's assistance, LLMs—like the LLM powering ChatGPT—"learn" language through exposure—called "training"—to large amounts of text from primarily public sources. Once trained on sufficiently large volumes of data, LLMs, like ChatGPT, develop the ability to use the building blocks of language to provide text outputs in response to user queries, with the potentially extraordinary benefits to society described above.

Plaintiffs are two individuals who "engaged with a variety of websites and social media applications prior to 2021." Compl. ¶¶ 21, 29. Their Complaint speculates that generative AI technology writ large will wreak apocalyptic harm, from allegedly mutating malware to autonomous weapons to civilizational collapse. Much of the 117-page Complaint is untethered to any legal theory—or even to OpenAI's products, rendering Plaintiffs' actual legal theories difficult to discern. However, they appear to allege that OpenAI misappropriated their personal information and used it to train its AI products, including ChatGPT, through two primary means: (1) "scraping"

---

[3] OpenAI has since released ChatGPT Plus (offering additional features and functions), and ChatGPT Enterprise (for businesses). OpenAI also offers an Application Programming Interface ("API") for developers to integrate the capabilities and benefits of OpenAI's models into their own websites and applications.

publicly available information from the Internet; and (2) "intercepting" user data through ChatGPT and the ChatGPT API that OpenAI makes available to third-party developers.

Critically, Plaintiffs fail to identify *any* of their specific personal information that was misappropriated. And while Plaintiffs contest OpenAI's purported use of data allegedly acquired through ChatGPT, they acknowledge that OpenAI's Terms of Use ("Terms") disclose its data use practices *and* allow users options to opt out of training when using ChatGPT (which they do not allege that they did).

Plaintiffs' efforts to conjure a bespoke misappropriation theory based on OpenAI's alleged use of publicly available online information and user data fails under both Rules 8 and 12(b)(6). Despite the Complaint's verbosity, it fails to plead even the most basic facts of Plaintiffs' claims, including what personal information of theirs (if any) was allegedly misappropriated. Further, Plaintiffs' novel theory that companies cannot use publicly available online information, or information provided by their own users, to train and improve their products is legally baseless, and none of the 11 asserted claims provide a remedy for such conduct. Thus, Plaintiffs' claims must be dismissed for numerous reasons, including:

**Wiretapping**. Plaintiffs allege violations of federal and California wiretapping law, but fail to allege the required interception. Even if they had done so, their federal claim would still fail because at least one party to each allegedly intercepted communication (OpenAI, Microsoft, or a third-party developer) consented to the interception.

**Computer Fraud and Abuse Act ("CFAA")**. Plaintiffs cannot recover under the CFAA for OpenAI's alleged misappropriation of their data because the CFAA prohibits hacking, not data misappropriation. Further, Plaintiffs fail to plead *any* CFAA "loss," such as the costs of investigating and remediating hacking.

**California Unfair Competition Law ("UCL")**.  Plaintiffs' UCL claim fails because they have not alleged the lost money or property required for statutory standing, or that OpenAI engaged in any unlawful, unfair, or fraudulent conduct.

**New York General Business Law § 349**.  New York-based Plaintiff J.H.'s § 349 claim is foreclosed by the California choice-of-law clause in OpenAI's Terms.  Even if J.H. could invoke New York law, his claim would fail because he has not alleged the required actionable injury or materially misleading conduct.

**Negligence**.  Plaintiffs' negligence claim fails because they have not alleged either a cognizable duty or injury.

**Privacy**.  Plaintiffs' invasion of privacy and intrusion upon seclusion claims fail because they have not identified the supposedly private information at issue, instead admitting that the allegedly misappropriated information was publicly available.  As such, they cannot allege a reasonable expectation of privacy or the highly offensive intrusion required to state either claim.

**Conversion & Larceny**.  Plaintiffs' conversion and larceny claims fail because they lack the required property interest in their personal information, have not pled conduct amounting to conversion or theft, or described any injury.

**Unjust Enrichment**.  Plaintiffs' unjust enrichment claim fails because they do not allege facts supporting recovery in quasi-contract.

**Supersession**.  Finally, Plaintiffs' UCL, negligence, larceny, conversion, intrusion upon seclusion, and unjust enrichment claims are superseded by the California Uniform Trade Secrets Act because they are premised on the misappropriation of confidential information.

The Complaint should be dismissed in full and with prejudice.

## II.   BACKGROUND

Plaintiffs A.T. and J.H.[4] ("Plaintiffs") speculate that OpenAI collected their "personal data" from publicly available "online applications and platforms" to train its products.  *See* Compl. ¶¶ 26, 33.  Plaintiffs have sued six OpenAI entities[5] and Microsoft (together, "Defendants"), alleging that the latter is OpenAI's "largest investor and largest service provider," and "exerts considerable control" over OpenAI.  *Id.* ¶ 42.  The Complaint reads more as an anti-AI polemic than a distillation of Plaintiffs' claims against Defendants, analogizing the field of generative AI to nuclear warfare and alleging that it may prompt a "civilizational collapse" and elimination of the "human species."  *Id.* ¶¶ 2, 9, 11.

Resultantly, Plaintiffs' actual claims are unclear.  But they appear to speculate that Defendants collected their personal information for use in developing AI services, including ChatGPT.  They challenge Defendants' use of two alleged data sources: (1) scraping publicly available data from "the entire internet"; and (2) intercepting data from Defendants' AI services.  *See id.* ¶¶ 16, 74, 172, 211.  Yet the Complaint does not identify ***any*** of Plaintiffs' personal information that Defendants allegedly collected or used, and the Complaint makes clear that Plaintiffs are simply guessing that OpenAI collected their data.  *See id.* ¶ 18 (alleging that ***OpenAI*** needs to disclose what data it is collecting, and from whom).

---

[4] OpenAI disagrees that this is an "unusual case[]" warranting fictitious names, *see Roe v. Skillz*, 858 F. App'x 240, 241 (9th Cir. 2021), or that Plaintiffs' cursory footnote expressing fear of "unwanted negative attention" and "potential harm" entitles them to proceed pseudonymously without seeking leave of court.  *See* Compl. at 1 n.1.

[5] The Complaint names six OpenAI entities as Defendants, but it does not explain whether and how each entity participated in the alleged conduct apart from boilerplate allegations concerning "control" and supposed "aware[ness]." Compl. ¶¶ 34-39.  It is similarly amorphous as to Plaintiffs: A.T. is a California resident and J.H. is a New York resident, but the two seek to represent five nationwide and six statewide classes, including classes to which they do not allege they belong. *See id.* ¶¶ 19, 27, 245.

Plaintiffs assert four categories of claims. First, they allege that Defendants intercept data and wrongfully access user devices in violation of wiretapping laws—the Electronic Communications Privacy Act and California Invasion of Privacy Act—and the Computer Fraud and Abuse Act (Counts 1-3). Second, they allege that Defendants have violated California and New York unfair competition law (Counts 4 and 11) and acted negligently (Count 5) in scraping and intercepting Plaintiffs' data. Third, they allege that Defendants' conduct violated their reasonable expectation of privacy in their data, giving rise to liability for invasion of privacy and intrusion upon seclusion (Counts 6-7). And finally, they allege that Defendants have improperly profited from scraping and intercepting Plaintiffs' data, rendering Defendants liable for larceny, conversion, and unjust enrichment (Counts 8-10).

