COOLEY LLP
MICHAEL G. RHODES (116127) (rhodesmg@cooley.com)
MATTHEW D. BROWN (196972) (mbrown@cooley.com)
BETHANY C. LOBO (248109) (blobo@cooley.com)
HARRISON B. PARK (347839) (hpark@cooley.com)
3 Embarcadero Center, 20th Floor
San Francisco, California 94111-4004
Telephone:  +1 415 693 2000     Facsimile:  +1 415 693 2222

ALEXANDRA R. MAYHUGH (300446) (amayhugh@cooley.com)
MAXIMILIAN SLADEK DE LA CAL (324961) (msladekdelacal@cooley.com)
1333 2nd Street, Suite 400
Santa Monica, California 90401-4100
Telephone:  +1 310 883 6400     Facsimile:  +1 310 883 6500

BARRETT J. ANDERSON (318539) (banderson@cooley.com)
NACHI A. BARU (345978) (nbaru@cooley.com)
10265 Science Center Drive
San Diego, California 92121-1117
Telephone:  +1 858 550-6000     Facsimile:  +1 858 550-6420

Attorneys for Defendants
OPENAI LP, OPENAI INCORPORATED, OPENAI GP, LLC, OPENAI STARTUP FUND I, LP,
OPENAI STARTUP FUND GP I, LLC and OPENAI STARTUP FUND MANAGEMENT LLC

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA - SAN FRANCISCO DIVISION

| | |
|---|---|
| MARILYN COUSART; NICHOLAS GUILAK; PAUL MARTIN; BREONNA ROBERTS; CAROLINA BARCOS; JAIR PAZ; ALESSANDRO DE LA TORRE; VLADISSLAV VASSILEV; SEAN ALEXANDER JOHNSON; JENISE MCNEAL; N.B, a minor; LORENA MARTINEZ; JOHN HAGAN, individually, and on behalf of all others similarly situated, | Case No. 3:23-cv-04557-VC<br><br>**OPENAI DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED CLASS ACTION COMPLAINT**<br><br>Date: April 11, 2024<br>Time: 10:00 a.m.<br>Dept: Courtroom 4, 17th Floor<br>Judge:  Hon. Vince Chhabria |
| Plaintiffs, | |
| v. | Date Action Filed: September 5, 2023<br>Trial Date:  None |
| OPENAI LP, OPENAI INCORPORATED, OPENAI GP, LLC, OPENAI STARTUP FUND I, LP, OPENAI STARTUP FUND GP I, LLC, OPENAI STARTUP FUND MANAGEMENT LLC, MICROSOFT CORPORATION and DOES 1 through 20, inclusive, | |
| Defendants. | |

# TABLE OF CONTENTS

**Page**

NOTICE OF MOTION AND MOTION ..................................................................................1

STATEMENT OF REQUESTED RELIEF ...........................................................................1

MEMORANDUM OF POINTS AND AUTHORITIES .......................................................1

I.     INTRODUCTION ....................................................................................................1

II.    BACKGROUND .......................................................................................................4

III.   ARGUMENT .............................................................................................................6

     A.    The Amended Complaint Violates Rule 8. ...................................................6

     B.    Plaintiffs Have Not Stated a Claim for Relief Based on Data Interception or Access to User Devices. ...............................................................8

          1.    ECPA (Count 1) ................................................................................8

          2.    CIPA (Count 3) ...............................................................................10

          3.    CDAFA (Count 2) ..........................................................................11

     C.    Plaintiffs Cannot State an Unfair Competition, Consumer Protection, or Negligence Claim Based on Data Scraping or Interception. ............................13

          1.    UCL (Count 4) ................................................................................13

          2.    Illinois Claims (Counts 5-7) ..........................................................17

              a.    Choice-of-Law ....................................................................17

              b.    Extraterritoriality ...............................................................20

              c.    Illinois Claim-Specific Bases for Dismissal .....................20

                  (1)    BIPA (Count 5) .....................................................20

                  (2)    ICFA (Count 6) .....................................................22

                  (3)    IUDTPA (Count 7) ...............................................24

           3.    Negligence (Count 8) .....................................................................25

     D.    Plaintiffs Have Not Stated a Claim for Invasion of Privacy (Count 9). ............27

     E.    Plaintiffs Cannot State a Claim Based on Defendants' Alleged Profiting from Scraping and Interception of Their Data. ..........................................30

          1.    Conversion (Count 10) ...................................................................30

          2.    Unjust Enrichment (Count 11) .......................................................32

     F.    The California Uniform Trade Secrets Act ("CUTSA") Supersedes Claims Premised on Misappropriation of Plaintiffs' Personal Data. ...........................33

IV.   CONCLUSION.......................................................................................................35

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aguilar v. Hartford Accident & Indem. Co.*,
  2019 WL 2912861 (C.D. Cal. Mar. 13, 2019)........................................................................27

*Aleksick v. 7-Eleven, Inc.*,
  205 Cal. App. 4th 1176 (2012) ............................................................................................14

*Antoine v. Berkshire Hathaway Guard Ins.*,
  2023 U.S. Dist. LEXIS 13087 (C.D. Cal. Jan. 25, 2023) ......................................................16

*Archer v. United Rentals, Inc.*,
  195 Cal. App. 4th 807 (2011) ..............................................................................................13

*Archey v. Osmose Utils. Servs., Inc.*,
  2022 WL 3543469 (N.D. Ill. Aug. 18, 2022) ........................................................................20

*Astiana v. Hain Celestial Grp., Inc.*,
  783 F.3d 753 (9th Cir. 2015) ...............................................................................................32

*Barnett v. Apple Inc.*,
  2022 IL App (1st) 220187 (Ill. App. Ct. Dec. 23, 2022) ........................................................21

*Brodsky v. Apple Inc.*,
  445 F. Supp. 3d 110 (N.D. Cal. 2020)..................................................................................10

*Cafasso v. Gen. Dynamics C4 Sys., Inc.*,
  637 F.3d 1047 (9th Cir. 2011) ...............................................................................................8

*Calhoun v. Google LLC*,
  526 F. Supp. 3d 605 (N.D. Cal. 2021)..................................................................................31

*Callaway Golf Co. v. Dunlop Slazenger Grp. Ams., Inc.*,
  318 F. Supp. 2d 216 (D. Del. 2004)......................................................................................34

*Campbell v. Facebook Inc.*,
  77 F. Supp. 3d 836 (N.D. Cal. 2014) ....................................................................................11

*Cappello v. Walmart, Inc.*,
  2019 WL 11687705 (N.D. Cal. Apr. 5, 2019) ........................................................................13

*Carpenter v. McDonald's Corp.*,
  580 F. Supp. 3d 512 (N.D. Ill. Jan. 13, 2022) .......................................................................21

**TABLE OF AUTHORITIES**
**(continued)**

**Page(s)**

*Cervantes v. Countrywide Home Loans, Inc.*,
  656 F.3d 1034 (9th Cir. 2011) ........................................................................35

*Chabraja v. Avis Rent A Car Sys., Inc.*,
  192 Ill. App. 3d 1074 (Ill. App. Ct. 1989) ......................................................24

*Clarke v. Aveda Corp.*,
  2023 WL 9119927 (N.D. Ill. Dec. 1, 2023) .....................................................22

*Cottle v. Plaid Inc.*,
  536 F. Supp. 3d 461 (N.D. Cal. 2021) ......................................................12, 13

*Davidson v. Hewlett-Packard Co.*,
  2021 WL 4222130 (N.D. Cal. Sept. 16, 2021) ................................................28

*Davis v. G.N. Mortg. Corp.*,
  396 F.3d 869 (7th Cir. 2005) ...........................................................................23

*Davis v. RiverSource Life Ins. Co.*,
  240 F. Supp. 3d 1011 (N.D. Cal. 2017) ...........................................................13

*Devore v. H&R Block Tax Servs. LLC*,
  2018 WL 1942384 (C.D. Cal. Mar. 29, 2018) .................................................15

*Digital Envoy, Inc. v. Google, Inc.*,
  370 F. Supp. 2d 1025 (N.D. Cal. 2005) ...........................................................34

*Dohrmann v. Intuit Inc.*,
  823 F. App'x 482 (9th Cir. 2020) ....................................................................18

*In re Facebook Biometric Information Privacy Litigation*,
  185 F. Supp. 3d 1155 (N.D. Cal. 2016) ...........................................................19

*In re Facebook, Inc., Consumer Priv. User Profile Litig.*,
  402 F. Supp. 3d 767 (N.D. Cal. 2019) ......................................................29, 31

*In re Facebook, Inc. Internet Tracking Litigation*,
  956 F.3d 589 (9th Cir. 2020) ...........................................................................31

*Farmers Ins. Exch. v. Steele Ins. Agency, Inc.*,
  2013 WL 3872950 (E.D. Cal. July 25, 2013) ..................................................35

## TABLE OF AUTHORITIES
### (continued)

**Page(s)**

*Fox v. Iowa Health Sys.*,
399 F. Supp. 3d 780 (W.D. Wis. 2019) .................................................................24

*Gardiner v. Walmart, Inc.*,
2021 WL 4992539 (N.D. Cal. July 28, 2021) ..............................................14, 31

*Genasys Inc. v. Vector Acoustics, LLC*,
2023 WL 4414222 (S.D. Cal. July 7, 2023) .........................................................35

*Glam & Glits Nail Design, Inc. v. #NotPolish, Inc.*,
2021 WL 2317410 (S.D. Cal. June 7, 2021) ........................................................35

*Gonzales v. Uber Techs., Inc.*,
305 F. Supp. 3d 1078 (N.D. Cal. 2018)................................................................28

*Graham v. Noom, Inc.*,
2021 WL 3602215 (N.D. Cal. Aug. 13, 2021) .....................................................11

*Graham v. Noom, Inc.*,
533 F. Supp. 3d 823 (N.D. Cal. 2021)..................................................................10

*Green Desert Oil Grp. v. BP W. Coast Prods.*,
2011 WL 5521005 (N.D. Cal. Nov. 14, 2011), *aff'd*, 571 F. App'x 633 (9th Cir. 2014) .......25

*Hadley v. Kellogg Sales Co.*,
243 F. Supp. 3d 1074 (N.D. Cal. 2017).................................................................17

*Hall v. SeaWorld Ent., Inc.*,
2015 WL 9659911 (S.D. Cal. Dec. 23, 2015) ......................................................16

*Hall v. SeaWorld Ent., Inc.*,
747 F. App'x 449 (9th Cir. 2018) .........................................................................15

*Hammerling v. Google LLC*,
615 F. Supp. 3d 1069 (N.D. Cal. 2022)..........................................................29, 30

*Heeger v. Facebook, Inc.*,
509 F. Supp. 3d 1182 (N.D. Cal. 2020).................................................................29

*Heiting v. Taro Pharms. USA, Inc.*,
2023 WL 9319049 (C.D. Cal. Dec. 26, 2023)................................................11, 12

# TABLE OF AUTHORITIES
**(continued)**

**Page(s)**

*Heldt v. Guardian Life Ins. Co. of Am.*,
2019 WL 651503 (S.D. Cal. Feb. 15, 2019) ........................................................................ 29

*Heller v. Cepia, L.L.C.*,
2012 WL 13572 (N.D. Cal. Jan. 4, 2012) ...................................................................... 33, 34

*Hill v. Nat'l Collegiate Athletic Ass'n*,
7 Cal. 4th 1 (1994) ............................................................................................................. 28

*Hodges v. Apple Inc.*,
2013 WL 4393545 (N.D. Cal. Aug. 12, 2013) ................................................................... 16

*Hodsdon v. Mars, Inc.*,
891 F.3d 857 (9th Cir. 2018) .............................................................................................. 16

*Holmes v. Johnson & Johnson*,
617 F. App'x 639 (9th Cir. 2015) ....................................................................................... 17

*Int'l Equip. Trading, Ltd. v. Illumina, Inc.*,
312 F. Supp. 3d 725 (N.D. Ill. 2018) .................................................................................. 20

*In re iPhone Application Litig.*,
844 F. Supp. 2d 1040 (N.D. Cal. 2012) .............................................................. 26, 30, 31, 32

*J'Aire Corp. v. Gregory*,
24 Cal. 3d 799 (1979) ......................................................................................................... 26

*Johnson v. Maker Ecosystem Growth Holdings, Inc.*,
2023 WL 2191214 (N.D. Cal. Feb. 22, 2023) .................................................................... 25

*Jones v. Microsoft Corp.*,
649 F. Supp. 3d 679 (N.D. Ill. 2023) .................................................................................. 21

*K.C. Multimedia, Inc. v. Bank of Am. Tech. & Operations, Inc.*,
171 Cal. App. 4th 939 (2009) ......................................................................................... 33, 34

*Kadrey v. Meta Platforms, Inc.*,
2023 WL 8039640 (N.D. Cal. Nov. 20, 2023) ................................................................... 27

*Kalitta Air, L.L.C. v. Cent. Tex. Airborne Sys., Inc.*,
315 F. App'x 603 (9th Cir. 2008) ....................................................................................... 27

**TABLE OF AUTHORITIES**
**(continued)**

**Page(s)**

*Katz-Lacabe v. Oracle America, Inc.*,
    2023 WL 2838118 (N.D. Cal. Apr. 6, 2023) ..................................................8, 9, 13

*Kearns v. Ford Motor Co.*,
    567 F.3d 1120 (9th Cir. 2009) ..................................................................13, 16

