Emily Johnson Henn (Bar No. 269482)
Kathryn E. Cahoy (Bar No. 298777)
COVINGTON & BURLING LLP
3000 El Camino Real
5 Palo Alto Square, 10th Floor
Palo Alto, California 94306
Telephone: + 1 (650) 632-4700
Facsimile: + 1 (650) 632-4800
Email: ehenn@cov.com
Email: kcahoy@cov.com

Isaac D. Chaput (Bar No. 326923)
COVINGTON & BURLING LLP
Salesforce Tower
415 Mission Street, Suite 5400
San Francisco, California 94105
Telephone: + 1 (415) 591-6000
Facsimile: + 1 (415) 591-6091
Email:  ichaput@cov.com

Ashley M. Simonsen (Bar No. 275203)
COVINGTON & BURLING LLP
1999 Avenue of the Stars
Los Angeles, California 90067
Telephone: + 1 (424) 332-4800
Facsimile: + 1 (424) 332-4749
Email:  asimonsen@cov.com

*Attorneys for Defendant Microsoft Corporation*

# UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO DIVISION

| | |
|---|---|
| A.T., et al., individually and on behalf of all others similarly situated<br><br>    Plaintiffs,<br><br>    v.<br><br>OPENAI LP, et al.,<br><br>    Defendants. | Civil Case No.: 3:23-cv-4557-VC<br><br>**MICROSOFT CORPORATION'S NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Date: April 11, 2024<br>Time: 10:00 a.m.<br>Place: Courtroom 4<br><br>Judge: The Honorable Vince Chhabria |

**TABLE OF CONTENTS**

NOTICE OF MOTION AND MOTION TO DISMISS ................................................................1

MEMORANDUM OF POINTS AND AUTHORITIES ...............................................................1

I.  INTRODUCTION AND STATEMENT OF ISSUES ......................................................1

II. BACKGROUND ..............................................................................................................3

    A.  OpenAI and ChatGPT ..........................................................................................3

    B.  Microsoft ..............................................................................................................5

    C.  Plaintiffs ...............................................................................................................5

III. LEGAL STANDARD .......................................................................................................7

IV. ARGUMENT ....................................................................................................................7

    A.  Plaintiffs Fail to Allege They Were Affected by the Alleged Conduct. ...............7

    B.  Plaintiffs' Shotgun Pleading Still Fails to Satisfy Rule 8. ..................................10

    C.  Plaintiffs Fail to State an "Interception" Claim Against Microsoft. ..................12

    D.  The Court Should Dismiss Plaintiffs' Remaining Claims. .................................14

    E.  The Court Should Dismiss Plaintiffs' Frivolous Injunctive Relief Demand. .....14

V.  CONCLUSION ...............................................................................................................15

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)..................................................................................................................7

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)..................................................................................................................7

*Bradshaw v. City of Los Angeles*,
  2023 WL 3400634 (C.D. Cal. Mar. 10, 2023).........................................................................8

*Brown v. Google, LLC*,
  2023 WL 4336718 (N.D. Cal. May 1, 2023).........................................................................14

*Christensen v. Superior Ct.*,
  54 Cal. 3d 868 (1991)..............................................................................................................9

*Cook v. GameStop, Inc.*,
  2023 WL 5529772 (W.D. Pa. Aug. 28, 2023)......................................................................13

*Cottle v. Plaid Inc.*,
  536 F. Supp. 3d 461 (N.D. Cal. 2021)..............................................................................8, 9

*FireBlok IP Holdings, LLC v. Hilti, Inc.*,
  2021 WL 6049964 (N.D. Ill. Dec. 21, 2021)..........................................................................9

*In re Gilead Scis. Sec. Litig.*,
  536 F.3d 1049 (9th Cir. 2008)................................................................................................7

*In re Google Assistant Privacy Litig.*,
  2020 WL 2219022 (N.D. Cal. May 6, 2020).................................................................10, 13

*Graham v. Noom, Inc.*,
  2021 WL 3602215 (N.D. Cal. Aug. 13, 2021)........................................................................8

*Greenstein v. Noblr Reciprocal Exchange*,
  585 F. Supp. 3d 1220 (N.D. Cal. 2022)................................................................................14

*Heard v. Becton, Dickinson & Co.*,
  440 F. Supp. 3d 960 (N.D. Ill. 2020)......................................................................................9

*Hill v. Nat'l Collegiate Athletic Assn.*,
  7 Cal. 4th 1 (1994).................................................................................................................11

*Jet Parts Eng'g, Inc. v. Quest Aviation Supply, Inc.*,
  2017 WL 1093205 (W.D. Wash. Mar. 23, 2017).................................................................11

*Khoros, LLC v. Lenovo (United States), Inc.*,
   2020 WL 12655516 (N.D. Cal. Oct. 5, 2020)..................................................................11, 12

*Kim v. Carter's Inc.*,
   598 F.3d 362 (7th Cir. 2010) ..............................................................................................9

*Kwikset Corp. v. Superior Ct.*,
   51 Cal. 4th 310 (2011) ........................................................................................................9

*Low v. LinkedIn Corp.*,
   900 F. Supp. 2d 1010 (N.D. Cal. 2012) .............................................................................8

*Miami Prod. & Chem. Co. v. Olin Corp.*,
   449 F. Supp. 3d 136 (W.D.N.Y. 2020) .............................................................................11

*Mighty v. Safeguard Properties Mgmt., LLC*,
   2018 WL 5619451 (N.D. Ill. Oct. 30, 2018) ......................................................................9

*Moody v. Rodriguez*,
   2022 WL 5236820 (S.D. Cal. Oct. 4, 2022) .......................................................................8

*Motul S.A. v. USA Wholesale Lubricant, Inc.*,
   2023 WL 5061945 (N.D. Cal. Aug. 8, 2023) ...................................................................12

*Peterson v. Cellco P'ship*,
   164 Cal. App. 4th 1583 (2008) .........................................................................................11

*Philadelphia Indem. Ins. Co. v. Chicago Title Ins. Co.*,
   771 F.3d 391 (7th Cir. 2014) ..............................................................................................9

