**MORGAN & MORGAN COMPLEX LITIGATION GROUP**
Michael F. Ram (SBN 104805)
mram@forthepeople.com
711 Van Ness Ave, Suite 500
San Francisco, CA 94102
Tel.: (415) 358-6913

**MORGAN & MORGAN COMPLEX LITIGATION GROUP**
John A. Yanchunis (*pro hac vice*)
jyanchunis@forthepeople.com
Ryan J. McGee (*pro hac vice*)
rmcgee@forthepeople.com
201 N. Franklin St., 7th Floor
Tampa, FL 33602
Tel.: (813) 223-5505

**CLARKSON LAW FIRM, P.C.**
Ryan J. Clarkson (CA SBN 257074)
*rclarkson@clarksonlawfirm.com*
Yana Hart (CA SBN 306499)
*yhart@clarksonlawfirm.com*
Tiara Avaness (CA SBN 343928)
*tavaness@clarksonlawfirm.com*
22525 Pacific Coast Highway
Malibu, CA 90265
Tel: (213) 788-4050

**CLARKSON LAW FIRM, P.C.**
Tracey Cowan (CA SBN 250053)
*tcowan@clarksonlawfirm.com*
95 3rd St., 2nd Floor
San Francisco, CA 94103
Tel: (213) 788-4050

*Counsel for Plaintiffs and the Proposed Classes*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PLAINTIFFS MARILYN COUSART; NICHOLAS GUILAK; PAUL MARTIN; BREONNA ROBERTS; CAROLINA BARCOS; JAIR PAZ; ALESSANDRO DE LA TORRE; VLADISSLAV VASSILEV; SEAN ALEXANDER JOHNSON; JENISE MCNEAL; N.B, a minor; LORENA MARTINEZ; JOHN HAGAN, individually, and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>OPENAI LP; OPENAI INCORPORATED; OPENAI GP, LLC; OPENAI STARTUP FUND I, LP; OPENAI STARTUP FUND GP I, LLC; OPENAI STARTUP FUND MANAGEMENT LLC; MICROSOFT CORPORATION and DOES 1 through 20, inclusive,<br><br>Defendants. | Case No.: 23-cv-04557-VC<br><br>**PLAINTIFFS' OPPOSITION TO MICROSOFT CORPORATION'S MOTION TO COMPEL ARBITRATION AND STAY CLAIMS**<br><br>Date:  April 11, 2024<br>Time: 10:00 a.m.<br>Place: Courtroom 4<br><br>Judge: The Honorable Vince Chhabria |

## TABLE OF CONTENTS

I.    INTRODUCTION ...................................................................................................1

II.   FACTUAL BACKGROUND .................................................................................2

III.  LEGAL STANDARD ............................................................................................5

IV.  ARGUMENT ........................................................................................................5

     A.  No Valid Arbitration Agreement Exists ......................................................5

         i.    Plaintiffs Guilak's and Paz's original account creation process ........................6

         ii.   Plaintiffs' account creation process after 2012 ..................................................9

     B.  Plaintiffs' Claims Are Outside the Scope of the Agreement .......................................10

     C.  Under California Law Claims Seeking Public Injunctive Relief

         Cannot Be Arbitrated ..............................................................................12

     D.  Microsoft's MSA is Both Procedurally and Substantively Unconscionable ...............12

         i.    Microsoft's MSA is a procedurally unconscionable contract of adhesion.......13

         ii.   Microsoft's MSA is substantively unconscionable ..........................................14

V.    CONCLUSION....................................................................................................15

## TABLE OF AUTHORITIES

**Cases**                                                                                   **Page(s)**

*Applebaum v. Lyft, Inc.,*
    263 F. Supp. 3d 454 (S.D.N.Y. 2017) ................................................................10

*Aral v. EarthLink, Inc.,*
    134 Cal.App.4th 544 (2005) .............................................................................14

*Armendariz v. Found. Health Psychcare Servs., Inc.*,
    24 Cal.4th 83 (2000) ................................................................................ *passim*

*Ashbey v. Archstone Prop. Mgmt., Inc.,*
    785 F.3d 1320 (9th Cir. 2015) ..........................................................................7

*AT&T Mobility LLC v. Concepcion,*
    563 U.S. 333 (2011) ...................................................................................5, 12

*AT&T Techs., Inc. v. Commc'ns Workers of Am.*,
    475 U.S. 643 (1986) ..........................................................................................5

*Berman v. Freedom Fin. Network, LLC*,
    30 F.4th 849 (9th Cir. 2022) ....................................................................5, 7, 10

*Blair v. Rent-A-Center, Inc.,*
    928 F.3d 819 (9th Circ. 2019) ........................................................................12

*Brennan v. Opus Bank*,
    796 F.3d 1125 (9th Cir. 2015) ..........................................................................5

*Burrus v. Elevance Health, Inc.*,
    No. 2:22-cv-09433-JLS-MAR,
    2023 U.S. Dist. LEXIS 230308 (C.D. Cal. Oct. 24, 2023)................................6

*Chavarria v. Ralphs Grocery Co.*,
    733 F.3d 916 (9th Cir. 2013) ..........................................................................13

*Deleon v. Verizon Wireless, LLC*,
    207 Cal.App.4th 800 (2012) ..............................................................................5

