**MORGAN & MORGAN COMPLEX LITIGATION GROUP**
Michael F. Ram (SBN 104805)
mram@forthepeople.com
711 Van Ness Ave, Suite 500
San Francisco, CA 94102
Tel.: (415) 358-6913

**MORGAN & MORGAN COMPLEX LITIGATION GROUP**
John A. Yanchunis (*pro hac vice forthcoming*)
jyanchunis@forthepeople.com
Ryan J. McGee (*pro hac vice forthcoming*)
rmcgee@forthepeople.com
201 N. Franklin St., 7th Floor
Tampa, FL 33602
Tel.: (813) 223-5505

**CLARKSON LAW FIRM, P.C.**
Ryan J. Clarkson (CA SBN 257074)
*rclarkson@clarksonlawfirm.com*
Yana Hart (CA SBN 306499)
*yhart@clarksonlawfirm.com*
Tiara Avaness (CA SBN 343928)
*tavaness@clarksonlawfirm.com*
22525 Pacific Coast Highway
Malibu, CA 90265
Tel: (213) 788-4050

**CLARKSON LAW FIRM, P.C.**
Tracey Cowan (CA SBN 250053)
*tcowan@clarksonlawfirm.com*
95 3rd St., 2nd Floor
San Francisco, CA 94103
Tel: (213) 788-4050

*Counsel for Plaintiffs and the Proposed Classes*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PLAINTIFFS MARILYN COUSART; NICHOLAS GUILAK; PAUL MARTIN; BREONNA ROBERTS; CAROLINA BARCOS; JAIR PAZ; ALESSANDRO DE LA TORRE; VLADISSLAV VASSILEV; SEAN ALEXANDER JOHNSON; JENISE MCNEAL; N.B, a minor; LORENA MARTINEZ; JOHN HAGAN, individually, and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>OPENAI LP; OPENAI INCORPORATED; OPENAI GP, LLC; OPENAI STARTUP FUND I, LP; OPENAI STARTUP FUND GP I, LLC; OPENAI STARTUP FUND MANAGEMENT LLC; MICROSOFT CORPORATION and DOES 1 through 20, inclusive,<br><br>Defendants. | Case No.: 23-cv-04557-VC<br><br>**PLAINTIFFS' OPPOSITION TO MICROSOFT CORPORATION'S MOTION TO DISMISS FIRST AMENDED COMPLAINT**<br><br>Date: April 18, 2024<br>Time: 10:00 a.m.<br>Place: Courtroom 4<br><br>Judge: The Honorable Vince Chhabria |

## TABLE OF CONTENTS

I. INTRODUCTION ..........................................................................................................1

II. BACKGROUND ............................................................................................................2

III. ARGUMENT .................................................................................................................4

    A. Plaintiffs Were Harmed by Microsoft's Conduct .......................................4

    B. Plaintiffs' FAC Satisfies Rule 8..................................................................7

    C. Plaintiffs State Interception Claims Against Microsoft ............................9

    D. Plaintifs' Remaining Claims Are Sufficiently Plead ...............................11

    E. Plaintiffs' Injunctive Relief Is Well Plead at This Stage .........................12

IV. CONCLUSION.............................................................................................................14

# TABLE OF AUTHORITIES

**Cases**                                                                                   **Page No.**

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)..................................................................................................4

*Astiana v. Ben & Jerry's Homemade, Inc.*,
    2011 WL 2111796 (N.D. Cal. May 26, 2011) ...................................................13

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007)..................................................................................................4

*Brown v. Google LLC*,
    2022 WL 17961497 (N.D. Cal. Dec. 12, 2022)................................................14

*Christian Legal Soc. Chapter of Univ. of California v. Wu*,
    626 F.3d 483 (9th Cir. 2010) ...............................................................................12

*City of Los Angeles v. Wells Fargo & Co.*,
    22 F. Supp. 3d 1047 (C.D. Cal. 2014) .................................................................7

*Cook v. GameStop, Inc.*,
    2023 WL 5529772 (W.D. Pa. Aug. 28, 2023)...................................................11

*Covillo v. Specialtys Café*,
    2011 WL 6748514 (N.D. Cal. Dec. 22, 2011)...................................................13

*Flynt Distrib. Co. v. Harvey*,
    734 F.2d 1389 (9th Cir. 1984) ...............................................................................9

