Emily Johnson Henn (Bar No. 269482)
Kathryn E. Cahoy (Bar No. 298777)
COVINGTON & BURLING LLP
3000 El Camino Real
5 Palo Alto Square, 10th Floor
Palo Alto, California 94306
Telephone: + 1 (650) 632-4700
Facsimile: + 1 (650) 632-4800
Email: ehenn@cov.com
Email: kcahoy@cov.com

Isaac D. Chaput (Bar No. 326923)
COVINGTON & BURLING LLP
Salesforce Tower
415 Mission Street, Suite 5400
San Francisco, California 94105
Telephone: + 1 (415) 591-6000
Facsimile: + 1 (415) 591-6091
Email: ichaput@cov.com

Ashley M. Simonsen (Bar No. 275203)
COVINGTON & BURLING LLP
1999 Avenue of the Stars
Los Angeles, California 90067
Telephone: + 1 (424) 332-4800
Facsimile: + 1 (424) 332-4749
Email: asimonsen@cov.com

*Attorneys for Defendant Microsoft Corporation*

# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF CALIFORNIA
# SAN FRANCISCO DIVISION

| | |
|---|---|
| A.T., et al., individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>OPENAI LP, et al.,<br><br>Defendants. | Civil Case No.: 3:23-cv-4557-VC<br><br>**MICROSOFT CORPORATION'S REPLY IN SUPPORT OF MOTION TO COMPEL ARBITRATION AND STAY CLAIMS**<br><br>Date: May 16, 2024<br>Time: 10:00 a.m.<br>Place: Courtroom 4<br><br>Judge: The Honorable Vince Chhabria |

**TABLE OF CONTENTS**

I. INTRODUCTION ...........................................................................................................................1

II. ARGUMENT ..................................................................................................................................1

    A. The Arbitration Plaintiffs Entered Valid Arbitration Agreements. ......................................1

        1. Plaintiffs' Agreement to Microsoft's Sign-In Wrap Created Valid Assent. ............1

        2. The Arbitration Plaintiffs Also Assented to MSA Updates. ...................................5

    B. Plaintiffs' Claims Fall Within the Scope of the Arbitration Agreements. ..........................6

    C. Plaintiffs' Request for Public Injunctive Relief Is an Afterthought, and *McGill* Does Not Require Denial of the Motion. ...............................................................................................7

    D. The Arbitration Agreement Is Not Unconscionable. ...........................................................8

        1. The Arbitration Agreement Is Not Procedurally Unconscionable ..........................9

        2. The Arbitration Agreement Is Not Substantively Unconscionable. .......................9

III. CONCLUSION ............................................................................................................................10

# **TABLE OF AUTHORITIES**

**Cases**

*Andre v. U.S. Bank*,
  2021 WL 3598737 (C.D. Cal. May 20, 2021) ...................................................................7

*Apex Compounding Pharmacy, LLC v. eFax Corp.*,
  2018 WL 2589096 (C.D. Cal. Apr. 26, 2018) .................................................................10

*Applebaum v. Lyft, Inc.*,
  263 F. Supp. 3d 454 (S.D.N.Y. 2017)...............................................................................2

*Armendariz v. Found. Health Psychcare Servs., Inc.*,
  24 Cal. 4th 83 (2000) ..................................................................................................8, 10

*Austin-Smith v. Calatlantic Grp., Inc.*,
  2019 WL 8754733 (C.D. Cal. Apr. 30, 2019) ...................................................................8

*Baltazar v. Forever 21, Inc.*,
  62 Cal. 4th 1237 (2016) ....................................................................................................9

*Berman v. Freedom Financial Network, LLC*,
  30 F.4th 849 (9th Cir. 2022) ..................................................................................... passim

*Bridge Fund Cap. Corp. v. Fastbucks Franchise Corp.*,
  622 F.3d 996 (9th Cir. 2010) ............................................................................................9

*Cohen v. CBR Sys., Inc.*,
  625 F. Supp. 3d 997 (N.D. Cal. 2022) ............................................................................10

*Dohrmann v. Intuit, Inc.*,
  823 F. App'x 482 (9th Cir. 2020) .....................................................................................2

*Dornaus v. Best Buy Co., Inc.*,
  2019 WL 632957 (N.D. Cal. Feb. 14, 2019) ....................................................................8

*Epps-Stowers v. Uber Techs., Inc.*,
  2019 WL 3430566 (N.D. Cal. July 30, 2019)...................................................................3