## III.    ARGUMENT

### A.    The Complaint Violates Rule 8.

The Complaint—which spans 117 pages and includes 230 footnotes, most referencing third-party commentary on AI—fails to meet Rule 8's pleading requirements. *See* Fed. R. Civ. P. 8(a)(2), 8(d)(1) (requiring allegations to be "simple, concise, and direct"). It lacks even the most basic information about OpenAI's supposed privacy violations.

Specifically, Plaintiffs fail to plead (1) the specific "personal information" that OpenAI allegedly scraped or intercepted; (2) when and how OpenAI acquired their data; (3) whether OpenAI disclosed their data to any third parties (and if so, which ones); and (4) how their privacy rights were violated by OpenAI's alleged acquisition of data that they publicly posted on the Internet. Indeed, they appear to not even know what (if any) personal information of theirs OpenAI allegedly misused. *See* Section II, *supra*. Instead, they allege that OpenAI "stole" the contents of "nearly the entire internet." *See* Compl. ¶¶ 376, 459; *see also id.* ¶¶ 74, 89 (similar). Such generic allegations are insufficient. *See Martin v. Sephora USA, Inc.*, 2023 WL 2717636, at *6 (E.D. Cal.

Mar. 30, 2023) (dismissing under Rule 8 where plaintiff alleged interception of personal information "sometime within the past year" and speculating that there were "thousands" of class members "with innumerable visits to Defendant's website within the past year").[6]

Plaintiffs include numerous "Factual Background" allegations without any connection to their 11 claims that read as a policy polemic. For instance, the Complaint includes 20 pages of allegations regarding the "existential threat" posed by AI technology writ large. Compl. ¶¶ 104-171 (alleging, *inter alia*, that AI technology will "start[] world wars with disinformation and the unchecked capacity for autonomous weaponry" and expressing concern that "world powers currently leveraging AI" risk causing "irreversible damage to humanity and society").

Thus, the Complaint should be dismissed under Rule 8 for failing to clearly and concisely identify the factual bases for Plaintiffs' allegations against OpenAI, while containing voluminous "irrelevant facts, political facts, and legal argument." *See McHenry v. Renne*, 84 F.3d 1172, 1179-80 (9th Cir. 1996) (complaint violates Rule 8 when it includes these items rather than providing the required "short and plain" statement of plaintiffs' claims); *Cafasso v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1058-59 (9th Cir. 2011) (collecting Ninth Circuit cases upholding relevant Rule 8 dismissals).

**B. Plaintiffs Have Not Stated a Claim for Relief Based on Data Interception or Access to User Devices.**

**1. Electronic Communications Privacy Act ("ECPA") (Count 1)**

Plaintiffs allege ECPA violations based on (1) ***Defendants'*** interception of communications on third-party platforms integrating the ChatGPT API (Compl. ¶¶ 287-296, 343-

---

[6] The Complaint's generic nature is further revealed by its several allegations that non-party Google was the wrongdoer. *See, e.g.*, Compl. ¶ 335 (alleging "***Google's*** deliberate and admittedly purposeful scheme" facilitated interception of Plaintiffs' communications), ¶ 437 (alleging that "***Google*** violated federal and state criminal and civil laws . . .") (emphases added).

351); (2) **Microsoft's** interception of user communications with ChatGPT (*id.* ¶¶ 297-306, 352-362); and (3) **OpenAI's** interception of communications on Microsoft platforms integrating ChatGPT (*id.* ¶¶ 307-316, 363-372). These theories fail for the following reasons.

*First*, Plaintiffs cannot state a claim because ECPA "is a one-party consent statute," *Katz-Lacabe v. Oracle Am., Inc.*, 2023 WL 2838118, at *10 (N.D. Cal. Apr. 6, 2023), and the Complaint shows that at least one party to each challenged communication consented to each alleged interception. Plaintiffs' first theory, interception of ChatGPT API communications, fails because companies incorporating third-party software on their websites (*i.e.*, platforms integrating the ChatGPT API) consented to the alleged interception. *See, e.g.*, *id.* (commercial websites consented to Oracle's alleged interceptions by deploying Oracle tools on their websites); *Rodriguez v. Google LLC*, 2021 WL 2026726, at *5 (N.D. Cal. May 21, 2021) (third-party developers consented to Google's interception of interactions between third-party apps and their users by deploying Google's software development kit). Similarly, Plaintiffs' second and third theories fail because they do not (and cannot) allege the absence of one-party consent—*i.e.*, OpenAI consented to any alleged interception by Microsoft of OpenAI users' communications with ChatGPT, and Microsoft consented to any alleged interception by OpenAI of Microsoft users' communications with platforms integrating ChatGPT. This one-party consent issue alone defeats the ECPA claim.

*Second*, Plaintiffs' ECPA claim fails because they do not allege **how** OpenAI allegedly intercepted their communications **during transmission**. *See Konop v. Hawaiian Airlines, Inc.*, 302 F.3d 868, 878 (9th Cir. 2002) (for ECPA "intercept[ion]," content "must be acquired during transmission, not while it is in electronic storage"). Plaintiffs' conclusory allegations referencing

an interception while "in transit" and "real-time access" are insufficient.[7] *See* Compl. ¶¶ 284, 294, 309, 314, 345, 349, 359, 365; *In re Vizio, Inc., Consumer Priv. Litig.*, 238 F. Supp. 3d 1204, 1228 (C.D. Cal. 2017) (dismissing ECPA claim premised on conclusory allegations that Vizio "intercepted [plaintiffs'] electronic communications 'during transmission'" and the "data collection occurs 'in real time'"). This deficit also independently defeats the ECPA claim.

 *Third*, Plaintiffs' first and third theories of ECPA liability fail for additional reasons.[8] Plaintiffs' first theory fails because they do not allege that they used the ChatGPT API. They allege that Defendants intercepted "communications which occurred on various applications, platforms, websites [sic] which integrate ChatGPT technology (*i.e.*, Stripe, Snapchat, etc.)." Compl. ¶¶ 287, 343. But no Plaintiff alleges using Stripe or Snapchat's ChatGPT API-powered features, which they speculate could have tracked their communications, and their reference to "various" other unspecified platforms is insufficient. *See id.* Plaintiffs' third theory similarly fails because they do not allege using "Microsoft platforms (Teams, Bing, Outlook, etc.), which integrate ChatGPT API." Compl. ¶¶ 307, 363; *see In re Facebook Internet Tracking Litig.*, 140 F. Supp. 3d 922, 937 (N.D. Cal. 2015) (rejecting interception claim where plaintiffs asserted "generalized facts" and failed to "adequately allege[] that Facebook obtained the contents of a communication attributable to any of them").

### 2. California Invasion of Privacy Act ("CIPA") (Count 3)

 Because ECPA and CIPA each prohibit the unauthorized interception of communications, the statutes' overlapping elements and defenses are analyzed jointly. *See, e.g.*, *Brodsky v. Apple*

---

[7] Alleged scraping cannot be a basis for ECPA liability (*contra* Compl. ¶ 285), because an ECPA defendant's interception must occur contemporaneously with the plaintiff's transmission of data to a third-party site, and scraping necessarily occurs *after* transmission.

[8] OpenAI joins in Microsoft's concurrently filed motion to dismiss, which states more reasons that the second theory (Microsoft's interception of OpenAI users' communications) fails. *See* Msft. Mot. to Dismiss.