*Klein v. Chevron U.S.A., Inc.*,
    202 Cal. App. 4th 1342 (2012) ...........................................................................33

*Knuttel v. Omaze, Inc.*,
    2022 WL 1843138 (C.D. Cal. Feb. 22, 2022) .......................................................17

*Konop v. Hawaiian Airlines, Inc.*,
    302 F.3d 868 (9th Cir. 2002) ...............................................................................9

*Korea Supply Co. v. Lockheed Martin Corp.*,
    29 Cal. 4th 1134 (2003) .....................................................................................14

*Lee v. Ticketmaster L.L.C.*,
    817 F. App'x 393 (9th Cir. 2020) ........................................................................18

*Low v. LinkedIn Corp.*,
    900 F. Supp. 2d 1010 (N.D. Cal. 2012)..............................................26, 27, 29, 31

*Magnuson v. Window Rock Residential Recovery Fund, L.P.*,
    2023 WL 8090727 (N.D. Ill. Nov. 21, 2023) .......................................................24

*Marolda v. Symantec Corp.*,
    672 F. Supp. 2d 992 (N.D. Cal. 2009) .................................................................16

*Martin v. Sephora USA, Inc.*,
    2023 WL 2717636 (E.D. Cal. Mar. 30, 2023).......................................7, 10, 11, 26

*Mattel, Inc. v. MGA Ent., Inc.*,
    782 F. Supp. 2d 911 (C.D. Cal. 2011) ............................................................33, 34

*McClung v. AddShopper, Inc.*,
    2024 WL 189006 (N.D. Cal. Jan. 17, 2024).........................................................31

*McCluskey v. Hendricks*,
    2023 WL 3376564 (9th Cir. May 11, 2023)..........................................................28

## TABLE OF AUTHORITIES
### (continued)

**Page(s)**

*McGoveran v. Amazon Web Servs., Inc.*,
  2021 WL 4502089 (D. Del. Sept. 30, 2021) ..........................................................................20

*McGowan v. Weinstein*,
  505 F. Supp. 3d 1000 (C.D. Cal. 2020) ...........................................................................30, 32

*McHenry v. Renne*,
  84 F.3d 1172 (9th Cir. 1996) ..............................................................................................8

*MedImpact Healthcare Sys., Inc. v. IQVIA Inc.*,
  2020 WL 5064253 (S.D. Cal. Aug. 27, 2020) .....................................................................34

*Meta Platforms, Inc. v. BrandTotal Ltd.*,
  605 F. Supp. 3d 1218 (N.D. Cal. 2022) ...............................................................................12

*Morris v. Harvey Cycle & Camper, Inc.*,
  392 Ill. App. 3d 399 (Ill. App. Ct. 2009) .............................................................................23

*NetApp, Inc. v. Nimble Storage, Inc.*,
  41 F. Supp. 3d 816 (N.D. Cal. 2014) ...................................................................................34

*New Show Studios LLC v. Needle*,
  2014 WL 2988271 (C.D. Cal. June 30, 2014) ......................................................................35

*In re Nexus 6P Prods. Liab. Litig.*,
  293 F. Supp. 3d 888 (N.D. Cal. 2018) .................................................................................18

*Nowak v. Xapo, Inc.*,
  2020 WL 6822888 (N.D. Cal. Nov. 20, 2020) .......................................................................8

*O'Keefe v. Walgreens Boots All., Inc.*,
  172 N.E.3d 1159 (Ill. App. Ct. 2020) ..................................................................................23

*Oberstein v. Live Nation Ent., Inc.*,
  60 F.4th 505 (9th Cir. 2023) ...............................................................................................18

*P.M., et al. v. OpenAI LP, et al.*,
  No. 3:23-cv-03199 ................................................................................................................6

*Pena v. GameStop, Inc.*,
  2023 WL 3170047 (S.D. Cal. Apr. 27, 2023) ......................................................................10

**OPENAI'S MOTION TO DISMISS**
                                                    **3:23-CV-04557-VC**

## TABLE OF AUTHORITIES
### (continued)

**Page(s)**

*Perdue v. Hy-Vee, Inc.*,
  455 F. Supp. 3d 749 (C.D. Ill. 2020) ........................................................................24

*Petta v. Christie Bus. Holding Co., P.C.*,
  2023 IL App (5th) 220742 (Ill. App. Ct. 2023) .......................................................23

*Pratt v. Higgins*,
  2023 WL 4564551 (N.D. Cal. July 17, 2023) ....................................................12, 13

*Quigley v. Yelp, Inc.*,
  2018 WL 7204066 (N.D. Cal. Jan. 22, 2018) ...........................................................10

*Race Winning Brands, Inc. v. Gearhart*,
  2023 WL 4681539 (C.D. Cal. Apr. 21, 2023) ...........................................................35

*Revitch v. New Moosejaw, LLC*,
  2019 WL 5485330 (N.D. Cal. Oct. 23, 2019) ...........................................................11

*Riley v. California*,
  573 U.S. 373 (2014)...................................................................................................28

*Rojas-Lozano v. Google, Inc.*,
  159 F. Supp. 3d 1101 (N.D. Cal. 2016)....................................................................32

*S. Cal. Gas Leak Cases*, 7 Cal. 5th 391 (2019) ...........................................................25, 26

*Sateriale v. R.J. Reynolds Tobacco Co.*,
  697 F.3d 777 (9th Cir. 2012) ....................................................................................16

*Schwebe v. AGC Flat Glass N. Am., Inc.*,
  2013 WL 2151551 (N.D. Ill. May 16, 2013)............................................................24

*Shroyer v. New Cingular Wireless Servs., Inc.*,
  622 F.3d 1035 (9th Cir. 2010) ..................................................................................15

*Silvaco Data Sys. v. Intel Corp.*,
  184 Cal. App. 4th 210 (2010) ...................................................................................34

*Silver v. Stripe Inc.*,
  2021 WL 3191752 (N.D. Cal. July 28, 2021) ...........................................................14

*Silvercrest Realty, Inc. v. Great Am. E&S Ins. Co.*,
  2012 WL 13028094 (C.D. Cal. Apr. 4, 2012) ..........................................................14

# TABLE OF AUTHORITIES
## (continued)

**Page(s)**

*Smith v. Am. Arb. Ass'n, Inc.*,
   233 F.3d 502 (7th Cir. 2000) ...................................................................24

*Smith v. Maryland*,
   442 U.S. 735 (1979).................................................................................27

*In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*,
   903 F. Supp. 2d 942 (S.D. Cal. 2012).....................................................27

*Stauffer v. Innovative Heights Fairview Heights, LLC*,
   2022 WL 3139507 (S.D. Ill. Aug. 5, 2022) .............................................21

*Sugarfina, Inc. v. Sweet Pete's LLC*,
   2017 WL 4271133 (C.D. Cal. Sept. 25, 2017) .........................................32

*Tara Brands LLC v. Vaimo, Inc.*,
   2022 WL 704811 (N.D. Ill. Mar. 9, 2022) ...............................................22

*Thakkar v. ProctorU, Inc.*,
   642 F. Supp. 3d 1304 (N.D. Ala. 2022)...................................................19

*Trump v. Twitter Inc.*,
   602 F. Supp. 3d 1213 (N.D. Cal. 2022)...................................................18

*U.S. Department of Justice v. Reporters Committee for Freedom of the Press*,
   489 U.S. 749 (1989).................................................................................28

*United States v. Abouammo*,
   2022 WL 17584238 (N.D. Cal. Dec. 12, 2022)........................................31

*Varnado v. Midland Funding LLC*,
   43 F. Supp. 3d 985 (N.D. Cal. 2014).......................................................27

*Vassigh v. Bai Brands LLC*,
   2015 WL 4238886 (N.D. Cal. July 13, 2015) ..........................................16

*In re Vizio, Inc., Consumer Priv. Litig.*,
   238 F. Supp. 3d 1204 (C.D. Cal. 2017)......................................................9

*Wash. Mut. Bank, FA v. Super. Ct.*,
   24 Cal. 4th 906 (2001).............................................................................18

## TABLE OF AUTHORITIES
### (continued)

**Page(s)**

*West v. City & Cnty. of San Francisco*,
2022 WL 1556415 (N.D. Cal. May 17, 2022)................................................................26

*White v. Davis*,
13 Cal. 3d 757 (1975) ..................................................................................................28

*World Kitchen, LLC v. Am. Ceramic Soc'y*,
2016 WL 3568723 (N.D. Ill. June 30, 2016)................................................................24

*Young v. Facebook, Inc.*,
790 F. Supp. 2d 1110 (N.D. Cal. 2011)........................................................................25

*Yumul v. Smart Balance, Inc.*,
733 F. Supp. 2d 1117 (C.D. Cal. 2010) .......................................................................16

*Yunker v. Pandora Media, Inc.*,
2013 WL 1282980 (N.D. Cal. Mar. 26, 2013) .......................................................30, 31

**Statutes**

740 ILCS
14/10 .............................................................................................................................21
14/15 .......................................................................................................................20, 21

815 ILCS
505/1 .............................................................................................................................22

Cal. Bus. & Prof. Code
§ 17204 .........................................................................................................................13
§ 22575 .........................................................................................................................15

Cal. Civ. Code
§ 1798.99.80 .................................................................................................................15
§ 1798.100 ....................................................................................................................19
§ 1798.105 ....................................................................................................................19
§ 1798.121 ....................................................................................................................19
§ 1798.140 ...............................................................................................................15, 19
§ 1798.150 ...............................................................................................................14, 19
§ 1798.155 ....................................................................................................................19

Cal. Penal Code
§ 502 .................................................................................................................11, 12, 13

# TABLE OF AUTHORITIES
## (continued)

**Page(s)**

California Consumer Privacy Act..................................................................................14, 19

California Online Privacy Protection Act.....................................................................14, 15

California Privacy Rights Act.............................................................................................19

California Unfair Competition Law...............................................................................*passim*

California Uniform Trade Secrets Act.....................................................................4, 33, 34, 35

Computer Data Access and Fraud Act..........................................................................*passim*

Electronic Communications Privacy Act......................................................................*passim*

Illinois Biometric Information Privacy Act..................................................................*passim*

Illinois Consumer Fraud and Deceptive Business Practices Act..................................*passim*

Illinois Uniform Deceptive Trade Practices Act ..........................................................*passim*

## Other Authorities

*35 Ways Real People Are Using A.I. Right Now*, N.Y. Times (Apr. 14, 2023) ............................1

Andrew Chow, *Why Bill Gates Believes Generative AI Will Be 'Revolutionary,'* Time
(Mar. 21, 2023)..................................................................................................................1

Federal Rules of Civil Procedure
  8 ...................................................................................................................................*passim*
  8(a)(2) .................................................................................................................................6
  8(d)(1)..................................................................................................................................6
  9(b)...................................................................................................................16, 17, 22, 24
  12(b)(6) ..........................................................................................................................1, 3

## NOTICE OF MOTION AND MOTION

**PLEASE TAKE NOTICE** that on April 11, 2024 at 10:00 a.m., before the Honorable Vince Chhabria, the OpenAI Defendants ("OpenAI")[1] will, and hereby do, move this Court for an order dismissing Plaintiffs' First Amended Class Action Complaint ("Amended Complaint") pursuant to Federal Rules of Civil Procedure 8 and 12(b)(6).

## STATEMENT OF REQUESTED RELIEF

OpenAI respectfully requests that the Court dismiss the Amended Complaint in full and with prejudice for failure to meet the minimum pleading standards of Rule 8 and failure to state a claim upon which relief can be granted under Rule 12(b)(6).

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.      INTRODUCTION

OpenAI's mission is to ensure that generative artificial intelligence ("AI") benefits humanity through safe and responsible development of AI technology.  OpenAI technologies do not target users for advertising or marketing, and intentionally focus on protecting individuals' consumer and privacy rights. OpenAI's products are already providing benefits to society, such as combating fraud, providing language translations, facilitating scientific research, helping with transcriptions, and assisting with everyday tasks.[2] As Plaintiffs themselves allege, OpenAI's products "have the potential to do much good in the world, like aiding life-saving scientific research and ushering in discoveries that can improve the lives of everyday Americans."  A.C. ¶ 5; *see also* Andrew Chow, *Why Bill Gates Believes Generative AI Will Be 'Revolutionary,'* Time (Mar. 21, 2023),  https://time.com/6264801/bill-gates-ai  (forecasting that

---

[1] The OpenAI Defendants are OpenAI OpCo, LLC, OpenAI Incorporated, OpenAI GP, LLC, OpenAI Startup Fund I, LP, OpenAI Startup Fund GP I, LLC, and OpenAI Startup Fund Management LLC. Defendant OpenAI OpCo, LLC has changed its name from Defendant OpenAI LP.

[2] *35 Ways Real People Are Using A.I. Right Now*, N.Y. Times (Apr. 14, 2023), https://www.nytimes.com/interactive/2023/04/14/upshot/up-ai-uses.html.

technologies like OpenAI's may help to remedy "some of the world's worst inequities," from unequal access to health care, to global educational disparities and beyond).

OpenAI offers its most popular AI service, ChatGPT, at no cost and ad-free.  ChatGPT is an online chat interface that allows users to interact with AI models in a conversational manner by generating text responses to user queries.  It was released to the public on November 30, 2022 as a free research preview based on a large language model ("LLM") called GPT-3.5.[3]  Just like someone who reads a book and then disposes of it, or a person who learns how to play tennis from a tennis coach and then plays without the coach's assistance, LLMs—like the LLM powering ChatGPT—"learn" language through exposure (called "training") to large amounts of text from primarily public sources.  Once trained on sufficiently large volumes of data, LLMs develop the ability to use the building blocks of language (called "tokens") to provide text outputs in response to user queries, with the potentially extraordinary benefits to society described above.