*Regent All. Ltd. v. Rabizadeh*,
   231 Cal. App. 4th 1177 (2014) .........................................................................................11

*Resh, Inc. v. Skimlite Mfg. Inc.*,
   2023 WL 2744423 (N.D. Cal. Mar. 31, 2023) .................................................................10

*Romero v. Los Angeles Rams*,
   91 Cal. App. 5th 562 (2023) .............................................................................................11

*Russo v. Microsoft Corp.*,
   2021 WL 2688850 (N.D. Cal. June 30, 2021) ........................................................7, 8, 10

*S-Fer Int'l, Inc. v. Stonesheets, LLC*,
   2016 WL 8808749 (S.D. Fla. July 22, 2016) ...................................................................12

*Schulz v. Neovi Data Corp.*,
   152 Cal. App. 4th 86 (2007) ...............................................................................................8

*Seybold v. Tazewell Cnty.*,
   2022 WL 68385 (C.D. Ill. Jan. 6, 2022) ...........................................................................11

*Sims v. AT & T Mobility Servs. LLC*,
    955 F. Supp. 2d 1110 (E.D. Cal. 2013) ................................................................................. 9

*Sonora Diamond Corp. v. Super. Ct.*,
    83 Cal. App. 4th 523 (2000) ............................................................................................... 11

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
    2011 WL 4501223 (N.D. Cal. Sept. 28, 2011) ...................................................................... 9

*United States v. Bestfoods*,
    524 U.S. 51 (1998) ............................................................................................................. 11

*Warth v. Seldin*,
    422 U.S. 490 (1975) ........................................................................................................... 10

*Yeager v. Innovus Pharms., Inc.*,
    2019 WL 447743 (N.D. Ill. Feb. 5, 2019) ............................................................................. 9

**Statutes**

18 U.S.C. § 2510 ......................................................................................................................... 2

18 U.S.C. § 2520 ....................................................................................................................... 11

Cal. Bus. & Prof. Code §§ 17203–17206 ................................................................................. 11

Cal. Penal Code § 502 ........................................................................................................... 2, 11

Cal. Penal Code § 631 ........................................................................................................... 2, 11

Cal. Penal Code § 637.2 ............................................................................................................. 8

740 Ill. Comp. Stat. 14/1 ............................................................................................................. 2

740 Ill. Comp. Stat. 14/20 ......................................................................................................... 11

815 Ill. Comp. Stat. 505/2 ........................................................................................................... 2

815 Ill. Comp. Stat. 505/10 ....................................................................................................... 11

815 Ill. Comp. Stat. 510/2 ..................................................................................................... 2, 11

**Other Authorities**

Exec. Order No. 14110, 88 FR 75191, *available at*
    https://www.federalregister.gov/d/2023-24283 ............................................................... 3, 14

S. 3312, 118th Cong. (2023), *available at* https://www.congress.gov/bill/118th-
    congress/senate-bill/3312/ .................................................................................................. 14

**NOTICE OF MOTION AND MOTION TO DISMISS**

PLEASE TAKE NOTICE that, on April 11, 2024 at 10:00 a.m., Defendant Microsoft Corporation will and hereby does move for an order dismissing with prejudice the claims against Microsoft in Plaintiffs' First Amended Complaint (Dkt. 45) under Rule 8 and Rule 12(b)(6).  This Motion is based on this Notice; the accompanying Memorandum; the First Amended Complaint; the OpenAI Defendants' Motion to Dismiss; and any other matters presented at the time of the hearing.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.      INTRODUCTION AND STATEMENT OF ISSUES**

Microsoft's mission is to empower every person and every organization on the planet to achieve more.  After nearly five decades of providing services that improve the lives of customers and make the world more efficient and productive, Microsoft invested in OpenAI.  Microsoft did so because it recognized the potential of OpenAI's revolutionary generative artificial intelligence tools.  Those groundbreaking services, like ChatGPT, can generate text, images, and other media in response to short prompts.  This new technology is the next major wave of computing—one that promises to significantly improve the way we find and parse information, and the way we create content and art.  Microsoft has committed—to its customers, regulators, and the public as a whole—to deploy these tools in a secure, trustworthy, and transparent manner, and has published a publicly available Responsible AI Standard.[1]

Although Plaintiffs acknowledge that this technology has "the potential to do much good in the world," First Amended Complaint ("FAC") ¶ 5, their pleading devotes 198 pages to doomsday hyperbole about AI as a threat to civilization.  Amending their pleading instead of opposing Defendants' motions to dismiss the original complaint, Plaintiffs added over eighty pages of new material and many additional

---

[1] Our commitments to advance safe, secure, and trustworthy AI (July 21, 2023), https://blogs.microsoft.com/on-the-issues/2023/07/21/commitment-safe-secure-ai/; Progress with our AI commitments (Oct. 27, 2023), https://blogs.microsoft.com/on-the-issues/2023/10/27/uk-ai-safety-summit-responsible/; Enhancing trust and protecting privacy in the AI era (Dec. 19, 2023), https://blogs.microsoft.com/on-the-issues/2023/12/19/trust-privacy-bing-copilot-responsible-ai/; Microsoft Responsible AI Standard (June 2022), *available at* https://blogs.microsoft.com/wp-content/uploads/prod/sites/5/2022/06/Microsoft-Responsible-AI-Standard-v2-General-Requirements-3.pdf.

claims. But despite its hundreds of paragraphs and footnotes, the Amended Complaint still lacks any coherent allegations to support cognizable legal claims against Microsoft. Because Plaintiffs had the opportunity to address their fundamental pleading failures and failed to do so, the Court should dismiss Plaintiffs' claims against Microsoft with prejudice.