PLAINTIFFS' OPPOSITION TO MICROSOFT CORPORATION'S MOTION TO COMPEL
ARBITRATION AND STAY CLAIMS
Case No.: 23-cv-04557-VC

*Dohrmann v. Intuit, Inc.*,

    823 F. 482 (9th Cir. 2020) ................................................................................7

*Gentry v. Super. Ct.*,

    42 Cal.4th 443 (2007) .................................................................................14

*Graham Oil Co. v. ARCO Prods. Co.*,

    43 F.3d 1244 (9th Cir. 1995) .......................................................................15

*Harris v. Tap Worldwide, LLC*,

    248 Cal.App.4th 373 (2016) ........................................................................14

*Hovis v. Homeaglow, Inc.*,

    No. 3:23-cv-00045-BTM-WVG,

    2023 U.S. Dist. LEXIS 136513 (S.D. Cal. Aug. 4, 2023) ................................15

*In re Facebook Biometric Info. Priv. Litig.*,

    185 F. Supp. 3d 1155 (N.D. Cal. 2016)..........................................................8

*In re Juul Labs, Inc., Antitrust Litig.*,

    555 F. Supp. 3d 932 (N.D. Cal. 2021) ...........................................................13

*In re Uber Techs., Inc.*,

    2019 WL 6317770 (C.D. Cal. Aug. 19, 2019) ................................................8

*Jackson v. Amazon.com, Inc.*,

    65 F.4th 1093 (9th Cir. 2023) ................................................................6, 11

*Kilgore v. KeyBank, Nat'l Ass'n*,

    718 F.3d 1052 (9th Cir. 2013) ....................................................................12

*Knutson v. Sirius XM Radio Inc.*,

    771 F.3d 559 (9th Cir. 2014) .................................................................5, 9

*Lamps Plus, Inc. v. Varela*,

    587 U.S. 1407 (2019)...................................................................................7

*Lee v. Ticketmaster L.L.C.*,

    817 F. 393 (9th Cir. 2020) ...........................................................................7

PLAINTIFFS' OPPOSITION TO MICROSOFT CORPORATION'S MOTION TO COMPEL
ARBITRATION AND STAY CLAIMS
Case No.: 23-cv-04557-VC

*Leslie v. Brown Bros. Inc.*,

    208 Cal. 606 (1929) ..................................................................................................9

*MacClelland v. Cellco P'ship*,

    No. 21-cv-08592-EMC,

    2022 WL 2390997 (N.D. Cal. July 1, 2022).............................................................12, 14

*McGill v. Citibank, N.A.*,

    2 Cal.5th 945 (2017) ...............................................................................................12

*Newton v. Am. Debt Servs.*,

    854 F. Supp. 2d 712 (N.D. Cal. 2012) ..................................................................15

*Norcia v. Samsung Telecommc'ns Am.*, LLC,

    2014 WL 4652332 (N.D. Cal. Sept. 18, 2014) ......................................................5

*Norcia v. Samsung Telcoms. Am., LLC*,

    845 F.3d 1279 (9th Cir. 2017).................................................................................9

*Oberstein v. Live Nation Ent., Inc.*,

    60 F.4th 505 (9th Cir. 2023)..............................................................................5, 7

*Pokorny v. Quixtar*,

    601 F.3d 987 (9th Cir. 2010)...............................................................................14

*Ramos v. Super. Ct.*,

    28 Cal.App.5th 1042 (2018) ................................................................................11

*Rui Chen v. Premier Fin. All., Inc.*,

    No. 18-CV-3771 YGR,

    2019 WL 280944 (N.D. Cal. Jan. 22, 2019) .........................................................5

*Sadlock v. Walt Disney Co.*,

    2023 WL 4869245 (N.D. Cal. July 31, 2023)........................................................8

*Shuman v. Squaretrade Inc.*,

    No. 20-cv-02725-JCS,

    2020 U.S. Dist. LEXIS 261594 (N.D. Cal. Aug. 31, 2020)..................................9

*Sifuentes v. Dropbox, Inc.*,

    No. 20-cv-07908-HSG,

    2022 U.S. Dist. LEXIS 125273 (N.D. Cal. June 29, 2022) ................................................8

*Szetela v. Discover Bank*,

    97 Cal.App.4th 1094 (2002) ....................................................................................14

*Suski v. Coinbase, Inc.*,

    55 F.4th 1227 (9th Cir. 2022) ...................................................................................5

*Theodore v. Uber Techs., Inc.*,

    442 F. Supp. 3d 433 (D. Mass. 2020) .............................................................................10

*Three Valleys Mun. Water Dist. v. E.F. Hutton & Co.*,

    925 F.2d 1136 (9th Cir. 1991) ...................................................................................5

*Ting v. AT&T*,

    319 F.3d 1126 (9th Cir. 2003) ..................................................................................13

*United States ex rel. Welch v. My Left Foot Children's Therapy, LLC*,

    871 F.3d 791 (9th Cir. 2017) ...................................................................................11

*Vaughn v. Tesla, Inc.*,

    87 Cal.App.5th 208 (2023) ....................................................................................12

*Vianu v. AT&T Mobility LLC*,

    No. 19-cv-03602-LB,

    2020 U.S. Dist. LEXIS 261419 (N.D. Cal. Mar. 2, 2020) .................................................12

*West v. Uber Techs*,

    2018 WL 5848903 (C.D. Cal. Sept. 5, 2018) ....................................................................8

*Winfrey v. Kmart Corp.*,

    692 F. 356 (9th Cir. 2017) ....................................................................................15

**Rules & Statutes**

Bus. & Prof. Code, § 17200 .................................................................................12

Cal. Civ. Code, § 3513 .......................................................................................12

Cal. Pen. Code, § 502 .........................................................................................12

Cal. Pen. Code, § 631 .........................................................................................12

18 U.S.C. § 2510 .................................................................................................12

PLAINTIFFS' OPPOSITION TO MICROSOFT CORPORATION'S MOTION TO COMPEL
ARBITRATION AND STAY CLAIMS
Case No.: 23-cv-04557-VC

I.       **INTRODUCTION**

For the last decade, OpenAI and Microsoft have been secretly harvesting granular user data and personal information of millions of Americans from all over the internet and using it to develop artificial intelligence ("AI") technology. Like all internet users, none of the thirteen plaintiffs in the First Amended Complaint ("FAC") consented to Microsoft and OpenAI's mass theft of information from thousands of websites, platforms, and products that neither company owns or operates, to build for themselves wildly profitable and powerful AI products that effectively repackage the stolen information to sell back to consumers while risking the future of mission-critical industries like journalism, creating dangerous new industries like the high-speed spawning of child pornography, and otherwise putting the safety of everyday people at risk through untested and volatile AI Products they rushed to market without adequate safeguards, electing instead to put profits over humanity.