*Graham v. Noom, Inc.*,
    2021 WL 3602215 (N.D. Cal. Aug. 13, 2021) ....................................................6

*Greenstein v. Noblr Reciprocal Exchange*,
    585 F. Supp. 3d 1220 (N.D. Cal. 2022)..............................................................12

*Hibbs-Rines v. Seagate Tech., LLC*,
    2009 WL 513496 (N.D. Cal. March 2, 2009)...................................................13

*In re Am. Apparel, Inc. S'holder Derivative Litig.*,
    2012 WL 9506072 (C.D. Cal. July 31, 2012).....................................................9

*In re Facebook, Inc., Consumer Privacy User Profile Litig.*,
    402 F. Supp. 3d 767 (N.D. Cal. 2019) .................................................................5

*In re Google Assistant Privacy Litigation*,
    457 F. Supp. 3d 797 (N.D. Cal. 2020) ..........................................................................10

*Konop v. Hawaiian Airlines, Inc.*,
    302 F.3d 868 (9th Cir. 2002) ........................................................................................10

*Manzarek v. St. Paul Fire & Marine Ins. Co.*,
    519 F.3d 1025 (9th Cir. 2008) .......................................................................................4

*Noel v. Hall*,
    568 F.3d 743 (9th Cir. 2009) ........................................................................................10

*Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*,
    214 F. Supp. 3d 808 (N.D. Cal. 2016) ..........................................................................10

*Resh, Inc. v. Skimlite Manufacturing Inc.*,
    666 F. Supp. 3d 1054 (N.D. Cal. Mar. 31, 2023) ...........................................................8

*Rodriguez v. Google LLC*,
    2024 WL 38302 (N.D. Cal. Jan. 3, 2024) ....................................................................13

*Russo v. Microsoft Corporation*,
    2021 WL 2688850 (N.D. Cal. June 30, 2021) ...........................................................5, 6

*Schulz v. Neovi Data Corporation*,
    152 Cal.App.4th 86 (Cal. 2007) ....................................................................................6

*Sollberger v. Wachovia Sec., LLC*,
    2010 WL 2674456 (C.D. Cal. June 30, 2010) ...............................................................8

*Steinley v. Health Net, Inc.*,
    2019 WL 3059383 (C.D. Cal. Mar. 28, 2019) ...............................................................9

*Taison Commc'ns, Inc. v. Ubiquiti Networks, Inc.*,
    2014 WL 1048710 (N.D. Cal. March 14, 2014) .........................................................13

*TransGo, Inc. v. Ajac Transmission Parts Corp.*,
    768 F.2d 1001 (9th Cir. 1985) ......................................................................................9

*United States v. Smith*,
    155 F.3d 1051 (9th Cir. 1998) ....................................................................................10

*Valenzuela v. Nationwide Mut. Ins. Co.*,
    2023 WL 5266033 (C.D. Cal. Aug. 14, 2023) .............................................................10

*Williams v. Rodriguez,*
  No. 1:14-cv-02073-AWI-SAB (PC),
  2017 WL 511858, 2017 U.S. Dist. LEXIS 17990 (E.D. Cal. Feb. 7, 2017).......................12

*Wolf Designs, Inc. v. DHR Co.*,
  322 F. Supp. 2d 1065 (C.D. Cal. 2004) ................................................................................9

**Federal Statutes**

Fed. R. Civ. P. 8................................................................................................................5, 7, 8, 9

Fed. R. Civ. P. 12......................................................................................................................4, 5

Fed. R. Civ. P. 23....................................................................................................................13, 14

## I. INTRODUCTION

Microsoft together with OpenAI through relentless pursuit of profit and in disregard for the fundamental privacy and property rights of millions of people and their children secretly harvested (by intercepting and "scraping") vast amounts of personal data from numerous platforms and 25 billion websites to develop and rush to the market wildly profitable and yet uniquely dangerous artificial intelligence technology. The stolen data includes personally identifiable information, photographs of families and children, private conversations with colleagues and romantic partners, medical data—and much more, taken from all across the internet, including restricted and password-protected websites.