*In re Facebook Biometric Info. Priv. Litig.*,
  185 F. Supp. 3d 1155 (N.D. Cal. 2016) ............................................................................5

*Ferguson v. Corinthian Colleges, Inc.*,
  733 F.3d 928 (9th Cir. 2013) ............................................................................................8

*Hunter v. Kaiser Found. Health Plan, Inc.*,
  434 F. Supp. 3d 764 (N.D. Cal. 2020) ..............................................................................9

*J.A. through Allen v. Microsoft Corp.*,
   2021 WL 1723454 (W.D. Wash. Apr. 2, 2021) .................................................................3

*Jackson v. Amazon.com, Inc.*,
   65 F.4th 1093 (9th Cir. 2023) .........................................................................................7

*Johnson v. JP Morgan Chase Bank, N.A.*,
   2018 WL 4726042 (C.D. Cal. Sept. 18, 2018) ................................................................8

*In re Juul Labs, Inc., Antitrust Litig.*,
   555 F. Supp. 3d 932 (N.D. Cal. 2021) .........................................................................3, 9

*Lee v. Ticketmaster, L.L.C.*,
   2019 WL 9096442 (N.D. Cal. Apr. 1, 2019) .................................................1, 2, 9, 10

*Lee v. Ticketmaster L.L.C.*,
   817 F. App'x 393 (9th Cir. 2020) ...................................................................................2

*McGill v. Citibank, N.A.*,
   2 Cal. 5th 945 (2017) ........................................................................................1, 7, 9, 11

*Murphy v. Twitter, Inc.*,
   60 Cal. App. 5th 12 (2021) .............................................................................................9

*Oberstein v. Live Nation Ent., Inc.*,
   2021 WL 4772885 (C.D. Cal. Sept. 20, 2021) ............................................................3, 4

*Patrick v. Running Warehouse, LLC*,
   93 F.4th 468 (9th Cir. 2024) ...........................................................................................1

*Perdue v. Crocker Nat'l Bank*
   38 Cal. 3d 913 (1985) ...................................................................................................10

*Rent-A-Ctr., W., Inc. v. Jackson*,
   561 U.S. 63 (2010) ..........................................................................................................9

*Roblox Corp. v. WowWee Grp. Ltd.*,
   2023 WL 4108191 (N.D. Cal. June 20, 2023) ................................................................7

*Sadlock v. Walt Disney Co.*,
   2023 WL 4869245 (N.D. Cal. July 31, 2023) .................................................................5

*Sifuentes v. Dropbox, Inc.*,
   2022 WL 2673080 (N.D. Cal. June 29, 2022) ................................................................6

*Theodore v. Uber Techs., Inc.*,
   442 F. Supp. 3d 433 (D. Mass. 2020) .............................................................................2

*In re Uber Techs., Inc.*,
   2019 WL 6317770 (C.D. Cal. Aug. 19, 2019) ................................................................5

v

*Villanueva v. Maxim Healthcare Servs., Inc.*,
    2023 WL 5917403 (N.D. Cal. Sept. 11, 2023) ...................................................................................10

*West v. Uber Techs.*,
    2018 WL 5848903 (C.D. Cal. Sept. 5, 2018) .....................................................................................5

## I. INTRODUCTION

The Arbitration Plaintiffs agreed to arbitrate their claims on an individual basis pursuant to agreements courts routinely uphold, using assent processes courts have repeatedly blessed—including in many cases (which Plaintiffs ignore) enforcing the same Microsoft arbitration agreement. In arguing for a different result in this case, Plaintiffs' Opposition offers a variety of arguments that run headlong into settled authority. But Plaintiffs assented to valid arbitration agreements, those agreements cover this dispute, the *McGill* rule concerning public injunctive relief does not invalidate the agreements, and the agreements are not unconscionable. The Court should compel Plaintiffs to individual arbitrations.

## II. ARGUMENT

### A. The Arbitration Plaintiffs Entered Valid Arbitration Agreements.

The Arbitration Plaintiffs agreed to consumer-friendly arbitration agreements using standard assent processes that courts, including the Ninth Circuit, have repeatedly upheld. Mot. 8–12. Plaintiffs' assorted arguments challenging Microsoft's oft-accepted sign-in wrap and arbitration agreement lack merit and ignore binding authority. Plaintiffs concede the MSA contained an arbitration provision in 2015 when Plaintiff Martin created an account, and in 2017 when Plaintiffs Guilak and Paz created accounts, and that each subsequent version of the MSA has continued to provide for arbitration of disputes between the parties. Opp. 6. On the undisputed facts, the Court should find that each of the Arbitration Plaintiffs agreed to arbitrate their disputes with Microsoft on an individual basis.