*Inc.*, 445 F. Supp. 3d 110, 127 (N.D. Cal. 2020) (CIPA analysis "is the same as that under the federal Wiretap Act"); *Pena v. GameStop, Inc.*, 2023 WL 3170047, at *3 (S.D. Cal. Apr. 27, 2023) (same). Thus, like the ECPA claim, the CIPA claim fails because Plaintiffs do not allege (1) how their electronic communications were intercepted during transmission, *see Martin*, 2023 WL 2717636, at *11 (dismissing CIPA claim because, *inter alia*, "allegations that [plaintiff's] communications were intercepted by a third party company while 'in transit'" were conclusory); or (2) that they used either the ChatGPT API or a Microsoft platform integrating ChatGPT.

The CIPA claim also fails for other reasons. ***First***, Plaintiffs cite California Penal Code § 632(a), which prohibits eavesdropping on "confidential communication[s]." *See* Compl. ¶ 330. But Plaintiffs have not alleged any facts supporting a § 632(a) violation. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Nor can they, as Internet communications "do not reasonably give rise to th[e] expectation [of a confidential communication]." *Revitch v. New Moosejaw, LLC*, 2019 WL 5485330, at *3 (N.D. Cal. Oct. 23, 2019) (Chhabria, J.) (dismissing § 632 claim based on "session replay" software provider's data collection concerning users' interactions with website); *Rodriguez*, 2021 WL 2026726, at *7 (dismissing § 632 claim based on Google's interception of user communications with third-party apps; users lacked reasonable expectation "that *nobody* . . . would record the communications"); *Campbell v. Facebook Inc.*, 77 F. Supp. 3d 836, 848-49 (N.D. Cal. 2014) (dismissing § 632 claim; users' Facebook messages were not "confidential communication[s]").

***Second***, Plaintiffs' CIPA claim under California Penal Code § 631(a) should be dismissed because they do not identify the allegedly violated subsections, instead block quoting the entire

statute.  *See Martin*, 2023 WL 2717636, at *5-6 (dismissing CIPA claim because "block quot[ing] § 631(a)" rather than identifying specific theories of liability was "impermissibly conclusory").[9]

### 3. Computer Fraud and Abuse Act ("CFAA") (Count 2)

Plaintiffs' CFAA claim fails for two reasons.  ***First***, it is based on alleged misappropriation of their personal information.  Compl. ¶¶ 317-326.  This is not actionable under the CFAA, which is an anti-hacking statute, not "a misappropriation statute."  *hiQ Labs, Inc. v. LinkedIn Corp.*, 31 F.4th 1180, 1196-1201 (9th Cir. 2022); *United States v. Nosal*, 676 F.3d 854, 857 (9th Cir. 2012) (rejecting interpretation that "would transform the CFAA from an anti-hacking statute into an expansive misappropriation statute").

The CFAA imposes liability on a defendant who "intentionally accesses a computer without authorization or exceeds authorized access, and thereby obtains . . . information from any protected computer."  18 U.S.C. § 1030(a)(2)(C).  But Plaintiffs' misappropriation theory does not fit either prong.  The "without authorization" prong does not prohibit a defendant's accessing of publicly available information.  *hiQ*, 31 F.4th at 1201 (no CFAA violation where web scraper accessed public LinkedIn data).  And Plaintiffs do not allege that OpenAI accessed non-public information by, for example, circumventing "generally applicable rules regarding access permissions, such as username and password requirements, to gain access to a computer."  *Id*. Thus, the CFAA claim fails to the extent it is based on web scraping or intercepting publicly available information.  And a defendant does not violate the "exceeds authorized access" prong by allegedly misusing information that it had the technological ability to access, without hacking.  *See*

---

[9] If Plaintiffs allege that OpenAI is liable for aiding and abetting Microsoft's alleged interception of ChatGPT communications (*see* Compl. ¶ 361), that theory again fails for the reasons stated in Microsoft's motion to dismiss.  *See* Msft. Mot. to Dismiss; *see also Martin*, 2023 WL 2717636, at *12 (dismissing CIPA derivative liability claim where primary CIPA claim against interceptor failed).

*Van Buren v. United States*, 141 S. Ct. 1648, 1652 (2021) (employee did not "exceed[] authorized access" by taking information from a database to which he had technical access, for the improper motive of financial gain). Plaintiffs themselves allege that OpenAI had technical access to content supposedly intercepted through ChatGPT or the ChatGPT API. Compl. ¶¶ 320-322. Thus, the CFAA claim also fails to the extent it rests on purportedly non-public information.

***Second***, Plaintiffs' CFAA claim independently fails because Plaintiffs do not allege the required $5,000 "loss"—*i.e.*, "any reasonable cost to any victim, including the cost of responding to an offense, conducting a damage assessment, and restoring the data, program, system, or information to its condition prior to the offense, and any revenue lost, cost incurred, or other consequential damages incurred because of interruption of service." *See* 18 U.S.C. § 1030 (c)(4)(A)(i)(I), (e)(11), (g). The alleged misappropriation of Plaintiffs' personal information is insufficient because the CFAA "maintains a narrow conception of loss" that is "clearly limit[ed]" to "harms caused by computer intrusions"—*i.e.*, "technological harms" like the "corruption of files"—not "remediating misuse of sensitive information." *Saffron Rewards, Inc. v. Rossie*, 2022 WL 2918907, at *8 (N.D. Cal. July 25, 2022) (no CFAA "loss" based on employee's accessing Google account post-termination, where employer did not allege "any technological harm or interruption to [its] computer-related services" nor "any damages assessments or data restorations" to remediate employee's actions); *Andrews v. Sirius XM Radio Inc.*, 932 F.3d 1253, 1262 (9th Cir. 2019) (rejecting plaintiff's theory that CFAA loss was "the profits [he] might have received from commodifying [his allegedly misappropriated] personal information"); *Fraser v. Mint Mobile, LLC*, 2022 WL 1240864, at *5 (N.D. Cal. Apr. 27, 2022) (CFAA addresses loss "related to a computer or system, not damages that flow from the use of unlawfully obtained information").

Further, Plaintiffs have alleged ***no*** facts supporting their alleged $5,000 loss. Even were their misappropriation theory actionable under the CFAA, their bald assertions of an unspecified

"diminution in value" of their private information (Compl. ¶ 325) would be insufficient. *See Brodsky v. Apple Inc.*, 2019 WL 4141936, at *8 (N.D. Cal. Aug. 3, 2019) (dismissing CFAA claim where plaintiffs failed to allege *any* economic loss, let alone the required $5,000).

    **C.    Plaintiffs Cannot State an Unfair Competition or Negligence Claim Based on Plaintiffs' Data Scraping or Interception.**

        **1.    California Unfair Competition Law ("UCL") (Count 4)**

A plaintiff asserting a UCL claim must allege a "business act or practice" that is unlawful, unfair, or fraudulent. *Armstrong-Harris v. Wells Fargo Bank, N.A.*, 2022 WL 3348426, at *2 (N.D. Cal. Aug. 12, 2022). Plaintiffs have not stated a UCL claim under any prong.

*First*, Plaintiffs lack UCL statutory standing, which requires them to plead "economic injury"—*i.e.*, that they "lost money or property *as a result of* . . . unfair competition." *See* Cal. Bus. & Prof. Code § 17204 (emphasis added); *Davis v. RiverSource Life Ins. Co.*, 240 F. Supp. 3d 1011, 1017 (N.D. Cal. 2017) (the required "economic injury" must be "*caused by*" the UCL violation (emphasis added)); *see also Troyk v. Farmers Grp., Inc.*, 171 Cal. App. 4th 1305, 1348 n.31 (2009) (economic injury requirement is "more stringent than" Article III injury-in-fact inquiry).