Plaintiffs are individuals who claim to use OpenAI services and "engage[] with a variety of websites and social media platforms."  A.C. ¶¶ 30-31; *see also id.* ¶¶ 19-135 (describing Plaintiffs' purported engagement).  Their Amended Complaint speculates that generative AI technology writ large will wreak apocalyptic harm, from allegedly mutating malware to autonomous weapons to civilizational collapse.  Much of the 198-page Amended Complaint is untethered to any legal theory—or even to OpenAI's products—rendering Plaintiffs' actual legal theories difficult to discern.  However, they appear to allege that OpenAI misappropriated their personal information and used it to train AI products, including ChatGPT, through two primary means: (1) "scraping" publicly available information from the Internet; and (2) "intercepting" user data through ChatGPT and the ChatGPT API that OpenAI makes

---

[3] OpenAI has since released ChatGPT Plus (offering additional features and functions), and ChatGPT Enterprise (for businesses).  OpenAI also offers an Application Programming Interface ("API") for developers to integrate the capabilities and benefits of OpenAI's models into their own websites and applications.

available to third-party developers.

Despite (indeed, because of) the Amended Complaint's verbosity, it violates Rule 8 by failing to plead even the most basic facts of Plaintiffs' claims, including what personal information (if any) was allegedly misappropriated, and by improperly relying upon group pleading.  And while Plaintiffs contest OpenAI's purported use of data allegedly acquired through ChatGPT, they acknowledge that OpenAI's Terms of Use ("Terms") disclose its data use practices ***and*** allow users options to opt out of training when using ChatGPT (an opt-out feature that no Plaintiff alleges they used).

Plaintiffs' efforts to conjure a bespoke misappropriation theory based on OpenAI's alleged use of publicly available online information and user data fails under both Federal Rules of Civil Procedure 8 and 12(b)(6).  Further, Plaintiffs' novel theory that companies cannot use publicly available online information, or information provided by their own users, to train and improve their products is legally baseless, and none of the 11 asserted claims provide a remedy for such conduct.  Thus, each of Plaintiffs' claims must be dismissed:

**Wiretapping**.  Plaintiffs allege violations of federal and California wiretapping law, but fail to allege the required interception.  Even had done so, their federal claim would still fail because at least one party to each allegedly intercepted communication (OpenAI, Microsoft, or a third-party developer) consented to the interception.

**California Comprehensive Computer Data Access and Fraud Act ("CDAFA")**.  Plaintiffs cannot recover under the CDAFA for OpenAI's alleged misappropriation of their data because they fail to allege OpenAI "accessed" their computers, as required, and they fail to plead any CDAFA loss, such as the costs of investigating and remediating hacking.

**California Unfair Competition Law ("UCL")**.  Plaintiffs' UCL claim fails because they have not alleged the lost money or property required for statutory standing, or that OpenAI engaged in any unlawful, unfair, or fraudulent conduct.

**Illinois Claims**.  The Illinois state statutory claims asserted by Plaintiff Breonna Roberts—the only alleged Illinois resident—are foreclosed by the California choice-of-law clause in OpenAI's Terms and because they do not apply extraterritorially to conduct outside Illinois.  Even if Illinois law did apply, her claims fail because she has not alleged the required elements of each statute.

**Negligence**.  Plaintiffs' negligence claim fails because they have not alleged either a cognizable duty or damages.

**Privacy**.  Plaintiffs' invasion of privacy claim fails because they have not identified the supposedly private information at issue, instead admitting that the allegedly misappropriated information was publicly available.  As such, they cannot allege either a reasonable expectation of privacy or the egregious breach of social norms, as required to state the claim.

**Conversion**.  Plaintiffs' conversion claim fails because they lack the required property interest in their personal information and have not pled that their personal information was converted by a wrongful act that caused them harm.

**Unjust Enrichment**.  Plaintiffs' unjust enrichment claim fails because they do not allege facts supporting recovery in quasi-contract.

**Supersession**.  Finally, Plaintiffs' UCL, negligence, conversion, and unjust enrichment claims are superseded by the California Uniform Trade Secrets Act because they are premised on the misappropriation of confidential information.

The Amended Complaint should be dismissed in full and with prejudice.

## II.    BACKGROUND

Plaintiffs speculate that OpenAI collected their "personal data" from publicly available "online applications and platforms" to train its products.  *See* A.C. ¶¶ 26, 37, 49, 58, 68, 78, 88, 97, 104, 110, 118,

125, 133.  Plaintiffs have sued six OpenAI entities[4] and Microsoft (together, "Defendants"), alleging that the latter is OpenAI's "largest investor and largest service provider," and "exerts considerable control" over OpenAI.  *Id.* ¶ 144.  The Amended Complaint reads more as an anti-AI polemic than a distillation of Plaintiffs' claims against Defendants, analogizing generative AI to nuclear warfare and alleging that it may prompt a "civilizational collapse" and elimination of the "human species."  *Id.* ¶¶ 2, 9, 11.

As a result, Plaintiffs' actual claims are unclear.  But they appear to speculate that Defendants collected their personal information for use in developing AI services, including ChatGPT.  They challenge Defendants' use of two alleged data sources: (1) scraping publicly available data from "the entire internet"; and (2) intercepting data from Defendants' AI services.  *See id.* ¶¶ 16, 184, 376, 453.  Yet the Amended Complaint does not identify ***any*** of Plaintiffs' personal information that Defendants allegedly collected or used, and the Amended Complaint makes clear that Plaintiffs simply guess that OpenAI collected their data.  *See, e.g.*, *id.* ¶ 18 (seeking as relief information about the source of OAI's data collection, "including where and from whom").

Plaintiffs assert four categories of claims.  First, they allege that Defendants intercept data and wrongfully access user devices in violation of wiretapping laws—the Electronic Communications Privacy Act ("ECPA") and the California Invasion of Privacy Act ("CIPA")—and the CDAFA (Counts 1-3).  Second, they allege that Defendants have violated California and Illinois consumer protection and unfair competition law (Counts 4-7) and acted negligently (Count 8) in scraping and intercepting Plaintiffs' data.  Third, they allege that Defendants' conduct violated their reasonable expectation of privacy in their data, giving rise to liability for invasion of privacy (Count 9).  And finally, they allege that Defendants have improperly profited from scraping and intercepting Plaintiffs' data, rendering Defendants liable for

---

[4] The Amended Complaint names six OpenAI entities as Defendants, but it does not explain whether and how each entity participated in the alleged conduct apart from boilerplate allegations concerning "control" and supposed "aware[ness]."  A.C. ¶¶ 136-141.

conversion and unjust enrichment (Counts 10-11).

This is Plaintiffs' third attempt to plead their claims. On June 28, 2023, their counsel, the Clarkson Law Firm, filed a class action complaint, *P.M., et al. v. OpenAI LP, et al.*, No. 3:23-cv-03199, which was assigned to Judge Trina Thompson. On September 5, 2023, this action was filed by Morgan & Morgan. ECF No. 1. This action presented 11 of the same putative claims as *P.M.*, and the two complaints contained large swaths of identical allegations. *See* Declaration of Bethany C. Lobo ("Lobo Decl.") ¶ 3.[5] On September 14, 2023, this action was assigned to Judge Vince Chhabria. ECF No. 12. One day later, the Clarkson Law Firm voluntarily dismissed *P.M.* Lobo Decl. ¶ 5. On December 4, 2023, OpenAI and Microsoft filed separate motions to dismiss. ECF Nos. 39-41. Plaintiffs filed an Amended Complaint rather than oppose the motions. ECF No. 45. Revealingly, both the Clarkson Law Firm and Morgan & Morgan now appear on the Amended Complaint as Plaintiffs' counsel, and the Amended Complaint includes five plaintiffs originally named in the voluntarily dismissed *P.M.* Action. Lobo Decl. ¶ 6.

## III.   ARGUMENT

### A.   The Amended Complaint Violates Rule 8.

The Amended Complaint—which spans ***198 pages*** and includes ***399 footnotes***, most referencing third-party commentary on AI—still fails to meet Rule 8's pleading requirements. *See* Fed. R. Civ. P. 8(a)(2), 8(d)(1) (requiring allegations to be "simple, concise, and direct"). The hundreds of paragraphs added to the Complaint only further obfuscate OpenAI's supposed privacy violations.

Specifically, Plaintiffs fail to plead (1) the specific "personal information" that OpenAI allegedly scraped or intercepted; (2) when and how OpenAI acquired their data; (3) whether OpenAI disclosed their data to any third parties (and if so, which ones); and (4) how their privacy rights were violated by OpenAI's alleged acquisition of data that they publicly posted on the Internet. Indeed, they appear to not even know

---

[5] Despite the overlapping allegations, none of the plaintiffs filed the required Notice of Related Cases under Civil L.R. 3-12.

what non-public personal information of theirs (if any) OpenAI allegedly misused. *See* Section II, *supra*. Instead, the Amended Complaint broadly alleges that OpenAI "scraped" and "stole" the contents of "nearly the entire internet" (*see* A.C. ¶¶ 647(a)), and that "all" of the named Plaintiffs' "information and data" from "various websites" and "across wide swath[s] of online applications" were used to train OpenAI's models (*see, e.g.*, A.C. ¶¶ 21, 37, 49, 54, 68, 78, 88, 97). Such generic allegations are insufficient to maintain a claim. *See Martin v. Sephora USA, Inc.*, 2023 WL 2717636, at *6 (E.D. Cal. Mar. 30, 2023) (dismissing under Rule 8 where plaintiff alleged interception of personal information "sometime 'within the past year'" and speculated that there were "thousands" of class members "with innumerable visits to Defendant's website 'within the past year'"), *report and recommendation adopted*, 2023 WL 3061957 (E.D. Cal. Apr. 24, 2023).[6]

Plaintiffs include numerous "Factual Background" allegations that read as a policy screed without any connection to their 11 claims. For instance, the Amended Complaint includes 20 pages of allegations regarding the "existential threat" posed by AI technology writ large. A.C. ¶¶ 275-358 (alleging that AI technology will "start[] world wars with disinformation and the unchecked capacity for autonomous weaponry" and expressing concern that "world powers currently leveraging AI" risk causing "irreversible damage to humanity and society"). The Amended Complaint also adds voluminous allegations about intellectual property rights that are irrelevant to Plaintiffs' privacy claims. *See* A.C. ¶¶ 359-368 (collecting examples of online "Outrage[]" in the "Copyright Space" as to "AI Development Writ Large").[7]

---

[6] The Amended Complaint's generic nature is further revealed by its allegation that non-party Google was the wrongdoer. *See* A.C. ¶ 606 (alleging "***Google's*** deliberate and admittedly purposeful scheme" facilitated interception of Plaintiffs' communications) (emphasis added). Notably, this allegation remains unchanged from Plaintiffs' original complaint, even after OpenAI flagged this error in its prior motion to dismiss. *See* Compl. ¶ 335.

[7] The Amended Complaint cites dozens of online articles and commentary in nearly 400 footnotes, most of which are unconnected to Plaintiffs' claims and many of which pre-date OpenAI's public release of ChatGPT. *See, e.g.*, A.C. ¶ 317 n.196 (summarizing 2018 article on "Cambridge Analytica Scandal" concerning targeted advertising of Facebook users); *id.* ¶ 331 nn. 221, 223 (citing articles about "ransomware attacks" on healthcare providers prior to ChatGPT's release).

Finally, the Amended Complaint improperly fails to distinguish between "Defendants," relying on group pleading against Microsoft and six separate OpenAI entities and referring generally to "Defendants' conduct" on **29** separate occasions.  *See, e.g.*, A.C. ¶¶ 149, 338, 461, 648, 453 (p. 188), 730; *Nowak v. Xapo, Inc.*, 2020 WL 6822888, at *2 (N.D. Cal. Nov. 20, 2020) (dismissing complaint that "lump[ed] together defendants . . . without distinguishing what each entity did").[8]

Thus, the Amended Complaint should be dismissed under Rule 8 for failing to identify the factual bases clearly and concisely for Plaintiffs' allegations against the OpenAI Defendants, while containing voluminous "irrelevant facts, political argument, and legal argument."  *McHenry v. Renne*, 84 F.3d 1172, 1174, 1178-80 (9th Cir. 1996) (complaint violates Rule 8 by including these items rather than "short and plain" statement of claims); *see Cafasso v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1058-59 (9th Cir. 2011) (collecting Ninth Circuit cases upholding Rule 8 dismissals).[9]

**B.     Plaintiffs Have Not Stated a Claim for Relief Based on Data Interception or Access to User Devices.**

**1.     ECPA (Count 1)**

Plaintiffs allege ECPA violations based on (1) ***Defendants'*** interception of communications on third-party platforms integrating the ChatGPT API (A.C. ¶¶ 567-576, 614-622); (2) ***Microsoft's*** interception of user communications with ChatGPT (*id*. ¶¶ 577-586, 623-633); and (3) ***OpenAI's*** interception of communications on Microsoft platforms integrating ChatGPT (*id*. ¶¶ 587-596, 634-643). These theories fail for the following independent reasons.