Plaintiffs do not plead any facts plausibly showing they have been affected by any of the supposed "scraping," "intercepting," and "eavesdropping" they allege. Nowhere do they say what of *their* private information Microsoft ever improperly collected or used; nor do they identify any harm *they* individually suffered from anything that Microsoft allegedly did. Plaintiffs cannot state a claim based on the hypothetical experiences of others. This deficiency alone requires dismissal of all of Plaintiffs' claims.[2]

Even if that were otherwise, the majority of Plaintiffs' allegations lump together Microsoft and OpenAI—distinct companies—leaving unstated which company allegedly did what. Such shotgun pleading does not satisfy Rule 8. Plaintiffs plead only two theories of liability that depend on factual allegations tied specifically to Microsoft, but neither states a claim for relief. For one, they claim that Microsoft in some unspecified way "intercepted" "communications" that Plaintiffs assert they had on certain non-Microsoft websites. The second Microsoft-directed theory is that Microsoft violated Plaintiffs' privacy rights by "integrating" OpenAI's ChatGPT with certain Microsoft services like Bing Chat. Both theories fail because Plaintiffs do not offer any well-pleaded allegations as to how Microsoft performed the alleged interception of communications on non-Microsoft websites or how either Microsoft or OpenAI allegedly intercepted communications with Microsoft services "integrating" ChatGPT, and because Plaintiffs do not allege facts showing that Microsoft (or OpenAI) intercepted any of their own specific communications. And for the reasons set out in full in OpenAI's Motion to Dismiss, each of

---

[2] Plaintiffs assert eleven claims against all Defendants: violation of the Electronic Communications Privacy Act ("ECPA") (18 U.S.C. § 2510, *et seq.*), violation of California's Comprehensive Computer Data Access and Fraud Act ("CDAFA") (Cal. Penal Code § 502), violation of the California Invasion of Privacy Act ("CIPA") (Cal. Penal Code § 631), violation of California's Unfair Competition Law ("UCL"), violation of Illinois' Biometric Information Privacy Act ("BIPA") (740 Ill. Comp. Stat. 14/1), violation of Illinois' Consumer Fraud Act ("ICFA") (815 Ill. Comp. Stat. 505/2), violation of Illinois' Deceptive Trade Practices Act ("DTPA") (815 Ill. Comp. Stat. 510/2), Negligence, Invasion of Privacy, Conversion, and Unjust Enrichment.

Plaintiffs' claims directed generally at "Defendants" fails. The Court should dismiss each of Plaintiffs' eleven claims against Microsoft.

Finally, Plaintiffs ask the Court to "bar" further commercial deployment of generative AI and empanel—and presumably oversee—"an independent body of thought leaders" to set the future of that development. *Id.* ¶ 535. In other words, Plaintiffs ask the Court to make policy decisions and to issue an advisory opinion about how, when, and by whom generative AI technology should be developed, and they do so without tethering that proposed relief to any supposed harms they experienced. Microsoft agrees that government should regulate AI and has publicly called for legislation.[3] And indeed, the President last year took steps to do so, issuing the Executive Order on the Safe, Secure, and Trustworthy Development and Use of Artificial Intelligence on October 30, 2023.[4] The legislative and executive branches are the right parties to engage in this policy-making debate, and the Court should dismiss Plaintiffs' baseless injunctive relief demand with prejudice.

## II. BACKGROUND[5]

### A. OpenAI and ChatGPT

Plaintiffs allege that Defendants OpenAI Incorporated and OpenAI Limited Partnership (collectively, "OpenAI") are an artificial intelligence research laboratory. FAC ¶ 136. They allege OpenAI has developed and released several generative AI systems, including ChatGPT. *Id.* ChatGPT is a "chatbot": when a user inputs a prompt to ChatGPT, the system produces a text response based on a model developed from a set of training data. *Id.* ¶ 171. According to Plaintiffs, ChatGPT was trained with text data "from the internet containing hundreds of billions of words." *Id.* ¶ 173.

**"Scraping" Allegations.** Plaintiffs allege OpenAI "systematically scraped 300 billion words from the internet," taking unidentified data that allegedly could instead have been purchased. *Id.* ¶¶ 181–182.

---

[3] Developing and deploying AI responsibly (Sept. 12, 2023), https://blogs.microsoft.com/on-the-issues/2023/09/12/developing-and-deploying-ai-responsibly-elements-of-an-effective-legislative-framework-to-regulate-ai/.

[4] Exec. Order No. 14110, 88 FR 75191, *available at* https://www.federalregister.gov/d/2023-24283.

[5] For purposes of this Motion only, Microsoft accepts as true the non-conclusory factual allegations in the Amended Complaint. Microsoft does not concede the accuracy of these allegations.

Plaintiffs claim that the "scraping" encompassed "private websites with password protection and restricted access" as well as websites with sensitive health or medical information. *Id.* ¶¶ 197, 210–211. Plaintiffs attach as Exhibit A "a selection of around 1,000 websites that Defendants have scraped to illustrate the breadth and character of Defendants' scraping practices." *Id.* ¶¶ 184–185. They do not explain how they compiled this list, do not allege any facts supporting the notion that Defendants accessed password-protected portions of the websites, and do not allege any facts as to *how* Defendants could have accessed any password-protected materials. Most important, Plaintiffs also do not allege what, if any, of their personal information OpenAI "scraped" from the internet or included in other data sets used to train ChatGPT (e.g., Common Crawl). *See id.* ¶¶ 19–135, 213. For example, Plaintiffs allege OpenAI scraped certain data from the social media site Reddit, and that Reddit's CEO "found [the scraping] unacceptable." *Id.* ¶¶ 187–188. But Plaintiffs nowhere allege that OpenAI scraped *their* private information. Plaintiffs also allege that a non-party digital artist concluded that certain of her medical information "ended up online" and was then "memorialized in the Common Crawl archive." *Id.* ¶¶ 213–214. But they do not claim any such thing happened to them.