Despite the immense scope of Microsoft's unlawful conduct transcending any single Microsoft platform, its motion to compel (the "Motion") seeks to foist arbitration on three of the thirteen plaintiffs (the "Plaintiffs"). The thrust of its argument is that long before its product "Bing Chat" even existed and became powered by AI, and in some cases over a decade ago, Plaintiffs surrendered all their rights to proceed in a court of law because they created a Microsoft account to use some pre-AI product at the time (Word, Azure, or some other service not at issue here). Microsoft's argument lacks credibility on its face. It also is not supported by law or fact.

First, Microsoft attempts to bridge the obvious timing problem as to assent by pointing to "new terms." But as the FTC recently warned companies: in the new AI economy, where user (training) data is gold, companies may not quietly, deceptively, and retroactively change terms and call it "consent." That is precisely the situation here. Plaintiffs did not assent to any new terms because Microsoft failed to provide reasonably conspicuous notice, much less require the type of affirmative act from Plaintiffs that would satisfy Microsoft's burden to demonstrate assent.

Second, Microsoft has a scope problem: Plaintiffs' claims fall outside of Microsoft's Master Service Agreement ("MSA") because "Bing Chat," as with all of Microsoft's AI products,

PLAINTIFFS' OPPOSITION TO MICROSOFT CORPORATION'S MOTION TO COMPEL
ARBITRATION AND STAY CLAIMS
Case No.: 23-cv-04557-VC

was not a part of the parties' original agreement (if such agreement had even been formed, which is disputed). Most certainly, Microsoft cannot *now* credibly claim that its theft of data across the entire internet and consumers' claims arising out of Microsoft's development of AI products must be arbitrated because consumers used the Office suite in the past.

Third, Microsoft's own interpretation of the scope of its MSA renders the MSA unconscionable. No one should be forced to surrender all their rights, for using a pre-AI Microsoft service at some time in the past, to a judicial determination of whether Microsoft had the right to interfere with Plaintiffs' property and conduct *anywhere* on the internet to develop AI products. It would be unjust to permit Microsoft to extend its MSA to virtually any legal claim, product, or service, regardless of how remote and attenuated it is from the product or service for which the account was created. This is especially true here: Plaintiffs, like the rest of the world, could have never imagined what OpenAI and Microsoft were up to ten, five, even just one year ago, before they exploded onto the market with never-before-seen technology. Thus, *no one* reasonably surrendered their rights to have these critical issues determined by a court of law, and the Motion should be denied in its entirety.

## II.    FACTUAL BACKGROUND

Microsoft's Motion is premised on three Plaintiffs supposedly consenting to arbitration simply because they used Microsoft Office, Outlook, or some other non-AI product. MTC at p. 1. According to Microsoft, a decade ago three Plaintiffs would have encountered an account creation process upon activating a Microsoft account to use pre-AI services, during which they purportedly "agreed" to terms that now bind them to arbitration—for claims that go far beyond their use of any Microsoft product. *Id.* Microsoft contends their account creation process has not changed in years. Microsoft's *current* account creation process was recreated by Plaintiffs' counsel and is as follows:

To begin, users are prompted to enter their email address; no reference to any terms is provided. *See* Hart Decl. ¶ 4. After entering their email, users can press "enter" on their keyboard or click a "**Next**" button. *Id.* ¶ 5. The next screen asks users to create a password. After entering the password, when a user presses "enter" they are immediately sent to the next screen—bypassing

PLAINTIFFS' OPPOSITION TO MICROSOFT CORPORATION'S MOTION TO COMPEL
ARBITRATION AND STAY CLAIMS
Case No.: 23-cv-04557-VC

the references to the terms inconspicuously shown on the screen in much smaller font and underneath the checked box for "information, tips, and offers about Microsoft products and services." *Id.* ¶ 7. The terms are inconspicuously listed below, where in much smaller font, Microsoft states "Choosing **Next** means that you agree to the [MSA] and [Privacy Statement]." *Id.* ¶ 5. On this page, Microsoft also prompts a self-generated password, when the mouse is hovering over "create a password" section—which is what the user must do. Hart Decl. ¶ 6. Notably, the deceptive dark pattern Microsoft employs here is stark: this suggested password feature blocks *entirely* the reference to Microsoft's MSA and Privacy Statement. *Id*.

In Plaintiffs Guilak's and Paz's MSA (from when they originally created their accounts) Microsoft did not have arbitration terms. *See* Fogarty Decl., ¶¶ 8, 9. Plaintiffs Guilak and Paz, when creating another account in 2017, and Plaintiff Martin in 2015, also did not see any references to the MSA. Martin ¶¶ 9-11; Guilak ¶¶ 5-8; Paz ¶¶ 6-10. All Plaintiffs have been using some of the Microsoft services without the need to create or sign into an account prior to their account creation (such as Bing, Edge, etc.). Martin ¶ 4; Guilak ¶ 4; Paz ¶ 4. Plaintiffs do not recall seeing the "I agree" button, and believe they saw the button "Next," when creating their accounts. Martin ¶ 10; Guilak ¶ 7; Paz ¶ 9. In retracing their steps, they also believe they were not required to click any such buttons, and instead, they were only asked to type their passwords, after which they were sent to the last screens of account creation. Martin ¶¶ 10, 11; Guilak ¶¶ 7, 8; Paz ¶¶ 9, 10. None of the Plaintiffs realized that some voluminous terms were depicted during the account creation process. Martin ¶¶ 4, 5, 7, 10, 12; Guilak ¶¶ 9-11, 15; Paz ¶¶ 4, 6, 11, 12, 21. Neither Plaintiff at any point allowed Microsoft to scrape or intercept their data from Microsoft platforms or other platforms to fuel Microsoft's AI products. Martin ¶¶ 4, 5, 7, 14, 18; Guilak ¶¶ 4-10, Paz ¶¶ 4-6, 19, 20. When all Plaintiffs created their accounts (and not until 2023), neither the MSA nor the Privacy Statement referenced AI policies or products,[1] or that Microsoft intends to use Plaintiffs'