There can be no real disagreement that Microsoft has been an active participant in the unlawful conduct alleged—from supplying the initial computing power and hardware to process the stolen information, to otherwise helping to build, finance and profit from the ever-expanding roster of AI Products that run on the stolen information, and without which none of the Products could exist. Now Microsoft is continuing to actively integrate this dangerous technology into every public and private industry sector, and continuing to spy on and steal from millions of people. Presently, everyday citizens can only hope to avoid the ongoing harm by stopping use of the internet altogether and taking down their thousands of posts and other past contributions, all of which were shared to specific audiences and for specific purposes, and none of which were shared to help build volatile and untested dangerous technology to enrich Microsoft, while endangering everyday citizens in myriad ways.

Even then, harm remains. For example, given how Microsoft's AI technology works, none of the already stolen personal and other information can ever be removed from the volatile products that have been proven to spit out personal information on command. That is why any "opt out"

features are purely illusory and violate California and other consumer protection and data privacy law.

Plaintiffs are championing this action because like so many Americans they believe the unprecedented theft must stop, and that the people must be compensated for the irreversible harm already done. Microsoft's Motion essentially points to its strategic business partner OpenAI's motion to dismiss and says "we agree." That is hardly surprising. But its motion fails for the same reasons as its partner-in-theft. Plaintiffs' allegations exceed applicable pleading standards, stating legal claims supported factually by hundreds of sources. The only way the Complaint could be more specific factually would be if Microsoft and OpenAI would once and for all open the "black box" of training data—that they won't let anyone see. Microsoft's motion should be denied.

## II.   **BACKGROUND**

Together with OpenAI, Microsoft built and developed ChatGPT, Dall-E, Vall-E, and other artificial intelligence products (the "Products") with troves of data from myriad websites, applications, and other sources. *See*, *e.g.*, dkt. 45 (the "FAC" at 20, 30, 41, 53, 62, 72, 82, 92, 101, 106, 115, 120, 129, 453, 456, 460. This included medical information from patient portals like MyChart, musical tastes and interests from Spotify (a music service), financial information through Stripe (a financial application), user patterns and private conversations through Microsoft products like Slack and Teams, and social media activity including image- and audio-related data on platforms like Snapchat. *Id.* at ¶ 16. Together, the data at issue includes all details entered into these Products, including *inter alia* account information; names; contact details; login credentials; email communications; payment information; transaction records; IP addresses and location information that includes precise geolocation data when the information was created; social media

activity; chat logs; usage data; analytics; cookies that include activity from past internet browsing; key strokes; and typed searches that had not yet been executed (the "Private Information"). *Id.*

Microsoft engaged in this concerted effort with OpenAI to gather people's information as the fuel for the the Company's artificial intelligence Products. This collection is not only current—Defendants have also aggregated historical information that allows for the replication of voices and depiction of likenesses, and also to model, predicate, and even manipulate a consumer's next move. *Id.* at ¶ 17. Plaintiffs in detail describe how the AI industry itself recognizes the harms that have occurred, continue to occur, and will occur in the future: the data collection has infiltrated all reaches of society, exposing political views and voting records, religious beliefs, familial relationships and images of children, tastes and hobbies, and other categories of sensitive information that raises legal, moral, and ethical issues. *Id*.at ¶¶ 184–85. This information can be extracted from the training models but also remains in those models as they progressively improve. *Id*.at ¶¶ 259–60. And despite Defendants being notified that prompts could be used to divulge this scraped information from places like dating websites, Defendants failed to respond, resulting in the publication of those findings. *Id*. at ¶¶ 269–70.

These concerns and others resulted in more than 1,000 technology leaders and researchers signing on to an open letter calling for a six-month moratorium on the development of new systems because AI technologies pose "profound risks to society and humanity." *Id*. at ¶ 282. Another group, which included a chief scientific officer at Microsoft, released a letter expressing similar concerns. *Id*. at ¶ 283. But rather than addressing these concerns, Microsoft terminated its entire AI ethics team dedicated to guiding AI; members of that team "believed they were let go because Microsoft had become more focused on getting its AI products shipped before the competition, and was less concerned with long-term, socially responsible thinking." *Id*. at ¶ 237–240.