#### 1. Plaintiffs' Agreement to Microsoft's Sign-In Wrap Created Valid Assent.

Plaintiffs take pot-shots at Microsoft's account creation process. Opp. 6-10. But courts routinely reject arguments like Plaintiffs' in finding assent to online arbitration agreements—including in yet another decision by the Ninth Circuit since Microsoft filed this Motion, *Patrick v. Running Warehouse, LLC*, 93 F.4th 468, 481 (9th Cir. 2024).

Notably, Plaintiffs make no effort to distinguish the many cases enforcing Microsoft's arbitration agreement and the precise sign-in wrap at issue here. Mot. 8 (citing cases compelling arbitration based on the arbitration agreement in Microsoft's MSA). Plaintiffs also ignore this Court's decision in *Lee v. Ticketmaster, L.L.C.*, 2019 WL 9096442, at *1 (N.D. Cal. Apr. 1, 2019), *aff'd*, 817 F. App'x 393 (9th Cir.

1

2020). Microsoft's notice directing attention to the MSA and its arbitration provision is at least as conspicuous and clear as the *Ticketmaster* notice.[1] In contrast, Plaintiffs' attempts to distinguish other cases with visually similar sign-in wraps are uniformly conclusory. Opp. 7 n.4 (arguing, for instance, that the similar notice in *Dohrmann v. Intuit, Inc.*, 823 F. App'x 482 (9th Cir. 2020), is distinguishable because the "agreement was formed based on a conspicuous notice"). Plaintiffs cannot cite a single case rejecting a sign-in flow with materially similar features to the Microsoft MSA sign-in flow.

Plaintiffs claim that *Berman v. Freedom Financial Network, LLC*, 30 F.4th 849 (9th Cir. 2022), rejects a flow similar to Microsoft's, but they are wrong.[2] There, the court declined to enforce an agreement printed in "tiny" font "barely legible to the naked eye," where color contrasts drew the user's attention elsewhere, and that failed to "set apart" a hyperlink to contract terms through "customary design elements" like "contrasting font color (typically blue)." *Id.* at 856–57. The "continue" button also did not inform the user that, by proceeding, they manifested consent. *Id.* at 857–58. The Microsoft sign-in process bears no resemblance to that in *Berman*. The notice of the MSA appears in legible, reasonably sized text, bolds the word "**Next**," is located *within* the same white box (adjacent to the **Next** button) where users would focus their attention, and emphasizes the MSA hyperlink in bright blue text to create contrast. Unlike in *Berman*, Microsoft expressly notifies its users that "Choosing **Next** means that you agree to the Microsoft Services Agreement." In fact, Microsoft's notice conforms almost precisely to what the *Berman* court articulated as sufficient. *Id.* at 858 ("This notice defect could easily have been remedied by including language such as, 'By clicking the Continue >> button, you agree to the Terms & Conditions.'").

---

[1] Plaintiffs address in a single parenthetical the Ninth Circuit's decision upholding this Court's findings in *Ticketmaster*. *See* Opp. 7 n.4. But their purported distinction, that the plaintiff assented "roughly twenty times during the relevant period," does not address the portion of that case that matters: that case unambiguously held that the *design* of Ticketmaster's website was sufficient and that the multiple instances of assent "only reinforce[d]" that the user had ample opportunity to read the Terms of Use. *Lee v. Ticketmaster L.L.C.*, 817 F. App'x 393, 394–95 (9th Cir. 2020).

[2] So too with *Applebaum v. Lyft, Inc.*, 263 F. Supp. 3d 454 (S.D.N.Y. 2017), and *Theodore v. Uber Techs., Inc.*, 442 F. Supp. 3d 433 (D. Mass. 2020). In *Applebaum*, the court relied primarily on the terms' placement on an "Add Phone Number" screen instead of an account creation screen, and the absence of language notifying the user that clicking manifested assent. In *Theodore*, the court determined the text was not sufficiently differentiated based on a "micro-analysis" specific to the app and notice at issue. 442 F. Supp. 3d at 442. Here, the text was differentiated with bright blue, bold lettering—which is adequate under *Berman* and other controlling 9th Circuit authority.