The Complaint does not plead how Plaintiffs "lost money or property." And misappropriation of personal information is not an "economic injury," particularly for plaintiffs who do not sell their personal information. *See Katz-Lacabe*, 2023 WL 2838118, at *8 ("weight of authority" holds that "mere misappropriation of personal information" is not economic injury) (collecting cases); *Cappello v. Walmart, Inc.*, 2019 WL 11687705, at *4 (N.D. Cal. Apr. 5, 2019) ("Plaintiffs must allege more than a loss of personal information to establish standing under the UCL."); *Archer v. United Rentals, Inc.*, 195 Cal. App. 4th 807, 816 (2011) (dismissing UCL invasion of privacy claim because "plaintiffs have failed to demonstrate how . . . unlawful

collection and recordation of personal identification information . . . translates into a loss of money or property").

**Second**, Plaintiffs have not pled a basis for restitution. *See Silvercrest Realty, Inc. v. Great Am. E&S Ins. Co.*, 2012 WL 13028094, at *2 (C.D. Cal. Apr. 4, 2012) ("Remedies under the UCL are limited to restitution and injunctive relief, and do not include damages."). Plaintiffs do not allege that OpenAI took any money from them. Nor do they identify any property that could be returned to them. To the extent that Plaintiffs seek damages other than restitution or injunctive relief (*e.g.*, disgorgement (Compl. ¶ 414)), such damages are not available under the UCL. *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1144–48 (2003). !

**Third**, Plaintiffs otherwise fail to state a claim under any UCL prong.

**Unlawful.** Plaintiffs' unlawful prong claim is based on ECPA, CIPA, and CFAA; the California Consumer Privacy Act ("CCPA"); other statutes referenced in passing; and "other tort claims stated in this lawsuit." Compl. ¶¶ 376-395. Because Plaintiffs have not stated their ECPA, CIPA, and CFAA claims, their derivative UCL claim also fails. *See* Section III.B, *supra*; *Aleksick v. 7-Eleven, Inc.*, 205 Cal. App. 4th 1176, 1185 (2012) ("When a statutory claim fails, a derivative UCL claim also fails."). Further, a CCPA violation cannot be the basis for a UCL claim. *See* Cal. Civ. Code § 1798.150(c) ("Nothing in [the CCPA] shall be interpreted to serve as the basis for a private right of action under any other law."); *Silver v. Stripe Inc.*, 2021 WL 3191752, at *7 (N.D. Cal. July 28, 2021) (plaintiff could not allege CCPA as predicate UCL violation). To the extent Plaintiffs allege other statutory violations (Compl. ¶ 378), their failure to describe how OpenAI allegedly violates those statutes is fatal. *See Silver*, 2021 WL 3191752, at *7 (dismissing UCL unlawful claim where complaint did "inadequate job of explaining the specific violations of those

statutes").[10]  And Plaintiffs' passing reference to "other tort claims" is similarly deficient.  *See*

*Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1044 (9th Cir. 2010) (common law

violations did not state UCL unlawful prong claim).

**Fraudulent.**  The Complaint contains two passing references to "fraudulent" conduct

(Compl. ¶¶ 375, 401-402), but does not describe the alleged fraud.  These barebones allegations

fail to satisfy Rule 9(b)'s standard for pleading fraud-based claims, which require a description of

the "who, what, when, where, and how of the misconduct charged," as well as "what is false or

misleading about a statement, and why."  *See Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th

Cir. 2009); *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003).

Plaintiffs appear to allege that OpenAI made false representations that it would respect user

privacy and keep user data secure.  *See* Compl. ¶ 401.  But Plaintiffs both fail to allege the source(s)

of these alleged misrepresentations with Rule 9(b) particularity ***and*** to explain why the alleged,

unsourced misrepresentations were false.  *See, e.g.*, *Hall v. SeaWorld Ent., Inc.*, 2015 WL

9659911, at *10 (S.D. Cal. Dec. 23, 2015) (dismissing UCL claim that did not explain falsity of

alleged misrepresentations); *Vassigh v. Bai Brands LLC*, 2015 WL 4238886, at *4 (N.D. Cal. July

13, 2015) (same); *Antoine v. Berkshire Hathaway Guard Ins.*, 2023 U.S. Dist. LEXIS 13087, at

*6-12 (C.D. Cal. Jan. 25, 2023) (UCL claim fails absent explanation why particular statements

would likely deceive public).  Further, Plaintiffs do not allege "actual reliance" on OpenAI's

alleged misrepresentations—let alone that "the misrepresentation was an immediate cause of their

---

[10] Plaintiffs cursorily suggest that "Defendants failed to register as data brokers under California law as required."  Compl. ¶ 376(a).  But OpenAI's alleged use of data scraped from the Internet or inputted into its own services does not render it a data broker under California law.  Nowhere does the Complaint allege, as required, that OpenAI "knowingly collects and sells to third parties the personal information of a consumer with whom [OpenAI] does not have a direct relationship."  *See* Cal. Civ. Code § 1798.99.80.  Nor does the Complaint implicate "personal information" under the statute, which excludes "publicly available information."  Cal. Civ. Code §§ 1798.99.80(e), 1798.140(v)(2).  Thus, this basis for UCL unlawful prong liability also fails.

injury-producing conduct." *See Sateriale v. R.J. Reynolds Tobacco Co.*, 697 F.3d 777, 793 (9th Cir. 2012).

Further, Plaintiffs have not adequately pled a fraudulent omission where they do not (1) "describe the content of the omission and where the omitted information should or could have been revealed" in documents that Plaintiffs viewed and relied on, *see Marolda v. Symantec Corp.*, 672 F. Supp. 2d 992, 1001 (N.D. Cal. 2009), *Yumul v. Smart Balance, Inc.*, 733 F. Supp. 2d 1117, 1124 n.10 (C.D. Cal. 2010); or (2) identify with particularity the source of the alleged duty to disclose, *see Hodges v. Apple Inc.*, 2013 WL 4393545, at *5 (N.D. Cal. Aug. 12, 2013), *Hall*, 2015 WL 9659911, at *6.

**Unfair.** Plaintiffs' unfair prong claim fails because it is based on the same alleged conduct as their claims under the other prongs. Where the allegedly unfair practice "overlaps entirely with the practices addressed under the fraudulent and unlawful prongs of the UCL, the former may be dismissed when the latter prongs do not survive." *Knuttel v. Omaze, Inc.*, 2022 WL 1843138, at *13 (C.D. Cal. Feb. 22, 2022); *see also Holmes v. Johnson & Johnson*, 617 F. App'x 639, 644 (9th Cir. 2015) (dismissing unfair prong claim because "the same activity [] form[ed] the basis of her fraudulent ground" and the allegations did not satisfy Rule 9(b)); *Hadley v. Kellogg Sales Co.*, 243 F. Supp. 3d 1074, 1104–05 (N.D. Cal. 2017) (collecting cases).

### 2. New York General Business Law ("GBL") § 349 (Count 11)

New York-based Plaintiff J.H. has not stated a GBL § 349 claim. *First*, his admitted consent to OpenAI's Terms, which include a California choice-of-law provision, forecloses this claim. *See* Compl. ¶¶ 28, 262 (alleging that Plaintiff J.H. is a ChatGPT user and that OpenAI's California choice-of-law provision "applies to disputes between [OpenAI] and ChatGPT Users").