***First***, Plaintiffs cannot state a claim because ECPA "is a one-party consent statute," *Katz-Lacabe v. Oracle America, Inc.*, 2023 WL 2838118, at *10 (N.D. Cal. Apr. 6, 2023), and Plaintiffs plead that at

---

[8] OpenAI incorporates by reference Microsoft's additional arguments concerning Plaintiffs' improper group pleading.  *See* Msft. Mot. to Dismiss A.C. § IV.B.

[9] OpenAI incorporates by reference Microsoft's request that the Court dismiss Plaintiffs' frivolous injunctive relief demand.  *See* Msft. Mot. to Dismiss A.C. § IV.E.

least one party to each challenged communication consented to each alleged interception. Plaintiffs' first theory, interception of ChatGPT API communications, fails because companies incorporating third-party software on their websites (*i.e.*, platforms integrating the ChatGPT API) consented to the alleged interception. *See, e.g.*, *id.* (commercial websites consented to Oracle's alleged interceptions by deploying Oracle tools on their websites). Similarly, Plaintiffs' second and third theories fail because they do not (and cannot) allege the absence of one-party consent—*i.e.*, OpenAI consented to any alleged interception by Microsoft of OpenAI users' communications with ChatGPT, and Microsoft consented to any alleged interception by OpenAI of Microsoft users' communications with platforms integrating ChatGPT. One-party consent alone defeats the ECPA claim.

**Second**, Plaintiffs' ECPA claim fails because they do not allege **how** OpenAI allegedly intercepted their communications **during transmission**. *See Konop v. Hawaiian Airlines, Inc.*, 302 F.3d 868, 878 (9th Cir. 2002) (for ECPA "intercept[ion]," content "must be acquired during transmission, not while it is in electronic storage"). Plaintiffs' conclusory allegations referencing interception while "in transit" and "real-time access" are insufficient.[10] *See* A.C. ¶¶ 574, 584, 589, 594, 616, 620, 630, 636; *In re Vizio, Inc., Consumer Priv. Litig.*, 238 F. Supp. 3d 1204, 1228 (C.D. Cal. 2017) (dismissing ECPA claim premised on conclusory allegations that Vizio "intercepted [plaintiffs'] electronic communications 'during transmission'" and the "data collection occurs 'in real time'").

**Third**, Plaintiffs' first theory of ECPA liability fails for the additional reason that they do not allege that any of their personal information was intercepted through the ChatGPT API. While they allege that Defendants intercepted "communications which occurred on various applications, platforms, websites which integrate ChatGPT technology (*i.e.*, Stripe, Snapchat, etc.)" (A.C. ¶ 567), the only Plaintiff who

---

[10] Alleged scraping cannot be a basis for ECPA liability (*contra* A.C. ¶ 565), because an ECPA defendant's interception must occur contemporaneously with the plaintiff's transmission of data to a third-party site, and scraping necessarily occurs **after** transmission.

even alleges using ChatGPT API-powered features of third-party websites is Plaintiff Jair Paz. *See id*. ¶ 75 (Plaintiff Paz alleging that he used Snapchat's "MyAI" feature "a few times"). But Plaintiff Paz claims to have done so only "[r]ecently" and the Amended Complaint acknowledges that OpenAI has not used any data from ChatGPT API users since at least May 2023. *See id*. ¶ 218 & n.104. Given these allegations, Plaintiffs have not adequately and plausibly pled that their personal information was intercepted through the ChatGPT API. *See Quigley v. Yelp, Inc.*, 2018 WL 7204066, at *4 (N.D. Cal. Jan. 22, 2018) (dismissing claim for failure to allege when or how interception occurred).[11]

### 2. CIPA (Count 3)

Because ECPA and CIPA each prohibit the unauthorized interception of communications, the statutes' overlapping elements and defenses are analyzed jointly. *See, e.g., Brodsky v. Apple Inc.*, 445 F. Supp. 3d 110, 127 (N.D. Cal. 2020) (CIPA analysis "is the same as that under the Federal Wiretap Act") (citation omitted); *Pena v. GameStop, Inc.*, 2023 WL 3170047, at *3 (S.D. Cal. Apr. 27, 2023) (same). Thus, like the ECPA claim, the CIPA claim fails because Plaintiffs do not allege (1) how their electronic communications were intercepted during transmission, *see Martin*, 2023 WL 2717636, at *11 (dismissing CIPA claim because, *inter alia*, "allegations that [plaintiff's] communications were intercepted by a third party company while 'in transit'" were conclusory); or (2) that they used the ChatGPT API. *See* A.C. ¶¶ 616, 619, 625, 636 (same conclusory allegations as ECPA claim that Defendants had "real-time access" to user activity and interception occurred "simultaneously"); *id.* ¶¶ 75, 218 & n.104 (same implausible allegations as ECPA claim that Plaintiff Paz's personal information was intercepted through Snapchat's "MyAI" feature).[12]

---

[11] OpenAI joins in Microsoft's concurrently filed motion to dismiss, which states additional reasons that the second theory (Microsoft's interception of OpenAI users' communications) fails. *See* Msft. Mot. to Dismiss A.C. § IV.C.

[12] To the extent the Court declines to dismiss Plaintiffs' ECPA and CIPA claims in full, it should dismiss both claims to the extent they are "predicated on non-content information," *i.e.*, "record information . . . such as the name, address and subscriber number or identity of a . . . customer." *Graham v. Noom, Inc.*,

The CIPA claim also fails for other reasons.  ***First***, Plaintiffs' § 631(a) claim should be dismissed because it merely block quotes the statute without identifying the allegedly violated subsections.  *See* A.C. ¶ 611; *Martin*, 2023 WL 2717636, at *5-6 (dismissing claim because "impermissibly conclusory" to merely "block quote[] § 631(a)").  ***Second***, Plaintiffs fail to plead a violation of § 632(a), which prohibits eavesdropping on "confidential communication[s]."  A.C. ¶ 600.  Internet communications, like those at issue here, "do not reasonably give rise to th[e] expectation [of confidentiality]."  *Revitch v. New Moosejaw, LLC*, 2019 WL 5485330, at *3 (N.D. Cal. Oct. 23, 2019) (Chhabria, J.) (dismissing § 632 claim based on software provider's data collection of users' interactions with website); *Campbell v. Facebook Inc.*, 77 F. Supp. 3d 836, 848-49 (N.D. Cal. 2014) (dismissing § 632 claim; users' Facebook messages were not "confidential communication[s]").  ***Third***, Plaintiffs fail to plead any injury as a result of OpenAI's conduct.  *See Graham v. Noom, Inc.*, 2021 WL 3602215, at *1 (N.D. Cal. Aug. 13, 2021) (dismissing CIPA claim for failure to allege, *inter alia*, "injury" necessary to maintain "a private right of action under the statute").[13]

### 3.    CDAFA (Count 2)

Plaintiffs' CDAFA claim fails for two reasons.  ***First***, Plaintiffs fail to allege that OpenAI accessed their computers.  *See* Cal. Penal Code § 502(c)(2) (imposing liability on any person who "[k]nowingly accesses and without permission takes, copies, or makes use of any data from a computer, computer system, or computer network").  The CDAFA is an anti-hacking statute that "was originally enacted to combat 'computer crime.'"  *Heiting v. Taro Pharms. USA, Inc.*, 2023 WL 9319049, at *6 (C.D. Cal. Dec.

---

533 F. Supp. 3d 823, 833 (N.D. Cal. 2021) (internal quotations and citation omitted); *see* A.C. ¶ 16 (alleging "private information" includes record information such as name, contact details, login credentials, IP addresses and locations, etc.).

[13] To the extent Plaintiffs allege that OpenAI is liable for aiding and abetting Microsoft's alleged interception of ChatGPT communications (*see* A.C. ¶ 632), that theory fails for the reasons stated in Microsoft's motion to dismiss.  *See* Msft. Mot. to Dismiss A.C. § IV.C; *see also Martin*, 2023 WL 2717636, at *12 (dismissing CIPA derivative liability claim where primary CIPA claim against interceptor failed).

26, 2023) (quoting Cal. Penal Code § 502(a)).  It defines "access" accordingly: "to gain entry to, instruct, cause input to, cause output from, cause data processing with, or communicate with, the logical, arithmetical, or memory function resources of a computer, computer system, or computer network."  Cal. Penal Code § 502(b)(1).  Here, Plaintiffs do not allege, as required, that OpenAI gained entry to or caused output from their computers without permission.  And their generalized allegations that OpenAI scraped Internet content are insufficient.  *See Heiting*, 2023 WL 9319049, at *6 (dismissing CDAFA claim based on alleged misappropriation of information plaintiff entered into chatbot on defendant's website because, *inter alia*, there were no allegations that defendant "implanted anything on her computer"); *see also Meta Platforms, Inc. v. BrandTotal Ltd.*, 605 F. Supp. 3d 1218, 1260-66 (N.D. Cal. 2022) (software logging user activities during use of defendant's website does not violate CDAFA).[14]

**Second**, Plaintiffs' CDAFA claim independently fails because Plaintiffs do not allege the requisite "damage or loss."  Cal. Penal Code § 502(e)(1).  "The CDAFA provides that only an individual who has 'suffer[ed] damage or loss by reason of a violation' of the statute may bring a civil action."  *Cottle v. Plaid Inc.*, 536 F. Supp. 3d 461, 487 (N.D. Cal. 2021) (quoting Cal. Penal Code. § 502(e)(1)).  These damages include "reasonabl[e] and necessar[y]" expenses incurred "to verify that a computer system, computer network, computer program, or data was or was not altered, damaged, or deleted by the access."  Cal. Penal Code § 502(e)(1); *see also Pratt v. Higgins*, 2023 WL 4564551, at *9 (N.D. Cal. July 17, 2023) (CDAFA "loss" "has been defined to encompass costs related to fixing a computer, lost revenue, or other consequential damages incurred due to an interruption of computer services").

Plaintiffs do not identify any "damage or loss" that they incurred due to OpenAI's alleged CDAFA

---

[14] Plaintiffs attempt to plead around the public nature of the allegedly scraped information by alleging that "Defendants have scraped private websites with password protection and restricted access."  A.C. ¶ 197.  Plaintiffs plead no facts supporting this allegation (a notable omission given their voluminous pleading) and, tellingly, never allege that OpenAI scraped non-public content or information that was actually password-protected or otherwise restricted.  The websites listed (*e.g.*, Facebook, Instagram, Walmart, *id.* ¶¶ 197, 212) have extensive publicly-available content that can be accessed without an account.

violation.  They cannot state a claim by alleging that they lost (1) the rights "to control their own data" and "to protection of the data"; and (2) "the value of their data." *Cottle*, 536 F. Supp. 3d at 488 (dismissing claim for failure to plead "'damage or loss' due to the alleged Section 502 violations"); *Pratt*, 2023 WL 4564551, at *9 (dismissing claim because "accessing communications with counsel, personal notes, and medical information" did not "g[i]ve rise to any cognizable loss").

> **C.**     **Plaintiffs Cannot State an Unfair Competition, Consumer Protection, or Negligence Claim Based on Data Scraping or Interception.**

> **1.**     **UCL (Count 4)**

A plaintiff asserting a UCL claim must allege a "business act or practice" that is unlawful, unfair, or fraudulent.  *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1127 (9th Cir. 2009).  Plaintiffs have not stated a UCL claim under any prong.

***First***, Plaintiffs lack UCL statutory standing, which requires them to plead "economic injury"— *i.e.*, that they "lost money or property ***as a result of*** . . .  unfair competition."  *See* Cal. Bus. & Prof. Code § 17204 (emphasis added); *Davis v. RiverSource Life Ins. Co.*, 240 F. Supp. 3d 1011, 1017 (N.D. Cal. 2017) (required "economic injury" must be "***caused by***" the UCL violation) (emphasis added; citation omitted).  The Amended Complaint does not plead how Plaintiffs "lost money or property." Misappropriation of personal information is not an "economic injury," particularly for plaintiffs who do not sell their personal information.  *See Katz-Lacabe*, 2023 WL 2838118, at *8 ("weight of the authority" holds that "mere misappropriation of personal information" is not economic injury) (internal quotations omitted); *Cappello v. Walmart, Inc.*, 2019 WL 11687705, at *4 (N.D. Cal. Apr. 5, 2019) ("Plaintiffs must allege more than a loss of personal information to establish standing under the UCL."); *Archer v. United Rentals, Inc.*, 195 Cal. App. 4th 807, 816 (2011) (dismissing UCL invasion of privacy claim because "plaintiffs have failed to demonstrate how . . . unlawful collection and recordation of personal identification information . . . translates into a loss of money or property").  And while the Amended Complaint references a handful of obscure—in some cases decade-old—articles and studies purporting to

place a dollar value on consumer data (A.C. ¶¶ 407-413 & nn.298-306), no Plaintiff alleges that they sell or tried to sell their personal information, let alone that OpenAI's supposed conduct has precluded any such sales. *See Gardiner v. Walmart, Inc.*, 2021 WL 4992539, at *3 (N.D. Cal. July 28, 2021) (dismissing UCL claim because plaintiff failed to "establish the existence of a market for the personal information ***and an impairment of the ability to participate in that market***") (emphasis added).