**Operation of ChatGPT and "Integration" of ChatGPT with Non-Microsoft Services.** Plaintiffs allege that OpenAI also trained ChatGPT with data "from ChatGPT's registered users," as well as with data from "users of ChatGPT plug-ins with sponsoring applications." *Id.* ¶¶ 217–218. Plaintiffs alternate between generally alleging that "Defendants" did this, *id.* ¶ 217, and specifying that only OpenAI did, *id.* ¶ 218. They assert that OpenAI's ChatGPT has been "integrated" into various services and companies, including Amazon, Buzzfeed, Google, Instacart, KAYAK, and Snapchat. *Id.* ¶ 233. They allege these "integrations" violated the rights of users of those services by intercepting or eavesdropping on users, and collecting and using their personal information to further train AI systems without consent. *Id.* ¶ 217. Plaintiffs do not allege that Microsoft had any involvement in "integrating" ChatGPT into these services. Only Plaintiff Paz alleges using any of these third-party integrations. *Id.* ¶ 75 (Paz "recently" used Snapchat's "MyAI" "a few times"). Paz does not allege facts plausibly showing that Microsoft took or used any of his personal information from Snapchat's MyAI.

**"Integration" of ChatGPT into Microsoft Services.** As discussed below, Plaintiffs allege that

4

ChatGPT is "integrated" into certain Microsoft services and that Defendants (without specifying whether they mean OpenAI or Microsoft) used data from those services to train OpenAI's AI models. *Id.* ¶ 224.

### B. Microsoft

Microsoft operates a suite of software and online services, including Microsoft 365 (Word, Excel, PowerPoint, Teams, and Outlook) and the Bing internet search engine. *See id.* ¶¶ 143, 647(d). Plaintiffs allege that Microsoft invested billions of dollars in OpenAI, "owns a 49 percent stake in [OpenAI's] for-profit operations," and "became the exclusive licensee of OpenAI's GPT-3 language model." *Id.* ¶¶ 142, 167. They state that OpenAI—like thousands of businesses with cloud-based operations—would not have been able to develop its technology without taking advantage of Microsoft's cloud computing service, Azure, and claim that "Azure continues to power OpenAI operations to this day." *Id.* ¶ 168. In addition to these allegations about Azure's unspecified "role in facilitating the training process," Plaintiffs further allege that Microsoft has played a "key role" in commercializing OpenAI's technology, including by "distribut[ing] and s[elling] GPT-based products, like Azure products that incorporate GPT-3 and GPT-4," "incorporating GPT-3 into Bing," and "integrating ChatGPT into . . . Office 365." *Id.* ¶¶ 169–170. Plaintiffs also assert that because Microsoft is OpenAI's "largest investor" and "largest service provider," Microsoft "exerts considerable control over OpenAI." *Id.* ¶ 144.

Plaintiffs claim that Microsoft has "integrat[ed]" ChatGPT into "almost all of its cardinal products and services," *id.* ¶ 224, including Bing, Teams, Dynamics 365, Cortana, and Outlook. *See id.* ¶¶ 225–227, 647(d). According to them, "Defendants" use some Microsoft customer information to further train the generative AI models that are "integrated" into these Microsoft services. *Id.* ¶ 217. Plaintiffs also posit, without any factual explanation, that "Microsoft intentionally taps, electrically or otherwise intercepts the lines of internet communications between Plaintiffs, ChatGPT, and/or third party entities." *Id.* ¶ 583; *see also id.* ¶¶ 580–582, 623–633, 647(e).

### C. Plaintiffs

Plaintiffs are residents of California, Florida, Illinois, and New York. *Id.* ¶¶ 52, 91, 119, 128. They allege they are current users of ChatGPT-3.5 and ChatGPT-4, and eight of the thirteen Plaintiffs allege use of various Microsoft services, including Bing, Teams, and Outlook. *See, e.g., id.* ¶¶ 20, 30, 35,

41, 46, 82, 124.  Three Plaintiffs claim to have used Microsoft's AI-enabled Bing Chat, but Plaintiffs do not allege using any other generative AI features in Microsoft services.[6]  *Id.* ¶¶ 35–36 (Guilak); 46 (Martin); 77 (Paz).  They allege having "engaged with a variety of websites and social media platforms," including, variously, Crunchbase, Discord, Facebook, Instagram, LinkedIn,[7] Reddit, Snapchat, Spotify, TikTok, Twitter, Webflow, and Yelp.  *See id.* ¶¶ 31–32, 83, 130–131.

The same general theories of liability underpin Plaintiffs' eleven claims:  First, Plaintiffs allege that "Defendants" generally violated their privacy rights by (i) "scraping" the internet, (ii) operating ChatGPT, and/or (iii) working with third parties to integrate ChatGPT into their services.  *See, e.g.*, *id.* ¶¶ 179–234, 454, 464, 560, 604–606, 614 & 632, 647, 716, 728, 740, 754, 758.  Although a few of the eleven counts appear to omit the allegations that Defendants violated Plaintiffs' privacy by "scraping" the internet,[8] they otherwise depend on the same allegations regarding the operation of ChatGPT and the "integration" of ChatGPT into non-Microsoft services.  Second, Plaintiffs allege that Defendants violated their privacy rights by "integrating" ChatGPT into Microsoft services.  *See, e.g.*, *id.* ¶¶ 224–226, 590, 640, 647(d), 728, 740, 758.  Finally, counts 1, 3, 4, and 8 appear to depend in part on allegations that Microsoft "intercepted" ChatGPT users' communications in some unexplained way.  *See, e.g.*, *id.* ¶¶ 577, 580–586, 623, 626–631, 647, 728–733.

---

[6] Because Plaintiffs Guilak, Martin, and Paz ("Arbitration Plaintiffs") have used services covered by the Microsoft Services Agreement, they agreed to arbitrate their disputes with Microsoft.  Microsoft has filed a motion to compel these Arbitration Plaintiffs to arbitrate their claims.  As a result, the Court need not reach the motion to dismiss as to the Arbitration Plaintiffs unless the Court denies Microsoft's motion to compel.

[7] While LinkedIn is a subsidiary of Microsoft, Plaintiffs do not name LinkedIn as a defendant, do not allege that ChatGPT has been integrated into LinkedIn, and do not allege any conduct by LinkedIn.  Only Plaintiff De La Torre alleges he uses LinkedIn, but he does not allege facts showing any of his LinkedIn data was implicated in any of the alleged conduct.