---

[1] Although Microsoft failed to produce agreements which existed when Guilak and Paz created their accounts, the 2014 agreement omits AI products entirely, and limits the MSA to specific products. *See* Fogarty Decl. Exh. 2.

and users' information without users' consent to develop AI products. Martin ¶ 14; Guilak ¶¶ 4, 5; Paz ¶ 4. Microsoft's Privacy Statement has been changed over 50 times since 2015, **without notice to or consent from consumers**.[2]

Even after filing this lawsuit, Microsoft yet again updated its MSA to re-define Covered Services, as of November 2023, and yet again it provided no notice. *See* Fogarty Decl., ¶ 7. Microsoft's complex and confusing MSA consists of 22 pages, with 92 hyperlinks to additional disclosures/statements, totaling *thousands* of pages.[3] According to Microsoft, despite the lack of notice to the users of these terms, as long as any user at some point created an account for use of a *specific* product (i.e., Outlook, Azure, or Office), any dispute arising between Microsoft and such user related to a *different* Microsoft product (e.g., Bing Chat) must be arbitrated. MTC at p. 2-3. Microsoft also goes a step beyond, arguing that *all claims* related to Microsoft's illegal conduct— including theft of data from thousands of non-Microsoft websites—must be arbitrated because Plaintiffs had some connection with Microsoft.

Plaintiffs, as reasonable internet users, could not begin to imagine that by solely clicking "enter" on their keyboard to create a Microsoft account—at least a decade or more ago—they would allow Microsoft not only to bind them to their ever-changing complicated terms, but also be permitting Microsoft to later change its privacy policies to grant itself rights to misuse Plaintiffs' data (without users' assent or knowledge) to train AI products and services. Martin ¶ 18; Guilak ¶¶ 4, 5, 9, 10; Paz ¶¶ 4-6, 19, 20. If that is a reasonable interpretation, then the law compels the Court to find the MSA necessarily unconscionable.

## III.   LEGAL STANDARD

Because arbitration is a matter of contract, "a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *AT&T Techs., Inc. v. Commc'ns*

---

[2] *Change History for Microsoft Privacy Statement,* MICROSOFT, https://privacy.microsoft.com/en-US/updates (last visited March 3, 2024); *see also Defendant's Exhibit 3 attached*, Fogarty Decl. ¶ 4 (stating Microsoft updated the terms of Privacy Statement but **intentionally omitting that it notified any Plaintiffs regarding this update**).

[3] For full access to all hyperlinks and documents *see Microsoft Services Agreement,* MICROSOFT, https://www.microsoft.com/en-us/servicesagreement (last visited March 6, 2024).

*Workers of Am.*, 475 U.S. 643, 648 (1986) (citation omitted). The burden of proving an agreement

to arbitrate rests on Microsoft, and it must do so "by a preponderance of the evidence." *Knutson v.*

*Sirius XM Radio Inc.*, 771 F.3d 559, 565 (9th Cir. 2014). On a motion to compel arbitration, courts

consider two factors: (1) is there an agreement to arbitrate between the parties; and (2) if so, does

the agreement cover the dispute. *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015). An

arbitration agreement may be invalidated by "generally applicable contract defenses, such as fraud,

duress, or unconscionability[.]" *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 343 (2011). In

deciding whether a genuine issue of fact exists as to formation, "the party opposing arbitration

shall receive 'the benefit of all reasonable doubts and inferences.'" *Rui Chen v. Premier Fin. All.,*

*Inc.*, No. 18-CV-3771 YGR, 2019 WL 280944, at *2 (N.D. Cal. Jan. 22, 2019) (quoting *Three*

*Valleys Mun. Water Dist. v. E.F. Hutton & Co.*, 925 F.2d 1136, 1141 (9th Cir. 1991)).

Typically, formation, scope, and arbitrability of issues are for the court to decide. *See Suski*

*v. Coinbase, Inc.*, 55 F.4th 1227, *4 (9th Cir. 2022). Furthermore, the MSA (regardless of its

applicability, which is disputed) also delegates these questions to the Court. MSA § 15(d).

## IV.    ARGUMENT

### A.    No Valid Arbitration Agreement Exists.

An enforceable agreement to arbitrate may only be found where "(1) the website provides

reasonably conspicuous notice of the terms to which the consumer will be bound; and (2) the

consumer takes some action, such as clicking a button or checking a box, that unambiguously

manifests his or her assent to those terms." *Oberstein v. Live Nation Ent., Inc.*, 60 F.4th 505, 515

(9th Cir. 2023). California law, not the Federal Arbitration Act ("FAA"), controls the threshold

issue of the existence of an agreement, and "there is no thumb on the scale in favor of finding an

arbitration agreement to exist." *Norcia v. Samsung Telecommc'ns Am., LLC*, 2014 WL 4652332,

at *4 (N.D. Cal. Sept. 18, 2014), aff'd, 845 F.3d 1279 (9th Cir. 2017); *accord Berman v. Freedom*

*Fin. Network, LLC*, 30 F.4th 849, 855 (9th Cir. 2022). In California, contract formation relies upon

mutual consent, "generally achieved through the process of offer and acceptance." *Deleon v.*

*Verizon Wireless, LLC*, 207 Cal.App.4th 800, 813 (Cal. Ct. App. 2012). An offeree may not be

bound to "inconspicuous contractual provisions of which he was not aware," regardless of apparent consent. *Jackson v. Amazon.com, Inc.*, 65 F.4th 1093, 1099 (9th Cir. 2023).

Here, Microsoft contends that Plaintiffs Guilak, Paz, and Martin created their first Microsoft accounts in 2001, August 2012, and 2015, respectively. MTC at p. 6. However, the 2001 and August 2012 agreements lacked *any* arbitration terms, and were not known as "MSA." Fogarty Decl. ¶ 2. Microsoft also has not met its burden in establishing that Plaintiffs' Guilak and Paz agreed to any modified agreement (the newly developed MSA) containing additional and materially different terms. As for the supposed agreements in 2015 (Martin) and 2017 (related to Guilak's and Paz's different email addresses), Plaintiffs were not actively required to assent to any terms.