Microsoft has not been a passive participant in these efforts. As Plaintiffs detail in their FAC, Microsoft was an early investor in OpenAI, providing the capital funding and data necessary to propel the Products to the forefront of the battle to win over consumers' use of AI. FAC § I.F. Microsoft worked closely with OpenAI to build a supercomputer (making use of Microsoft's Azure cloud computing product) to train and develop the language models that power the Products at issue in this litigation. Microsoft's suggestion that it is a passive investor is belied by its close involvement with and exertion of influence over the disputes between OpenAI, its board of directors, and employment decisions made with regard to top executives. *Id*. at ¶¶ 159–166. When OpenAI's board decided to fire its CEO and other top-level executives, Microsoft's intervention was well documented: Microsoft immediately hired those individuals, who were re-hired by OpenAI shortly thereafter, and Microsoft then joined OpenAI's board. *Id*. at ¶¶ 159–66.

### III.  ARGUMENT

A motion to dismiss must be denied if the complaint "state[s] a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The Court must "accept factual allegations in the complex as true and construe the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

#### A.  Plaintiffs Were Harmed by Microsoft's Conduct

Microsoft first moves to dismiss Plaintiffs' FAC under Rule 12(b)(6)—and notably does *not* challenge standing under Rule 12(b)(1)—by suggesting that Plaintiffs fail to "show that the alleged practices actually impacted them." Mot. at 7; *see also* Mot. at 1 ("Defendant Microsoft

4
PLAINTIFFS' OPPOSITION TO MICROSOFT CORPORATION'S MOTION TO DISMISS
FIRST AMENDED COMPLAINT
23-cv-04557-VC

Corporation will and hereby does move for an order dismissing with prejudice the claims against Microsoft in Plaintiffs' [FAC] (Dkt. 45) under Rule 8 and Rule 12(b)(6)."). In their opposition to OpenAI's motion to dismiss (filed contemporaneously herewith) Plaintiffs provide detailed allegations concerning the harms they face by way of Microsoft's and Defendants' interception, collection, scraping, and unauthorized use of Plaintiffs' Personal Information. This Court has recognized that consumers suffer "concrete" and "particularized" injuries in privacy cases when consumers share sensitive information with a limited audience, but that information is then taken and used for any unauthorized purposes. *In re Facebook, Inc., Consumer Privacy User Profile Litig.*, 402 F. Supp. 3d 767, 786–87 (N.D. Cal. 2019).

Plaintiffs devote dozens of pages in their FAC to explaining what products they used. *See, e.g.*, FAC at ¶¶ 20, 30, 41, 53, 62, 72, 82, 92, 101, 106, 115, 120, 129, 453, 456, 460. They also explain what information was taken. FAC at ¶ 16 (listing out *16 categories* of data, including account information, contact details, emails, payment card data, transactional data, IP and location data, social media information, usage and analytics data, cookies (that reveal a user's internet history), keystrokes, and typed (but not executed) searches, and other detailed activity). They further explain how the use of that information has materialized into real and concrete concerns. *See, e.g.*, *Id*. at ¶¶ 9, 159, 182–85, 188, 259, 270, 282–84, 290–94, 442. And those concerns are not far-fetched or wild-eyed conspiracy theories—they have been raised by people associated with the technology (*see, e.g.*, *id.*. at ¶¶ 11, 14, 157, 160–165) such that the Federal Trade Commission announced an investigation into the conduct. *See, e.g.*, FAC at ¶¶ 262, 287–88.

Microsoft's reliance on *Russo v. Microsoft Corporation* helps, not harms, Plaintiffs. In *Russo*, the court found that "plaintiffs sufficiently allege [a wiretap claim where products] are developed or improved by scanning [plaintiffs' data]." 2021 WL 2688850, at *4 (N.D. Cal. June

30, 2021). Because the *Russo* plaintiffs plead sufficient facts in their complaint (in a total of five sentences no less) establishing that Microsoft engaged in the complained of conduct, so long as those plaintiffs "can allege that *their* emails were scanned, they will have stated a claim under the Wiretap Act." *Id.* The same logic derives and fails from *Schulz v. Neovi Data Corporation*, 152 Cal. App. 4th 86 (Cal. 2007).

Here, Plaintiffs have repeatedly plausibly alleged that Microsoft (and all Defendants) intercepted, scraped, collected, and used their data without permission. *See, e.g.*, FAC at ¶ 19–135; § I.A; § I.B; § I.F; II.A.1; Count One, § II; Count Three, § II; ¶¶ 640, 647. Plaintiffs' allegations go beyond a conclusory "the defendant did it" allegation. Instead, Plaintiffs provide hundreds of sources explained in hundreds of paragraphs explaining how Microsoft (and all Defendants) engaged in the complained-of conduct. *Russo* compels nothing more (and likely less).