Given this body of law, Plaintiffs' attacks on Microsoft's sign-in page can be easily resolved:

*First*, Plaintiffs do not "recall [being] ... required to open any terms; nor did they even see any references to the MSA." Opp. 9. But Microsoft's business records unequivocally establish that Plaintiffs were presented with a hyperlink to the MSA and assented to its terms when creating their accounts, at specific dates and times logged by Microsoft. Mot. 5–8; Fogarty Dec. (ECF 52-1) ¶¶ 5–9 (explaining this recordkeeping). Arbitration Plaintiffs could not have opened their Microsoft services accounts—as they concede they did—without agreeing to the MSA. *Id*. Even the screen Plaintiffs present in opposing this Motion corroborates that Microsoft presented them with a hyperlink to the MSA, which they could review at their leisure before opening an account. Hart Dec. (ECF 58-1) ¶ 5 ("Choosing **Next** means that you agree to the Microsoft Services Agreement"). Courts routinely accept precisely this sort of evidence to show assent. *E.g.*, *J.A. through Allen v. Microsoft Corp.*, 2021 WL 1723454, at *4 (W.D. Wash. Apr. 2, 2021), *R & R adopted*, 2021 WL 1720961 (W.D. Wash. Apr. 30, 2021); *Oberstein v. Live Nation Ent., Inc.*, 2021 WL 4772885, at *2 (C.D. Cal. Sept. 20, 2021), *aff'd*, 60 F.4th 505 (9th Cir. 2023). Plaintiffs' "testimony that [they do] not recall seeing the terms of service link is insufficient" to raise an issue of fact as to assent. *Epps-Stowers v. Uber Techs., Inc.*, 2019 WL 3430566, at *4 (N.D. Cal. July 30, 2019).

*Second*, Plaintiffs deconstruct Microsoft's MSA sign-in flow and suggest Microsoft should "do better" by requiring users to actually "view or read the terms before proceeding." Opp. 9–10. But courts in this Circuit regularly enforce sign-in wraps that do *not* require users to read terms before accepting them. That makes sense, because the law in this Circuit does not require proof of actual knowledge of the arbitration agreement, only that the plaintiff had sufficient notice and an opportunity to review the terms before clicking the button. *See, e.g. Berman*, 30 F.4th at 856; *In re Juul Labs, Inc., Antitrust Litig.*, 555 F. Supp. 3d 932, 947 (N.D. Cal. 2021). Under this settled law, Plaintiffs' quibbles with the sign-in screen lack merit. Plaintiffs complain they could select **Next** to accept the MSA by hitting the "Enter" key on the keyboard without using a mouse to click **Next**, and that they believe they proceeded to the next screen by hitting "Enter" instead of clicking **Next** with a mouse after "retrac[ing] the steps of account creation" for their Opposition. *See* Opp. 9. But it makes no difference *how* Plaintiffs chose to proceed through the sign-up flow. To do so, users (including the Arbitration Plaintiffs) were *required* to select the **Next** (or "**I Agree**") button through some means—a touch-screen tap, a mouse click, pressing an "Enter" key, or some

3

other method like voice control—and text immediately adjacent to that button explained that "Choosing **Next**" manifests assent to the MSA. *See* Mot. 5–9. That is sufficient notice of the terms and a sufficient opportunity to review them before clicking the button to render the terms enforceable, even if the user did not actually open or read the hyperlinked terms. *See Berman*, 30 F.4th at 856; *Oberstein*, 60 F.4th at 517. And Plaintiffs cite no case holding it matters *how* a user chooses **Next**—by mouse click, Enter key, or anything else—after being presented with a hyperlink to terms.

*Third*, Plaintiffs claim Microsoft makes the account creation process *too easy* and "leaves no time to click on terms or read small disclosures." Opp. 9. But Plaintiffs offer no evidence that Microsoft placed a time limit on the sign-in process (because it did not). Plaintiffs were free to take as long as they wished to closely examine the sign-in flow, click the clearly hyperlinked terms, read them, and decide if they wanted to be bound by them, including the prominent arbitration agreements. The Arbitration Plaintiffs cannot undermine their assent by claiming they rushed through the process, either initially or when they "retraced" their account sign-up in response to this Motion. In any event, the only question relevant under Ninth Circuit authority is whether a "reasonably prudent Internet user" would be on notice of the terms, *Berman*, 30 F.4th at 856, not whether a particular plaintiff chose to read (or not read) what was placed in front of them. The relevant screen in fact put the Arbitration Plaintiffs on notice; their argument contradicts binding precedent upholding similar agreements. *See Oberstein*, 60 F.4th at 517.