To illustrate, *Williams v. Facebook, Inc.* applied California choice-of-law principles to hold that Facebook's California choice-of-law clause foreclosed a GBL § 349 claim because

(1) California had a substantial relationship to the parties and the challenged transactions; and (2) there was a reasonable basis for the choice of forum. 384 F. Supp. 3d 1043, 1055-57 (N.D. Cal. 2018). *Williams* expressly distinguished *In re Facebook Biometric Information Privacy Litigation*, 185 F. Supp. 3d 1155 (N.D. Cal. 2016), cited in Complaint ¶ 260. *Williams,* 384 F. Supp. 3d at 1056. *Facebook Biometric* held that a California choice-of-law provision did not displace Illinois residents' ability to bring a claim under Illinois' biometric privacy law because, at the time, California had no comparatively protective law. *See id*. In contrast, as *Williams* held, California and New York consumer protection laws only contain minor differences, meaning that there is no compelling reason not to enforce a California choice-of-law clause. *See id*. at 1056-57 (dismissing GBL § 349 claim on choice of law grounds with prejudice; holding that "California has an obvious substantial relationship to the parties and a reasonable basis to enforce its choice of law" where Facebook was California corporation with principal place of business in California); *see also In re Apple Inc. Device Performance Litig.*, 347 F. Supp. 3d 434, 447 (N.D. Cal. 2018) (finding "substantial relationship" where Apple's principal place of business was in California, "Apple conducted much of the conduct relevant to the lawsuit in California, and Apple seeks to apply California law to its sales transactions").

Here, Plaintiffs allege that OpenAI is headquartered in California, where "the majority of unlawful conduct took place—from development of the AI products, decisions concerning AI Products and training of the AI, web scraping practices, and other major decisions which affected all Class Members." Compl. ¶ 261. And GBL § 349 "address[es only] commercial misconduct occurring ***within New York***." *Goshen v. Mut. Life Ins. Co. of New York*, 98 N.Y.2d 314, 324-25 (2002) (emphasis added); *see also In re Lenovo Adware Litig.*, 2018 WL 620145, at *2 (N.D. Cal. Jan. 30, 2018) (concluding that GBL § 349 does not "protect consumers from out-of-state deceptive business practices"). Thus, California law should govern J.H.'s claims.

**Second**, even if New York law applied, J.H. has not adequately alleged a § 349 claim, which would require allegations that OpenAI "has engaged in (1) consumer-oriented conduct, (2) that is materially misleading, and (3) that caused plaintiff injury." *Mount v. PulsePoint, Inc.*, 684 F. App'x 32, 35 (2d Cir. 2017).

J.H. has not pled the required "actual injury," *see id.*, because "the release of potentially sensitive information alone, without evidence of misuse, is insufficient to cause damage to a plaintiff." *Cherny v. Emigrant Bank*, 604 F. Supp. 2d 605, 608 (S.D.N.Y. 2009) (collecting cases). Thus, *Mount* affirmed the dismissal of a § 349 claim because "[n]o New York court . . . has ever construed § 349 to reach the privacy invasion" associated with "collection of internet users' aggregated, anonymized web-browsing data." 684 F. App'x at 35. Rather, § 349 injury exists "only where confidential, individually identifiable information—such as medical records or a Social Security number—is collected without the individual's knowledge or consent." *Id.*; *see also Shostack v. Diller*, 2016 WL 958687, at *5 (S.D.N.Y. Mar. 8, 2016) (holding that "an unquantifiable injury to a privacy interest [is] not a cognizable injury"). Here, J.H. does not allege that **his** confidential, individually identifiable information was misappropriated. And the Complaint's speculation that OpenAI may have misappropriated **someone's** confidential information does not suffice for J.H. to state a claim. *See, e.g.*, Compl. ¶ 16 (alleging that patient portal MyChart uses the ChatGPT API), ¶¶ 133-134, 240 (alleging that data collected "may" include personal information like medical records).

Further, OpenAI's alleged conduct was not "consumer-oriented" under § 349. The term "consumer" under New York law "is consistently associated with an individual or natural person who purchases goods, services or property for 'personal, family or household purposes.'" *Patisso v. Law Offices of Bruce E. Baldinger*, 2011 WL 5117604, at *3 (E.D.N.Y. Oct. 24, 2011) (dismissing § 349 claim for failure to allege the required "purchase or sale of goods or services").

Here, J.H. does not allege that he purchased any goods or services from OpenAI, let alone for a "personal, family, or household purpose." *See* Compl. ¶¶ 27-33.

Nor does J.H. allege that OpenAI's conduct was materially misleading, which requires that the alleged "deception pertain[] to an issue that may bear on a consumer's decision to participate in a particular transaction." *N. State Autobahn, Inc. v. Progressive Ins. Grp. Co.*, 102 A.D.3d 5, 13 (2012). Neither form of OpenAI's alleged conduct suffices. J.H. does not (and cannot) allege that he posted information to publicly available websites based on any actionable misrepresentation or omission by OpenAI, such that his scraping allegations fail. And J.H.'s allegation that OpenAI improperly trained its products using information he entered into ChatGPT fails due to his advance agreement to OpenAI's Terms, which specifically disclosed this potential training use. *See* Compl. ¶¶ 28, 87, 226 (acknowledging that during account creation, users accept OpenAI's Terms, which state that OpenAI may use content from ChatGPT "to help develop and improve [OpenAI's] services"). In any event, J.H. does not allege that OpenAI's supposed deception bore on his decision to use ChatGPT—or even that he was unaware that his interactions with ChatGPT could be used to improve OpenAI's services.

Thus, even if New York law applied to J.H.'s consumer protection claim, it would fail.

### 3. Negligence (Count 5)

*First*, Plaintiffs do not adequately allege that OpenAI owed them a duty of care. They hypothesize a variety of duties to abstain from (1) web scraping; (2) training AI on individuals' data; and (3) collecting, sharing, and retaining user data. *See* Compl. ¶ 420. But negligence requires a duty imposed by law, assumed by the defendant, or arising from a preexisting relationship. *Green Desert Oil Grp. v. BP W. Coast Prods.*, 2011 WL 5521005, at *5 (N.D. Cal. Nov. 14, 2011), *aff'd*, 571 F. App'x 633 (9th Cir. 2014). Plaintiffs do not plead facts illustrating the basis for OpenAI's alleged duty, instead alleging that it "arose from several sources," each

unspecified.  *See* Compl. ¶ 421.  Thus, Plaintiffs' negligence claim fails as a matter of law.  *Green Desert*, 2011 WL 5521005, at *5 (dismissing negligence claim for failure to plead duty); *Johnson v. Maker Ecosystem Growth Holdings, Inc.*, 2023 WL 2191214, at *5 (N.D. Cal. Feb. 22, 2023) (similar; failure "to identify the source of the duty"); *Young v. Facebook, Inc.*, 790 F. Supp. 2d 1110, 1118 (N.D. Cal. 2011) (similar; failure to identify any contract or non-contract duty).

Plaintiffs' allegation that OpenAI "had a common law duty to prevent foreseeable harm to others" (Compl. ¶ 421) does not suffice, because California "requir[es] more than mere foreseeability for imposing a duty of care."  *See S. Cal. Gas Leak Cases*, 7 Cal. 5th 391, 401 (2019).  Otherwise, the law could impose "liability in an indeterminate amount for an indeterminate time to an indeterminate class."  *Id*. at 414.  So too here: Plaintiffs seek to impose an expansive, continuing duty on OpenAI extending to "millions of individuals" from whom OpenAI allegedly "collected and continue[s] to collect Private Information," based on a "zone of risk that is incalculable."  Compl. ¶ 421.  Arguably, Plaintiffs' theory would impose on every web scraper a duty of care to every person who has chosen to post information to the open Internet.  *Cf. id*. ¶ 75 (alleging that "[t]he breadth and scope of Defendants' data collection . . . impact[s] essentially every internet user ever").  California law prohibits such negligence claims.  *See S. Cal. Gas Leak Cases*, 7 Cal. 5th at 394-95, 403 (affirming dismissal of negligence claim seeking recovery for lost business income due to natural gas leak and recognizing need to cabin "limitless liability and unending litigation").