**Second**, Plaintiffs have not pled a basis for restitution. *See Silvercrest Realty, Inc. v. Great Am. E&S Ins. Co.*, 2012 WL 13028094, at *2 (C.D. Cal. Apr. 4, 2012) ("Remedies under the UCL are limited to restitution and injunctive relief, and do not include damages."). Plaintiffs do not allege that OpenAI took any money from them. Nor do they identify any property that could be returned to them. To the extent that Plaintiffs seek damages other than restitution or injunctive relief (*e.g.*, disgorgement (A.C. ¶ 709)), such damages are not available under the UCL. *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1144–48 (2003).

**Third**, Plaintiffs otherwise fail to state a claim under any UCL prong.

**Unlawful.** Plaintiffs' unlawful prong claim is based on ECPA, CIPA, and CDAFA; the California Consumer Privacy Act ("CCPA"); the California Online Privacy Protection Act ("CalOPPA"); other statutes referenced in passing; contract claims; and "other tort claims stated in this lawsuit." A.C. ¶¶ 647-672. Because Plaintiffs have not stated their ECPA, CIPA, and CDAFA claims, their derivative UCL claim also fails. *See* Section III.B, *supra*; *Aleksick v. 7-Eleven, Inc.*, 205 Cal. App. 4th 1176, 1185 (2012) ("When a statutory claim fails, a derivative UCL claim also fails."). Further, a CCPA violation cannot be a basis for a UCL claim. *See* Cal. Civ. Code § 1798.150(c) ("Nothing in [the CCPA] shall be interpreted to serve as the basis for a private right of action under any other law."); *Silver v. Stripe Inc.*, 2021 WL 3191752, at *7 (N.D. Cal. July 28, 2021) (plaintiff could not allege CCPA as predicate UCL violation). To the extent Plaintiffs allege other statutory violations (A.C. ¶ 649), their failure to describe how OpenAI allegedly violates those statutes is fatal. *See Silver*, 2021 WL 3191752, at *7 (dismissing

UCL unlawful claim where complaint did "inadequate job of explaining the specific violations of those statutes").[15]  And Plaintiffs' references to breach of contract, interference with contract, and "other tort claims" are similarly deficient.  *See Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1044 (9th Cir. 2010) (common law violations, including breach of contract, insufficient for UCL unlawful prong claim); *Devore v. H&R Block Tax Servs. LLC*, 2018 WL 1942384, at *8 n.5 (C.D. Cal. Mar. 29, 2018) (common law interference with contractual relations claim cannot be UCL unlawful prong predicate act).[16]

**Fraudulent.**  Plaintiffs allege that Defendants made certain "representations and omissions"— apparently about "applicable laws and societal expectations about children's privacy."  A.C. ¶¶ 676-689. For example, Plaintiffs allege Defendants "fail[ed] to disclose that they are tracking, profiling, and targeting [] children" (*id.* ¶ 687), yet do not explain the "who, what, when, where, and how" of Defendants' supposed tracking, profiling, and targeting of children, or what was false or misleading about the

---

[15] Plaintiffs also allege that "Defendants failed to register as data brokers under California law as required."  A.C. ¶ 647(b).  But OpenAI's alleged use of data scraped or inputted into its own services does not render it a data broker under California law.  Nowhere does the Amended Complaint allege, as required, that OpenAI "knowingly collects and sells to third parties the personal information of a consumer with whom [OpenAI] does not have a direct relationship."  *See* Cal. Civ. Code § 1798.99.80(c).  Nor does the Amended Complaint implicate "personal information" under the statute, which excludes "publicly available information."  Cal. Civ. Code §§ 1798.99.80(c), 1798.140(v)(2).  Plaintiffs' allegations concerning CalOPPA fare no better.  *See* A.C. ¶¶ 663-667.  No Plaintiff alleges they are a "consumer" as required by the statute.  *Compare* Cal. Bus. & Prof. Code § 22577(d) (defining "consumer" as "any individual who seeks or acquires, by purchase or lease, any goods, services, money, or credit for personal, family, or household purposes"), *with* A.C. ¶ 498 (alleging that "Defendants deceptively operated the free ChatGPT Platform . . .").  And even if CalOPPA did apply, Plaintiffs fail to allege that OpenAI was provided with the requisite 30-day notice of non-compliance (*see* Cal. Bus. & Prof. Code § 22575(a)), or that OpenAI actually violates the statute.  For example, Plaintiffs allege that OpenAI "violates CalOPPA by knowingly collecting information from minors . . . without appropriate measures to ensure parental consent . . . ."  A.C. ¶ 667.  Yet nothing in the statute requires parental consent before minor use of a product (*see* Cal. Bus. & Prof. Code § 22575(b)) and, even if it did, OpenAI's Terms prohibit anyone under 13 years old from using their services.  *See* A.C. ¶ 502 (acknowledging Terms prohibit minors from using services).  Thus, these bases for UCL unlawful prong liability also fail.

[16] Breach of contract is not generally a basis for UCL unlawful liability and Plaintiffs do not (and cannot) explain how they would be entitled to invoke supposed breaches of OpenAI's unidentified contracts with unspecified third parties as a basis for their claim.  *See* A.C. ¶ 647(g); *cf. Hall v. SeaWorld Ent., Inc.*, 747 F. App'x 449, 451-52 (9th Cir. 2018) (affirming dismissal of UCL unlawful claim because conduct, even if true, did not cause direct economic harm to plaintiffs).

unidentified representations and omissions. *See Kearns*, 567 F.3d at 1124-25 (applying Rule 9(b) to UCL claim). Nor does the Amended Complaint demonstrate that OpenAI had an "affirmative duty" to disclose any such information. *See Hodsdon v. Mars, Inc.*, 891 F.3d 857, 865 (9th Cir. 2018). Such barebones allegations are insufficient to satisfy Rule 9(b).

Plaintiffs also appear to allege that OpenAI made false representations about user privacy. *See* A.C. ¶ 689. But Plaintiffs both fail to allege the source(s) of these alleged misrepresentations with Rule 9(b) particularity ***and*** to explain why the alleged, unsourced misrepresentations were false. *See, e.g.*, *Hall v. SeaWorld Ent., Inc.*, 2015 WL 9659911, at *10-13 (S.D. Cal. Dec. 23, 2015) (dismissing, under Rule 9(b), UCL claim that did not explain falsity of alleged misrepresentations); *Vassigh v. Bai Brands LLC*, 2015 WL 4238886, at *4 (N.D. Cal. July 13, 2015) (same); *Antoine v. Berkshire Hathaway Guard Ins.*, 2023 U.S. Dist. LEXIS 13087, at *6-12 (C.D. Cal. Jan. 25, 2023) (UCL claim fails Rule 9(b) pleading standard absent explanation why statements would deceive public). Further, Plaintiffs do not allege "actual reliance" on OpenAI's alleged misrepresentations—let alone that "the misrepresentation was an immediate cause of [their] injury-producing conduct." *Sateriale v. R.J. Reynolds Tobacco Co.*, 697 F.3d 777, 793 (9th Cir. 2012) (alteration in original; citation omitted).

Plaintiffs also fail to plead a fraudulent omission where they do not (1) "describe the content of the omission and where the omitted information should or could have been revealed" in documents Plaintiffs viewed and relied on, *see Marolda v. Symantec Corp.*, 672 F. Supp. 2d 992, 1002 (N.D. Cal. 2009), *Yumul v. Smart Balance, Inc.*, 733 F. Supp. 2d 1117, 1124 n.10 (C.D. Cal. 2010); or (2) identify with particularity the source of the alleged duty to disclose, *see Hodges v. Apple Inc.*, 2013 WL 4393545, at *5 (N.D. Cal. Aug. 12, 2013); *Hall*, 2015 WL 9659911, at *6.

**Unfair.** Plaintiffs' unfair prong claim fails because it is based on the same alleged conduct as their claims under the other prongs. Where the allegedly unfair practice "overlaps entirely with the practices addressed under the fraudulent and unlawful prongs of the UCL, the former may be dismissed when the

latter prongs do not survive." *Knuttel v. Omaze, Inc.*, 2022 WL 1843138, at *13 (C.D. Cal. Feb. 22, 2022); *see also Holmes v. Johnson & Johnson*, 617 F. App'x 639, 644 (9th Cir. 2015) (dismissing unfair prong claim because "the same activity [] form[ed] the basis of her fraudulent ground" and the allegations did not satisfy Rule 9(b)); *Hadley v. Kellogg Sales Co.*, 243 F. Supp. 3d 1074, 1104–05 (N.D. Cal. 2017) (collecting cases).

### 2.     Illinois Claims (Counts 5-7)

Only one Plaintiff, Breonna Roberts, alleges that she resides in Illinois.  She asserts claims under the Illinois Biometric Information Privacy Act ("BIPA"), Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), and the Illinois Uniform Deceptive Trade Practices Act ("IUDTPA") (collectively, the "Illinois claims").  These claims all fail at the outset for choice-of-law and extraterritoriality reasons, as well as additional claim-specific reasons.

### a.     Choice-of-Law[17]

Roberts' three Illinois claims are displaced by the California choice-of-law provision in OpenAI's Terms of Use ("Terms").  *See* A.C. ¶¶539-547 (asking the Court to apply the California choice-of-law provision to the majority of Plaintiffs' claims).  Indeed, Plaintiffs allege that the choice-of-law provision applies and is enforceable.  Specifically, Plaintiffs acknowledge that OpenAI "requires that California law applies to disputes between [it] and ChatGPT Users" and that users must agree to the Terms before using OpenAI services.  A.C. ¶¶ 468, 543.  And Roberts alleges that she is a registered ChatGPT user—she claims she "started using ChatGPT 3.5 in mid-2022"—and that she disclosed her information to OpenAI upon her sign-up and use of ChatGPT.  *Id.* ¶¶ 16, 53, 453, 460, 604.  Thus, Roberts acknowledges that she

---

[17] For purposes of this motion, OpenAI assumes that the California choice-of-law provision in its Terms of Use apply to the claims asserted herein based on the allegations in the Amended Complaint.  *See* A.C. ¶¶ 539-547.  However, nothing herein is intended to nor does waive OpenAI's right to raise future choice-of-law arguments inconsistent with the allegations in the Amended Complaint or the arguments made herein.

is bound by the choice-of-law provision. *Id.* ¶ 543.[18]

A choice-of-law clause is generally enforceable if "the chosen state has a substantial relationship to the parties or their transaction, or . . . a reasonable basis otherwise exists for the choice of law," unless doing so would violate "a fundamental policy" of the other state and the other state has a "materially greater interest in the determination of the particular issue." *Wash. Mut. Bank, FA v. Super. Ct.*, 24 Cal. 4th 906, 917 (2001); *see Trump v. Twitter Inc.*, 602 F. Supp. 3d 1213, 1226 (N.D. Cal. 2022) (applying California choice-of-law provision to dismiss Florida consumer protection claim).  As Plaintiffs acknowledge, OpenAI is "headquartered" and has its "nerve center" in California. A.C. ¶ 542.  California is also "where the majority of [allegedly] unlawful conduct took place." *Id*.  Nor would enforcement of the choice-of-law clause violate any Illinois "fundamental policy."  For example, courts frequently dismiss ICFA and IUDTPA claims where, as here, there is a California choice-of-law clause because such laws cover the same conduct as California's own consumer protection and unfair competition laws.  *See In re Nexus 6P Prods. Liab. Litig.*, 293 F. Supp. 3d 888, 934-35 (N.D. Cal. 2018) (so holding; noting that no Illinois court "has declined to apply California consumer law for public policy reasons").

The BIPA claim meets the same end.  Both California and Illinois offer robust biometric privacy

---

[18] Roberts' attempts to plead around application of the Terms are unavailing.  The Amended Complaint includes an entire section on why "California law should apply to out-of-state plaintiffs' and class members' non-statutory claims"—based in large part on application of the California choice-of-law provision in OpenAI's Terms.  *See* A.C. ¶¶ 539-547. Yet elsewhere in the Amended Complaint, Plaintiffs (including Roberts) argue that the Terms were not "conspicuous enough." *Id*. ¶¶ 468-470.  Not so.  When creating an OpenAI account, a user views a separate pop-up screen requiring them to click "Continue" affirmatively, immediately above a single sentence stating, "By clicking 'Continue,' you agree to our Terms and acknowledge our Privacy policy." *Id*. ¶ 468.  "Terms" and "Privacy policy" appear as green hyperlinks, offset from the rest of the sentence's black text. *Id*.  This is more than sufficient. *See Oberstein v. Live Nation Ent., Inc.*, 60 F.4th 505, 515-16 (9th Cir. 2023) (user had adequate notice of terms where "Place Order" button was directly above blue hyperlink to Terms and text that user was bound by clicking button); *Dohrmann v. Intuit Inc.*, 823 F. App'x 482, 483-84 (9th Cir. 2020) (same where "relevant warning language and hyperlink to the Terms . . . were the only text on the webpage in italics, were located directly below the sign-up button, and the sign-in page was relatively uncluttered"); *Lee v. Ticketmaster L.L.C.*, 817 F. App'x 393, 394-95 (9th Cir. 2020) (same, where blue hyperlink to Terms available below "Place Order" button and statement that user accepted terms by clicking button).

protections, such that California law controls Roberts' claim.   In California, the CCPA and California Privacy Rights Act ("CPRA") comprehensively regulate the collection and use of consumers' biometric data as "sensitive personal information" entitled to special protections.    Cal. Civ. Code § 1798.140(ae)(2)(A).  They require businesses, *inter alia*, to inform consumers (1) that their biometric data is being collected or used; (2) for what purposes; (3) whether it will be shared; and (4) how long it will be retained.  *Id*. § 1798.100.   Consumers can also limit how businesses use their biometric data, *id*. § 1798.121, prohibit its disclosure to third parties, *id*., and request its deletion at any time, *id*. § 1798.105. Consumers enjoy a private right of action to recover statutory or actual damages following a breach of their biometric data.  *Id*. § 1798.150.  And the California Attorney General may seek statutory penalties for each violation.  *Id*. § 1798.155.