[8] Counts 2, 4, 5, 6, 7, 8, 9, 10, and 11 appear to be based in part on the "scraping" allegations, while Counts 1 and 3 do not appear to incorporate those allegations.  *Compare id.* ¶¶ 603–606 (Count 2), ¶¶ 647(a)–(g) (Count 4), ¶ 716 (Count 5), ¶¶ 454(a)–(e) (Count 6), ¶ 464 (Count 7 references Count 6), ¶ 733 (Count 8), ¶¶ 740(a)–(b) (Count 9), ¶ 754 (Count 10), ¶ 758 (Count 11) *with id.* ¶¶ 560(a)–(c) (Count 1), ¶¶ 614, 623, 634 (Count 3).

III.  **LEGAL STANDARD**

To survive a motion to dismiss, a complaint must plead sufficient "facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (cleaned up). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Critically here, the Court should not "credit a complaint's conclusory statements without reference to its factual context." *Id.* at 686. Similarly, the Court should not credit "unwarranted deductions of fact" or "unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).

IV.  **ARGUMENT**

A.   **Plaintiffs Fail to Allege They Were Affected by the Alleged Conduct.**

Plaintiffs cannot state a claim by asserting generalized complaints about Defendants' or Microsoft's alleged conduct—they must state sufficient facts to show that the alleged practices actually impacted them. Here, Plaintiffs plead sweeping allegations about others and the public at large and seek industry-wide relief, but they do not plead facts identifying any data of *theirs* that Defendants collectively, or Microsoft specifically, collected or used. And while the Amended Complaint devotes over ten pages to a "brief, non-exhaustive list" of the purported "risks" from generative AI services, FAC ¶¶ 296–339, Plaintiffs do not allege *they* experienced any of the purported harms described in those paragraphs. Rather, they rest on conclusory statements they posted information online or entered prompts into ChatGPT—without alleging what became of their information or their prompts. *See, e.g.*, *id.* ¶¶ 298–301. The lack of allegations about *these* Plaintiffs is particularly conspicuous because both Defendants highlighted this defect in their prior motions to dismiss. It remains fatal to their claims.

As courts faced with similar wiretap and privacy claims have held, plaintiffs must allege facts plausibly showing that the defendant engaged in the allegedly wrongful conduct as to *them*—not as to other hypothetical members of the public or purported class. *See, e.g.*, *Russo v. Microsoft Corp.*, 2021 WL 2688850, at *4 (N.D. Cal. June 30, 2021) (dismissing Wiretap Act claims premised on conduct

plaintiffs failed to allege happened to them).  A plaintiff who fails to allege the defendant's challenged conduct affected them has not pled causation or injury.  *See id.*; *Schulz v. Neovi Data Corp.*, 152 Cal. App. 4th 86, 92 (2007) (dismissing claim because plaintiffs did not allege suffering any damage in fact).

That is precisely the case here:  Plaintiffs do not identify any information of theirs that they claim Microsoft unlawfully collected and used, and do not plead facts plausibly showing that they suffered any harm from any conduct by Microsoft.  This failure alone dooms all of Plaintiffs' alleged causes of action.  Because Plaintiffs have not suffered any damage in fact caused by Microsoft's alleged conduct, they lack statutory standing under the UCL (Count 4).  *Schulz*, 152 Cal. App. 4th at 92.  Similarly, their lack of any injury as a result of Microsoft's conduct means they have no private right of action under CIPA.  *Graham v. Noom, Inc.*, 2021 WL 3602215, at *1 (N.D. Cal. Aug. 13, 2021) (dismissing CIPA § 631 claim where there was "no injury [to create] a private right of action under the statute") (Count 3).  This pleading failure also dooms their ECPA claim (Count 1), *see Russo*, 2021 WL 2688850, at *4, as well as several other claims:  Count 2, *see Cottle v. Plaid Inc.*, 536 F. Supp. 3d 461, 488 (N.D. Cal. 2021) (dismissing CDAFA claim for failure to "plead facts supporting actual damage or loss to Plaintiffs as a result of [the] alleged CDAFA violations"); Count 8, *see Moody v. Rodriguez*, 2022 WL 5236820, at *4 (S.D. Cal. Oct. 4, 2022) (granting summary judgment dismissal of negligence claim where plaintiff was "unable to demonstrate any actual damages"); Counts 9, 10, *see Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010, 1025–1026, 1030 (N.D. Cal. 2012) (dismissing California invasion of privacy claim for failure to allege facts to satisfy "high bar" to establish injury; dismissing conversion claim for failure to plead the "requisite claim for damages" because plaintiff failed to explain how the value of his personal information was harmed), and Count 11, *see Bradshaw v. City of Los Angeles*, 2023 WL 3400634, at *14 (C.D. Cal. Mar. 10, 2023) (dismissing unjust enrichment claim where plaintiff did not allege how defendants' retention of fees "comes at his expense").  And, just as Plaintiffs fail to allege they have been injured in any way, their claims also fail because they do not allege that Microsoft's conduct *caused* them any injury.[9]

---

[9] Plaintiffs' claims require a showing of causation as well as injury.  *See Russo*, 2021 WL 2688850, at *4 (ECPA); Cal. Penal Code § 637.2(a) (creating CIPA private right of action for persons "injured by" a (continued…)