### i.    *Plaintiffs Guilak's and Paz's original account creation process.*

Neither Plaintiff Guilak nor Paz recalls accepting Microsoft's voluminous terms generally, much less arbitration specifically. This is consistent with the fact that they created Microsoft accounts *prior to* October 19, 2012 i.e., before Microsoft developed an MSA, which contained arbitration terms. MTC at p. 5; Fogarty Decl. ¶ 8. Microsoft also presents no evidence Guilak and Pazhad subsequently had "actual knowledge" or even "inquiry notice" of the substantially and materially different terms, including an arbitration provision; nor that they affirmatively assented to new terms.

With the evidentiary burden squarely on Microsoft, its Motion independently fails for another reason—it has not provided the original agreements. The Court therefore cannot conclude Plaintiffs ever agreed Microsoft could later change terms at all, and if they did, on what terms, on what grounds, and by what methods. *See Burrus v. Elevance Health, Inc.*, No. 2:22-cv-09433-JLS-MAR, 2023 U.S. Dist. LEXIS 230308, at *4 (C.D. Cal. Oct. 24, 2023) (holding that without the original agreement, they could not "determine the 'gateway' issues of whether the [original] agreement [wa]s a valid, enforceable agreement that 'encompasses the dispute at issue'") (citing *Ashbey v. Archstone Prop. Mgmt., Inc.*, 785 F.3d 1320 (9th Cir. 2015)).

Second, even *if* the Court were willing to assume Microsoft could change its terms unilaterally under the original agreements, without seeing them, Microsoft's "email updates" and "interruption" notifications fall short of the Ninth Circuit's requirements to: (a) provide reasonably conspicuous notice of the new agreement and terms; and (b) obtain proper assent from Plaintiffs to the new and materially different terms. *See Berman v. Freedom Financial Network, LLC,* 30 F.4th 849, 855 (9th Cir. 2022) (holding that to establish "inquiry notice" a website operator must: (1) provide a "reasonably conspicuous notice of the terms to which the consumer will be bound;" and (2) "the consumer takes some action, such as clicking a button or checking a box, that unambiguously manifests his or her assent to those terms.). Microsoft must "prominently display" important terms instead of disguising them "in fine print," and later changing them again and again without obtaining users' consent to such new terms. *Id.*; *Lamps Plus, Inc. v. Varela*, 587 U.S. 1407, 1415 (2019) (The Supreme Court has repeatedly proclaimed that "arbitration is strictly a matter of consent.") (cleaned up).

Here, Microsoft's purported mass email updates or interruption notices did not require Plaintiffs Guilak and Paz to actively click or otherwise affirmatively assent to materially different terms; nor did the single interruption notification on which Microsoft relies.[4] Guilak ¶ 12; Paz Decl. ¶ 13; Fogarty Decl. ¶¶ 3, 4. Neither Plaintiff saw these mass email updates. Guilak ¶ 12; Paz Decl. ¶ 13. Neither Plaintiff had any expectation or notice they were required to thoroughly monitor every mass "update" (including misleading emails "Your Services Agreement made clearer" instead of *"broader"*), or that failure to do so could bind them to over 150 pages with materially different terms. The interruption notices are even more vague, merely announcing that Microsoft is "***updating***" its MSA, not that the MSA was updated with material changes, or will be effective on a certain date. Microsoft presents no evidence (there is none) that it required Plaintiffs

---

[4] Defendant relies on distinguishable case law. *See Oberstein*, 60 F.4th 505, 516 (requiring users to actively click on the button to assent to Terms of Use); *Dohrmann v. Intuit, Inc.*, 823 F. App'x 482, 484 (9th Cir. 2020) (agreement was formed based on a conspicuous notice)); *Lee v. Ticketmaster L.L.C.*, 817 F. App'x 393, 394–95 (9th Cir. 2020) (holding plaintiff had indicated his assented to Ticketmaster's Terms of Use "roughly twenty times during the relevant period" and thus could not argue lack of actual notice).

to read email updates or act on them in any way, for example, by clicking on a box or otherwise confirming assent.

Courts find similar email updates and notices regarding material changes insufficient to establish formation or assent to the new terms. *See e.g. Sifuentes v. Dropbox, Inc.,* No. 20-cv-07908-HSG, 2022 U.S. Dist. LEXIS 125273, *11 (N.D. Cal. June 29, 2022) (without any action to "unambiguously manifest [] assent," emails alone were not sufficient for notice to updated terms, therefore the new terms were unenforceable against plaintiff); *Sifuentes v. Dropbox, Inc.,* No. 20-cv-07908-HSG, 2022 U.S. Dist. LEXIS 125273, at *12 (N.D. Cal. June 29, 2022) (holding email updates were insufficient to provide reasonably conspicuous notice, even despite original terms that defendant could modify with a mere update). As Judge Gilliam explained in *Sifuentes,* defendant's unilateral right to change terms and later notify users with an email "essentially "disavows any obligation to alert plaintiff to changes" and is contrary to Ninth Circuit precedent. 2022 U.S. Dist. LEXIS 125273, at *12. The insufficient email updates in *Sifuentes*, like those here, did not require users to read the terms, click on anything, or review anything at all. The same conclusion—no assent—should thus follow here.[5]

Therefore, Plaintiff Paz's and Plaintiff Guilak's original agreements (**which Microsoft failed to proffer into evidence despite its burden**), created prior to the introduction of any arbitration clause, do not bind them to later-added different and inconspicuous terms, to which Plaintiffs did not assent. Any argument that "acceptance" can be found in continued use or failure to terminate their Microsoft accounts also fails. *See e.g. Knutson*, 771 F.3d at 565 (automatic assent

---

[5] Microsoft's case law is distinguishable. *Sadlock v. Walt Disney Co.*, 2023 WL 4869245, at *12 (N.D. Cal. July 31, 2023) (email updates sent to the customers expressly provided for the contractual change by stating a new material provision had been included, it was not buried or difficult to discern within the email); *In re Facebook Biometric Info. Priv. Litig.*, 185 F. Supp. 3d 1155, 1167 (N.D. Cal. 2016) (the court found an email sent to all users entitled "We are Updating our Terms and Policies and Introducing Privacy Basics" was sufficient notice for users to be aware of the privacy terms, because the subject of the email indicated that privacy policies would be addressed); *In re Uber Techs., Inc.*, 2019 WL 6317770, *2-4, (C.D. Cal. Aug. 19, 2019) (the court found an email sent to users which expressly and conspicuously stated Uber "revised [its] arbitration agreement which explains how legal disputes are handled" was sufficient for a user to be on notice that the arbitration agreements had been modified); *West v. Uber Techs*, 2018 WL 5848903, at *5 (C.D. Cal. Sept. 5, 2018) (same).