Microsoft's reliance on *Graham v. Noom, Inc.* is particularly puzzling. Mot. at 8. In *Graham*, the court held because "there is no wiretapping, there thus is no injury that creates a private right of action under [CIPA]." 2021 WL 3602215 (N.D. Cal. Aug. 13, 2021). But Plaintiffs have alleged Microsoft's wiretapping, and the damages that flow from it. *See, e.g.*, FAC at ¶¶ 9, 159, 182–85, 188, 259, 270, 282–84, 290–94, 314, 364, 442, 649–662. Microsoft (nor all Defendants) should not be permitted to take what Plaintiffs cannot take back.

Microsoft's motion vaguely suggests that Plaintiffs' "pleading failure also dooms their ECPA claim" without any argument. Mot. 8. Plaintiffs expressly incorporate by reference their arguments advanced in opposition to OpenAI's challenge to the ECPA.

### B. Plaintiffs' FAC Satisfies Rule 8

As Plaintiffs argued in their opposition to OpenAI's motion to dismiss (contemporaneously filed herewith), Defendants (OpenAI and Microsoft) are liable for their interception, scraping,

collection, and use for profit of Plaintiffs' Personal Information.[1] Plaintiffs' well-pled allegations are sufficient to put all defendants on notice of their potential liability for the conduct complained of in the FAC, which is "all that is required under the liberal pleading standard of Rule 8(a)." *City of Los Angeles v. Wells Fargo & Co.*, 22 F. Supp. 3d 1047, 1062 (C.D. Cal. 2014). Microsoft's argument that it will be left guessing about its culpability is as unavailing as it is for OpenAI.

Like with OpenAI, Plaintiffs detailed Microsoft's culpability: how Microsoft and OpenAI entered an exclusive partnership to build a supercomputer to train language models that ultimately resulted in ChatGPT and DALL-E (FAC at § I.A); Microsoft's direct involvement with training the ChatGPT products, including the use of its Azure cloud computing systems, and receipt of profits from integration of those AI-based products into the products and services that Microsoft provides (FAC at § I.B); how Microsoft pushes OpenAI's economic dependence model (FAC at § I.F); and how Microsoft recognized the harms stemming from the interception, scraping, collection, and use of Plaintiffs' Personal Information but suppressed those alarming concerns in pursuit of profits (FAC at § II.A.1). And for each cause of action, Plaintiffs detail how Microsoft violated Plaintiffs' and Class members' privacy. *See*, *e.g.*, FAC at Count One, § II (devoting ten paragraphs across three pages explaining how Microsoft violated the ECPA); *id.* at Count Three, § II (same for CIPA), ¶ 640 (derivative liability for aiding, agreeing, and conspiring with OpenAI); *id.* at Count Four, ¶ 647 (Microsoft's accessing, collecting, and tracking the Private Information that OpenAI intercepted, tracked, and recorded).

Microsoft's complaint that "Plaintiffs *continue* to lump Defendants together throughout the factual allegations" provides one example spanning eight paragraphs from Plaintiffs' FAC. Mot.

---

[1] Plaintiffs have reviewed the law and decisions under Illinois' ICFA and IUDTPA and agree to pursue those claims under the California statutory laws and framework alleged in their FAC.

at 10 (emphasis in original). This is a far cry from *Resh, Inc. v. Skimlite Manufacturing Inc.* where the plaintiff opened up its complaint by "announc[ing] that '*depending on the context in which it is used herein*, the term 'Defendants' is intended to include not only 'Skimlite' and 'James Conrad' and 'Barrett Conrad,' but also any and/or all other Defendants or any individuals or other entities." 666 F. Supp. 3d 1054, 1059 (N.D. Cal. Mar. 31, 2023) (emphasis in original). As the *Resh* court explained, pleadings that "overwhelm defendants with an *unclear mass of allegations* and make it difficult or impossible for defendants to make informed responses to the plaintiff's allegations." *Id.* (citing *Sollberger v. Wachovia Sec., LLC*, 2010 WL 2674456, at *4 (C.D. Cal. June 30, 2010)). Even still, the *Resh* court dismissed the complaint with leave to amend. *Id.* at 1060; *cf* Mot. at 1 (seeking dismissal of FAC with prejudice). Plaintiffs have met their obligation under Rule 8 and provided Microsoft (and all Defendants) with sufficient information under the notice pleading requirement.