*Fourth*, Plaintiffs attack the original agreements that Plaintiffs Guilak and Paz assented to in 2001 and 2012 because those agreements did not contain arbitration agreements—a fact Microsoft's moving papers readily acknowledged. Opp. 5–9. But Plaintiffs Guilak and Paz created *new* accounts in January 2017, when the MSA indisputably did contain an arbitration provision. *See* Mot. 6; *see also* Opp. 3. When they did so, they went through the sign-in flow discussed in Microsoft's Motion and created new contracts with Microsoft, including arbitration agreements. *See* Mot. 5–7, 9–11. Further, as explained below, they acknowledged MSA updates that included arbitration agreements.

Under settled law in this Circuit, the Arbitration Plaintiffs assented to the MSA, including its arbitration provisions, when they opened their accounts in 2015 and 2017.

### 2. The Arbitration Plaintiffs Also Assented to MSA Updates.

Plaintiffs also attack Microsoft's reliance on updates to its terms. Like Plaintiffs' other arguments, this one ignores the many cases in this Circuit affirming the validity of emailed notices advising that continued use after an update notice manifests assent. *See* Mot. 12. But Microsoft went *beyond* email notices alone: it pushed "pop-up notices (known as 'interrupt' notices) [of MSA updates] that appeared when the user logged in to a Microsoft service" and required a user to click an acknowledgment to continue. Fogarty Dec. (ECF 52-1) ¶ 4. Microsoft offered unrebutted evidence that it sent MSA update emails to all three Arbitration Plaintiffs, and that all three clicked on interrupt notices, affirmatively acknowledging the updates.[3] Mot. 6–7. Indeed, Plaintiff Martin even located the September 30, 2023 MSA update email when he looked for it in his archives. Martin Dec. (ECF 58-4) ¶¶ 15, 16. And while Plaintiffs Guilak and Paz do not recall receiving email notices or reviewing interrupt notices, *they do not deny* they received them. *See* Guilak Dec. (ECF 58-3) ¶ 12, 14; Paz Dec. (ECF 58-2) ¶¶ 17, 18.

In arguing the MSA updates have no binding effect, Plaintiffs ignore the cases cited in Microsoft's Motion and instead rely on *Berman*. Opp. 7. But *Berman* sets forth requirements for initial formation of online agreements; once an agreement is formed, as it was here, courts generally agree "that emails [giving notice of updates] followed by continued use is sufficient to establish assent." *Sadlock v. Walt Disney Co.*, 2023 WL 4869245, at *12 (N.D. Cal. July 31, 2023) (citing cases); *see also In re Facebook Biometric Info. Priv. Litig.*, 185 F. Supp. 3d 1155, 1167 (N.D. Cal. 2016) (email notice to users of updated terms "in combination with a user's continued use is enough for notice and assent"); *In re Uber Techs., Inc.*, 2019 WL 6317770, *4, (C.D. Cal. Aug. 19, 2019) (plaintiffs assented to new terms by continued use after receiving email notice of updated terms); *West v. Uber Techs.*, 2018 WL 5848903, at *5 (C.D. Cal. Sept. 5, 2018) (same). Plaintiffs do not point to a single case applying *Berman* and related cases to subsequent updates, much less holding email notice of updates to be insufficient.[4]

---

[3] Plaintiffs' repeated insinuation that these updates would bind them "without seeing them," Opp. 7, is also factually incorrect: at dates and times recorded in Microsoft's logs, all three clicked on interrupt notices with links to the updated MSA. *See* Mot. 6–7. Plaintiffs had ample time and opportunity to review changes to the MSA after receiving the emails and notices alerting them to changes.

[4] Even if *Berman* applied to the MSA updates, its requirements of a sufficiently conspicuous notice and action indicating assent are readily met. *See supra* II.A.1; *see also* Mot. 6.

Plaintiffs' lone case is not to the contrary.  *See* Opp. 8 (citing *Sifuentes v. Dropbox, Inc.*, 2022 WL 2673080, at *4 (N.D. Cal. June 29, 2022)).  In *Sifuentes*, the defendant changed terms "no less than twelve times" and then sought to enforce the updates despite a "complete lack of evidence of notice."  2022 WL 2673080, at *4.  The court found the updates unenforceable.  Here, by contrast, Microsoft proved the dates and times at which each Arbitration Plaintiff affirmatively clicked on interrupt notices notifying users of updates to MSA terms, and it sent them emails providing links to the updated MSA and noting that continued use assented to the terms.  Plaintiffs cite no case finding notices of this sort insufficient.