***Second***, Plaintiffs fail to plead cognizable damages.  Plaintiffs' allegations that OpenAI's negligence caused them unspecified "damages" and "significant harm" are insufficient.  *See* Compl. ¶¶ 425, 450;[11] *see West v. City & Cnty. of San Francisco*, 2022 WL 1556415, at *13 (N.D.

---

[11] The Complaint contains two ¶ 450s; this citation is to the ¶ 450 on page 105 of the Complaint.

OpenAI's Motion to Dismiss
3:23-cv-04557-VC

Cal. May 17, 2022) (dismissing negligence claim where plaintiff did not identify the injuries and damages that defendant's conduct caused). Indeed, courts frequently dismiss negligence claims based on the alleged misappropriation of personal information for failure to plead harm. *See Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010, 1032 (N.D. Cal. 2012) (dismissing negligence claim where plaintiffs failed to plead how they were "foreclosed from capitalizing on the value of [their] personal data"); *In re iPhone Application Litig.*, 844 F. Supp. 2d 1040, 1064 (N.D. Cal. 2012) (dismissing negligence claim based on "unreasonable risk to the security of sensitive personal information" for failure to identify non-speculative, present injury).

Plaintiffs' other damages allegations—which are "scattered" through the Complaint, *Martin*, 2023 WL 2717636, at *5—are equally unavailing. Plaintiffs allege "loss of value" and "loss of control over their sensitive personal information." Compl. ¶ 395 (UCL claim). But their loss of value theory is barred by the "economic loss doctrine" because it seeks recovery for purely economic loss. Such recovery is unavailable for negligence claims absent (1) personal injury; (2) physical damage to property; (3) a "special relationship" existing between the parties;[12] or (4) another common law exception to the rule—none of which the Complaint alleges. *Kalitta Air, LLC v. Cent. Tex. Airborne Sys., Inc.*, 315 App'x 603, 605 (9th Cir. 2008) (quoting *J'Aire Corp. v. Gregory*, 24 Cal. 3d 799, 804 (1979)); *Kadrey, et al. v. Meta Platforms, Inc.*, No. 23-3417, ECF 56 at *4 (N.D. Cal. Nov. 20, 2023) (Chhabria, J.) (dismissing negligence claim based on Meta's LLaMA language model as, *inter alia*, barred by the economic loss doctrine).

---

[12] Plaintiffs do not plausibly allege the existence of a special relationship, which is assessed via a six-factor test, including "the extent to which the transaction was intended to affect the plaintiff" and the "degree of certainty that the plaintiff suffered injury." *See J'Aire Corp.*, 24 Cal. 3d at 804 (listing factors). Here, their alleged harms are speculative at best, *see* Section III.C.3, *supra*, and they do not allege that OpenAI's actions were specifically intended to affect them.

Similarly, Plaintiffs' alleged "loss of control" over unspecified personal information "is also insufficient to establish damages for a negligence claim." *Aguilar v. Hartford Accident & Indem. Co.*, 2019 WL 29128671, at *2 (C.D. Cal. Mar. 13, 2019); Compl. ¶¶ 395, 407, 418 (UCL claim). Their allegations of "emotional distress" likewise fail. *See* Compl. ¶¶ 395, 407, 418 (UCL claim); *Varnado v. Midland Funding LLC*, 43 F. Supp. 3d 985, 990 (N.D. Cal. 2014) (emotional distress is not a basis for negligence claim absent "malice, breach of a fiduciary duty, physical injury or impact, or some other unusually extreme or outrageous circumstance"). And their allegations of potential future harm—such as (1) AI technology eventually leading to their "professional obsolescence" as software engineers (Compl. ¶¶ 17, 25, 324); (2) "unpredictable consequences" of entrusting personal information to large language models (*id*. ¶ 90); or (3) "nefarious" harm *if* "ChatGPT has access to a User's browsing history, search queries, and geolocation" *and* "combines this information with what Defendant OpenAI has secretly scraped from the internet," such that "Defendants *could* build a detailed profile of Users' behavior patterns" (*id*. ¶ 132)—are too speculative to support recovery. *See In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*, 903 F. Supp. 2d 942, 962-63 (S.D. Cal. 2012).

> **D.** **Plaintiffs Have Not Stated a Claim for Invasion of Privacy or Intrusion Upon Seclusion Based on a Reasonable Expectation of Privacy (Counts 6 & 7).**

Courts analyze invasion of privacy and intrusion upon seclusion claims together because the core inquiries are the same: whether Plaintiffs (1) had a "reasonable expectation of privacy"; and (2) suffered a "highly offensive" intrusion. *See Lloyd v. Facebook, Inc.*, 2022 WL 4913347, at *10 (N.D. Cal. Oct. 3, 2022). Both claims should be dismissed.

*First*, Plaintiffs lacked a reasonable expectation of privacy in the allegedly misappropriated information. "[T]he plaintiff in an invasion of privacy case must have conducted himself or herself in a manner consistent with an actual expectation of privacy." *Hill v. Nat'l Collegiate Athletic Ass'n*, 76 Cal. 4th 1, 26 (1994). But here, Plaintiffs allege that they posted the challenged

information to the open Internet or public, third-party online platforms, defeating their claims. *See* Compl. ¶¶ 21-22, 29-30; *Gonzales v. Uber Techs., Inc.*, 305 F. Supp. 3d 1078, 1091-92 (N.D. Cal. 2018) (dismissing invasion of privacy claim because Lyft drivers lacked reasonable expectation of privacy in their geolocation data and home addresses surreptitiously collected by Uber "spyware," where members of the public (Lyft users) could see the drivers' geolocation data and home addresses); *Heeger v. Facebook, Inc.*, 509 F. Supp. 3d 1182, 1189 (N.D. Cal. 2020) (no reasonable expectation of privacy in IP addresses because each online device has a unique IP address, which Internet users should know is provided when connecting to third-party servers); *Davidson v. Hewlett-Packard Co.*, 2021 WL 4222130, at *6-7 (N.D. Cal. Sept. 16, 2021) (no reasonable expectation of privacy in personal medical information disclosed on blog); *see also McCluskey v. Hendricks*, 2023 WL 3376564, at *2 (9th Cir. May 11, 2023) (affirming dismissal of intrusion claim because plaintiff lacked "justifiable expectation of privacy" in social media posts that were broadly visible and "liked by dozens to hundreds of people"); *Heldt v. Guardian Life Ins. Co. of Am.*, 2019 WL 651503, at *7 (S.D. Cal. Feb. 15, 2019) (dismissing invasion of privacy claim where plaintiff "voluntarily shared the information with his Facebook friends" knowing there was a possibility they could share that information with others).