Roberts does not dispute that she agreed to the Terms.  Instead, she alleges that she can maintain her statutory claims despite the choice-of-law provision, citing *In re Facebook Biometric Information Privacy Litigation*, 185 F. Supp. 3d 1155 (N.D. Cal. 2016).  A.C. ¶ 541.  That 2016 decision declined to enforce Facebook's California choice-of-law clause, reasoning that "[u]nlike Illinois, California has not legislatively recognized a right to privacy in personal biometric data and has not implemented any specific protections for that right or afforded a private cause of action to enforce violations of it."  *Facebook Biometric*, 185 F. Supp. 3d at 1169–70.  Thus, at the time, Illinois had a "greater interest in the outcome" of the case because it would "suffer a complete negation of its biometric privacy protections for its citizens if California law [wa]s applied."  *Id*. at 1170.  *Facebook Biometric* does not control because this central premise is no longer true after California enacted the CCPA in 2018 and the CPRA in 2023.  And more recent decisions have dismissed BIPA claims based on contractual choice-of-law clauses like the one here. *Thakkar v. ProctorU, Inc.*, 642 F. Supp. 3d 1304, 1311–20 (N.D. Ala. 2022) (dismissing BIPA claim pursuant to Alabama choice-of-law clause).

Thus, the California choice-of-law clause in OpenAI's Terms controls Roberts' claims, requiring

dismissal of all three of the Illinois claims.

### b.      Extraterritoriality

The Illinois claims also fail because they do not apply extraterritorially.  Each statute only applies if the "alleged conduct occurred 'primarily and substantially' in Illinois," which Roberts does not (and cannot) allege.  *See McGoveran v. Amazon Web Servs., Inc.*, 2021 WL 4502089, at *4–5 (D. Del. Sept. 30, 2021) (dismissing BIPA claim because plaintiff did not allege that "Defendants did anything in Illinois"); *Archey v. Osmose Utils. Servs., Inc.*, 2022 WL 3543469, at *5 (N.D. Ill. Aug. 18, 2022) (dismissing ICFA claim because the plaintiff merely alleged that he was an Illinois resident who provided his personal information in Illinois); *Int'l Equip. Trading, Ltd. v. Illumina, Inc.*, 312 F. Supp. 3d 725, 733 (N.D. Ill. 2018) (dismissing ICFA and IUDTPA claims because company's incorporation and principal place of business in Illinois were, without more, insufficient to "establish the requisite connection to Illinois when the allegedly illegal actions of a California-based company impacted potential customers outside of Illinois").  Roberts merely alleges that she resides in Illinois—and "Plaintiffs' residency, standing alone, is not sufficient" to overcome the default presumption against extraterritorial application of Illinois statutes.  *McGoveran*, 2021 WL 4502089, at *4–5.  Indeed, she **concedes** that she is alleging California "is where the majority of unlawful conduct took place—from development of the AI products, decisions concerning AI Products and training of the AI, web scraping practices, and other major decisions."  *See* A.C. ¶ 542.  Thus, each Illinois claim should be dismissed for this independent reason.

### c.      Illinois Claim-Specific Bases for Dismissal

### (1)      BIPA (Count 5)

The BIPA claim also fails for two additional reasons.  ***First***, Roberts does not allege that OpenAI possessed or obtained her biometric data, as required to state a BIPA claim.  740 ILCS 14/15 (BIPA subsections (a) and (c)-(e) apply only to companies "in possession" of biometric data, and subsection (b) applies to those who "obtain" such data).  She speculates that OpenAI "t[ook] [her] photos off of the

internet," but identifies no specific photo(s) or basis to believe that OpenAI possessed or obtained her photos, let alone extracted biometric data such as scans of facial geometry from those photos.  *See* A.C. ¶ 716.

These cursory allegations are fatally deficient.  *See Barnett v. Apple Inc.*, 2022 IL App (1st) 220187, at *7 (Ill. App. Ct. Dec. 23, 2022) (plaintiff did not plausibly allege that Apple "possesse[d]" her biometric data because she pled only "possibilities," not "facts"); *see also Stauffer v. Innovative Heights Fairview Heights, LLC*, 2022 WL 3139507, at *6 (S.D. Ill. Aug. 5, 2022) (BIPA claim not stated where plaintiff merely alleged that defendant "could access the biometric information one day," but did not plausibly allege that it already had) (emphasis omitted).  Without the required fact pleading, Roberts merely parrots BIPA's language, requiring dismissal.  *Jones v. Microsoft Corp.*, 649 F. Supp. 3d 679, 685 (N.D. Ill. 2023) (dismissing claim where allegations regarding supposed "disclosure, redisclosure, or dissemination" of biometric data merely "parrot[ed] BIPA's language"); *Carpenter v. McDonald's Corp.*, 580 F. Supp. 3d 512, 519 (N.D. Ill. Jan. 13, 2022) (similar, where plaintiff parroted statute without stating facts substantiating his allegation that McDonald's disclosed his biometric data).[19]

**Second**, Roberts fails to plead that her allegedly scraped photos qualify as biometric data under BIPA.  BIPA protects only two types of data: biometric identifiers and biometric information.  "Biometric identifier" is defined as a "retina or iris scan, fingerprint, voiceprint, or scan of hand or face geometry[,]" expressly excluding "photographs," while "biometric information" is "any information . . . based on an individual's biometric identifier used to identify an individual."  740 ILCS 14/10.  To the extent that Roberts' claim is based on BIPA's "biometric information" prong, it fails because she does not allege that OpenAI used any biometric data that it supposedly gathered to ***identify*** her.  *See* 740 ILCS 14/10.  Instead,

---

[19] Roberts' claim under Section 15(c) of BIPA also fails because she does not allege that OpenAI sold, leased, traded, or otherwise provided access to any of her biometric data in exchange for consideration, 740 ILCS 14/15(c), but rather only that OpenAI "incorporat[ed]" her "information into the Products for commercial gain."  A.C. ¶ 719.

she alleges that OpenAI used her photos to "scan[] [her] facial geometry and related biometric information to train the algorithms on which DALL-E runs."  A.C. ¶ 716.[20]

Further, this allegation is deficient under either the "biometric information" or "biometric identifier" prongs because it is mere conjecture.  *Cf. Clarke v. Aveda Corp.*, 2023 WL 9119927, at *1-2 (N.D. Ill. Dec. 1, 2023) (dismissing BIPA claim resting on speculation that company obtained face geometry scans by offering virtual feature that took users' photos or allowed them to upload photos). Similarly to *Clarke*, Roberts does not plead that scanning photos for facial geometry is part of training an LLM; that OpenAI in fact performs such scans; when or how OpenAI allegedly scanned her photos for her facial geometry; which photos were scanned; or whether OpenAI could identify her using such putative scans.  Her BIPA claim should be dismissed.

### (2)    ICFA (Count 6)

Roberts' ICFA claim also fails for two claim-specific reasons.  ***First***, she lacks statutory standing because she is not a "consumer," defined as a "person who ***purchases or contracts for the purchase*** of merchandise not for resale . . . ."    815 ILCS 505/1(e) (emphasis added).  Roberts alleges only that she uses ChatGPT-3.5, a free service. A.C. ¶ 53.  Her failure to purchase anything from OpenAI deprives her of standing to maintain her ICFA claim.

***Second***, Roberts has not pled the elements of an ICFA claim with the required Rule 9(b) particularity.  *Tara Brands LLC v. Vaimo, Inc.*, 2022 WL 704811, at *2 (N.D. Ill. Mar. 9, 2022) (dismissing ICFA claim under Rule 9(b)).  An ICFA claim requires allegations that defendant

---

[20]  While Roberts also broadly alleges that OpenAI scraped her videos and voice (A.C. ¶¶ 54-56), she does not present this allegation as a basis for her BIPA claim.  In any event, she does not allege any specific video or voice recording that OpenAI supposedly scraped; does not allege facts plausibly showing that OpenAI possessed or obtained them; and does not relate the supposedly collected information to the definition of "biometric identifier" or "biometric information" under the statute (*e.g.*, explain how the scraped data amounts to a "scan of face geometry" or a "voiceprint," and was used to identify her).

(1) committed a deceptive act or practice; (2) with intent that the plaintiff rely on the deception; (3) in the course of trade or commerce; (4) which proximately caused the plaintiff's injury. *O'Keefe v. Walgreens Boots All., Inc.*, 172 N.E.3d 1159, 1162 (Ill. App. Ct. 2020).

Courts assess whether an act is "deceptive" based on "the totality of the information made available to the plaintiff." *Davis v. G.N. Mortg. Corp.*, 396 F.3d 869, 884 (7th Cir. 2005). Roberts has not adequately alleged a deceptive act because she alleges that OpenAI informs the public about at least some of the publicly-accessible data sets on which it trains its AI models, and its Terms disclose how it uses information collected from ChatGPT users. A.C. ¶¶ 186, 190-191, 194-195, 218. These public disclosures alone undermine any conclusion that Roberts has adequately alleged that OpenAI commits "deceptive" acts under the ICFA.

Nor does Roberts allege that OpenAI intended for her to rely on any supposed misstatements or omissions. She freely posted her allegedly "scraped" content on the Internet prior to 2021 (*see* A.C. ¶ 58), well before OpenAI was known to the general public or began training its publicly-released AI models. Not only does Roberts fail to identify any specific, alleged misrepresentations with particularity, she does not (and cannot) explain how any supposed "omissions" about training practices that OpenAI had not yet fully formulated could possibly be intended to induce her reliance.

And Roberts has not alleged an actual injury. At most, she alleges abstractly what a generic individual's data might be worth in certain limited contexts. *See, e.g.*, A.C. ¶¶ 411-415. But this does not establish that OpenAI's alleged collection of Roberts' publicly-posted content, interactions with ChatGPT, and anonymized Internet data is tantamount to an ICFA injury. *See Petta v. Christie Bus. Holding Co., P.C.*, 2023 IL App (5th) 220742, at *3 (Ill. App. Ct. 2023) (dismissing ICFA claim arising from alleged data breach because allegations suggesting "certain dollar amounts that this personal information can be sold for" without "any indication of how the dissemination of the personal information would affect its value" were insufficient); *see also Morris v. Harvey Cycle & Camper, Inc.*, 392 Ill. App. 3d 399, 402 (Ill.

App. Ct. 2009) ("failure to allege specific, actual damages precludes a claim brought under the [ICFA]").

### (3)    IUDTPA (Count 7)

As a threshold issue, Illinois courts have consistently held that the IUDTPA "was enacted to prohibit unfair competition and was not intended to be a consumer protection statute." *Chabraja v. Avis Rent A Car Sys., Inc.*, 192 Ill. App. 3d 1074, 1079 (Ill. App. Ct. 1989); *see also World Kitchen, LLC v. Am. Ceramic Soc'y*, 2016 WL 3568723, at *3, *7 (N.D. Ill. June 30, 2016) (dismissing IUDTPA claim for failure to plead that allegedly harmful speech was "commercial" in nature).  Thus, Roberts' attempt to invoke the statute for consumer protection purposes (*see* A.C. ¶¶ 465, 467) should be rejected.

Roberts' IUDTPA claim also fails on the pleadings because she has not alleged the claim with the requisite Rule 9(b) particularity.  *See Schwebe v. AGC Flat Glass N. Am., Inc.*, 2013 WL 2151551, at *3 (N.D. Ill. May 16, 2013) (collecting cases affirming dismissal of IUDTPA claims for failure to meet Rule 9(b)); *see also* A.C. ¶¶ 464-468 (alleging knowing and misleading conduct sounding in fraud).  For example, nothing in the Amended Complaint specifies the alleged misrepresentations at issue.  And "general quality claims [are] too vague to create warranted reliance." *Smith v. Am. Arb. Ass'n, Inc.*, 233 F.3d 502, 507 (7th Cir. 2000).  Thus, allegations like OpenAI is "strongly committed to keeping secure any information we obtain from you or about you" (A.C. ¶¶ 480, 683) are insufficient.

Moreover, even if the IUDTPA offers relief to some consumers in discrete circumstances, it does not do so here where Roberts seeks damages and cannot show a likelihood of future harm.  *See Magnuson v. Window Rock Residential Recovery Fund, L.P.*, 2023 WL 8090727, at *8 (N.D. Ill. Nov. 21, 2023) ("[T]he IUDTPA does not provide a private cause of action for damages").  As Illinois courts have explained, demonstrating a likelihood of future harm sufficient to obtain injunctive relief is impossible for "most consumer[s] . . . because the harm has already occurred, and because the plaintiff is unlikely to be deceived by a defendant's misstatements again in the future." *Perdue v. Hy-Vee, Inc.*, 455 F. Supp. 3d 749, 773 (C.D. Ill. 2020); *Fox v. Iowa Health Sys.*, 399 F. Supp. 3d 780, 799-800 (W.D. Wis. 2019)

(dismissing IUDTPA claim based on alleged misrepresentations concerning a data breach for failure to plead future harm); A.C. ¶¶ 58-60 (Roberts indicating her awareness of OAI's alleged collection of her information and incorporation into its products).