Each of Plaintiff Roberts' Illinois claims fails for similar reasons. The BIPA claim (Count 5) fails because Plaintiff Roberts does not allege facts plausibly showing that Microsoft possessed or obtained her biometric identifiers or information, or otherwise engaged in any of the conduct regulated by BIPA. *See Heard v. Becton, Dickinson & Co.*, 440 F. Supp. 3d 960, 965–69 (N.D. Ill. 2020) (dismissing BIPA claim where plaintiff asserted that the defendant "'collected' his biometric data without alleging how, when, or any other factual detail"); *see also* OpenAI Defs.' Mot. Part III.C.2.c(1). Plaintiff Roberts does not allege she purchased anything from Microsoft, depriving her of statutory standing under the ICFA (Count 6). *See Mighty v. Safeguard Properties Mgmt., LLC*, 2018 WL 5619451, at *9 (N.D. Ill. Oct. 30, 2018); OpenAI Defs.' Mot. Part III.C.2.c(2). Her ICFA claim also fails because she does not allege suffering any actual damage as a result of the alleged violations. *See Kim v. Carter's Inc.*, 598 F.3d 362, 365 (7th Cir. 2010) (affirming dismissal of ICFA claim because the "alleged ICFA violation did not cause the plaintiffs actual damage"). And because Plaintiff Roberts has not alleged that Microsoft engaged in any conduct impacting her, she is unable to establish the "likelihood of future harm" required to state a claim for injunctive relief under the DTPA (Count 7), which does not permit suits for damages. *See FireBlok IP Holdings, LLC v. Hilti, Inc.*, 2021 WL 6049964, at *4 (N.D. Ill. Dec. 21, 2021) (dismissing DTPA claim based on "mere[] speculat[ion] that [the plaintiff] will be harmed in the future").

Plaintiffs cannot excuse the failure to allege causation and injury to them by pointing to the fact

---

violation); *Cottle*, 536 F. Supp. 3d at 488 (CDAFA requires showing that harm occurred "as a result of [the defendant's] alleged CDAFA violations"); *Heard*, 440 F. Supp. 3d at 968 (granting motion to dismiss BIPA claim based on allegations that "merely parrot the statutory language" and did not plausibly establish that the defendant possessed or disclosed any biometric data); *Yeager v. Innovus Pharms., Inc.*, 2019 WL 447743, at *7 (N.D. Ill. Feb. 5, 2019) (DTPA allows private suits for injunctive relief where a plaintiff is or may be "harmed by the unfair trade practices of another"); *Philadelphia Indem. Ins. Co. v. Chicago Title Ins. Co.*, 771 F.3d 391, 402 (7th Cir. 2014) (ICFA requires that plaintiff experience damage "proximately caused by the deceptive act"); *Sims v. AT & T Mobility Servs. LLC*, 955 F. Supp. 2d 1110, 1118 (E.D. Cal. 2013) (conversion claim under California law requires plaintiff to allege that he suffered damages "as a result" of the defendant's "wrongful act"); *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 2011 WL 4501223, at *7 (N.D. Cal. Sept. 28, 2011) (unjust enrichment requires plaintiff to show that retention of benefit "would result in the unjust enrichment of the defendant at the expense of the claimant"); *Kwikset Corp. v. Superior Ct.*, 51 Cal. 4th 310, 322 (2011) (UCL requires that economic injury occurs "as a result of the unfair competition"); *Christensen v. Superior Ct.*, 54 Cal. 3d 868, 900 (1991) (negligence requires "causal connection between the negligence and the plaintiff's injury").

that they have filed a class action. Even in a class action, named plaintiffs "must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class." *Warth v. Seldin*, 422 U.S. 490, 502 (1975); *Russo*, 2021 WL 2688850, at *3 (granting motion to dismiss based on "sparse and conclusory" allegations that "generically state that Microsoft used and shared 'Plaintiffs' and Class Members'' data"); *In re Google Assistant Privacy Litig.*, 2020 WL 2219022, at *7 (N.D. Cal. May 6, 2020) (granting motion to dismiss class action complaint asserting CIPA, ECPA, and invasion of privacy claims where the allegations did "not suffice to show that Plaintiffs' own oral communications were intercepted"). On this basis, alone, the Court should dismiss the Amended Complaint in its entirety.

**B.    Plaintiffs' Shotgun Pleading Still Fails to Satisfy Rule 8.**

Plaintiffs' original Complaint lobbed generalized accusations at "Defendants" without bothering to identify the specific assertions directed towards each Defendant. In its initial motion to dismiss, Microsoft explained that Plaintiffs cannot state a claim against it based on such general allegations, as such an approach runs afoul of Rule 8. Plaintiffs' Amended Complaint adds over eighty pages of new allegations. But Plaintiffs *continue* to lump Defendants together throughout the factual allegations. *E.g.*, FAC ¶¶ 376–383. And the causes of action refer to Defendants almost entirely without differentiation. *E.g.*, *id.* ¶¶ 553–559. Such an approach remains "plainly impermissible under the well-established law in this circuit that so-called 'shotgun pleadings' do not satisfy Rule 8's notice requirement." *Resh, Inc. v. Skimlite Mfg. Inc.*, 2023 WL 2744423, at *2 (N.D. Cal. Mar. 31, 2023).

Plaintiffs' attempt to evade Rule 8 through shotgun pleading again pervades all eleven of their claims, to the extent based on alleged conduct that is pled against "Defendants": (i) "scraping" the internet, (ii) operation of ChatGPT, and/or (iii) "integrating" ChatGPT into non-Microsoft services, including Plaintiffs' allegations of interception by "Defendants" and "OpenAI." *Supra* Part II.C. Plaintiffs fail to plead any facts specific to Microsoft to support those liability theories, and their indistinct allegations

10

directed at "Defendants" do not state claims against Microsoft.[10]

Plaintiffs' pleading failure cannot be excused by their half-hearted attempt to suggest that Microsoft can be liable for conduct of other Defendants under the "alter ego" doctrine. Although Plaintiffs broadly allege that Microsoft "exerts considerable control" over OpenAI based on its investment, *e.g.*, FAC ¶¶ 144, 167–170, investment in a company does not give rise to the investor's liability for the company's actions. *See United States v. Bestfoods*, 524 U.S. 51, 61–62 (1998). Under California law, the narrow alter ego exception to this rule applies only where there is (1) "such a unity of interest and ownership" that "separate personalities of the corporation and the shareholder do not in reality exist" and (2) "an inequitable result if the acts in question are treated as those of the corporation alone." *Sonora Diamond Corp. v. Super. Ct.*, 83 Cal. App. 4th 523, 538 (2000).[11] Courts have found that even allegations