PLAINTIFFS' OPPOSITION TO MICROSOFT CORPORATION'S MOTION TO COMPEL ARBITRATION AND STAY CLAIMS
Case No.: 23-cv-04557-VC

"was 'too passive for any reasonable factfinder to conclude that [the consumer] manifested a subjective understanding of the existence of the arbitration and other emailed provisions and an intent to be bound by them in exchange for the continued benefits [the business] offered.'"). [6]

### ii. *Plaintiffs' account creation process after 2012.*

Microsoft's Motion or supporting declaration show nothing to support that Plaintiffs had *actual* knowledge of Microsoft's MSA when they signed up for a Microsoft account to use pre-AI Products in 2015 and 2017. Microsoft's argument that seven or more years ago, Plaintiffs consented to arbitration upon first creating their Microsoft account relies on Microsoft's flawed account creation process as detailed above. As Plaintiffs recall, they were not required to open any terms; nor did they even see any references to the MSA or Privacy Statement. Martin ¶¶ 10, 11; Paz ¶¶ 10, 11; Guilak ¶¶ 7, 8. When each Plaintiff attempted to re-trace the steps of account creation (which Microsoft says is the same as now), they noticed that on the first page of account creation, there is no link to terms at all. Martin ¶ 9; Paz ¶ 9; Guilak ¶ 6. The second page, which appears after an email is added, does contain terms, but switches immediately to a new window, once someone types a proposed password and clicks "enter" on the keyboard (which is what Plaintiffs did). Martin ¶¶ 10,11; Paz ¶¶ 10, 11; Guilak ¶¶ 7, 8. As such, neither was required to click "Next" (or the prior variation of this button), and both proceeded without seeing and accepting Microsoft's agreement. Practically, this leaves no time to click on terms or read small disclosures. After hitting "enter," which users reasonably believe signals agreement only with the password they just entered, any "terms" disappear altogether. Microsoft—a global leader in technology innovation—can and must do better than that. Microsoft can ensure that its users are required to view or read the terms before proceeding; or alternatively manually check the box "I

---

[6] *See also Shuman v. Squaretrade Inc.*, No. 20-cv-02725-JCS, 2020 U.S. Dist. LEXIS 261594, at *36 (N.D. Cal. Aug. 31, 2020) ("silence does not constitute acceptance of an offer") (citing *Leslie v. Brown Bros. Inc.*, 208 Cal. 606, 621, 283 P. 936 (1929)); *see also Norcia v. Samsung Telcoms. Am., LLC*, 845 F.3d 1279, 1286 (9th Cir. 2017) (the general rule is that silence does not constitute acceptance of an offer); 1 Witkin, Summary of California Law, Contracts § 193 (10th ed. 2005) (same).

PLAINTIFFS' OPPOSITION TO MICROSOFT CORPORATION'S MOTION TO COMPEL
ARBITRATION AND STAY CLAIMS
Case No.: 23-cv-04557-VC

have read and agreed" to the MSA, instead of presenting users with terms on the midst of account creation in small fine print, which disappears once someone inputs a password.

On these facts, the Ninth Circuit's decision in *Berman* is instructive. There, the Ninth Circuit concluded defendant failed to meet its burden that plaintiffs had notice of an agreement where the text disclosing its existence was "printed in a tiny gray font considerably smaller than the font used in the surrounding website elements" *Id*. The problem was exacerbated, reasoned the Court, because the "comparatively larger font used in all of the surrounding text naturally directs the user's attention everywhere else." *Id*. at 857.

The same is true here. Microsoft's disclosure of the agreement is printed in smaller font at the bottom of the *second* page in the account creation process—and it is easily overshadowed by the more prominent "Next" button. Even worse, Microsoft prompts password generation on this page, which *blocks* reference to the terms altogether. Then, once a user enters the password and clicks "enter" on the keyboard (not even "Next"), Microsoft immediately takes them to the next page in creation, where the reference to terms, the MSA, or privacy statements do not appear. This deceptive design and use of dark patterns independently renders any so-called assent unenforceable. Plaintiffs were not required to click the "Next," on which Microsoft relies; instead, they merely pressed enter on the keyboard after inserting a password. Regardless, courts have found the act of clicking on a "Next" button without additional verification that a consumer has read terms insufficient to form an enforceable contract. *Applebaum v. Lyft, Inc.*, 263 F. Supp. 3d 454 (S.D.N.Y. 2017) (lack of requirement to read terms before clicking "Next" rendered the consumer's assent void); *see also Theodore v. Uber Techs., Inc.,* 442 F. Supp. 3d 433 (D. Mass. 2020) (the hyperlinked terms appearing in smaller font were not conspicuously sufficient to bind a consumer).

### B.  Plaintiffs' Claims Are Outside the Scope of the Agreement.

In addition to the lack of assent, Microsoft cannot compel all of Plaintiffs' claims against Microsoft simply because they created an account to use pre-AI related services—Outlook, Word, Azure, or other products in 2001, 2012, 2015, or 2017. *See e.g. United States ex rel. Welch v. My*

*Left Foot Children's Therapy, LLC*, 871 F.3d 791 (9th Cir. 2017) (holding an issue which does not appear in the arbitration provision on its face is outside the scope of arbitrability); *Ramos v. Super. Ct.*, 28 Cal.App.5th 1042, 1052 (Ct. App. 2018) (even under broad arbitration clauses, factual allegations must at least "touch matters" covered by the contract containing the arbitration clause).