Finally, Plaintiffs' alter-ego allegations are sufficiently pleaded. Plaintiffs detail how Microsoft became an early investor of OpenAI and entered into exclusive partnerships with OpenAI to build a supercomputer together (exclusively with Microsoft's Azure cloud computing service) to train OpenAI's products, eventually resulting in ChatGPT and DALL-E. FAC at ¶¶ 142–145, 154. Further, OpenAI and Microsoft worked as agents of one another to harvest data to continue feeding the supercomputer, including another capital injection of $10 billion from Microsoft. *Id.* at ¶¶ 156–158. Plaintiffs also allege how Microsoft exerts substantial influence over OpenAI, including its organizational structure, the hiring of c-suite executives (who were fired by OpenAI, then hired by Microsoft, only to be immediately re-hired by OpenAI), and how Microsoft joined OpenAI's board following that turmoil. *Id.* at ¶¶ 159–166. These are sufficient at the notice pleadings stage. *Wolf Designs, Inc. v. DHR Co.*, 322 F. Supp. 2d 1065, 1072 (C.D. Cal. 2004);

*Flynt Distrib. Co. v. Harvey*, 734 F.2d 1389, 1393 (9th Cir. 1984); *TransGo, Inc. v. Ajac Transmission Parts Corp.*, 768 F.2d 1001, 1021 (9th Cir. 1985). These allegations "are sufficient to render it plausible all Defendants are jointly liable for at least some of the alleged wrongful acts, even if Plaintiffs cannot identify precisely which Defendant did what without an opportunity to conduct discovery." *Steinley v. Health Net, Inc.*, 2019 WL 3059383, at *4 (C.D. Cal. Mar. 28, 2019); *In re Am. Apparel, Inc. S'holder Derivative Litig.*, 2012 WL 9506072, at *41 (C.D. Cal. July 31, 2012) ("group pleadings" are not *per se* impermissible "so long as [they are] limited to defendants who are similarly situated").

### C. Plaintiffs State Interception Claims Against Microsoft

Microsoft on the one hand explains how Plaintiffs' interception allegations apply to Microsoft's conduct, but on the other hand suggests there is a dearth of allegations sufficient to survive dismissal because they are not "plausible." Mot. at 12. As explained in Plaintiffs' response in opposition to OpenAI's motion to dismiss, Plaintiffs meet their pleading requirements under Rule 8. The allegations are not "scattershot" and instead twenty paragraphs across six pages detailing Microsoft's interception under the ECPA and CIPA. FAC at pp. 155–57 (ECPA) and pp. 166–168 (CIPA). Plaintiffs also more globally allege how all Defendants worked together for the common goal of getting as much data into the AI model as possible. *Supra* §§ III.A, B.

For the same reasons that Plaintiffs articulate in their opposition to OpenAI's motion to dismiss, Microsoft's vague and conclusory legal attacks equally fail: Plaintiffs' Personal Information was private communications intercepted "in transit." *See, e.g.*, *Valenzuela v. Nationwide Mut. Ins. Co.*, 2023 WL 5266033 (C.D. Cal. Aug. 14, 2023) (finding plaintiffs' allegations that messages were intercepted in real time were sufficient to infer that the interception happened "in transit" and that nothing more than this combination of plausibility and notice is

9
PLAINTIFFS' OPPOSITION TO MICROSOFT CORPORATION'S MOTION TO DISMISS
FIRST AMENDED COMPLAINT
23-cv-04557-VC

required at the pleadings stage); *United States v. Smith*, 155 F.3d 1051 (9th Cir. 1998) (voicemails are communications in storage); *Konop v. Hawaiian Airlines, Inc.*, 302 F.3d 868, 873 (9th Cir. 2002); *Noel v. Hall*, 568 F.3d 743, 749 (9th Cir. 2009) (interception occurs "when the contents of a wire communication are captured or re-directed in any way"). And any suggestion that one defendant could consent for another's violation of the ECPA is wrong, since "subsequent disclosure of the contents of the intercepted conversations for the alleged purpose of further invading the [Plaintiffs'] privacy" is a tortious act that satisfies the crime-tort exception to consent. *Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*, 214 F. Supp. 3d 808, 828 (N.D. Cal. 2016).