## B. Plaintiffs' Claims Fall Within the Scope of the Arbitration Agreements.

The arbitration agreement in the MSA is, by its terms, "as broad as it can be," and it covers the Arbitration Plaintiffs' claims.  Those claims "concern[]" (1) Microsoft's services, (2) Plaintiffs' Microsoft services accounts, and (3) collecting and handling of Plaintiffs' data—all of which are within the MSA and its incorporated Privacy Statement.  Mot. 12–14.  Plaintiffs fail to address in a meaningful way any of these three grounds for finding this to be a dispute within the scope of the MSA.  Their arguments that their claims are unrelated to their accounts and data do not withstand analysis.

*First*, Plaintiffs argue that because they created accounts before Microsoft's services incorporated generative AI, their claims do not "concern" the Covered Services, their accounts, or their data.  Opp. 10–11.  That makes no sense—and it ignores the bases of Plaintiffs' claim.  Plaintiffs' core allegation asserts that Microsoft and OpenAI have "been secretly harvesting granular user data and personal information . . . and using it to develop artificial intelligence ('AI') technology."  Opp. 1.  Plaintiffs allege, among other things, collection of user data *while using Microsoft's services* and the facilitation of that collection through alleged "integration" of OpenAI's generative AI into Microsoft services.  FAC ¶¶ 224–27, 580–82, 583, 623–33, 647.  Neither the law nor logic suggests that long-Covered Services drop out of MSA coverage once they have been improved to incorporate generative AI, among other technical advancements.  Whether the Covered Services employ generative AI or not, they remain Covered Services under the MSA.  Further, more recent updates of the MSA include explicit references to artificial intelligence, as Plaintiffs concede.  *See* ECF 52-7 (2023 MSA) (discussing "AI Services" separately and

identifying "Microsoft Copilot," an AI service, as a Covered Service under the MSA). In short, the MSA unquestionably governs Covered Services that Plaintiffs identify as central to the alleged wrongdoing.[5]

These facts share nothing in common with *Jackson v. Amazon.com, Inc.*, 65 F.4th 1093 (9th Cir. 2023), on which Plaintiffs rely. In that case, concerning an *employment* arbitration clause, the court held that claims Amazon "spied" on drivers in Facebook chatrooms when they were off the job did not fall within an arbitration clause limited to claims "arising out of or relating in any way to th[e employment] Agreement." *Id.* at 1101. Here, the arbitration clause is far broader—indeed, it is "as broad as it can be"—and the allegations speak directly to the collection of data from users of Microsoft Covered Services.

*Second*, Plaintiffs argue that the 2023 MSA "remains entirely silent regarding Microsoft's practices concerning the collection and utilization of user data for developing AI technology." Opp. 11. That is both irrelevant and incorrect. The Court need not decide on the merits that the MSA *permitted* any alleged data collection. Rather, the only question is whether the MSA "encompasses the dispute" over whether (and how) Microsoft collects and utilizes user data. *Roblox Corp. v. WowWee Grp. Ltd.*, 2023 WL 4108191, at *2 (N.D. Cal. June 20, 2023) (quoting *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000)). It plainly does—a point Plaintiffs do not seriously contest. Mot. 13 (discussing centrality of Privacy Statement to Plaintiffs' claims).[6] That resolves the Motion, even apart from any issues as to Covered Services. !

C. **Plaintiffs' Request for Public Injunctive Relief Is an Afterthought, and *McGill* Does Not Require Denial of the Motion.**

Plaintiffs ask the Court to find the MSA's arbitration clause unconscionable under *McGill v. Citibank, N.A.*, 2 Cal. 5th 945 (2017), on the ground that the agreement forbids public injunctive relief.

Plaintiffs are wrong at two levels. In the first place, *McGill* does not apply because Plaintiffs seek primarily monetary relief. *Andre v. U.S. Bank*, 2021 WL 3598737, at *5 (C.D. Cal. May 20, 2021). Where "prayers for monetary relief [are] the heart" of the claim, the court should decline to "elevate the

---

[5] That Plaintiffs may have at times accessed certain Covered Services without logging into their account, Opp. 3, is immaterial. Nothing in the MSA suggests that use of a Covered Service is subject to the MSA only when accessed through a logged-in experience.

[6] Plaintiffs' argument that "the MSA fails to put users on reasonable notice of Microsoft's actual conduct," Opp. 11, is for the merits, not an issue of arbitrability.