**Second**, any privacy intrusion was not "highly offensive"—a high bar. *See Low*, 900 F. Supp. 2d at 1025. Courts often dismiss claims where, as here, Plaintiffs fail to identify what specific personal information was allegedly misappropriated. *See, e.g.*, *Hammerling v. Google LLC*, 615 F. Supp. 3d 1069, 1091 (N.D. Cal. 2022) (dismissing both claims where plaintiffs failed to allege that data collected by defendant was "sufficiently specific or personal" as to implicate privacy interests). Plaintiffs instead baldly allege that OpenAI intruded upon their "internet communications" and "other private data." *See* Compl. ¶¶ 436, 446. This pleading deficit requires dismissal. For instance, courts have dismissed claims based on the unauthorized disclosure to third

parties of (1) "unique device identifier information, personal data, and geolocation information," *In re iPhone*, 844 F. Supp. 2d at 1063; or (2) personal identification information ("PII"), *Yunker v. Pandora Media, Inc.*, 2013 WL 1282980, at *14-15 (N.D. Cal. Mar. 26, 2013), *Hammerling*, 615 F. Supp. 3d at 1090-91 (also noting that "[e]ven disclosure of highly sensitive personal information such as social security numbers is not 'highly offensive'"). Here, because Plaintiffs do not allege which personal information was allegedly collected, by definition, they have not alleged the required "highly offensive" intrusion.

### E. Plaintiffs Cannot State a Claim Based on Defendants' Alleged Profiting from Scraping and Interception of Their Data.

#### 1. Larceny and Conversion (Counts 8 & 9)

Plaintiffs allege that OpenAI stole and converted their unspecified personal information, which they claim is their property (Compl. ¶¶ 454-476), giving rise to claims (1) under Penal Code § 496(a) and (c), which create civil liability for any defendant who injures another by obtaining or withholding stolen property; and (2) conversion, which requires a plaintiff's "ownership or right to possession of the property," the "defendant's conversion by a wrongful act," and damages. *See McGowan v. Weinstein*, 505 F. Supp. 3d 1000, 1021 (C.D. Cal. 2020). Both claims fail.

***First***, Plaintiffs' allegations show that the challenged personal information is not "property." A "property" right requires (1) an interest capable of precise definition; (2) a property capable of exclusive possession or control; and (3) the putative owner's legitimate claim to exclusivity. *See In re iPhone*, 844 F. Supp. 2d at 1074. "[A]n individual does not have an inherent property right to publicly available personal information because that information is not, and cannot, be under the user's exclusive control." *United States v. Abouammo*, 2022 WL 17584238, at *12 (N.D. Cal. Dec. 12, 2022).

Thus, courts frequently hold that the "private information" at issue here—like names, contact details, emails, device and browser information, and cookies (Compl. ¶ 16)—are not

capable of exclusive possession or control (the "exclusivity requirement"), so Plaintiffs by definition cannot allege exclusivity. *See, e.g.*, *In re iPhone*, 844 F. Supp. 2d at 1075 (dismissing conversion claim because challenged data types, including user locations, zip codes, and device identifiers, did not satisfy exclusivity requirement); *Yunker*, 2013 WL 1282980, at *16-17 (dismissing conversion claim because age, gender, location, and device identifier data failed exclusivity requirement); *Low*, 900 F. Supp. 2d at 1030-31 (dismissing conversion claim because allegedly intercepted URLs and browsing histories failed exclusivity requirement). Indeed, Plaintiffs allege that they posted their supposedly "private information" to publicly available websites or tendered it to OpenAI or third parties, defeating any argument that their information was under their "exclusive control." *See* Compl. ¶¶ 19-33.

The Complaint cites inapposite caselaw on the "property" issue. For example, *Calhoun v. Google LLC*, 526 F. Supp. 3d 605, 635 (N.D. Cal. 2021) (cited in Compl. ¶ 455) explains that theft of personal information can sometimes result in "lost value"—specifically, the lost "sales value of that information." However, this does not show that the personal information is property where, as here, "plaintiffs do not plausibly allege that they intended to sell their non-disclosed personal information to someone else." *See In re Facebook, Inc., Consumer Priv. User Profile Litig.*, 402 F. Supp. 3d 767, 784 (N.D. Cal. 2019) (Chhabria, J.); *Gardiner v. Walmart, Inc.*, 2021 WL 4992539, at *3 (N.D. Cal. July 28, 2021) ("lost value" not adequately alleged where plaintiff did not "allege that he has been unable to sell, profit from, or monetize his personal information").

***Second***, Plaintiffs cannot allege that their "personal information" was stolen or converted by a wrongful act. Plaintiffs' theory is that OpenAI is liable for theft and conversion because it "stole the contents of the internet" and "wrongfully took" personal information from ChatGPT and ChatGPT API users. *See* Compl. ¶¶ 459, 462; *see also id*. ¶ 474 (relying on same allegations to support conversion claim). Essentially, Plaintiffs take issue with OpenAI copying "personal

information"—either from the Internet or certain AI services. But case law is clear that this alleged conduct, even if true, does not given rise to liability: "Where property is capable of being copied, wrongful possession of copies does not typically give rise to a conversion claim if the rightful owner retains possession of the original or retains access to other copies." *McGowan*, 505 F. Supp. 3d at 1022 (internal quotation marks omitted). So long as "the owner still possesses the property itself, the owner is in no way being deprived of the use of her property." *Id.* (internal quotation marks omitted). Here, Plaintiffs do not and cannot allege that OpenAI is depriving them of the use of their "property"—information that is publicly available and to which Plaintiffs retain access. *See, e.g.*, Compl. ¶¶ 21-25, 29-32 (alleging Plaintiffs posted content and photos and made other "online contributions" to "websites and social media applications"). That OpenAI may have copied certain publicly available information or otherwise nonexclusive information does not give rise to liability under Section 496 or California conversion law.

**Third**, Plaintiffs allege that OpenAI's conduct was "calculated to injure Plaintiffs" (Compl. ¶ 470), but do not allege that they in fact suffered injury or harm, defeating both claims. *See* Section III.C.3, *supra* (no injury or harm); Cal. Penal Code § 496(c) (larceny claim has injury element); *In re iPhone*, 844 F. Supp. 2d at 1074 (conversion claim has damages element).

## 2.      Unjust Enrichment (Count 10)

Unjust enrichment is not a standalone claim under California law. *See Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762 (9th Cir. 2015). Thus, an unjust enrichment claim is construed "as a quasi-contract claim seeking restitution," which requires a plaintiff to plead that a "defendant has been unjustly conferred a benefit through mistake, fraud, coercion, or request." *Id.* (internal quotation marks and citations omitted). But Plaintiffs have alleged no basis for a quasi-contract claim. Their scraping theory does not plead the required "affiliation or connection" with OpenAI to state this claim. *See Sugarfina, Inc. v. Sweet Pete's LLC*, 2017 WL 4271133, at *8

(C.D. Cal. Sept. 25, 2017) (citation omitted). Nor do Plaintiffs offer factual allegations showing how OpenAI's alleged failure to disclose scraping impacted their conduct. *See Rojas-Lozano v. Google, Inc.*, 159 F. Supp. 3d 1101, 1120 (N.D. Cal. 2016) (dismissing quasi-contract claim based on Google's alleged omission regarding reCAPTCHA program where no allegations that the "alleged omission impacted [plaintiff's] conduct in any way"). To the contrary, Plaintiffs allege that OpenAI acted on its own to scrape the "entire Internet." *See* Compl. ¶¶ 26, 33, 71, 74. Such allegations do not state a quasi-contract claim.

Nor do Plaintiffs' interception allegations support a quasi-contract claim, because the "parties have an enforceable agreement regarding a particular subject matter." *See Klein v. Chevron U.S.A., Inc.*, 202 Cal. App. 4th 1342, 1388 (2012). That is, Plaintiffs (as OpenAI users) have consented to OpenAI's Terms, which cover this dispute because they encompass OpenAI's collection, storage, use, and sharing of individuals' data. *See* Compl. ¶¶ 20, 28, 87.