### 3.    Negligence (Count 8)

*First*, Plaintiffs do not adequately allege that OpenAI owed them a duty of care.  They hypothesize a variety of duties to abstain from (1) web scraping; (2) training AI on individuals' data; and (3) collecting, sharing, and retaining user data.  *See* A.C. ¶ 728.  But negligence requires a duty imposed by law, assumed by the defendant, or arising from a preexisting relationship.  *Green Desert Oil Grp. v. BP W. Coast Prods.*, 2011 WL 5521005, at *5 (N.D. Cal. Nov. 14, 2011), *aff'd*, 571 F. App'x 633 (9th Cir. 2014).  Plaintiffs do not plead facts illustrating the basis for OpenAI's alleged duty, instead alleging that it "arose from several sources," each unspecified.  *See* A.C. ¶ 729.  Thus, Plaintiffs' negligence claim fails as a matter of law.  *Green Desert*, 2011 WL 5521005, at *5 (dismissing negligence claim for failure to plead duty); *Johnson v. Maker Ecosystem Growth Holdings, Inc.*, 2023 WL 2191214, at *5 (N.D. Cal. Feb. 22, 2023) (similar; failure "to identify the source of the duty"); *Young v. Facebook, Inc.*, 790 F. Supp. 2d 1110, 1118 (N.D. Cal. 2011) (similar; failure to identify any contract or non-contract duty).

Plaintiffs' allegation that OpenAI "had a common law duty to prevent foreseeable harm to others" (A.C. ¶ 729) does not suffice, because California "requir[es] more than mere foreseeability for imposing a duty of care."  *See S. Cal. Gas Leak Cases*, 7 Cal. 5th 391, 401 (2019).  Otherwise, the law could impose "liability in an indeterminate amount for an indeterminate time to an indeterminate class."  *Id*. at 414 (citation omitted).  So too here: Plaintiffs seek to impose an expansive, continuing duty on OpenAI extending to "millions of individuals" from whom it allegedly "collected and continue[s] to collect Private Information," based on a "zone of risk that is incalculable."  A.C. ¶ 729.  Arguably, Plaintiffs' theory would impose on every web scraper a duty of care to every person who has chosen to post information to the open Internet.  *Cf. id*. ¶ 185 (alleging that "[t]he breadth and scope of Defendants' data collection . . .

impact[s] essentially every internet user ever"). California law prohibits such negligence claims. *See S. Cal. Gas Leak Cases*, 7 Cal. 5th at 394-95, 403 (affirming dismissal of negligence claim seeking lost business income and recognizing need to cabin "limitless liability and unending litigation").

***Second***, Plaintiffs fail to plead cognizable damages. Plaintiffs' allegations that OpenAI's negligence caused them unspecified "damages" and "significant harm" are insufficient. *See* A.C. ¶¶ 733, 471 (p. 193); *see West v. City & Cnty. of San Francisco*, 2022 WL 1556415, at *13 (N.D. Cal. May 17, 2022) (dismissing negligence claim where plaintiff did not identify the injuries and damages that defendant's conduct caused). Indeed, courts frequently dismiss negligence claims based on the alleged misappropriation of personal information for failure to plead harm. *See Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010, 1032 (N.D. Cal. 2012) (dismissing negligence claim where plaintiffs failed to plead how they were "foreclosed from capitalizing on the value of [their] personal data"); *In re iPhone Application Litig.*, 844 F. Supp. 2d 1040, 1064 (N.D. Cal. 2012) (dismissing negligence claim based on "unreasonable risk to the security of sensitive personal information" for failure to identify non-speculative, present injury).

Plaintiffs' other damages allegations—which are "scattered" through the Amended Complaint, *Martin*, 2023 WL 2717636, at *5—are equally unavailing. Plaintiffs allege "loss of value" and "loss of control over their sensitive personal information." A.C. ¶ 672. But their loss of value theory is barred by the "economic loss doctrine" because it seeks recovery for purely economic loss. Such recovery is unavailable for negligence claims absent (1) personal injury; (2) physical damage to property; (3) a "special relationship" existing between the parties;[21] or (4) another common law exception to the rule—

---

[21] Plaintiffs do not plausibly allege the existence of a special relationship, which is assessed via a six-factor test, including "the extent to which the transaction was intended to affect the plaintiff" and the "degree of certainty that the plaintiff suffered injury." *J'Aire Corp. v. Gregory*, 24 Cal. 3d 799, 804 (1979) (listing factors). Here, Plaintiffs' alleged harms are speculative at best, *see* Section III.C.3, *supra*, and they do not allege that OpenAI's actions were specifically intended to affect them.

none of which the Amended Complaint alleges. *Kalitta Air, L.L.C. v. Cent. Tex. Airborne Sys., Inc.*, 315 F. App'x 603, 605 (9th Cir. 2008); *see Kadrey v. Meta Platforms, Inc.*, 2023 WL 8039640, at *2 (N.D. Cal. Nov. 20, 2023) (Chhabria, J.) (dismissing negligence claim based on Meta's LLaMA language model as, *inter alia*, barred by the economic loss doctrine).

Plaintiffs' alleged "loss of control" over unspecified personal information (A.C. ¶¶ 672, 697, 713) "is also insufficient to establish damages for a negligence claim," *Aguilar v. Hartford Accident & Indem. Co.*, 2019 WL 2912861, at *2 (C.D. Cal. Mar. 13, 2019). Allegations of "emotional distress" (A.C. ¶¶ 672, 697, 713) likewise fail, *Varnado v. Midland Funding LLC*, 43 F. Supp. 3d 985, 990 (N.D. Cal. 2014) (emotional distress is not a basis for negligence claim absent "malice, breach of a fiduciary duty, physical injury or impact, or some other unusually extreme or outrageous circumstance"). And their allegations of potential future harm—such as (1) AI eventually leading to their "professional obsolescence" (*e.g.*, A.C. ¶ 17); (2) "unpredictable consequences" of entrusting personal information to LLMs (*id.* ¶ 221); or (3) "nefarious" harm *if* "ChatGPT has access to a User's browsing history, search queries, and geolocation" *and* "combines this information with what Defendant OpenAI has secretly scraped from the internet," such that "Defendants *could* build a detailed profile of Users' behavior patterns" (*id.* ¶ 307)— are far too speculative. *See In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*, 903 F. Supp. 2d 942, 962-63 (S.D. Cal. 2012).

### D.     Plaintiffs Have Not Stated a Claim for Invasion of Privacy (Count 9).

To establish an invasion of privacy claim, Plaintiffs must allege: (1) a legally protected privacy interest; (2) a reasonable expectation of privacy; and (3) conduct amounting to "a serious invasion of the protected privacy interest," *i.e.*, "an egregious breach of the social norms." *Low*, 900 F. Supp. 2d at 1024–25 (citation omitted). Plaintiffs' claim fails on all three grounds.

*First*, Plaintiffs do not have a legally protected privacy interest in information they voluntarily posted on public websites. *See Smith v. Maryland*, 442 U.S. 735, 743-44 (1979) (finding "a person has

no legitimate expectation of privacy in information he voluntarily turns over to third parties"); *McCluskey v. Hendricks*, 2023 WL 3376564, at *2 (9th Cir. May 11, 2023) (finding plaintiffs lacked "justifiable expectation of privacy" in social media posts that were broadly visible and "liked by dozens to hundreds of people"). Plaintiffs' reliance on *Riley v. California*, 573 U.S. 373 (2014), *U.S. Department of Justice v. Reporters Committee for Freedom of the Press*, 489 U.S. 749 (1989), and *White v. Davis*, 13 Cal. 3d 757 (1975) is misplaced. *See* A.C. ¶¶ 737, 740 & nn.397, 399. *Riley* addressed Fourth Amendment concerns in the context of a cell phone seized during arrest, 573 U.S. at 393-97, rather than allegations of web scraping and interception by private parties. *Reporters Committee* addressed privacy concerns surrounding disclosure of government-compiled criminal records. 489 U.S. at 763-64. Plaintiffs cannot extend this holding to information publicly posted or voluntarily provided to OpenAI or third parties. And in *White v. Davis*, the California Supreme Court specifically noted that the constitutional privacy provision was driven by fears of government and corporate creation of personalized, "cradle to grave" dossiers on American citizens—conduct not alleged here beyond cursory and baseless speculation. *See* A.C. ¶ 440.

**Second**, Plaintiffs lacked a reasonable expectation of privacy in the allegedly misappropriated information. "[T]he plaintiff in an invasion of privacy case must have conducted himself or herself in a manner consistent with an actual expectation of privacy." *Hill v. Nat'l Collegiate Athletic Ass'n*, 7 Cal. 4th 1, 26 (1994). But here, Plaintiffs allege that they posted the challenged information to the open Internet or public, third-party online platforms, defeating their claims. *See* A.C. ¶¶ 21-25, 31-34, 42-45, 54-56, 63-65, 73-76, 83-87, 93-96, 102, 107-109, 116, 121-123, 130-131; *McCluskey*, 2023 WL 3376564, at *2 (affirming dismissal of intrusion claim because plaintiff lacked "justifiable expectation of privacy" in social media posts that were broadly visible and "liked by dozens to hundreds of people"); *Davidson v. Hewlett-Packard Co.*, 2021 WL 4222130, at *6-7 (N.D. Cal. Sept. 16, 2021) (no reasonable expectation of privacy in personal medical information disclosed on blog); *see also Gonzales v. Uber Techs., Inc.*, 305 F. Supp. 3d 1078, 1091-92 (N.D. Cal. 2018) (dismissing claim because Lyft drivers lacked reasonable

expectation of privacy in geolocation data and home addresses surreptitiously collected by Uber "spyware," where members of the public (Lyft users) could see the drivers' geolocation data and home addresses); *Heeger v. Facebook, Inc.*, 509 F. Supp. 3d 1182, 1189 (N.D. Cal. 2020) (no reasonable expectation of privacy in IP addresses).   In the Amended Complaint, Plaintiffs try to plead around this issue by alleging that they shared information with "purposely limited audiences" and "other restricted online groups."  A.C. ¶¶ 21, 25, 55, 122, 301.   But Plaintiffs do not allege any facts showing that these groups were in fact "limited" or "restricted" apart from labeling them so.  For example, no Plaintiff alleges that such groups were limited to "a few dozen friends."  *Cf. In re Facebook, Inc., Consumer Priv. User Profile Litig.*, 402 F. Supp. 3d 767, 783 n.3 (N.D. Cal. 2019) (Chhabria, J.) ("It seems quite possible that a user whose settings allow information to be shared not only with friends, but friends of friends, loses any expectation of privacy . . . .").   And nothing in the Amended Complaint changes the fact that Plaintiffs voluntarily provided the information knowing anyone in those online groups could share that information with others.   Plaintiffs' alleged conduct is simply inconsistent with their claimed expectation of privacy. *See Heldt v. Guardian Life Ins. Co. of Am.*, 2019 WL 651503, at *7 (S.D. Cal. Feb. 15, 2019) (finding no reasonable expectation of privacy where, *inter alia*, plaintiff "voluntarily shared the information with his Facebook friends knowing there [wa]s a possibility that his friends could share that information with others").

**Third**, any privacy intrusion was not "an egregious breach of the social norms"—a high bar.  *See Low*, 900 F. Supp. 2d at 1025.  Courts often dismiss privacy claims where, as here, Plaintiffs fail to identify what specific personal information was allegedly misappropriated.  *See, e.g.*, *Hammerling v. Google LLC*, 615 F. Supp. 3d 1069, 1091 (N.D. Cal. 2022) (dismissing claim where plaintiffs failed to allege that data collected by defendant was "sufficiently specific or personal" to implicate privacy interests).  For instance, Plaintiffs allege generally that OpenAI "track[ed] the internet communications of millions of Americans" and conducted "[s]ecret monitoring of web browsing."  A.C. ¶¶ 744, 747.  Yet Plaintiffs fail to identify

*what* specific content is at issue in sufficient detail for OpenAI to address whether its alleged collection constitutes an "egregious breach of social norms," so by definition, they have not alleged the required intrusion.[22]  Had they done so, OpenAI could have presented additional arguments supporting dismissal based on the disputed content at issue.  *See, e.g.*, *In re iPhone*, 844 F. Supp. 2d at 1063 (dismissing claim based on disclosure of "unique device identifier number, personal data, and geolocation information"); *Yunker v. Pandora Media, Inc.*, 2013 WL 1282980, at *14-15 (N.D. Cal. Mar. 26, 2013) (same but for personal identification information ("PII")); *Hammerling*, 615 F. Supp. 3d at 1090-91 (noting that "[e]ven disclosure of highly personal information such as social security numbers is not 'highly offensive'").

### E.    Plaintiffs Cannot State a Claim Based on Defendants' Alleged Profiting from Scraping and Interception of Their Data.

#### 1.    Conversion (Count 10)

Plaintiffs allege that OpenAI converted their unspecified personal information, which they claim is their property (A.C. ¶¶ 753-756), giving rise to a claim for conversion, which requires a plaintiff's "ownership or right to possession of the property," the "defendant's conversion by a wrongful act," and damages.  *See McGowan v. Weinstein*, 505 F. Supp. 3d 1000, 1021 (C.D. Cal. 2020) (citation omitted).  Plaintiffs' conversion claim fails.   ***First***, Plaintiffs' allegations show that the challenged personal information is not "property."  A "property" right requires (1) an interest capable of precise definition; (2) a property capable of exclusive possession or control; and (3) the putative owner's legitimate claim to exclusivity.  *See In re iPhone*, 844 F. Supp. 2d at 1074.  "[A]n individual does not have an inherent property right to publicly available personal information because that information is not, and cannot, be under the user's exclusive control."  *United States v. Abouammo*, 2022 WL 17584238, at *12 (N.D. Cal.