---

[10] *See* 18 U.S.C. § 2520(a) (ECPA allows actions only against entities that "engage[] in th[e] violation"); Cal. Penal Code § 502(c)(2) (CDAFA allows actions only against the "person" who "[k]nowingly accesses and without permission takes, copies, or makes use of any data from a computer, computer system, or computer network"); Cal. Penal Code § 631(a) (CIPA allows actions only against the "person" that "taps, or makes any unauthorized connection" or "reads" without consent during transit, or conspires or aids and abets those violations); Cal. Bus. & Prof. Code §§ 17203–17206 (UCL allows actions only against the party that "engages, has engaged or proposes to engage in unfair competition"); 740 Ill. Comp. Stat. 14/20 (BIPA allows actions only against "offending party" that "violates a provision of this Act"); 815 Ill. Comp. Stat. 505/10a (ICFA allows actions only against the "person" who causes another to "suffer[] actual damage as a result of a violation of [the Act]"); 815 Ill. Comp. Stat. 510/2(a) (Illinois DTPA allows claims only against a "person [who] engages in a deceptive trade practice"); *Romero v. Los Angeles Rams*, 91 Cal. App. 5th 562, 567 (2023) (negligence claim requires "injury to the plaintiff caused by the defendant's breach" of a duty); *Hill v. Nat'l Collegiate Athletic Assn.*, 7 Cal. 4th 1, 40 (1994) (invasion of privacy requires "conduct by defendant" that invaded privacy interest); *Regent All. Ltd. v. Rabizadeh*, 231 Cal. App. 4th 1177, 1181 (2014) (conversion requires "the defendant's disposition of the property in a manner that is inconsistent with the plaintiff's property rights; and . . . resulting damages"); *Peterson v. Cellco P'ship*, 164 Cal. App. 4th 1583, 1593 (2008) (unjust enrichment requires receipt of benefit by defendant from a plaintiff).

[11] Plaintiffs allege California law applies. *See* FAC ¶ 547. Without waiving any future choice or conflict of law arguments, Microsoft assumes for purposes of this motion that California law applies to explain why Plaintiffs cannot state a claim under the law they seek to invoke. The outcome would be the same if the laws of Florida, Illinois, or New York (where the non-California Plaintiffs live), Delaware (where OpenAI is incorporated), or Washington (where Microsoft is based) applied. *See Seybold v. Tazewell Cnty.*, 2022 WL 68385, at *8–10 (C.D. Ill. Jan. 6, 2022) (dismissing claims under "alter ego" theory under Illinois law); *Miami Prod. & Chem. Co. v. Olin Corp.*, 449 F. Supp. 3d 136, 172–174 (W.D.N.Y. 2020) (same under New York law); *Khoros*, 2020 WL 12655516, at *14 (same under Delaware law); *Jet Parts*

(continued…)

of "[t]otal ownership and shared management personnel are insufficient to establish the requisite level of control." *Motul S.A. v. USA Wholesale Lubricant, Inc.*, 2023 WL 5061945, at *6 (N.D. Cal. Aug. 8, 2023). Here, Plaintiffs do not allege that Microsoft is a majority shareholder of OpenAI, *see* FAC ¶ 142, or that Microsoft and OpenAI have shared management, falling far short of the requisite threshold for showing control. Nor do Plaintiffs allege that Microsoft and OpenAI exist as separate entities to perpetrate fraud or injustice. *See Khoros, LLC v. Lenovo (United States), Inc.*, 2020 WL 12655516, at *15 (N.D. Cal. Oct. 5, 2020). OpenAI was formed and operated extensively as an independent entity before Microsoft's investment, *see* FAC ¶¶ 151–152, and Plaintiffs cannot claim that OpenAI was "formed or exist[s] to carry out fraud or similarly inequitable activities" on Microsoft's behalf. *See Khoros*, 2020 WL 12655516, at *15–16. Plaintiffs have no excuse for their undifferentiated shotgun pleading against Defendants.

Leaving aside that lump pleading, the Amended Complaint fails to satisfy Rule 8 for the additional reasons set out in the OpenAI Defendants' motion to dismiss. *See also* OpenAI Defs.' Mot., Part III.A.

      **C.**    **Plaintiffs Fail to State an "Interception" Claim Against Microsoft.**

The Amended Complaint does not elaborate on what Plaintiffs mean by their bald assertions in the ECPA, CIPA, UCL, and negligence causes of action that Microsoft "intercept[s]" "communications" on ChatGPT. FAC ¶ 577. Their theory still seems to be that as part of Microsoft's business relationship with OpenAI, Microsoft "taps" "communications" on OpenAI's ChatGPT service or on third-party services "integrated" with ChatGPT. *See id.* ¶ 580. The Amended Complaint lacks well-pleaded factual allegations about how Microsoft has performed this alleged "intercept[ion]." Plaintiffs first claim that Microsoft "intercept[s]" their "communications which occurred on [the] ChatGPT platform." *Id.* ¶ 577. But then Plaintiffs pivot to allegations that "Defendants" access user data by "integrating ChatGPT technology on third party platforms," *id.* ¶ 579, and contend that Microsoft "intercepts" communications with "third party entities (integrated within ChatGPT through plug-in technologies)," *id.* ¶ 580. Nowhere in these scattershot assertions do Plaintiffs allege any ***plausible*** facts showing Microsoft actually had any

---

*Eng'g, Inc. v. Quest Aviation Supply, Inc.*, 2017 WL 1093205, at *7 (W.D. Wash. Mar. 23, 2017) (same under Washington law); *S-Fer Int'l, Inc. v. Stonesheets, LLC*, 2016 WL 8808749, at *4 (S.D. Fla. July 22, 2016) (same under Florida law).

ability to perform the alleged interception of Plaintiffs' "communications" with non-Microsoft platforms. Plaintiffs' second Microsoft-directed theory of liability, which relies on an assertion that ChatGPT is "integrat[ed]" within "various Microsoft platforms" so as to allow "Defendants" to "intercept" "communications" from users of those services, fares no better. *Id.* ¶¶ 587–590, 640. Plaintiffs again provide no well-pleaded factual allegations explaining how Microsoft (or OpenAI) performed this alleged "interception." The Court should dismiss Plaintiffs' claims based on these conclusory allegations. *See Google Assistant*, 457 F. Supp. 3d at 816–17 (dismissing federal wiretap claims where plaintiffs failed to plead sufficient facts to show they interacted with defendant's technology and were recorded); *Cook v. GameStop, Inc.*, 2023 WL 5529772, at *6–7 (W.D. Pa. Aug. 28, 2023) (dismissing Pennsylvania wiretap claims where plaintiff alleged only "potential capabilities" of the technology).