*Jackson v. Amazon* is on point. There, the Ninth Circuit rejected Amazon's argument that its employees/delivery drivers were required to arbitrate their claim against Amazon for spying on them in closed Facebook groups despite Amazon's overbroad arbitration language. 65 F.4th 1093, 1101 (9th Cir. 2023). The Court emphasized "even if [plaintiff] had no contract with Amazon but had been permitted to join the groups for some other reason, he would be able to bring the same claims for invasion of privacy." *Id*. at 1103.

The same is true here: Microsoft surreptitiously spied on millions of users and non-users of Microsoft platforms, regardless of whether they were logged in to their Microsoft accounts, and regardless of whether they were using Microsoft accounts at all. Prior to 2023, ***Microsoft's terms did not reference any AI products at all***. Although the defined scope of 2001 (Guilak's) and 2012 (Paz's) agreements remains unknown because Microsoft failed to introduce those terms, the defined scope of the 2014 and 2017 MSA is limited to specific products and services, none of which are at issue in this action. Fogarty Decl. Exh. 2, 10. Prior to September 2023, none of MSA contained no mention of AI technology at all. *Id*. ¶¶ 7, 8, 9, Exh. 2, 5. ***Microsoft does not contend that Plaintiffs were required to accept a new 2023 MSA when they began using Bing Chat (AI Product) in 2023***.

Still, even if it did, the 2023 MSA remains ***entirely silent*** regarding Microsoft's practices concerning the collection and utilization of user data for developing AI technology. Fogarty Decl. ¶¶ 7, 8, 9, Exh. 5 (in referencing in AI Services, that Microsoft will "process and store [user] inputs to the service as well as output from the service, for purposes of preventing abusive or harmful uses or outputs."). Thus, the MSA fails to put users on reasonable notice of Microsoft's actual conduct (which is far more invasive than the policy even now indicates) of harvesting granular data from millions of users to train its, and OpenAI's, Products. *See* FAC ¶¶ 31-34, 42-45, 73-76

11

(Plaintiffs' uses of various platforms such as Facebook, Instagram, Twitter, Tinder, Reddit, from which Microsoft scraped data).

### C. Under California Law Claims Seeking Public Injunctive Relief Cannot Be Arbitrated.

In California, any pre-dispute arbitration provision that waives a plaintiff's statutory right to seek public injunctive relief,[7] in any forum, violates public policy and is therefore unenforceable. *See McGill v. Citibank, N.A.*, 2 Cal.5th 945, 952 (2017) (holding any contract that bars public injunctive relief in both court and arbitration violates Cal. Civ. Code, § 3513, which provides that "a law established for a public reason cannot be contravened by a private agreement."). Accordingly, Microsoft's arbitration provision as to any claims[8] seeking public injunctive relief is unenforceable. *See Vianu v. AT&T Mobility LLC*, No. 19-cv-03602-LB, 2020 U.S. Dist. LEXIS 261419, at *3 (N.D. Cal. Mar. 2, 2020) (denying motion to compel arbitration where plaintiffs sought public-injunctive relief for deceptive practices aimed at the public).

### D. Microsoft's MSA is Both Procedurally and Substantively Unconscionable.

California law holds that "a contractual provision is unenforceable if it is both procedurally and substantively unconscionable." *MacClelland v. Cellco P'ship*, No. 21-cv-08592-EMC, 2022 WL 2390997, at *4 (N.D. Cal. July 1, 2022) (quoting *Kilgore v. KeyBank, Nat'l Ass'n*, 718 F.3d 1052, 1058 (9th Cir. 2013)). Both substantive and procedural unconscionability do not have to be the same degree, "[i]n other words, the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa." *Armendariz v. Found. Health Psychcare Servs., Inc.*, 24 Cal.4th

---

[7] *See e.g. Blair v. Rent-A-Center, Inc.,* 928 F.3d 819, 824 (9th Circ. 2019) (finding that it was sufficient for the plaintiffs to seek a "public injunction" under, among other statutes, the UCL); *Vaughn v. Tesla, Inc.*, 87 Cal.App.5th 208, 231 (2023) (Defendant fails to articulate any persuasive reason why injunctions sought under the false advertising law, the UCL, and the CLRA may be viewed as primarily benefitting the public but an injunction sought under FEHA may not).
[8] Plaintiffs seek public injunctive relief for violations of the ECPA 18 U.S.C. § 2510, *et seq.*; CCDAFA, Cal. Pen. Code, § 502, *et seq.*; CIPA, Cal. Pen. Code, § 631, *et seq.*; and violations of the UCL, Bus. & Prof. Code, § 17200, *et seq.*

12

83, 114 (2000). Microsoft's arbitration provision is both procedurally and substantively unconscionable.

### i. Microsoft's MSA is a procedurally unconscionable contract of adhesion.

Procedural unconscionability concerns the way a contract was negotiated and the respective circumstances of the parties at that time, focusing on the level of "oppression" and "surprise" involved in the agreement. *Chavarria v. Ralphs Grocery Co.*, 733 F.3d 916, 922 (9th Cir. 2013). "Oppression" involves the weaker party's absence of meaningful choice and unequal bargaining power that results in no real negotiation. *Id*. "Surprise" analyzes the extent to which the contract clearly discloses its terms and the reasonable expectations of the weaker party. *Id*. "A contract is procedurally unconscionable if it is a contract of adhesion, *i.e.*, a standardized contract, drafted by the party of superior bargaining strength, that relegates to the subscribing party only the opportunity to adhere to the contract or reject it." *Ting v. AT&T*, 319 F.3d 1126, 1148 (9th Cir. 2003) (citing *Armendariz*, 24 Cal. 4th at 114).