Microsoft's reliance on *In re Google Assistant Privacy Litigation* actually contradicts the thrust of its argument suggesting that Plaintiffs' interception claims are deficient and that they identify their communications. Mot. 13. There (in the section that Microsoft cites, no less), the court "reject[ed] Defendants' suggestion that Plaintiffs must identify specific communications that Plaintiffs reasonably believe to be private *and that were wrongly recorded*." 457 F. Supp. 3d 797, 816 (N.D. Cal. 2020) (emphasis added). The court continued, stating that it was "not convinced that Plaintiffs are required to produce such details at the pleading stage, prior to discovery." *Id.* In dismissing *with leave to amend*, the court noted that the complaint "contain[ed] insufficient detail regarding the particular circumstances under which Plaintiffs used [the product]" and "merely allege[d] that Plaintiffs' conversations were 'confidential' without alleging any facts regarding the participants in the conversations, the locations of the conversations, or examples of content from the conversation." *Id.* In short, the court surmised that while some conversations might be confidential, more was required beyond "bare allegations" to describe why those conversations were confidential. *Id.*

Such is not the case here, as Plaintiffs have detailed the information that was taken from the platforms they frequent. FAC at ¶¶ 16, 20, 30, 41, 53, 62, 72, 82, 92, 101, 106, 115, 120, 129, 453, 456, 460. And Microsoft's reliance on *Cook v. GameStop, Inc.* has no application to this case, where there a plaintiff speculated what might possibly be done with data. 2023 WL 5529772, at *6–7 (W.D. Pa. Aug. 28, 2023). Here, Plaintiffs have alleged *what is actually being done with* the taken Personal Information (FAC at ¶¶ 9, 159, 182–85, 188, 259, 270, 282–84, 290–94, 442) and *how people involved with the technology expressed concerns* (FAC at ¶¶ 11, 14, 157, 160–65).

Finally, Microsoft's challenges that mirror (in conclusory fashion) OpenAI's challenges (Mot. at 13) fail for all of the same reasons that Plaintiffs detailed in their response in opposition to OpenAI's motion to dismiss (filed concurrently herewith). *See also infra* § III.D.

**D.  Plaintiffs' Remaining Claims Are Sufficiently Plead**

In opposing Plaintiffs' remaining CDAFA, BIPA, ICFA, DTPA, Invasion of Privacy, Conversion and Unjust Enrichment claims, Microsoft "incorporates by reference the OpenAI Defendants' arguments for dismissal." Mot. at 14. Microsoft suggests that the "generalized assertions about 'Defendants'' alleged wrongdoing" is the basis for dismissal, without more. Mot. at 14. As argued in its response in opposition to OpenAI Defendants' motion to dismiss, Plaintiffs state claims under these causes of action,[2] including against Microsoft. *See supra* § III.B.

Without even a scintilla of detail from Microsoft, Plaintiffs cannot discern any purported deficiencies for these causes of action. *Williams v. Rodriguez*, No. 1:14-cv-02073-AWI-SAB (PC), 2017 WL 511858, 2017 U.S. Dist. LEXIS 17990, at *24, (E.D. Cal. Feb. 7, 2017) ("Undeveloped arguments that are only argued in passing or made through bare, unsupported assertions are

---

[2] *Supra*, n.8 (Plaintiffs have reviewed the decisions under Illinois' ICFA and IUDTPA and agree to pursue those claims under the California statutory laws and framework alleged in their FAC.)

deemed waived") (citing *Christian Legal Soc. Chapter of Univ. of California v. Wu*, 626 F.3d 483, 487 (9th Cir. 2010)) Also, although the Parties (Plaintiffs and Defendants, Microsoft included) entered into a stipulation to exceed page restrictions, Microsoft specifically opted out of an enlargement for its motion to dismiss. DE 48 at 3–4. Permitting Microsoft to now incorporate OpenAI's arguments by reference runs afoul of both the stipulation and this Court's Standing Order for Civil Cases, ¶ 35. Plaintiff should not be penalized by having to respond in detail to OpenAI's arguments on the one hand, but then be restricted on the complexity of those arguments against Microsoft on the other hand. Plaintiffs respectfully request that the Court deem waived any unique arguments that Microsoft might have raised.