7

complaint to a request for public injunctive relief such that [it] can circumvent arbitration." *Johnson v. JP Morgan Chase Bank, N.A.*, 2018 WL 4726042, at *7 (C.D. Cal. Sept. 18, 2018). Arbitration Plaintiffs' requested remedies are overwhelmingly monetary. *See* FAC, Prayer for Relief, at 197–98 (requesting compensatory damages, statutory damages, nominal damages, and punitive damages). They request only a vague injunctive remedy tacked on to their damage remedies. *See id.* Courts frequently compel arbitration in cases with nearly identical injunctive requests where monetary damages similarly predominate. *See Johnson*, 2018 WL 4726042, at *7 (*McGill* did not apply where damages were primary relief sought); *Austin-Smith v. Calatlantic Grp., Inc.*, 2019 WL 8754733, at *5 (C.D. Cal. Apr. 30, 2019) (*McGill* did not apply where remedies focused principally on monetary damages and plaintiffs also asked court to order defendant to "cease and desist" unlawful conduct).

But even if the Court were to find that *McGill* applies, the MSA provides that "the parties agree to arbitrate all claims and remedies subject to arbitration before litigating in court any remaining claims or remedies (*such as a request for a public injunction remedy*, in which case the arbitrator issues an award on liability and individual relief before a court considers that request)." ECF 52-7 (2023 MSA) § 15(g) (emphasis added). Put otherwise, if *McGill* applies, the Court should compel the Arbitration Plaintiffs to arbitration so the arbitrators can first decide Microsoft's liability; the case would return to the Court for a decision on public injunctive relief only if an arbitrator found Microsoft liable. Other courts have endorsed this approach. *See Dornaus v. Best Buy Co., Inc.*, 2019 WL 632957, at *6 (N.D. Cal. Feb. 14, 2019) ("While the remainder of plaintiff's action must be compelled to arbitration . . . the court shall retain jurisdiction over the adjudication of plaintiff's request for public injunctive relief, should defendant be found liable for the California statutory claims, . . . for which public injunctive relief may be available."); *Ferguson v. Corinthian Colleges, Inc.*, 733 F.3d 928, 937 (9th Cir. 2013) ("Plaintiffs may return to the district court to seek their public injunctive relief" after arbitration).

> D. **The Arbitration Agreement Is Not Unconscionable.**

To invalidate the arbitration agreement, Plaintiffs bear the burden of demonstrating *both* procedural and substantive unconscionability. *Armendariz v. Found. Health Psychcare Servs., Inc.*, 24 Cal. 4th 83, 114 (2000). Plaintiffs show no procedural unconscionability beyond the mere fact of the

MSA being an adhesion contract. As a result of that minimal showing, Plaintiffs bear a heavy burden to show significant substantive unconscionability.[7] They cannot do so.

### 1. The Arbitration Agreement Is Not Procedurally Unconscionable.

Procedural unconscionability involves oppression due to unequal bargaining power, such as a lack of negotiation and meaningful choice, or surprise, such as where the term at issue is hidden within a wordy document. *Hunter v. Kaiser Found. Health Plan, Inc.*, 434 F. Supp. 3d 764, 775 (N.D. Cal. 2020). Plaintiffs' procedural unconscionability argument boils down to nothing more than a complaint that the arbitration agreement appears in a contract of adhesion. Although adhesion establishes a "minimal degree of procedural unconscionability," it is not enough on its own to render an agreement unenforceable. *Lee*, 2019 WL 9096442, at *1. To the contrary, contracts of adhesion are "indispensable facts of modern life" and are "generally enforced." *Baltazar v. Forever 21, Inc.*, 62 Cal. 4th 1237, 1244 (2016). Indeed, almost every case Microsoft cited enforces an arbitration clause within an adhesion agreement.

Nor have Plaintiffs shown anything beyond minimal adhesiveness. They complain the MSA is "non-negotiable," but that is just another way of describing adhesiveness, and courts have rejected it. *See Murphy v. Twitter, Inc.*, 60 Cal. App. 5th 12, 37 (2021) (inability "to negotiate the terms of service, standing alone, is insufficient to plead a viable unconscionability claim"). Similarly, that Plaintiffs were not required to review the MSA before accepting it has no bearing on unconscionability. *See also Juul*, 555 F. Supp. 3d at 953 ("availability of the Terms and Conditions in the hyperlinked text immediately next to the clickbox" was not procedurally unconscionable). And Microsoft has not created an illusory contract by retaining the right to update it "without [the] consent of the users." Opp. 14. Users can avoid an updated MSA by stopping their use of the Services—and, even if they continue to use Services, they can opt out of changes to the arbitration clause by notifying Microsoft. ECF 52-7 (2023 MSA) § 15(f).