## F. The California Uniform Trade Secrets Act ("CUTSA") Supersedes Claims Premised on Misappropriation of Plaintiffs' Personal Data.

Plaintiffs' UCL, negligence, larceny, conversion, intrusion upon seclusion, and unjust enrichment claims (Counts 4-5, 7-10) (collectively, the "CUTSA Claims") are premised on the allegations that OpenAI "stole[] and misappropriated personal information at scale" and incorporated that information into its products. *See* Compl. ¶¶ 2, 12, 176, 183, 200, 205, 276. Because the gravamen of the CUTSA claims is "misappropriation of confidential information," CUTSA requires their dismissal. *Mattel, Inc. v. MGA Ent., Inc.*, 782 F. Supp. 2d 911, 987 (C.D. Cal. 2011) (CUTSA "supersedes claims based on the misappropriation of confidential information"); *see also Heller v. Cepia, L.L.C.*, 2012 WL 13572, at *7 (N.D. Cal. Jan. 4, 2012) (common law misappropriation, conversion, unjust enrichment, and trespass to chattels claims

superseded by CUTSA when based on non-trade secret "wrongful taking and use of confidential business and proprietary information").[13]

CUTSA's "comprehensive structure and breadth . . . occupies the field in California" and "implicitly preempts alternative civil remedies" based on either trade secrets or "information that, though not a trade secret, was nonetheless of value to the claimant." *K.C. Multimedia, Inc. v. Bank of Am. Tech. & Operations, Inc.*, 171 Cal. App. 4th 939, 954 (2009); *Silvaco Data Sys. v. Intel Corp.*, 184 Cal. App. 4th 210, 239 n.22 (2010); *Mattel*, 782 F. Supp. 2d at 987 ("[C]UTSA supersedes claims based on the misappropriation of personal confidential information, ***whether or not that information meets the statutory definition of a trade secret***." (emphasis added)). Thus, "common law claims premised on the wrongful taking" of non-trade secret information are superseded, "unless the plaintiff identifies some law which confers property rights protecting the information." *Heller*, 2012 WL 13572, at *7. The same is true for unfair competition claims premised on alleged misappropriation. *K.C. Multimedia*, 171 Cal. App. 4th at 961; *see also NetApp, Inc. v. Nimble Storage, Inc.*, 41 F. Supp. 3d 816, 839–40 (N.D. Cal. 2014) (UCL claim based on "misappropriation of proprietary information" superseded by CUTSA).

Each of the CUTSA Claims sound in misappropriation. Plaintiffs' negligence claim challenges that Defendants negligently "collected" information to train their products for commercial benefit. Compl. ¶ 421. The larceny claim alleges that "Defendants stole the contents of the internet" and "took Plaintiffs' [information]" to "maximize their profits and become rich at the expense of Plaintiffs." *Id.* ¶¶ 459, 462, 466. The conversion claim alleges that "Defendants wrongfully exercised control over Plaintiffs' . . . information and have not returned it." *Id.* ¶ 475.

---

[13] By arguing CUTSA supersession, OpenAI does not concede that Plaintiffs' information was private or confidential, especially given that they posted it publicly on the Internet. Rather, because Plaintiffs chose to premise their case on the core theory that OpenAI "use[d] stolen private information" (Compl. ¶ 3), CUTSA applies and precludes them from asserting the CUTSA Claims.

The intrusion upon seclusion claim likewise sounds in theft and conversion—alleging that it is "highly offensive" to intrude on communications because such conduct is akin to "theft," citing "[p]ublic polling" on the importance of "control[ling] one's information," and seeking "disgorgement of profits." *Id.* ¶¶ 448, 452, 453. And the unjust enrichment claim is based on Plaintiffs' "loss of value . . . and the lost profits from the use of their [] information" resulting from the alleged misappropriation. *Id.* ¶ 480. Such claims are superseded by CUTSA. *See, e.g.*, *ATS Prods., Inc. v. Champion Fiberglass, Inc.*, 2015 WL 224815, at *1 (N.D. Cal. Jan. 15, 2015) (larceny claim superseded by CUTSA); *Heller*, 2012 WL 13572, at *7 (conversion and unjust enrichment claims superseded by CUTSA); *Digital Envoy, Inc. v. Google, Inc.*, 370 F. Supp. 2d 1025, 1035 (N.D. Cal. 2005) (unfair competition and unjust enrichment claims superseded by CUTSA).

Further, while Plaintiffs' UCL claim invokes various underlying legal violations, each is premised on the allegation that Defendants "took, accessed, intercepted, tracked, collected, or used" Plaintiffs' information to train their AI products. *See* Compl. ¶¶ 376, 378. Such UCL claims are also superseded by CUTSA. *See K.C. Multimedia*, 171 Cal. App. 4th at 962 (dismissing UCL claim based on alleged misappropriation); *MedImpact Healthcare Sys., Inc. v. IQVIA Inc.*, 2020 WL 5064253, at *20 (S.D. Cal. Aug. 27, 2020) (CUTSA superseded UCL unlawful- and fraud-prong claim based on misappropriation); *Race Winning Brands, Inc. v. Gearhart*, 2023 WL 4681539, at *6 (C.D. Cal. Apr. 21, 2023) (UCL, theft, and conversion claims superseded even to extent they "relate[d] to confidential information that may not be a trade secret").

CUTSA supersession applies to claims based on a defendant's misappropriation of personal information, such as names, phone numbers, and customer preferences. *See, e.g.*, *Farmers Ins. Exch. v. Steele Ins. Agency, Inc.*, 2013 WL 3872950 at *1, *9–10, *14-15 (E.D. Cal. July 25, 2013) (CUTSA superseded allegations of taking of "Confidential Policyholder

Information," including names, addresses, phone numbers, and social security numbers); *New Show Studios LLC v. Needle*, 2014 WL 2988271, at *5, *9–11 (C.D. Cal. June 30, 2014) (CUTSA superseded claims where defendants "accessed a private place" and "publicly disclosed private facts"); *Glam & Glits Nail Design, Inc. v. #NotPolish, Inc.*, 2021 WL 2317410, at *9–11 (S.D. Cal. June 7, 2021) (CUTSA superseded claims arising from customers' "non-public personal cellphone numbers," purchasing history, pricing, and preferences).  The CUTSA claims are thus superseded and should be dismissed.[14]

## IV.    CONCLUSION

For the foregoing reasons, Plaintiffs fail to state a claim against OpenAI.  Because the above-described pleading defects are central to Plaintiffs' theory of the case, they cannot be remedied by amendment and the dismissal should be with prejudice.  *See Cervantes v. Countrywide Home Loans, Inc.*, 656 F.3d 1034, 1041 (9th Cir. 2011) (dismissal without leave to amend proper where "amendment would be futile").


Dated: December 4, 2023                         COOLEY LLP


                                                By: */s/ Matthew D. Brown*
                                                     Matthew D. Brown

                                                Attorneys for Defendants
                                                OPENAI LP, OPENAI INCORPORATED,
                                                OPENAI GP, LLC, OPENAI STARTUP
                                                FUND I, LP, OPENAI STARTUP FUND GP
                                                I, LLC and OPENAI STARTUP FUND
                                                MANAGEMENT LLC

---

[14]  Even if the Court finds that some part of the CUTSA Claims is not premised on a misappropriation theory, each claim should still be dismissed "[t]o the extent Plaintiff[s] [are] relying on the same facts" as a trade secret misappropriation claim.  *Genasys Inc. v. Vector Acoustics, LLC*, 2023 WL 4414222, at *21 (S.D. Cal. July 7, 2023).