---

[22] Plaintiffs' allegations that Defendants' conduct was "highly offensive" (*see* A.C. ¶¶ 743-749) are also inadequately pled.  For instance, Plaintiffs allege that "[s]ecret monitoring of web browsing is highly offensive behavior."  *Id.* ¶ 747.  But Plaintiffs do not plead any ***facts*** supporting their claim that OpenAI monitors Plaintiffs' web browsing, whether secretly or otherwise.

Dec. 12, 2022).  Thus, courts frequently hold that the "private information" at issue here—like names, contact details, emails, device and browser information, and cookies (A.C. ¶ 16)—are not capable of exclusive possession or control.  *See, e.g.*, *In re iPhone*, 844 F. Supp. 2d at 1075 (dismissing conversion claim because challenged data types, including user locations, zip codes, and device identifiers, did not satisfy exclusivity requirement); *Yunker*, 2013 WL 1282980, at *16-17 (dismissing conversion claim because age, gender, location, and device identifier data failed exclusivity requirement); *Low*, 900 F. Supp. 2d at 1030-31 (dismissing conversion claim because allegedly intercepted URLs and browsing histories failed exclusivity requirement).  Indeed, Plaintiffs allege that they posted their supposedly "private information" to publicly-available websites or tendered it to OpenAI or third parties, defeating any argument that their information was under their "exclusive control."  *See* A.C. ¶¶ 19-135.[23]

**Second**, Plaintiffs cannot allege that their "personal information" was converted by a wrongful act. Essentially, Plaintiffs take issue with OpenAI copying "personal information"—either from the Internet or certain AI services.  But case law is clear that this alleged conduct, even if true, does not give rise to liability: "Where property is capable of being copied, wrongful possession of copies does not typically give rise to a conversion claim if the rightful owner retains possession of the original or retains access to

---

[23] The Amended Complaint cites *Calhoun v. Google LLC*, 526 F. Supp. 3d 605, 635 (N.D. Cal. 2021), as support for the notion that "personal information" is property.  *See* A.C. ¶ 753.  However, *Calhoun* is based on the idea that misappropriated personal information could ***lose value***.  526 F. Supp. 3d at 635. Importantly, decisions before and after *Calhoun* make clear that plaintiffs alleging lost value must "plausibly allege that they intended to sell their non-disclosed personal information to someone else."  *In re Facebook, Inc., Consumer Priv. User Profile Litig.*, 402 F. Supp. 3d at 784 (in context of standing, rejecting argument that personal information has "independent economic value to an individual user" absent allegations user intended to sell and someone would have bought it); *see Gardiner*, 2021 WL 4992539, at *3 (rejecting "lost value" damages theory where plaintiff did not "allege that he has been unable to sell, profit from, or monetize his personal information"); *see also McClung v. AddShopper, Inc.*, 2024 WL 189006, at *4 (N.D. Cal. Jan. 17, 2024) (Chhabria, J.) (expressing skepticism of argument that personal information is property based on *Calhoun*).  Plaintiffs' reliance on *In re Facebook, Inc. Internet Tracking Litigation*, 956 F.3d 589, 600 (9th Cir. 2020), fares no better.  *See* A.C. ¶¶ 406, 418 & n.324. That case neither holds that individuals have property rights in publicly-posted Internet information nor that a conversion claim can lie where a plaintiff fails to allege selling or trying to sell their personal information.

other copies." *McGowan*, 505 F. Supp. 3d at 1022 (citation omitted). Here, Plaintiffs do not and cannot allege that OpenAI is depriving them of the use of their "property"—information that is publicly available and to which Plaintiffs retain access. *See, e.g.*, A.C. ¶¶ 21-27, 31-38, 42-50, 54-59, 63-69, 73-79, 83-89, 93-98, 102-104, 107-111, 115-118, 121-126, 130-134 (alleging Plaintiffs posted content and photos and made other "online contributions" to "websites and social media applications"). That OpenAI may have copied certain publicly-available information or otherwise nonexclusive information does not give rise to liability under California conversion law.

*Third*, Plaintiffs allege that they "have been damaged as a result of Defendants' unlawful conversion of their property" (A.C. ¶ 756), but do not allege that they in fact suffered injury or harm, defeating their claim. *See* Section III.C.3, *supra* (no injury or harm); *In re iPhone*, 844 F. Supp. 2d at 1074 (conversion claim has damages element).

### 2.     Unjust Enrichment (Count 11)

Unjust enrichment is not a standalone claim under California law. *See Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762 (9th Cir. 2015). Thus, an unjust enrichment claim is construed "as a quasi-contract claim seeking restitution," which requires a plaintiff to plead that a "defendant has been unjustly conferred a benefit through mistake, fraud, coercion, or request." *Id.* (internal quotations and citations omitted). But Plaintiffs have alleged no basis for a quasi-contract claim. Their scraping theory does not plead the required "affiliation or connection" with OpenAI to state this claim. *See Sugarfina, Inc. v. Sweet Pete's LLC*, 2017 WL 4271133, at *8 (C.D. Cal. Sept. 25, 2017) (citation omitted). Nor do Plaintiffs offer factual allegations showing how OpenAI's alleged failure to disclose scraping impacted their conduct. *See Rojas-Lozano v. Google, Inc.*, 159 F. Supp. 3d 1101, 1120 (N.D. Cal. 2016) (dismissing quasi-contract claim based on Google's alleged omission regarding reCAPTCHA program where plaintiff failed to plead "omission impacted [plaintiff's] conduct in any way"). To the contrary, Plaintiffs allege that OpenAI acted on its own to scrape the "entire Internet." *See* A.C. ¶¶ 26, 37, 49, 58, 68, 78, 88, 97, 104, 110, 118,

125, 133, 181, 184.  Such allegations do not state a claim.

Nor do Plaintiffs' interception allegations support a quasi-contract claim, because the "parties have an enforceable agreement regarding a particular subject matter."  *See Klein v. Chevron U.S.A., Inc.*, 202 Cal. App. 4th 1342, 1388 (2012).  That is, Plaintiffs (as ChatGPT users) have consented to OpenAI's Terms, which cover this dispute because they encompass OpenAI's collection, storage, use, and sharing of individuals' data.  *See* A.C. ¶¶ 218, 476.

## F.      The California Uniform Trade Secrets Act ("CUTSA") Supersedes Claims Premised on Misappropriation of Plaintiffs' Personal Data.

Plaintiffs' UCL, negligence, conversion, and unjust enrichment claims (Counts 4, 8, 10, 11) (collectively, the "CUTSA Claims") are premised on allegations that OpenAI "stole[] and misappropriated personal information at scale" and incorporated that information into its products.  *See* A.C. ¶¶ 2, 12, 376, 408, 442, 447, 449.  Because the gravamen of the CUTSA claims is "misappropriation of confidential information," CUTSA requires their dismissal.  *Mattel, Inc. v. MGA Ent., Inc.*, 782 F. Supp. 2d 911, 987 (C.D. Cal. 2011) (CUTSA "supersedes claims based on the misappropriation of confidential information"); *see Heller v. Cepia, L.L.C.*, 2012 WL 13572, at *7 (N.D. Cal. Jan. 4, 2012) (conversion, unjust enrichment, and trespass to chattels claims superseded by CUTSA when based on non-trade secret "wrongful taking and use of confidential business and proprietary information").[24]

CUTSA's "comprehensive structure and breadth . . . occupies the field in California" and "implicitly preempts alternative civil remedies" based on either trade secrets or "information that, though not a trade secret, was nonetheless of value to the claimant."  *K.C. Multimedia, Inc. v. Bank of Am. Tech. & Operations, Inc.*, 171 Cal. App. 4th 939, 954 (2009); *Silvaco Data Sys. v. Intel Corp.*, 184 Cal. App.

---

[24] By arguing CUTSA supersession, OpenAI does not concede that Plaintiffs' information was private or confidential, especially given that they posted it publicly on the Internet.  Rather, because Plaintiffs chose to premise their case on the core theory that OpenAI "use[d] stolen private information" (A.C. ¶ 3), CUTSA applies and precludes them from asserting these claims.

4th 210, 239 n.22 (2010) (citation omitted); *Mattel*, 782 F. Supp. 2d at 987 ("[C]UTSA supersedes claims based on the misappropriation of confidential information, ***whether or not that information meets the statutory definition of a trade secret***.") (emphasis added).  Thus, "common law claims premised on the wrongful taking" of non-trade secret information are superseded, "unless the plaintiff identifies some law which confers property rights protecting the information." *Heller*, 2012 WL 13572, at *7.  The same is true for unfair competition claims premised on alleged misappropriation. *K.C. Multimedia*, 171 Cal. App. 4th at 961; *see also NetApp, Inc. v. Nimble Storage, Inc.*, 41 F. Supp. 3d 816, 839–40 (N.D. Cal. 2014) (UCL claim based on "misappropriation of proprietary information" superseded by CUTSA).

Each of the CUTSA Claims sound in misappropriation.  Plaintiffs' negligence claim challenges that Defendants negligently "collected" information to train their products for commercial benefit.  A.C. ¶ 729.  The conversion claim alleges that "Defendants wrongfully exercised control over Plaintiffs' . . . information and have not returned it." *Id.* ¶ 755.  And the unjust enrichment claim is based on Plaintiffs' "loss of value . . . and the lost profits from the use of their [] information" resulting from the alleged misappropriation. *Id.* ¶ 760.  Such claims are superseded by CUTSA. *See, e.g., Heller*, 2012 WL 13572, at *7 (conversion and unjust enrichment claims superseded by CUTSA); *Digital Envoy, Inc. v. Google, Inc.*, 370 F. Supp. 2d 1025, 1035 (N.D. Cal. 2005) (unfair competition and unjust enrichment claims superseded by CUTSA); *Callaway Golf Co. v. Dunlop Slazenger Grp. Ams., Inc.*, 318 F. Supp. 2d 216, 221-22 (D. Del. 2004) (conversion, unjust enrichment, and negligence claims superseded by CUTSA).

Further, while Plaintiffs' UCL claim invokes various underlying legal violations, each is premised on the allegation that Defendants "took, accessed, intercepted, tracked, collected, or used" Plaintiffs' information to train their AI products.  *See* A.C. ¶¶ 647, 649.  Such UCL claims are also superseded by CUTSA.  *See K.C. Multimedia*, 171 Cal. App. 4th at 962 (dismissing UCL claim based on alleged misappropriation); *MedImpact Healthcare Sys., Inc. v. IQVIA Inc.*, 2020 WL 5064253, at *20 (S.D. Cal. Aug. 27, 2020) (CUTSA superseded UCL based on misappropriation); *Race Winning Brands, Inc. v.*

*Gearhart*, 2023 WL 4681539, at *6 (C.D. Cal. Apr. 21, 2023) (UCL and conversion claims superseded even to extent they "relate[d] to confidential information that may not be a trade secret").

CUTSA also supersedes claims based on alleged misappropriation of personal information, such as names, phone numbers, and customer preferences. *See, e.g.*, *Farmers Ins. Exch. v. Steele Ins. Agency, Inc.*, 2013 WL 3872950 at *1, *9–10, *14-15 (E.D. Cal. July 25, 2013) (CUTSA superseded alleged taking of "Confidential Policyholder Information," including names, addresses, phone numbers, and social security numbers); *New Show Studios LLC v. Needle*, 2014 WL 2988271, at *5, *9–11 (C.D. Cal. June 30, 2014) (CUTSA superseded claims where defendants "accessed" and "public[ly] disclosed private facts"); *Glam & Glits Nail Design, Inc. v. #NotPolish, Inc.*, 2021 WL 2317410, at *5, *9–11 (S.D. Cal. June 7, 2021) (CUTSA superseded claims arising from customers' "non-public personal cellphone numbers," purchasing history, pricing, and preferences).   The CUTSA Claims should therefore be dismissed.[25]

## IV.    CONCLUSION

For the foregoing reasons, Plaintiffs fail to state a claim against OpenAI.  Because Plaintiffs have already had an opportunity to amend and the above-described pleading defects are both central to Plaintiffs' theory of the case and cannot be remedied by further amendment, dismissal should be with prejudice.   *See Cervantes v. Countrywide Home Loans, Inc.*, 656 F.3d 1034, 1041 (9th Cir. 2011) (dismissal without leave to amend proper where "amendment would be futile").

---

[25] Even if the Court finds that some part of the CUTSA Claims is not premised on a misappropriation theory, each claim should still be dismissed "[t]o the extent Plaintiff[s] [are] relying on the same facts" as a trade secret misappropriation claim.  *Genasys Inc. v. Vector Acoustics, LLC*, 2023 WL 4414222, at *22 (S.D. Cal. July 7, 2023).

Dated: February 8, 2024

COOLEY LLP

By: /s/ *Matthew D. Brown*
        Matthew D. Brown

Attorneys for Defendants
OPENAI LP, OPENAI INCORPORATED,
OPENAI GP, LLC, OPENAI STARTUP FUND I,
LP, OPENAI STARTUP FUND GP I, LLC and
OPENAI STARTUP FUND MANAGEMENT
LLC