Even if the Court were to credit Plaintiffs' conclusory assertions of interception, Plaintiffs' Microsoft-directed claims would still fail because Plaintiffs do not identify any "communications" *of theirs* that Microsoft allegedly intercepted on ChatGPT or that either Microsoft or OpenAI intercepted on a Microsoft platform "integrating" ChatGPT—much less any intercepted "confidential" communication. *Supra* Part IV.A.

Finally, the interception claims fall short for the same reasons explained in the OpenAI Defendants' motion to dismiss, which Microsoft incorporates by reference. The claims against Microsoft for violations of the ECPA (Count 1) fail because the ECPA is a one-party consent statute and, in every instance here, at least one party consented to the alleged interception. *See* OpenAI Defs.' Mot., Part III.B.1. Plaintiffs likewise fail to explain how Microsoft (or OpenAI) intercepted their "communications" during transmission, which is dispositive of their ECPA and CIPA (Count 3) claims. *See id.* Part III.B.1–2. They are also unable to allege the interception of any "confidential" communication under CIPA section 632, and have not adequately pled any claim under CIPA section 631(a). *See id.* Part III.B.2. Likewise, the UCL claim (Count 4) fails because Plaintiffs do not allege economic injury as a result of Microsoft's (or OpenAI's) conduct, cannot show a basis for restitution, and have not stated a claim under either statutory prong they invoke. *See id.* Part III.C.1. Finally, the negligence claim (Count 8) fails because Plaintiffs have not alleged non-conclusory facts showing Microsoft (or OpenAI) owed

them a duty of care (dispositive of their negligence claim).  *See id.* Part III.C.3 (Plaintiffs failed to allege facts giving rise to a duty of care owed by OpenAI).

###    D.     The Court Should Dismiss Plaintiffs' Remaining Claims.

Microsoft incorporates by reference the OpenAI Defendants' arguments for dismissal regarding Plaintiffs' CDAFA (Count 2), BIPA (Count 5), ICFA (Count 6), DTPA (Count 7), invasion of privacy (Count 9), conversion (Count 10), and unjust enrichment (Count 11) claims.  *See* OpenAI Defs.' Mot. Parts III.B.3, III.C.2.b–c, III.D–III.F.  In each of these claims, Plaintiffs offer no allegations specific to Microsoft, instead making only generalized assertions about "Defendants'" alleged wrongdoing.

###    E.     The Court Should Dismiss Plaintiffs' Frivolous Injunctive Relief Demand.

Plaintiffs ask the Court to impose a "commercial pause" on AI-related activities and to empanel "an independent body of thought leaders" to decide the future of AI.  This injunctive relief request is extraordinary in its reach.  In some respects, such as their demand for "technological safety measures to . . . prevent the technology from surpassing human intelligence" (FAC ¶ 535), Plaintiffs seek an advisory order about future hypothetical conduct, which is improper and should be denied on that basis alone.  *See, e.g.*, *Brown v. Google, LLC*, 2023 WL 4336718, at *1 (N.D. Cal. May 1, 2023) ("[T]he Court does not have the constitutional authority to clarify a hypothetical situation not before it.").  Other injunctive demands ask the Court to engage in policy-making to identify and oversee various panels of experts who would evaluate future product features.  And Plaintiffs' request to "bar[] [the] further commercial deployment" of AI products, FAC ¶ 535, asks the Court do so something that neither the Executive nor Legislative Branch of the U.S. Government has seen fit to propose.[12]  What's more, Plaintiffs fail to tether their requested injunctive relief in any respect to their actual causes of action, all of which depend on alleged past violations of their privacy rights.  *See, e.g.*, *Greenstein v. Noblr Reciprocal Exchange*, 585 F. Supp. 3d 1220, 1232 (N.D. Cal. 2022) (dismissing claims where requested injunctive relief "would have little impact" on the prior disclosure of the plaintiff's personal information).  The Court should dismiss Plaintiffs' request for injunctive relief.

---

[12] Exec. Order No. 14110, 88 FR 75191, *available at* https://www.federalregister.gov/d/2023-24283; S. 3312, 118th Cong. (2023), *available at* https://www.congress.gov/bill/118th-congress/senate-bill/3312/.

## V. CONCLUSION

Microsoft respectfully requests that the Court dismiss all claims against it with prejudice.

DATED: February 8, 2024

Respectfully submitted,

 /s/ Isaac D. Chaput 

Emily Johnson Henn (Bar No. 269482)
Kathryn E. Cahoy (Bar No. 298777)
COVINGTON & BURLING LLP
3000 El Camino Real
5 Palo Alto Square, 10th Floor
Palo Alto, California 94306
Telephone: + 1 (650) 632-4700
Facsimile: + 1 (650) 632-4800
Email: ehenn@cov.com
Email: kcahoy@cov.com

Ashley M. Simonsen (Bar No. 275203)
COVINGTON & BURLING LLP
1999 Avenue of the Stars
Los Angeles, California 90067
Telephone: + 1 (424) 332-4800
Facsimile: + 1 (424) 332-4749
Email: asimonsen@cov.com

Isaac D. Chaput (Bar No. 326923)
COVINGTON & BURLING LLP
Salesforce Tower
415 Mission Street, Suite 5400
San Francisco, California 94105
Telephone: + 1 (415) 591-6000
Facsimile: + 1 (415) 591-6091
Email: ichaput@cov.com

*Attorneys for Defendant Microsoft Corporation*