<u>First</u>, Microsoft's contract is non-negotiable "take it or leave it" contract of adhesion. *Nagrampa*, 469 F.3d at 1281 (finding an arbitration agreement adhesive where "the contract was non-negotiable" and plaintiff's "only choice was to sign it as written or to opt out"). As discussed above, Microsoft <u>offers</u> no reasonable opportunity to even review the extensive and convoluted terms of the MSA. Users, including Plaintiffs, do not have an opportunity to negotiate the terms, read the terms, understand the terms of the MSA, or consult with an attorney before creating an account. *See Ting*, 319 F.3d at 1149 (an arbitration agreement is a procedurally unconscionable contract of adhesion where it is "imposed" on customers "without opportunity for negotiation, modification, or waiver"). Further, the users are not required to click on the terms or review them. *See* § IV(A) above; *cf. In re Juul Labs, Inc., Antitrust Litig.*, 555 F. Supp. 3d 932, 953 (N.D. Cal. 2021) (no procedural unconscionability where the plaintiffs "affirmatively assented" to the terms using the "clickbox" placed "immediately next to" the terms).

Next, Microsoft does not provide users with an opportunity to completely opt-out of the arbitration provision or reject Microsoft's surreptitiously added changes to terms and privacy

13

policies. *See Aral v. EarthLink, Inc.,* 134 Cal.App.4th 544, 557 (2005) (stating that there is "quintessential procedural unconscionability" where an arbitration agreement is presented on a take-it-or-leave-it basis with no opportunity to opt out). Microsoft's notification can also be after the fact or not provided at all. *See* Fogarty Decl., ¶ 7 (admitting that the interrupt notification was given in October 2023, after it was too late to terminate any services; and noting an update to covered services in November 2023, and omitting that any notice was attempted on any plaintiff); *see also Gentry v. Super. Ct.*, 42 Cal.4th 443, 472 (2007) (finding an arbitration agreement with opt-out provision procedurally unconscionable because it did not provide a "meaningful opportunity to opt out").

Microsoft also apparently has reserved the right to change its arbitration provision <u>and all other terms</u> (including their recent announcements that they can now misuse the user data collected from Microsoft accounts), at any time, and without consent of the users. This is the definition of unconscionability. *Harris v. Tap Worldwide, LLC*, 248 Cal. App. 4th 373, 385 (2016) ("Generally, '[a] contract is unenforceable as illusory when one of the parties has the unfettered or arbitrary right to modify or terminate the agreement or assumes no obligations thereunder.'").

### *ii. Microsoft's MSA is substantively unconscionable.*

Substantive unconscionability exists where terms are "overly harsh" or "one-sided." *Armendariz*, 24 Cal. 4th at 114; *Pokorny v. Quixtar*, 601 F.3d 987, 997-98 (9th Cir. 2010) ("[M]utuality is the 'paramount' consideration when assessing substantive unconscionability."); *see Szetela v. Discover Bank*, 97 Cal. App. 4th 1094, 1101 (2002) (finding a mutual prohibition on representative or class actions substantively unconscionable because credit card companies typically do not sue their customers in class action lawsuits, and thus this provision was clearly meant to prevent customers from seeking redress for relatively small amounts of money).

<u>First</u>, as described *supra*, the arbitration provision's ban on public injunctive relief violates California law rendering it substantively unconscionable. *See MacClelland*, 2022 WL 2390997, at *8 ("California courts have found substantive unconscionability where an arbitration clause limits the types of remedies that would be available under the statute.") <u>Second</u>, under the MSA,

14

Microsoft can modify the *substantive* terms and retroactively apply them; this is inherently one-sided and does not allow the parties equitable bargaining power. *Armendariz*, 24 Cal. 4th at 114. Microsoft also surreptitiously changes privacy statements, <u>without any notice to or consent from consumers</u>. Recently, Microsoft again changed its privacy statement in an attempt to somehow extend the scope of the MSA and also grant itself additional rights to user data. But user data does not belong to Microsoft, even if Microsoft might state so in a fine print of its ever-changing statements.

<u>Third</u>, Microsoft's limitation of liability and damages within its MSA significantly undermines the legal recourse available to users for any harm suffered, potentially leaving them without adequate remedy for their losses and disproportionately favoring Microsoft—a 200 billion dollar company. *Newton v. Am. Debt Servs.*, 854 F. Supp. 2d 712, 725 (N.D. Cal. 2012) ("Because the limitation of liability clause prevents customers from receiving damages that they are entitled to under CROA, this term is substantively unconscionable."); *Armendariz*, 24 Cal.4th at 103-104 (an arbitration agreement limiting statutorily available remedies such as punitive damages and attorney's fees is "contrary to public policy and unlawful"); *Top of Form Graham Oil Co. v. ARCO Prods. Co.*, 43 F.3d 1244, 1248 (9th Cir. 1995) (similar); *cf. Hovis v. Homeaglow, Inc.*, No. 3:23-cv-00045-BTM-WVG, 2023 U.S. Dist. LEXIS 136513, *11 (S.D. Cal. Aug. 4, 2023) (no substantive unconscionability where defendant did not limit remedies).

## V.    CONCLUSION

Based on the foregoing, Plaintiffs respectfully request that the Court deny Microsoft's Motion to compel arbitration in its entirety. Should the Court deem any portion of Plaintiffs' claims arbitrable, the Court should <u>not</u> stay Plaintiffs' remaining claims for two reasons: (1) to avoid unnecessary prejudice, given that this case will proceed regardless; and (2) to prevent delaying resolution of non-arbitrable claims (raising legal issues of great importance impacting all internet users) in a single action. *Winfrey v. Kmart Corp.*, 692 F. App'x 356, 357 (9th Cir. 2017) (the district court has discretion whether to stay non-arbitrable claims pending arbitration).

DATED: March 7, 2024

    */s/ Ryan J. Clarkson*
    **CLARKSON LAW FIRM, P.C.**
    Ryan J. Clarkson, Esq.
    Yana Hart, Esq.
    Tiara Avaness, Esq.

DATED: March 7, 2024

    */s/ Michael F. Ram*
    **MORGAN & MORGAN**
    **COMPLEX LITIGATION GROUP**
    Michael F. Ram
    John A. Yanchunis
    Ryan J. McGee