### E. Plaintiffs' Injunctive Relief Is Well Plead at This Stage

Microsoft's belittling of Plaintiffs' (and millions of consumers') concerns only underscores the need for injunctive relief to rein in these companies from running wild with AI products. Mot. at 14. While Microsoft selects some of Plaintiffs' requested injunctive relief and suggests that it only concerns "hypothetical" conduct (Mot. at 14), and Microsoft fails to provide any law even suggesting that such arguments are ripe for consideration at this stage of the pleadings.

Among its superficial and tenuous policy arguments, Microsoft relies on a single case to suggest that Plaintiffs' requested injunctive relief is impermissible, and that case could not be further afield. In *Greenstein v. Noblr Reciprocal Exchange*, plaintiffs sued an insurance company for a data breach resulting from poor cyber hygiene. 585 F. Supp. 3d 1220, 1224 (N.D. Cal. 2022). In analyzing the plaintiffs' proposed injunctive relief, the court surmised that such relief "would not be able to redress any future harm of identity theft or fraud because *it could not compel the hackers or [defendant] to return the [personal information] to Plaintiffs*." *Id.* at 1232. Further, any declaratory relief "would not motivate [Defendant] to change its practices" because it "already

12
PLAINTIFFS' OPPOSITION TO MICROSOFT CORPORATION'S MOTION TO DISMISS
FIRST AMENDED COMPLAINT
23-cv-04557-VC

took immediate action to remedy [the data breach] by changing its policies and masking" the personal information that it retained and stored. *Id.*

Here, Microsoft (and all Defendants) flaunt the hundreds of sources that Plaintiffs identified, myriad websites and platforms they use in which Defendants integrated their Products to take massive troves of Plaintiffs' Personal Information without consent. FAC at ¶¶ 16, 19–135. Plaintiffs further describe in great detail the ongoing injuries that they are experiencing and will experience in the future by way of Defendants' continued unauthorized interception, collection, and use of Plaintiffs' Personal Information. *Supra* § IV.A. Microsoft (and all Defendants) may not like the prospective injunctive relief that Plaintiffs have proposed, but they have not advanced any legal authority for this Court to foreclose that injunctive relief at the pleading stage before any discovery is conducted. *See* Mot. at 15. That is because this is a veiled attempt to strike class allegations and the relief sought through, *inter alia*, the class device, which is "disfavored because a motion for class certification is a more appropriate vehicle for arguments about class propriety." *Covillo v. Specialtys Café*, 2011 WL 6748514, at *6 (N.D. Cal. Dec. 22, 2011); *Hibbs-Rines v. Seagate Tech., LLC*, 2009 WL 513496, at *3 (N.D. Cal. March 2, 2009); *see also Astiana v. Ben & Jerry's Homemade, Inc.*, 2011 WL 2111796, at *14 (N.D. Cal. May 26, 2011); *Taison Commc'ns, Inc. v. Ubiquiti Networks, Inc.*, 2014 WL 1048710, at *3 (N.D. Cal. March 14, 2014).

Instead, injunctive relief should be considered during class certification, summary judgment, and trial, as is routine in class action litigation. *Ibid.*; *see*, *e.g.*, *Rodriguez v. Google LLC*, 2024 WL 38302 (N.D. Cal. Jan. 3, 2024) (certifying classes under both Rule 23(b)(2) and Rule 23(b)(3), which included injunctive relief that would prevent the at-issue collection practices, delete the already collected data, delete the products, services, or algorithms built in whole or in part with the unlawfully collected data, and appoint a third-party to verify compliance with the

injunctive relief); *Brown v. Google LLC*, 2022 WL 17961497 (N.D. Cal. Dec. 12, 2022) (certifying class under Rule 23(b)(2) with similar injunctive relief).

## IV. CONCLUSION

Plaintiffs have met their burden at the pleading stage and respectfully request that the Court deny Microsoft's motion to dismiss. To the extent the Court is inclined to grant any portion of Microsoft's motion to dismiss, Plaintiffs respectfully request leave to amend.

DATED: March 7, 2024

    */s/ Ryan J. Clarkson*
**CLARKSON LAW FIRM, P.C.**
Ryan J. Clarkson, Esq.
Yana Hart, Esq.
Tiara Avaness, Esq.

DATED: March 7, 2024

    */s/ Michael F. Ram*
**MORGAN & MORGAN**
**COMPLEX LITIGATION GROUP**
Michael F. Ram
John A. Yanchunis
Ryan J. McGee