### 2. The Arbitration Agreement Is Not Substantively Unconscionable.

Because Plaintiffs have shown no procedural issue beyond Microsoft's use of an adhesion contract, they must make a "strong showing of substantive unconscionability" to render arbitration unenforceable.

---

[7] At times, Plaintiffs appear to argue that the MSA in its entirety is unconscionable. To the extent that is their argument, it presents a merits issue for the arbitrator, not a threshold question of arbitrability for the Court to resolve. *See Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 66 (2010); *Bridge Fund Cap. Corp. v. Fastbucks Franchise Corp.*, 622 F.3d 996, 1000 (9th Cir. 2010).

9

*Lee*, 2019 WL 9096442, at *1. Plaintiffs have not met their burden. An agreement is substantively unconscionable when it is "overly harsh," *Armendariz*, 24 Cal. 4th at 114, and "unduly oppressive," *Perdue v. Crocker Nat'l Bank* 38 Cal. 3d 913, 925 (1985). "A contract term is not substantively unconscionable when it merely gives one side a greater benefit; rather, the term must be so one-sided as to shock the conscience." *Cohen v. CBR Sys., Inc.*, 625 F. Supp. 3d 997, 1004 (N.D. Cal. 2022).

"The paramount consideration in assessing [substantive] conscionability is mutuality," *Villanueva v. Maxim Healthcare Servs., Inc.*, 2023 WL 5917403, at *5 (N.D. Cal. Sept. 11, 2023), and Plaintiffs' arbitration agreements provide for *mutual* arbitration rather than judicial resolution of covered claims. The arbitration terms and AAA rules are equally binding on both parties. No evidence suggests the MSA's arbitration provisions are "unduly harsh" or "unduly oppressive" to either party; to the contrary, Microsoft showed in the Motion that the MSA provides the type of convenient, fair, and efficient arbitration procedures courts routinely find are conscionable. Mot. 14 n.11. Indeed, consumers can even recover relief in arbitration they could not get in court. *See* ECF 52-7 (2023 MSA) § 15(e)(i).

Rather than acknowledge the evenhanded procedures they agreed would govern their claims, Plaintiffs rehash other arguments in their Opposition. *First*, they incorrectly assert that the MSA's arbitration agreement bars public injunctive relief. But *McGill* does not apply, and, even if it did, the MSA provides claims for public injunctive relief can be adjudicated in court after arbitration. *Supra* Part II.C. *Second*, Plaintiffs argue Microsoft unconscionably modifies the MSA's substantive terms and "retroactively" applies them. In fact, Microsoft notifies users of each substantive MSA update before it goes into effect, using a fair process that courts routinely approve. *See* Fogarty Dec. (ECF 52-1) ¶ 4; Mot. 12 (citing cases). *Third*, Plaintiffs challenge a limitation of liability provision in the MSA. Opp. 15. But that limitation is not even part of the arbitration agreement, *see* ECF 52-7 (2023 MSA) § 13, so it has no bearing on this Motion; Plaintiffs can, if they wish, challenge that limitation before an arbitrator. In any event, "clauses limiting damages generally are not substantively unconscionable" under California law. *Apex Compounding Pharmacy, LLC v. eFax Corp.*, 2018 WL 2589096, at *6 (C.D. Cal. Apr. 26, 2018).

### III.  CONCLUSION

Microsoft respectfully requests that the Court compel the Arbitration Plaintiffs to arbitrate their claims against Microsoft on an individual basis and stay the case pending resolution of that arbitration.

DATED:  March 28, 2024 Respectfully submitted,

By:  */s/ Isaac D. Chaput*

Emily Johnson Henn (Bar No. 269482)
Kathryn E. Cahoy (Bar No. 298777)
COVINGTON & BURLING LLP
3000 El Camino Real
5 Palo Alto Square, 10th Floor
Palo Alto, California 94306
Telephone: + 1 (650) 632-4700
Facsimile: + 1 (650) 632-4800
Email: ehenn@cov.com
Email: kcahoy@cov.com

Ashley M. Simonsen (Bar No. 275203)
COVINGTON & BURLING LLP
1999 Avenue of the Stars
Los Angeles, California 90067
Telephone: + 1 (424) 332-4800
Facsimile: + 1 (424) 332-4749
Email: asimonsen@cov.com

Isaac D. Chaput (Bar No. 326923)
COVINGTON & BURLING LLP
Salesforce Tower
415 Mission Street, Suite 5400
San Francisco, California 94105
Telephone: + 1 (415) 591-6000
Facsimile: + 1 (415) 591-6091
Email: ichaput@cov.com

*Attorneys for Defendant Microsoft Corporation*