COOLEY LLP
MICHAEL G. RHODES (116127) (rhodesmg@cooley.com)
MATTHEW D. BROWN (196972) (mbrown@cooley.com)
BETHANY C. LOBO (248109) (blobo@cooley.com)
HARRISON B. PARK (347839) (hpark@cooley.com)
3 Embarcadero Center, 20th Floor
San Francisco, California 94111-4004
Telephone:  +1 415 693 2000    Facsimile:  +1 415 693 2222

ALEXANDRA R. MAYHUGH (300446) (amayhugh@cooley.com)
MAXIMILIAN SLADEK DE LA CAL (324961) (msladekdelacal@cooley.com)
1333 2nd Street, Suite 400
Santa Monica, California 90401-4100
Telephone:  +1 310 883 6400    Facsimile:  +1 310 883 6500

NACHI A. BARU (345978) (nbaru@cooley.com)
10265 Science Center Drive
San Diego, California 92121-1117
Telephone:  +1 858 550-6000    Facsimile:  +1 858 550-6420

Attorneys for Defendants
OPENAI LP, OPENAI INCORPORATED, OPENAI GP, LLC, OPENAI STARTUP FUND I, LP,
OPENAI STARTUP FUND GP I, LLC and OPENAI STARTUP FUND MANAGEMENT LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA - SAN FRANCISCO DIVISION

| | |
|---|---|
| MARILYN COUSART; NICHOLAS GUILAK; PAUL MARTIN; BREONNA ROBERTS; CAROLINA BARCOS; JAIR PAZ; ALESSANDRO DE LA TORRE; VLADISSLAV VASSILEV; SEAN ALEXANDER JOHNSON; JENISE MCNEAL; N.B, a minor; LORENA MARTINEZ; JOHN HAGAN, individually, and on behalf of all others similarly situated,<br><br>        Plaintiffs,<br><br>  v.<br><br>OPENAI LP, OPENAI INCORPORATED, OPENAI GP, LLC, OPENAI STARTUP FUND I, LP, OPENAI STARTUP FUND GP I, LLC, OPENAI STARTUP FUND MANAGEMENT LLC, MICROSOFT CORPORATION and DOES 1 through 20, inclusive,<br><br>        Defendants. | Case No. 3:23-cv-04557-VC<br><br>**OPENAI DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED CLASS ACTION COMPLAINT**<br><br>Date:  May 16, 2024<br>Time:  10:00 a.m.<br>Dept:  Courtroom 4, 17th Floor<br>Judge:  Hon. Vince Chhabria<br><br>Date Action Filed:  September 5, 2023<br>Trial Date:  None |

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION .................................................................................................... 1

II.    ARGUMENT ......................................................................................................... 1

    A.    Plaintiffs Have Waived Numerous Claims and Arguments, Requiring Dismissal. ............... 1

    B.    The Amended Complaint Violates Rule 8. ................................................................ 2

    C.    Plaintiffs Have Not Stated a Claim Based on Data Interception or Access to User Devices. ................................................................................................................ 4

        1.    ECPA (Count 1) ........................................................................................ 4

        2.    CIPA (Count 3) ........................................................................................ 6

        3.    CDAFA (Count 2) .................................................................................... 8

    D.    Plaintiffs Cannot State Unfair Competition, Consumer Protection, or Negligence Claims Based on Data Scraping or Interception. ..................................................... 9

        1.    UCL (Count 4) ......................................................................................... 9

        2.    BIPA (Count 5) ...................................................................................... 11

            a.    Choice-of-Law ............................................................................ 11

            b.    Extraterritoriality ........................................................................ 13

            c.    Claim-Specific Bases for Dismissal ............................................. 13

        3.    Negligence (Count 8) ............................................................................. 15

    E.    Plaintiffs Have Not Stated a Claim for Invasion of Privacy (Count 9) ..................... 16

    F.    Plaintiffs Cannot State a Claim Based on Defendants' Alleged Profiting from Scraping and Interception of Their Data. ............................................................... 18

        1.    Conversion (Count 10) ........................................................................... 18

        2.    Unjust Enrichment (Count 11) ............................................................... 19

    G.    CUTSA Supersedes Claims Premised on Misappropriation of Plaintiffs' Personal Data. .................................................................................................................. 19

III.    CONCLUSION .................................................................................................. 20

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Accellion, Inc. Data Breach Litig.*,
2024 WL 333893 (N.D. Cal. Jan. 29, 2024) ...............................................................15, 16

*In re Actimmune Mktg. Litig.*,
2010 WL 3463491 (N.D. Cal. Sept. 1, 2010), *aff'd*, 464 F. App'x 651 (9th Cir. 2011)......................11

*B.K. v. Eisenhower Med. Ctr.*,
2024 U.S. Dist. LEXIS 35721 (C.D. Cal. Feb. 29, 2024) ........................................................5

*Barbizon School of San Francisco, Inc. v. Sentinel Ins. Co. LTD.*,
2021 WL 5758890 (N.D. Cal. Dec. 3, 2021) ...............................................................................2

*Bass v. Facebook, Inc.*,
394 F. Supp. 3d 1024 (N.D. Cal. 2019) ....................................................................................15

*Best Carpet Values, Inc. v. Google, LLC*,
90 F.4th 962 (9th Cir. 2024) .....................................................................................................18

*Bily v. Arthur Young & Co.*,
3 Cal. 4th 370 (1992) ................................................................................................................15

*Brooks v. Thomson Reuters Corp.*,
2023 WL 9316647 (N.D. Cal. Aug. 10, 2023).........................................................................16

*Brown v. Google LLC*,
525 F. Supp. 3d 1049 (N.D. Cal. 2021) .......................................................................8, 9, 10, 17

*Cafasso v. Gen. Dynamics C4 Sys., Inc.*,
637 F.3d 1047 (9th Cir. 2011)....................................................................................................4

*Calhoun v. Google LLC*,
526 F. Supp. 3d 605 (N.D. Cal. 2021) ..........................................................................9, 10, 18

*Castelaz v. Estee Lauder Cos., Inc.*,
2024 WL 136872 (N.D. Ill. Jan. 10, 2024) .............................................................................15

*Castillo v. Seagate Tech., LLC*,
2016 WL 9280242 (N.D. Cal. Sept. 14, 2016) ........................................................................15

*Chromadex, Inc. v. Elysium Health, Inc.*,
369 F. Supp. 3d 983 (C.D. Cal. 2019) .....................................................................................20

**OPENAI'S REPLY ISO MOTION TO DISMISS**
**3:23-CV-04557-VC**

# TABLE OF AUTHORITIES
**(continued)**

**Page(s)**

*Clark v. Super. Ct.*,
  50 Cal. 4th 605 (2010) ........................................................................................................ 10

*Clarke v. Aveda Corp.*,
  2023 WL 9119927 (N.D. Ill. Dec. 1, 2023) ....................................................................... 14

*Cody v. Ring LLC*,
  2024 WL 735667 (N.D. Cal. Feb. 22, 2024) ........................................................................ 6

*Colombo v. YouTube, LLC*,
  2023 WL 4240226 (N.D. Cal. June 28, 2023) .................................................................... 13

*Cottle v. Plaid Inc.*,
  536 F. Supp. 3d 461 (N.D. Cal. 2021) ............................................................................... 10

*Daichendt v. CVS Pharmacy, Inc.*,
  2023 WL 3559669 (N.D. Ill. May 4, 2023) ....................................................................... 14

*Delgado v. Meta Platforms, Inc.*,
  2024 WL 818344 (N.D. Cal. Feb. 27, 2024) ...................................................................... 12

*In re Ditropan XL Antitrust Litig.*,
  529 F. Supp. 2d 1098 (N.D. Cal. 2007) ............................................................................. 12

*Doe v. Fullstory, Inc.*,
  2024 WL 188101 (N.D. Cal. Jan. 17, 2024) ........................................................................ 8

*Erhart v. BofI Holding, Inc.*,
  612 F. Supp. 3d 1062 (S.D. Cal. 2020) .............................................................................. 20

*In re Facebook Biometric Info. Priv. Litig.*,
  326 F.R.D. 535 (N.D. Cal. 2018), *aff'd sub nom. Patel v. Facebook, Inc.*, 932 F.3d 1264
  (9th Cir. 2019) .................................................................................................................... 13

*In re Facebook, Inc., Consumer Priv. User Profile Litig.*,
  402 F. Supp. 3d 767 (N.D. Cal. 2019) ............................................................................... 15

*In re Facebook, Inc. Internet Tracking Litig.*,
  956 F.3d 589 (9th Cir. 2020)........................................................................................ 9, 17, 18, 19

*Flanagan v. Flanagan*,
  27 Cal. 4th 766 (2002) ......................................................................................................... 8

# TABLE OF AUTHORITIES
## (continued)

Page(s)

*Genasys Inc. v. Vector Acoustics, LLC,*
    638 F. Supp. 3d 1135 (S.D. Cal. 2022) ........................................................................20

*Genasys Inc. v. Vector Acoustics, LLC,*
    2023 WL 4414222 (S.D. Cal. July 7, 2023) ................................................................20

*Greenley v. Kochava, Inc.*,
    2023 WL 4833466 (S.D. Cal. July 27, 2023) ..............................................................19

*Hammerling v. Google LLC*,
    615 F. Supp. 3d 1069 (N.D. Cal. 2022) ......................................................................17

*Heiting v. Taro Pharms. USA, Inc.*,
    2023 WL 9319049 (C.D. Cal. Dec. 26, 2023) ...............................................................8

*Heldt v. Guardian Life Ins. Co. of Am.*,
    2019 WL 651503 (S.D. Cal. Feb. 15, 2019) ................................................................17

*Homsy v. Bank of Am., N.A.*,
    2013 WL 2422781 (N.D. Cal. June 3, 2013) .................................................................1

*James v. Allstate Ins. Co.*,
    2023 WL 8879246 (N.D. Cal. Dec. 22, 2023) ...............................................................9

*Kadrey v. Meta Platforms, Inc.*,
    2023 WL 8039640 (N.D. Cal. Nov. 20, 2023)..............................................................16

*Katz-Lacabe v. Oracle Am., Inc.*,
    668 F. Supp. 3d 928 (N.D. Cal. 2023) .................................................................4, 5, 10

*Kearns v. Ford Motor Co.*,
    567 F.3d 1120 (9th Cir. 2009)......................................................................................10

*Kight v. CashCall, Inc.*,
    200 Cal. App. 4th 1377 (2011) ......................................................................................7

*Kremen v. Cohen*,
    337 F.3d 1024 (9th Cir. 2003).................................................................................18, 19

*Kukovec v. Estee Lauder Cos., Inc.*,
    2022 WL 16744196 (N.D. Ill. Nov. 7, 2022)...............................................................14

*Lesnik v. Eisenmann SE*,
    2018 WL 4700342 (N.D. Cal. Oct. 1, 2018).................................................................2

## TABLE OF AUTHORITIES
### (continued)

**Page(s)**

*Martin v. Sephora USA, Inc.*,
   2023 WL 2717636 (E.D. Cal. Mar. 30, 2023), *report and recommendation adopted*,
   2023 WL 3061957 (E.D. Cal. Apr. 24, 2023) ...................................................................3, 7

*Mattel, Inc. v. MGA Ent., Inc.*,
   782 F. Supp. 2d 911 (C.D. Cal. 2011) ..............................................................................20

*McClung v. AdShopper, Inc.*,
   2024 WL 189006 (N.D. Cal. Jan. 17, 2024) ...............................................................*passim*

*McCluskey v. Hendricks*,
   2021 WL 6773140 (C.D. Cal. Nov. 17, 2021), *aff'd*, 2023 WL 3376564
   (9th Cir. May 11, 2023) .....................................................................................................9

*McGoveran v. Amazon Web Servs., Inc.*,
   2021 WL 4502089 (D. Del. Sept. 30, 2021) .....................................................................13

*McGowan v. Weinstein*,
   505 F. Supp. 3d 1000 (C.D. Cal. 2020) ............................................................................19

*McHenry v. Renne*,
   84 F.3d 1172 (9th Cir. 1996)...............................................................................................2

*Mehta v. Robinhood Fin. LLC*,
   2021 WL 6882377 (N.D. Cal. May 6, 2021) ...............................................................11, 16

*Melzer v. Johnson & Johnson Consumer Inc.*,
   2023 WL 3098633 (D.N.J. Apr. 26, 2023) ........................................................................14

*Meta Platforms, Inc. v. BrandTotal Ltd.*,
   605 F. Supp. 3d 1218 (N.D. Cal. 2022) ..............................................................................8

*Mirkarimi v. Nevada Prop. 1 LLC*,
   2013 WL 3761530 (S.D. Cal. July 15, 2023) ......................................................................8

*Moore v. Centrelake Med. Grp., Inc.*,
   83 Cal. App. 5th 515 (2022) .............................................................................................10

*Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*,
   214 F. Supp. 3d 808 (N.D. Cal. 2016) ................................................................................5

*Pruitt v. Par-A-Dice Hotel Casino*,
   2020 WL 5118035 (C.D. Ill. Aug. 31, 2020) ....................................................................14

**OPENAI'S REPLY ISO MOTION TO DISMISS**
**3:23-CV-04557-VC**

# TABLE OF AUTHORITIES
## (continued)

**Page(s)**

*Regents of Univ. of Cal. v. Super. Ct.*,
4 Cal. 5th 607 (2018) ..................................................................................................... 15

*Revitch v. New Moosejaw, LLC*,
2019 WL 5485330 (N.D. Cal. Oct. 23, 2019) ............................................................... 7

*S. Cal. Gas Leak Cases v. Super. Ct*,
7 Cal. 5th 391 (2019) ............................................................................................... 15, 16

*In re Sequoia Benefits and Ins. Data Breach Litig.*,
2024 WL 1091195 (N.D. Cal. Feb. 22, 2024) ............................................................. 11

*Silver v. Stripe Inc.*,
2021 WL 3191752 (N.D. Cal. July 28, 2021) ............................................................... 11

*Stasi v. Inmediata Health Grp. Corp.*,
501 F. Supp. 3d 898 (S.D. Cal. 2020) .......................................................................... 15

*Stemplewski v. Suntrust Mortg., Inc.*,
2010 WL 2179152 (N.D. Cal. May 26, 2010) ............................................................... 7

*Stop Loss Ins. Brokers, Inc. v. Brown & Toland Med. Grp.*,
143 Cal. App. 4th 1036 (2006) ..................................................................................... 16

*SunPower Corp. v. SolarCity Corp.*,
2012 WL 6160472 (N.D. Cal. Dec. 11, 2012) ............................................................. 20

*Swarts v. Home Depot, Inc.*,
2023 WL 5615453 (N.D. Cal. Aug. 30, 2023) .......................................................... 7, 10

*Thane Int'l, Inc. v. 9472541 Canada Inc.*,
2020 WL 7416171 (C.D. Cal. Nov. 16, 2020) ............................................................. 19

*Valenzuela v. Nationwide Mut. Ins. Co.*,
2023 WL 5266033 (C.D. Cal. Aug. 14, 2023) ............................................................ 5, 6

*In re Vizio, Inc., Consumer Priv. Litig.*,
238 F. Supp. 3d 1204 (C.D. Cal. 2017) .......................................................................... 5

*Wesch v. Yodlee, Inc.*,
2021 WL 6206644 (N.D. Cal. July 19, 2021) ............................................................... 10

*Yockey v. Salesforce, Inc.*,
2023 WL 55193233 (N.D. Cal. Aug. 25, 2023) .............................................................. 8

# TABLE OF AUTHORITIES
## (continued)

**Page(s)**

**Statutes**

740 ILCS
  14/10 ................................................................................................................. 13, 14
  14/15 ......................................................................................................................... 1

Cal. Civ. Code § 1798.150(c) ...................................................................................... 11

Cal. Penal Code
  § 502(a) ..................................................................................................................... 8
  § 631 ................................................................................................................... *passim*
  § 632 .................................................................................................................. 10, 11

California Unfair Competition Law ...................................................................... *passim*

California Uniform Trade Secrets Act .................................................................... 19, 20

**Other Authorities**

Federal Rules of Civil Procedure
  8 ....................................................................................................................... *passim*
  9(b) ..................................................................................................................... 10, 11

## I.      INTRODUCTION

Plaintiffs' theory of the case—that OpenAI must provide notice and compensation to the "hundreds of millions of Americans" who have ever "shared" anything online (Opp. at 1)—has no basis in the law. Plaintiffs do not have privacy or property rights in information publicly posted or voluntarily provided to OpenAI or third parties.  They cannot manufacture a duty of care extending to every single person who has ever posted anything to the Internet.  They have not pled facts giving rise to interceptor or hacking liability. Imposing liability under BIPA based on the allegation that OpenAI may have scraped public photographs from the Internet would be unprecedented.  And Plaintiffs cannot plead any damages.

Claiming privacy and property rights over information strewn throughout the Internet, much of which is not private, not sensitive, and not even Plaintiffs' own information—as with Plaintiff Cousart electing to post her father's medical information on social media—and demanding compensation is legally baseless. This is Plaintiffs' third attempt at pleading their claims.  The Amended Complaint should be dismissed in full and with prejudice.

## II.      ARGUMENT

### A.      Plaintiffs Have Waived Numerous Claims and Arguments, Requiring Dismissal.

Plaintiffs acknowledge their claims under the Illinois Consumer Fraud and Deceptive Business Practices Act and the Illinois Uniform Deceptive Trade Practices Act should be dismissed (Opp. at 16 n.8)— and they should be dismissed with prejudice.  *See Homsy v. Bank of Am., N.A.*, 2013 WL 2422781, at *5 (N.D. Cal. June 3, 2013).  Plaintiffs also do not rebut that: (1) they fail to plead a UCL unlawful claim as to (a) CalOPPA, (b) other statutes referenced in passing in the Amended Complaint, (c) contract claims, (d) "other tort claims stated in this lawsuit," and (e) OpenAI's alleged failure to register as a data broker (Mot. at 14-15 & nn.15-16); and (2) Roberts fails to plead a BIPA Section 15(c) claim (*id*. at 21 n.19).  These claims too must be dismissed with prejudice.  *Homsy*, 2013 WL 2422781, at *5.

Further, Plaintiffs ignore other arguments altogether, including that: (1) the Amended Complaint violates Rule 8 through improper group pleading (Mot. at 8); (2) scraping cannot be a basis for ECPA liability

(*id*. at 9 n.10); (3) Plaintiffs' ECPA and CIPA claims must be dismissed to the extent they are predicated on "non-content information" (*id*. at 10 n.12); (4) Plaintiffs' invasion of privacy claim must be dismissed because they cannot allege a legally protected privacy interest in public information (*id*. at 27-28); and (5) Plaintiffs' conversion claim must be dismissed because, even if their personal information was considered property, it was not converted because they retained access to copies (*id*. at 31-32).  Plaintiffs' failure to rebut these arguments means that they have waived any opposition to dismissal on these grounds.  *See Barbizon School of San Francisco, Inc. v. Sentinel Ins. Co. LTD.*, 2021 WL 5758890, at *10 (N.D. Cal. Dec. 3, 2021) (finding plaintiffs waived opposition to dismissal based on arguments that "remain unrebutted"); *Lesnik v. Eisenmann SE*, 2018 WL 4700342, at *5-6 (N.D. Cal. Oct. 1, 2018) (finding plaintiffs "abandoned" their claim where they failed to address arguments for dismissal).

### B.        The Amended Complaint Violates Rule 8.

The Amended Complaint fails to concisely identify the factual bases for Plaintiffs' claims and impermissibly relies on group pleading against seven separate Defendants.  It also contains hundreds of paragraphs of irrelevant allegations concerning AI technology at-large and policy issues unrelated to Plaintiffs' claims.  *See* Mot. at 6-8.  Plaintiffs' Opposition, which largely ignores OpenAI's arguments, only highlights these pleading deficiencies.

Plaintiffs first misinterpret Rule 8.  *See* Opp. at 5.  Dismissal under Rule 8 is proper if the factual elements of a cause of action are not organized into a "short and plain statement of the claim" and instead scattered throughout a prolix complaint.  *McHenry v. Renne*, 84 F.3d 1172, 1174 (9th Cir. 1996) (upholding dismissal of 53-page complaint that "mixe[d] allegations of relevant facts, irrelevant facts, political argument, and legal argument in a confusing way").  Otherwise, "[o]nly by months or years of discovery can each defendant find out what [they are] being sued for."  *Id.* at 1178.  This is precisely the problem that would occur if Plaintiffs were allowed to pursue their claims.

Most fundamentally, Plaintiffs still do not identify the "personal information" that forms the basis of their claims.  The Opposition doubles down on the implausible and speculative claim that "Defendants . . .

take from myriad internet sources . . . essentially every piece of data exchanged on the internet." Opp. at 5;
*see id.* at 1 (claiming OpenAI has "secretly harvest[ed] from the internet everything ever created and shared
online").[1] Plaintiffs also repeatedly cite the complaint paragraph supposedly identifying the "16 categories
of data that Defendants take," including "social media information," "analytics data," "transactional data,"
and (vaguest of all) "other detailed activity in applications." Opp. at 6 (citing A.C. ¶ 16). But even assuming,
*arguendo*, that phrases like "analytics data" and "detailed activity in applications" contain meaning—and
somehow encompass personal information—there are ***no specific allegations*** supporting the theory that
OpenAI collected these vague "categories" of information ***from the named Plaintiffs***. In some cases, the
allegedly scraped information does not even belong to the individual alleging the claim. For example,
Plaintiff Cousart alleges that she was a "frequent user of various websites and social media platforms which
were scraped by Defendants," including Facebook groups where she "posted [her father's] private medical
information" and sought "advice" from other Facebook users. A.C. ¶ 21. Yet Plaintiffs cite no authority
explaining Plaintiff Cousart's attempt to plead privacy or property rights in information she publicly posted
about ***her father***. Thus, the Amended Complaint violates Rule 8 because its scattershot allegations require
guesswork regarding what personal information forms the basis of Plaintiffs' claims.[2] *See* Mot. at 6-8.

    Further, the Opposition does not defend the Amended Complaint's inclusion of hundreds of
paragraphs of allegations and footnotes that are unconnected to Plaintiffs' claims. *See* Mot. at 7 (noting

---

[1] The Amended Complaint appends "a selection of around 1,000 websites that Defendants have scraped,"
with no further allegations as to how this list was compiled and while simultaneously alleging that Plaintiffs
do not know the "details of content" used to train OpenAI's products. *See* A.C. ¶¶ 184-185, 193. Plaintiffs
also point to ***third-party compiled*** datasets such as "Common Crawl" and "BookCorpus" but can only
vaguely describe their contents. *See* A.C. ¶ 194 (alleging Common Crawl "contains petabytes of data
collected over twelve (12) years . . . from all types of websites"), ¶ 190 (alleging BookCorpus contains "over
7,000 unique unpublishes books from a variety of genres"). None of these allegations supports an inference
that ***OpenAI*** scraped "every piece of data exchanged on the internet" (Opp. at 5); and crucially, none of these
datasets are alleged to contain personal information concerning the named Plaintiffs.

[2] Plaintiffs offer no response to OpenAI's citation of *Martin v. Sephora USA, Inc.*, 2023 WL 2717636, at *5-
6 (E.D. Cal. Mar. 30, 2023), *report and recommendation adopted*, 2023 WL 3061957, at *1 (E.D. Cal. Apr.
24, 2023), which dismissed similarly generic privacy claims on Rule 8 grounds. *See* Mot. at 7; Opp. at 5-6.

voluminous allegations about "AI Development Writ Large" and the "Copyright Space").  Nor do Plaintiffs explain why the Amended Complaint contains allegations about non-party Google's supposed wrongdoing. *See* Mot. at 7 n.6.  Plaintiffs cannot evade basic pleading requirements by screenshotting "concern[ed]" Reddit posts about "tech companies" (A.C. ¶¶ 354, 357) or blaming Defendants for the criminal conduct of third-parties who might seek to misuse generative AI tools for "high-speed spawning of child pornography" (Opp. at 1).  The Amended Complaint violates Rule 8 because it obfuscates its lack of well-pled allegations with prolix and irrelevant fearmongering.  *Cf. Cafasso v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1059 (9th Cir. 2011) ("Our district courts are busy enough without having to penetrate a tome approaching the magnitude of *War and Peace* to discern a plaintiff's claims and allegations.").

Finally, by failing to respond, Plaintiffs concede that the Amended Complaint improperly relies on group pleading against the six separate OpenAI entities (not to mention Microsoft).  Mot. at 8; *see* Opp. 5-6; Section II.A, *supra*.  The Amended Complaint should be dismissed on this pleading defect alone.

C. **Plaintiffs Have Not Stated a Claim Based on Data Interception or Access to User Devices.**

1. **ECPA (Count 1)**

Plaintiffs allege ECPA violations based on three different theories of liability, which fail for multiple, independent reasons.  *See* Mot. at 8-10.  ***First***, at least one party to each communication consented to the alleged interception.  *See Katz-Lacabe v. Oracle Am., Inc.*, 668 F. Supp. 3d 928, 945 (N.D. Cal. 2023) (ECPA "is a one-party consent statute").  Plaintiffs do not deny that *Katz-Lacabe*—a directly on-point decision from this District—disposes of their first theory of liability, the alleged interception of communications on third-party platforms.  There, because the third-party platforms "must have chosen to deploy Oracle's tools on their websites, it necessarily follows that 'one of the parties to the communication'—the websites themselves—gave 'prior consent to such interception.'"  *Id*.  So too here.  The third-party platforms that chose to deploy the ChatGPT API necessarily consented to any interception.  Plaintiffs' argument that any interception exceeded the scope of ***users'*** consent is thus irrelevant.  *See* Opp. at 7.  Nor do Plaintiffs offer any well-pled allegations consistent with their passing suggestion that OpenAI exceeded the consent obtained

from ***third-party websites***.  Indeed, not one of the 30+ paragraphs Plaintiffs cite to even mentions third-party website consent, much less alleges the absence of such consent.  *See id*. at 7 (citing A.C. ¶¶ 453-486).

Plaintiffs' second and third theories also fail because at least one party (OpenAI or Microsoft) consented to the alleged interception.  *See* Mot. at 9.  And the crime-tort exception to consent "does not apply . . . where Defendant's purpose has plainly not been to perpetuate torts on millions of Internet users, but to make money." *Katz-Lacabe*, 668 F. Supp. 3d at 945 (internal quotations omitted); *B.K. v. Eisenhower Med. Ctr.*, 2024 U.S. Dist. LEXIS 35721, at *14-15 (C.D. Cal. Feb. 29, 2024) (crime-tort exception inapplicable where healthcare information intercepted for "commercial advantage").  Here, Plaintiffs plead that OpenAI's alleged actions were profit-driven.  *See, e.g.*, A.C. ¶¶ 5, 6, 8, 155, 157, 347, 444; *see also* Opp. at 2 (describing OpenAI as "a profit-driven technology empire").[3]  As such, one-party consent alone defeats the ECPA claim.

***Second***, Plaintiffs have not pled how OpenAI allegedly intercepted their communications ***during transmission***.  *See* Mot. at 9.  Buzz words like "in transit" and "real-time" are insufficient.  *See In re Vizio, Inc., Consumer Priv. Litig.*, 238 F. Supp. 3d 1204, 1228 (C.D. Cal. 2017).  Plaintiffs invoke their conclusory statement that "[t]he interception and recording . . . occur[s] while the . . . communications are in transit or passing over any wire, line, or cable, or are being sent from or received at any place."  A.C. ¶¶ 574, 584, 594; Opp. at 8.  Such allegations are a far cry from the lone case cited by Plaintiffs, *Valenzuela v. Nationwide Mut. Ins. Co.*, 2023 WL 5266033, at *5 (C.D. Cal. Aug. 14, 2023), which found allegations sufficient when they "did not simply recite that there was real time interception" but "added detail on how it occurs (through the code [defendant chatbot provider] paid [third-party service provider] to embed) and pointed to statements from [the service provider] regarding 'real-time insights' and 'data from every use event collected as it happens.'"  Plaintiffs' failure to adequately plead ***how*** interception occurs ***during transmission*** is fatal.[4]

---

[3] These factual allegations distinguish *Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*, 214 F. Supp. 3d 808, 828 (N.D. Cal. 2016), which applied the crime-tort exception to secret recordings of Planned Parenthood employees later used to create "misleading summary videos." *See* Opp. at 7.

[4] The only other allegation Plaintiffs rely on is A.C. ¶ 460, which alleges that "Defendants were tracking and collecting every piece of information entered into [ChatGPT]" and "also tracking the information from other

**OPENAI'S REPLY ISO MOTION TO DISMISS**
**3:23-CV-04557-VC**

***Third***, Plaintiffs' first theory of liability fails for an additional reason: they do not allege interception of their data through the ChatGPT API. Only Plaintiff Paz alleges using ChatGPT API-powered features of third-party websites, and he fails to plead that he used these features at a time when he alleges OpenAI was using API data. Mot. at 9-10. Neither of Plaintiffs' counterarguments is persuasive. Nothing in the Amended Complaint casts "doub[t]" on that document's own allegation that OpenAI stopped collecting API data in May 2023. *Compare* Opp. at 8-9 (citing A.C. ¶ 218), *with* A.C. ¶ 218. Thus, Plaintiff Paz's "[r]ecen[t]" use of Snapchat's MyAI feature is inadequate to infer that any of his information was actually intercepted by OpenAI. Plaintiffs also argue that they have generally used "third-party websites that have ChatGPT integrated" (Opp. at 9)—the implication being, apparently, that their voluntary use of those third-party websites renders OpenAI liable under ECPA. There are numerous problems with this theory, including that it fails to address whether and what actionable content was entered into those third-party websites, how OpenAI allegedly intercepted that content, and whether interception occurred in real time. As one example, Plaintiffs allege they "actively use" Spotify, a website they claim has integrated the ChatGPT API. Opp. at 9. But at least one Plaintiff (Martin) stopped using Spotify five years ago (A.C. ¶ 43), making it implausible that his data was intercepted through the API.[5] Plaintiffs' catchall approach to liability is unpersuasive.

## 2.      CIPA (Count 3)

Like the ECPA claim, Plaintiffs' CIPA claim fails because Plaintiffs do not allege (1) how their communications were intercepted during transmission, *Cody v. Ring LLC*, 2024 WL 735667, at *5 (N.D. Cal. Feb. 22, 2024) (dismissing CIPA claim for failure "to explain how the [interception] software works or how

---

applications in which their AI is already plugged in." Plaintiffs try to stretch this allegation in their Opposition by arguing that the information "was collected *as they entered it.*" Opp. at 8 (emphasis in original) (citing A.C. ¶ 460). The Amended Complaint does not say that and, even if it did, such an allegation would still be too conclusory—even under *Valenzuela*—to withstand dismissal.

[5] Plaintiffs falsely state that OpenAI "does not address interception on Microsoft platforms or ChatGPT." Opp. at 9 n.2. To the contrary, OpenAI's Motion offers multiple, independent bases to dismiss all three theories of liability for Plaintiffs' ECPA and CIPA claims. *See* Mot. at 8-11.

**OpenAI's Reply ISO Motion to Dismiss**
**3:23-cv-04557-VC**

the interception occurs"); or (2) that they used the ChatGPT API, *see* Mot. at 10.[6]

Plaintiffs fail to rebut additional, independent bases to dismiss the CIPA claim.  ***First***, the § 631(a) claim fails because the Amended Complaint block quotes the statute and "fails to identify which specific facts are allocated" to each of the four clauses of § 631(a).  Mot. at 11; *Martin*, 2023 WL 2717636, at *5 (dismissing § 631(a) claim on this basis).  Plaintiffs' Opposition attempts to assign specific factual allegations to the various clauses of the statute (Opp. at 10), but an opposition brief cannot cure a pleading deficit.  *See Stemplewski v. Suntrust Mortg., Inc.*, 2010 WL 2179152, at *2 (N.D. Cal. May 26, 2010).[7]

***Second***, the § 632(a) claim fails because the statute prohibits eavesdropping on "confidential communications" and the "general rule" is that Internet communications, like those at issue here, are not confidential.  Mot. at 11; *Revitch v. New Moosejaw, LLC*, 2019 WL 5485330, at *3 (N.D. Cal. Oct. 23, 2019); *Swarts v. Home Depot, Inc.*, 2023 WL 5615453, at *8 (N.D. Cal. Aug. 30, 2023) ("A plain reading of the text [of Section 632] itself makes clear that the statute only applies to communications transmitted by telephone, not internet.").  Plaintiffs urge the Court to disregard this general rule based on allegations "that they visited objectively sensitive and confidential websites, including those that include financial, private health information, and others that are password protected."  Opp. at 11 (citing A.C. ¶¶ 197-216).  There are two problems with this argument: (1) the cited paragraphs address scraping, which cannot be a basis for CIPA interceptor liability (*see* Mot. at 9; Section II.A, *supra*); and (2) no plaintiff alleges their "financial" or "private health information" was intercepted.  *See* A.C. ¶¶ 211-212 (alleging generally that Defendants have scraped "private health information" from websites like Walmart.com but not that any named Plaintiff posted information to those pages).  Plaintiffs' cases are distinguishable because they concern intimate communications on platforms configured to be private, unlike those at issue here.  *See Kight v. CashCall,*

---

[6] Plaintiffs have waived any opposition to dismissal of the ECPA and CIPA claims to the extent those claims are predicated on non-content information, *i.e.*, record information.  *See* Mot. at 10 n.12; Section II.A, *supra*.

[7] Plaintiffs' Opposition only underscores why Rule 8 dismissal of the Amended Complaint is warranted due to its convoluted nature.  *See* Opp. at 10 (claiming, *e.g.*, that ¶¶ 614-18 and 623 address liability under § 631(a)'s first clause, while ¶¶ 619-21 address liability under the second clause).

*Inc.*, 200 Cal. App. 4th 1377, 1396 (2011) (telephone conversations); *Flanagan v. Flanagan*, 27 Cal. 4th 766, 776 (2002) (same); *Mirkarimi v. Nevada Prop. 1 LLC*, 2013 WL 3761530, at *1 (S.D. Cal. July 15, 2023) (private telephone call); *Brown v. Google LLC*, 525 F. Supp. 3d 1049 (N.D. Cal. 2021) (Google Chrome users were in "private browsing mode"); *Doe v. Fullstory, Inc.*, 2024 WL 188101, at *1 (N.D. Cal. Jan. 17, 2024) (communications between patients and healthcare providers); *Yockey v. Salesforce, Inc.*, 2023 WL 55193233, at *6 (N.D. Cal. Aug. 25, 2023) (same; noting that "[c]ommunications made in the context of a patient-medical provider relationship are readily distinguishable from online communications [generally]").[8]

### 3.     CDAFA (Count 2)

The Court should reject Plaintiffs' invitation to transform the CDAFA—a quintessential anti-hacking statute "enacted to combat 'computer crime,'" *Heiting v. Taro Pharms. USA, Inc.*, 2023 WL 9319049, at *6 (C.D. Cal. Dec. 26, 2023) (quoting Cal. Penal Code § 502(a))—into a cudgel used to penalize use of publicly available information.  While the statute "has been extended by some district courts outside of the traditional hacking realm, those courts have still required allegations that a defendant in some way caused output from the function of a computer, without the owner's permission."  *Id*. at *6 (dismissing CDAFA claim based on information plaintiff entered into chatbot because there were no allegations that defendant "implanted anything on her computer"); *see Meta Platforms, Inc. v. BrandTotal Ltd.*, 605 F. Supp. 3d 1218, 1260-66 (N.D. Cal. 2022) (software logging user activities during use of defendant's website does not violate CDAFA).[9]  *Brown v. Google LLC*, 525 F. Supp. 3d 1049 (N.D. Cal. 2021), is in accord.  There, the court allowed a CDAFA claim to survive dismissal based on the allegation that "Google's hidden code . . . transmitted data without notice while they were in private browsing mode."  525 F. Supp. 3d at 1075.  Here, there are no such allegations.  Instead, Plaintiffs seek to bring a CDAFA claim on behalf of anyone who ever posted anything to the Internet.  Their attempt to stretch the CDAFA beyond any remotely reasonably

---

[8] Plaintiffs' failure to plead injury (Mot. at 11) and explain whether and to what extent they assert aiding-and-abetting liability against OpenAI (*id*. at 11 n.13) are independent bases to dismiss the CIPA claim.

[9] Plaintiffs' Opposition failed to engage with any of this on-point caselaw.  *See* Mot. at 12; Opp. at 12-13.

interpretation of the statute is unsupported by the caselaw. *See id*. at 1074 n.7 (reaffirming that CDAFA requires "circumvention," *i.e.*, does not apply to publicly available data); *see also McCluskey v. Hendricks*, 2021 WL 6773140, at \*5 (C.D. Cal. Nov. 17, 2021) (dismissing CDAFA claim where plaintiff alleged defendants "somehow accessed her private [social media] posts" reasoning "this cannot be the sort of harm the California legislature had in mind"), *aff'd*, 2023 WL 3376564 (9th Cir. May 11, 2023).[10]

Plaintiffs' failure to plead the requisite "damage or loss" under CDAFA independently requires dismissal. Multiple courts have rejected the argument that Plaintiffs advance here—that loss can be defined as the hypothetical value of the allegedly misappropriated data. *See* Mot. at 12-13 (citing cases that Plaintiffs gloss over or fail to contend with altogether). Plaintiffs' caselaw is distinguishable. *See In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 600 (9th Cir. 2020) (discussing CDAFA in context of Article III standing);[11] *Brown*, 2023 WL 5029899, at \*19 (denying summary judgment where plaintiffs offered evidence that defendant had "piloted a program where it pays users $3.00 a day for their browsing history," *i.e.*, the precise data at issue in that case).[12] Neither case controls here.

### D.    Plaintiffs Cannot State Unfair Competition, Consumer Protection, or Negligence Claims Based on Data Scraping or Interception.

#### 1.    UCL (Count 4)

***First***, Plaintiffs fail to plead statutory standing. Their reliance on *Calhoun v. Google LLC*, 526 F.

---

[10] Plaintiffs' attempt to plead around the public nature of the information by referencing **some** websites that include **some** non-public, password-protected content (*see* Opp. at 12) is insufficient. *See* Mot. at 12 n.14. Not only do the websites listed (*e.g.*, Facebook, Instagram, Walmart) have extensive publicly available content accessible without a password or account, but no Plaintiff alleges that any of their password-protected information was scraped by OpenAI. *See, e.g.*, A.C. ¶ 198 (Plaintiff Cousart referencing use of Facebook, Instagram, and Dropbox but, tellingly, not identifying what if any allegedly misappropriated content was publicly available versus password-protected). Nor do Plaintiffs explain **how** OpenAI could have circumvented password protection on third-party websites—an independent basis for dismissal.

[11] *See McClung v. AdShopper, Inc.*, 2024 WL 189006, at \*2 n.2 (N.D. Cal. Jan. 17, 2024) (it is a "stretch" to rely on *Facebook Internet Tracking* "as an implicit statement about statutory standing under California law").

[12] *See James v. Allstate Ins. Co.*, 2023 WL 8879246, at \*7 (N.D. Cal. Dec. 22, 2023) (*Brown* is inconsistent with "[t]he weight of the authority in the district and the state" and distinguishable; "the plaintiff there alleged a specific cash value was attached to the allegedly misappropriated data and identified a market for the data").

Supp. 3d 605 (N.D. Cal. 2021), and authorities cited therein, for the proposition that "loss" of personal information constitutes economic injury is misplaced. *See* Opp. at 14. Numerous decisions from this District have explicitly limited or rejected *Calhoun* as unpersuasive. *See Cottle v. Plaid Inc.*, 536 F. Supp. 3d 461, 484 n.8 (N.D. Cal. 2021) (*Calhoun* "rests on four cases that address Article III standing, which is different from UCL standing"); *Swarts*, 2023 WL 5615453, at *9 (same); *Wesch v. Yodlee, Inc.*, 2021 WL 6206644, at *4 (N.D. Cal. July 19, 2021) (same); *see also McClung*, 2024 WL 189006, at *4 (questioning *Calhoun*'s proposition that "the theft of personal information makes it less valuable to the person it was stolen from"). The only other case cited by Plaintiffs—*Brown*, 2023 WL 5029899, at *21—is distinguishable. Unlike in *Brown*, Plaintiffs have **not** alleged there is a market for the allegedly misappropriated data—*i.e.*, the "entire Internet" (A.C. ¶184)—let alone that OpenAI inhibited them from participating in that market. *Brown*, 2023 WL 5029899, at *21; *see Moore v. Centrelake Med. Grp., Inc.*, 83 Cal. App. 5th 515, 538 (2022) (instructing on remand that "[a] lost-value-of-PII theory . . . is insufficient to support UCL standing" where plaintiffs "did not allege they ever . . . intended to participate in this market, or . . . derive economic value from their PII"). Indeed, the suggestion that Plaintiffs would have participated in such a market is inconsistent with their purported privacy concerns. The Court should follow the "weight of the authority" finding that "misappropriation of personal information" is not economic injury. *Katz-Lacabe*, 668 F. Supp. 3d at 944.

**Second**, Plaintiffs are not entitled to restitution, *i.e.*, "the return of money or other property obtained through an improper means to the person from whom the property was taken." *Clark v. Super. Ct.*, 50 Cal. 4th 605, 614 (2010). Plaintiffs do not allege OpenAI took any money from them or identify any property that could be returned to them. *See* Mot. at 14. None of Plaintiffs' authorities suggest restitution is available under these circumstances. *See* Opp. at 15.

**Third**, Plaintiffs cannot state a claim because they do not satisfy Rule 9(b) or plausibly allege reliance. *See* Mot. at 15-16. While Plaintiffs concede that they have not stated a fraudulent prong claim (Opp. at 14 n.7), they cannot dispute that their UCL claim, as a whole, sounds in fraud. *See, e.g.*, A.C. ¶¶ 676-89 (alleging, *inter alia*, "deceptive business practice[s]" and "misrepresentations and omissions"); *see Kearns*

*v. Ford Motor Co.*, 567 F.3d 1120, 1127 (9th Cir. 2009) (applying Rule 9(b) to dismiss unfair prong claim);

*In re Actimmune Mktg. Litig.*, 2010 WL 3463491, at *8 (N.D. Cal. Sept. 1, 2010) ("actual reliance" required

even if "claim arises under the unlawful or unfair prongs, so long as the pleadings assert a cause of action

grounded in misrepresentation or deception"), *aff'd*, 464 F. App'x 651 (9th Cir. 2011).

**Fourth**, Plaintiffs cannot state a claim under the unlawful or unfair prongs of the UCL.  As to the

unlawful prong, any claim predicated on ECPA, CIPA, or CDAFA fails for the reasons stated above.  Section

II.C, *supra*.  And the CCPA cannot be a basis for a UCL claim.  *See* Mot. at 14.  The only authority cited by

Plaintiffs, *Mehta v. Robinhood Fin. LLC*, 2021 WL 6882377, at *12 (N.D. Cal. May 6, 2021), did not grapple

with the statutory text of the CCPA and is thus unpersuasive.  *See* Cal. Civ. Code § 1798.150(c) ("Nothing

in [the CCPA] shall be interpreted to serve as the basis for a private right of action under any other law.");

*Silver v. Stripe Inc.*, 2021 WL 3191752, at *7 (N.D. Cal. July 28, 2021) (correctly interpreting such language

to preclude a UCL claim); *see also In re Sequoia Benefits and Ins. Data Breach Litig.*, 2024 WL 1091195,

at *8 (N.D. Cal. Feb. 22, 2024) (same).  Plaintiffs have waived all other bases for their unlawful claim.  *See*

Mot. at 14-15 & nn.15-16; Opp. at 15; Section II.A, *supra*.  The unfair prong claim is based on the same

conduct underlying the unlawful prong claim.  *See* Opp. at 16 (citing A.C. ¶¶ 649-62—allegations under the

"unlawful" subheading).[13]  Thus, Plaintiffs' unfair prong claim must be dismissed.  *See also* Mot. at 16-17.

> **2.     BIPA (Count 5)**
>
> > **a.     Choice-of-Law**

Plaintiff Roberts does not dispute that she is bound by the California choice-of-law provision in

OpenAI's Terms of Use ("Terms").  *See* Mot. at 17-18 & nn.17-18.  Instead, she asks the Court to nullify

that provision in favor of Illinois statutory law for three reasons, none persuasive.

**First**, Roberts argues that the Terms are inapplicable to members of the nonuser class and members

---

[13] The only other paragraphs cited reference the CCPA (a basis for the unlawful prong claim, but insufficient as discussed *supra*) and quote an anonymous comment posted online.  *See* A.C. ¶¶ 314, 364. Neither allegation distinguishes the unfair prong claim from the unlawful prong claim or otherwise "establish[es]" a relationship to "California public policy."  Opp. at 16.

of the biometric subclass who did not agree to the Terms.  *See* Opp. at 16.  But Roberts—the only Illinois-based plaintiff—does not fit either criterion, and she cannot bring claims on behalf of unnamed class members.  *See In re Ditropan XL Antitrust Litig.*, 529 F. Supp. 2d 1098, 1107 (N.D. Cal. 2007) (dismissing claims and finding it insufficient "that injury ha[d] been suffered by other, unidentified [class] members").[14]

**Second**, Roberts argues that the Amended Complaint states only that "the choice-of-law provision extends to non-statutory claims."  Opp. at 16 (citing A.C. ¶ 541).  This legal conclusion is not entitled to any weight.  Certainly, Roberts does not identify any basis to interpret the provision in such a manner.

**Third**, Roberts relies on *Delgado v. Meta Platforms, Inc.*, 2024 WL 818344, at *1-5 (N.D. Cal. Feb. 27, 2024), which allowed a BIPA claim to proceed despite a California choice-of-law provision.  OpenAI respectfully submits that *Delgado* was wrongly decided.  *See* Mot. at 17-20.  But even if not, *Delgado* is distinguishable.  There, the Court cautioned that "the party opposing enforcement of the choice-of-law provision, 'bears the burden to establish . . . the nondesignated state's materially greater interest.'"  *Delgado*, 2024 WL 818344, at *2.  Here, the Amended Complaint repeatedly alleges that California, not Illinois, has the greater interest.  *E.g.*, A.C. ¶ 544 ("California . . . has a greater interest . . . than any other state, and [is] the state most intimately concerned with the claims and outcome of this litigation."); *id.* ¶ 545 (alleging "California has a significant interest in regulating the conduct of businesses operating within its borders"); *id.* ¶ 546 ("application of California law to the Classes' claims is neither arbitrary nor fundamentally unfair"); *id.* ¶ 547 ("Application of California law . . . is consistent with constitutional due process.").  Indeed, nothing suggests that Illinois has a "materially greater interest" in Plaintiffs' consumer protection claims.  *Delgado*, 2024 WL 818344, at *2.  Plaintiffs crafted the Amended Complaint in an attempt to ensure that out-of-state class members would benefit from California law.  They should not get their cake and eat it too, *i.e.*, allow those same out-of-state class members to also benefit from another state's laws.

---

[14] Plaintiffs misstate their own pleading, which does not assert a BIPA claim on behalf of the nonuser class.

### b.      Extraterritoriality

It is undisputed that BIPA only applies if the "alleged conduct occurred 'primarily and substantially' in Illinois." *McGoveran v. Amazon Web Servs., Inc.*, 2021 WL 4502089, at *4-5 (D. Del. Sept. 30, 2021); *see* Opp. at 18.  But the Amended Complaint emphasizes that ***California*** is the locus of the conduct at issue in this case, not Illinois.  *E.g.*, A.C. ¶ 542 (California "is where the majority of unlawful conduct took place— from development of the AI productions, decisions concerning AI Products and training of the AI, web scraping practices, and other major decisions which affected all Class Members"); *see also id*. ¶¶ 539-47. Such allegations amply suffice to distinguish Judge Donato's decisions in *Colombo v. YouTube, LLC*, 2023 WL 4240226, at *4 (N.D. Cal. June 28, 2023), and *In re Facebook Biometric Info. Priv. Litig.*, 326 F.R.D. 535, 547-48 (N.D. Cal. 2018), *aff'd sub nom. Patel v. Facebook, Inc.*, 932 F.3d 1264 (9th Cir. 2019), which held that out-of-state server locations, on their own, were insufficient to preclude BIPA claims.

Apparently conceding that Roberts' Illinois residency standing alone is insufficient to overcome the default presumption against extraterritoriality (Mot. at 20), Plaintiffs make a new argument in their Opposition—that "Defendants knowingly collected data from Illinois."  Opp. at 19 (citing A.C. ¶ 16).  But the Amended Complaint makes no such allegation—not in the cited paragraph or anywhere else in the pleading.  Thus, Plaintiffs appear to be asking the Court to infer, based on a vague allegation that OpenAI collects the "geolocation of the users" (A.C. ¶ 16), that it knowingly collected data from Illinois.  The inference is baseless and conclusory.  Nowhere do Plaintiffs explain how or when OpenAI collects supposed "geolocation information" or why it would do so.

### c.      Claim-Specific Bases for Dismissal

***First***, Roberts argues that she has "clearly detail[ed] . . . the specific photographs and other data that Defendants took, and how that data is used in AI models."  Opp. at 20.  Not so.  In fact, Roberts does not identify a ***single*** photograph or video of hers that OpenAI supposedly collected or used—much less a facial geometry scan or voiceprint that would qualify as a biometric identifier under the statute.  *See* 740 ILCS 14/10 (expressly excluding "photographs" from the definition of "biometric identifier").  Instead, she relies

OpenAI's Reply ISO Motion to Dismiss
3:23-CV-04557-VC

on broad allegations that "all items users have posted on the internet have been collected, including their voice recordings and images." A.C. ¶ 429. Such cursory assertions fail to allege that OpenAI possessed or obtained her biometric data. *See* Mot. at 20-21. Roberts' attempt to distinguish caselaw dismissing such claims is unpersuasive. *See* Opp. at 20. In all cases, the BIPA claims were dismissed for relying on possibilities, implausible allegations, and legal conclusions over facts. *See* Mot. at 21. The same is true here.

**Second**, Roberts fails to plead that her allegedly scraped photos and videos qualify as biometric data. *See* Mot. at 21-22. Roberts does not explain how, why, or when OpenAI creates facial geometry scans or voiceprints (*i.e.*, "biometric identifiers") from the allegedly scraped photos and videos.[15] Nor does she allege that any such information was used to identify her, as required for "biometric information." *See* 740 ILCS 14/10; Mot. at 21-22. Roberts' only argument to the contrary is that OpenAI **may** have scraped other information that **could** be used to identify her. *See* Opp. at 20-21. Such conjecture is insufficient under the statute—which defines "biometric information" as a "biometric identifier **used** to identify an individual," 740 ILCS 14/10 (emphasis added)—and Roberts' own authority, which found "biometric information" adequately pled where identifying information was actually provided to the defendant. S*ee Daichendt v. CVS Pharmacy, Inc.*, 2023 WL 3559669, at *1 (N.D. Ill. May 4, 2023) (alleging plaintiffs "entered their names, email addresses, and phone numbers into a computer terminal inside defendant's stores prior to scanning their biometric identifiers").[16] Indeed, courts frequently dismiss BIPA claims for failure to plead how biometric data can be used to identify an individual. *See Clarke v. Aveda Corp.*, 2023 WL 9119927, at *2 (N.D. Ill. Dec. 1, 2023) (dismissing BIPA claim where plaintiffs alleged Aveda's "Try-On" feature scanned plaintiffs' facial geometry but failed to allege that "Aveda was capable of identifying them from this data";

---

[15] In fact, the 198-page Amended Complaint does not mention "voiceprint" once and its minimal references to facial scans are boilerplate and insufficient. *See* A.C. ¶¶ 716-717, 719.

[16] None of Plaintiffs' other cases are persuasive. *See Kukovec v. Estee Lauder Cos., Inc.*, 2022 WL 16744196, at *1 (N.D. Ill. Nov. 7, 2022) (failing to address identification requirement); *Pruitt v. Par-A-Dice Hotel Casino*, 2020 WL 5118035, at *2-3 (C.D. Ill. Aug. 31, 2020) (same); *Melzer v. Johnson & Johnson Consumer Inc.*, 2023 WL 3098633, at *1 (D.N.J. Apr. 26, 2023) (finding it "important[]" that the "biometric data is tied to individuals' names, birthdates, and other personally identifying information").

"plaintiffs have failed to plead the most foundational aspect of a BIPA claim") (internal quotations omitted); *Castelaz v. Estee Lauder Cos., Inc.*, 2024 WL 136872, at *7 (N.D. Ill. Jan. 10, 2024) (same).

### 3.       Negligence (Count 8)

***First***, Plaintiffs fail to establish that OpenAI owes a duty of care to every person who has ever posted anything to the Internet. *Cf.* Opp. at 23 (citing to A.C. ¶ 6, which alleges that OpenAI "harvested . . . essentially every piece of data exchanged on the internet"). The Amended Complaint alleges only that the purported duty arose from "a common law duty to prevent foreseeable harm to others." A.C. ¶ 729. As OpenAI explained in its Motion, however, California law "'require[es] more than mere foreseeability for imposing a duty of care.'" Mot. at 25 (quoting *S. Cal. Gas Leak Cases v. Super. Ct.*, 7 Cal. 5th 391, 398-401 (2019) (analyzing *Rowland* factors and concluding "that although foreseeability may set tolerable limits for most types of physical harm, it provides virtually no limit on liability for nonphysical harm") (internal quotation omitted)). Plaintiffs' Opposition sidesteps this principle—arguing instead that a "special relationship" exists. *See* Opp. at 23-24. But this argument—which necessarily assumes that OpenAI has a "special relationship" with "every internet user ever" (A.C. ¶ 185)—is legally baseless. *See Regents of Univ. of Cal. v. Super. Ct.*, 4 Cal. 5th 607, 621 (2018) ("Special relationships . . . create a duty of care owed to a limited community, not the public at large."); *Bily v. Arthur Young & Co.*, 3 Cal. 4th 370, 398 (1992) (expressing similar concern about "virtually unlimited responsibility").[17] In their Opposition, Plaintiffs attempt to overcome this absurd result by cabining the negligence claim to "OpenAI's collection of its users' data and sensitive information"—arguing that, in this context at least, there must be "a special relationship." Opp. at 24. But this argument is belied by the Amended Complaint, which: (1) does ***not*** limit the claim to

---

[17] Plaintiffs' data breach cases are in accord. Each imposed a duty of care based on a "special relationship" with a discrete, identifiable group—not, as Plaintiffs allege here, "every internet user ever" (A.C. ¶ 185). *See In re Accellion, Inc. Data Breach Litig.*, 2024 WL 333893, at *4 (N.D. Cal. Jan. 29, 2024) (duty extended to end users of Accellion products); *Stasi v. Inmediata Health Grp. Corp.*, 501 F. Supp. 3d 898, 905 (S.D. Cal. 2020) (plaintiffs had data stored with defendant); *Castillo v. Seagate Tech., LLC*, 2016 WL 9280242, at *3 (N.D. Cal. Sept. 14, 2016) (duty owed to employees and employees' family members); *In re Facebook, Inc., Consumer Priv. User Profile Litig.*, 402 F. Supp. 3d 767, 799 (N.D. Cal. 2019) (Facebook owed duty to users); *Bass v. Facebook, Inc.*, 394 F. Supp. 3d 1024, 1039 (N.D. Cal. 2019) (same).

users (A.C. ¶¶ 727-733, 471 (p. 193)); and (2) does ***not*** identify any of Plaintiffs' "sensitive information," like "medical data," allegedly collected by OpenAI (*cf.* Opp. at 23-24).  Furthermore, the duty Plaintiffs allege is a nebulous duty not "to power Defendants' AI products" that they believe present "moral quandaries" (Opp. at 24)—a concept that is unsupported by any of the data breach cases Plaintiffs rely on.[18]

***Second***, even if the Court were to find a "special relationship" exists between OpenAI and "every internet user ever" (A.C. ¶ 185), policy considerations require cabining that duty.  In *Southern California Gas Leak Cases*—another case Plaintiffs simply ignore in their Opposition—the court refused to "permit[] recovery in negligence for purely economic losses" where it would "threaten indeterminacy-cubed: liability in an indeterminate amount for an indeterminate time to an indeterminate class."  7 Cal. 5th 391, 414 (2019) (internal quotations omitted).  Plaintiffs seek to do the same thing here: impose an indeterminate duty of care extending to everyone who has ever posted anything to the Internet.  The Court should decline to do so.

***Third***, Plaintiffs have not pled cognizable damages.  They do not seriously challenge that alleged loss of control, emotional distress, and potential future harm are insufficient to plead damage.  *See* Mot. at 27.  And any loss of value theory is clearly barred by the economic loss rule.  *See Kadrey v. Meta Platforms, Inc.*, 2023 WL 8039640, at *2 (N.D. Cal. Nov. 20, 2023).  Plaintiffs' argument that the economic loss rule is inapplicable due to the parties' "special relationship" fails for the reasons discussed *supra*.[19]

### E.    Plaintiffs Have Not Stated a Claim for Invasion of Privacy (Count 9).

***First***, Plaintiffs fail to address OpenAI's argument that they lack a legally protected privacy interest in information voluntarily posted on public websites.  *See* Mot. at 27-28; Opp. at 26-30; Section II.A, *supra*;

---

[18] Plaintiffs' reference to an "enforceable agreement" between OpenAI and its users is misplaced.  Opp. at 23 n.9 (internal quotations omitted).  Plaintiffs cannot "recast a breach of contract cause of action as a tort claim."  *Stop Loss Ins. Brokers, Inc. v. Brown & Toland Med. Grp.*, 143 Cal. App. 4th 1036, 1041 (2006).

[19] Plaintiffs' cases are distinguishable.  *See In re Accellion*, 2024 WL 333893, at *8 (recognizing "[l]oss of value of PII" and "out of pocket expenses" are cognizable where a special relationship exists); *Brooks v. Thomson Reuters Corp.*, 2023 WL 9316647, at *5 (N.D. Cal. Aug. 10, 2023) (analyzing Article III standing; personal information included "deep web data" collected by law enforcement and cell phone records); *Mehta*, 2021 WL 6882377, at *6 (plaintiffs alleged lost time).

*see also In re Facebook*, 956 F.3d at 601 (claim requires, *inter alia*, "a legally protected privacy interest").

**Second**, Plaintiffs cannot demonstrate a reasonable expectation of privacy in information posted on public websites or voluntarily offered to third parties.  This is not a case like *In re Facebook*, where Facebook collected highly detailed "individualized data" that could track users' activities down to "the time of day" and then compiled that data into identifiable user profiles that were sold to advertisers.  956 F.3d at 596.  Nor is it like *Brown*, where Google collected highly sensitive data from users in "private browsing mode" notwithstanding affirmative representations to the contrary.  525 F. Supp. 3d at 1077-78.[20]  Plaintiffs try to gloss over these clear differences by arguing that OpenAI collected "private information, private conversations, medical data, and even information about children from private websites with password protection and restricted access."  Opp. at 26.  But none of this is supported by the Amended Complaint. Indeed, Plaintiffs admit to freely posting content on publicly accessible social media platforms and other websites.  A.C. ¶¶ 198-209.  And no Plaintiff alleges their *medical data* was taken.  Plaintiff Cousart's sharing of her father's medical information on Facebook (*id.* ¶ 198) is inconsistent with any expectation of privacy. *See Heldt v. Guardian Life Ins. Co. of Am.*, 2019 WL 651503, at *7 (S.D. Cal. Feb. 15, 2019) ("voluntary sharing of [medical] information on social media demonstrates [no] reasonable expectation of privacy").[21]

**Third**, courts can and do resolve questions surrounding the "highly offensive" nature of the alleged conduct at the pleading stage.  *See, e.g.*, *McClung*, 2024 WL 189006, at *4 (dismissing privacy claim and noting that "[h]ighly offensive conduct is that which amounts to an exceptional kind of prying into another's private affairs").  Here, Plaintiffs' failure to identify **what** content was supposedly collected dooms their claim.  *See* Mot. at 29-30; *Hammerling v. Google LLC*, 615 F. Supp. 3d 1069, 1091 (N.D. Cal. 2022) (dismissing claim where plaintiffs failed to allege data collection was "sufficiently specific or personal . . . to be highly offensive").  And their reference to third-party commentary on the dangers of AI writ large are

---

[20] Plaintiffs' out-of-Circuit caselaw is similarly off-base as it involved implanting cookies on users' browsers. *See Brown*, 525 F. Supp. 3d at 1076-77 (describing *Google Cookie* and *In re Nickelodeon*); Opp. at 28.

[21] Plaintiffs fail to address *Heldt* or any of the other caselaw cited in OpenAI's Motion.  *See* Mot. at 28-29.

**OpenAI's Reply ISO Motion to Dismiss**
**3:23-cv-04557-VC**

insufficient.  *See* Opp. at 29-30 (scattershot citing of allegations comparing AI to, *inter alia*, nuclear weapons); *cf. In re Facebook*, 956 F.3d at 606 (internal Facebook communications suggested the specific collection practices at issue were problematic).

F.    **Plaintiffs Cannot State a Claim Based on Defendants' Alleged Profiting from Scraping and Interception of Their Data.**

1.    **Conversion (Count 10)**

***First***, Plaintiffs do not have a cognizable property right in unspecified personal information posted to the Internet.  A "property right" requires: (1) "an interest capable of precise definition"; (2) property "capable of exclusive possession or control"; and (3) the putative owner's "legitimate claim to exclusivity."  *Kremen v. Cohen*, 337 F.3d 1024, 1030 (9th Cir. 2003) (internal quotations omitted); *see* Opp. at 30 (also citing *Kremen*).  The unspecified "personal and private information" referenced in the Amended Complaint (A.C. ¶ 754) fails each prong.  Instead of even attempting to precisely define the personal information at issue, Plaintiffs claim property rights over any personal information regardless of where and how publicly that information was posted.  *Id*. ¶¶ 184, 187.  And Plaintiffs fail to address either of the remaining prongs, including how they can claim exclusive control over publicly available personal information.  Mot. at 30-31.

The Ninth Circuit recently reaffirmed that "[a]pplication of *Kremen*'s three-part test . . . leads to the conclusion that a cognizable property right does not exist in website copy."  *Best Carpet Values, Inc. v. Google, LLC*, 90 F.4th 962, 969-70 (9th Cir. 2024).  The court found, *inter alia*, that "a website copy is not 'capable of exclusive possession or control.'"  *Id*. at 969.  Likewise, here, Plaintiffs do not have a cognizable property interest in copies of content they post to the Internet.[22]

***Second***, Plaintiffs' unspecified personal information—even if considered property—was not converted by a wrongful act because Plaintiffs cannot dispute that they are in possession of and continue to

---

[22] Plaintiffs' exclusive reliance on *Calhoun*, its progeny, and the cases cited therein (Opp. at 30-31) is unavailing: (1) *Calhoun* does not grapple with Ninth Circuit precedent defining property rights, *see supra*; (2) this Court recently expressed skepticism of *Calhoun*'s holding that personal information is property, *see McClung*, 2024 WL 189006, at *4; and (3) Plaintiffs fail to allege selling the allegedly misappropriated information (or to rebut the argument in OpenAI's Motion that they did not do so), *see* Mot. at 31 n.23.

have access to the very platforms from which they allege OpenAI scraped their information. *See McGowan v. Weinstein*, 505 F. Supp. 3d 1000, 1022 (C.D. Cal. 2020); Mot. at 31-32. Plaintiffs' failure to address this argument in their Opposition is fatal to their claim. *See* Section II.A, *supra*.

**Third**, damages are a required element of a conversion claim, and Plaintiffs' "loss of control" and "loss of value" theories of damages are insufficient. *See Kremen*, 337 F.3d at 1029; Section II.D.3, *supra*.

### 2.     Unjust Enrichment (Count 11)

Plaintiffs' caselaw affirms that unjust enrichment is not a standalone claim under California law. *See Greenley v. Kochava, Inc.*, 2023 WL 4833466, at *19 (S.D. Cal. July 27, 2023) (dismissing unjust enrichment claim); Opp. at 33. Even if construed as a quasi-contract claim (Mot. at 32), Plaintiffs fail to explain how a quasi-contractual agreement exists based on scraping allegations. *See McClung* 2024 WL 189006, at *4; Mot. at 32-33. Their interception allegations fare no better. Indeed, Plaintiffs do not even try to rebut the argument that the parties have an enforceable agreement (*i.e.*, the Terms) covering such allegations. *See* Mot. at 33; Opp. at 32-33. Plaintiffs' unjust enrichment claim must be dismissed.[23]

### G.     CUTSA Supersedes Claims Premised on Misappropriation of Plaintiffs' Personal Data.

Plaintiffs attempt to avoid dismissal by arguing that their UCL, negligence, conversion, and unjust enrichment claims "are more akin to a data misuse/data breach claim, as opposed to a misappropriation of confidential business and proprietary information." Opp. at 33. Plaintiffs' arguments are unpersuasive.

*First*, both the Amended Complaint and Opposition make clear that Plaintiffs are alleging OpenAI "stole" or "misappropriated" information that they consider confidential and proprietary. *See* A.C. ¶¶ 2, 12, 18(ii), 18(iii), 184, 190, 193, 194, 245, 384, 449, 725; Opp. at 1-2 (framing complaint as seeking "*compensation . . .* to license" information that they claim was "stolen"); *see also* Mot. at 34. Plaintiffs' allegations frequently refer to "professional" information reflecting their "skills and expertise" as personal

---

[23] Plaintiffs' other caselaw is easily distinguishable. *See In re Facebook*, 956 F.3d at 599-601 (addressing Article III standing); *Thane Int'l, Inc. v. 9472541 Canada Inc.*, 2020 WL 7416171, at *6-8 (C.D. Cal. Nov. 16, 2020) (addressing extraterritorial copyright infringement).

"property." A.C. ¶¶ 34, 36, 39, 59. Each Plaintiff complains they have lost "control over [their] property" (*see, e.g.*, *id.* ¶¶ 27, 38, 50, 59), including the right to "profit" from and "sell" their "private information" for "renumeration" (*id.* ¶ 406). By contrast, there are no allegations in the Amended Complaint analogizing the alleged conduct to a "data breach." Plaintiffs cannot now reinterpret their own pleading to avoid dismissal.

**Second**, contrary to the Opposition's framing, CUTSA applies to "claims based on the misappropriation of confidential information, whether or not that information meets the statutory definition of a trade secret." *Mattel, Inc. v. MGA Ent., Inc.*, 782 F. Supp. 2d 911, 987 (C.D. Cal. 2011); *see Erhart v. BofI Holding, Inc.*, 612 F. Supp. 3d 1062, 1117-18 (S.D. Cal. 2020) (cited by Plaintiffs and clarifying that CUTSA supersession applies "even if th[e] information does not meet the statutory definition of a trade secret") (internal quotations omitted). The case that Plaintiffs primarily rely on, *Genasys Inc. v. Vector Acoustics, LLC*, is consistent. *See* Opp. at 34. Plaintiffs cite only the first motion to dismiss holding in *Vector Acoustics*, 638 F. Supp. 3d 1135 (S.D. Cal. 2022), but ignore the second motion to dismiss. On that motion, the court found the plaintiff's "own description of its unjust enrichment claim highlights that at least part of that claim, as alleged, is preempted by CUTSA," despite the plaintiff "calling the [information at issue] 'non-trade secret materials' in an attempt to evade CUTSA's preemption." 2023 WL 4414222, at *22 (S.D. Cal. July 7, 2023).[24] Similarly, here, Plaintiffs cannot avoid preemption where it is clear they are suing OpenAI for misappropriating proprietary information. *See SunPower Corp. v. SolarCity Corp.*, 2012 WL 6160472, at *13 (N.D. Cal. Dec. 11, 2012) (dismissing common law claims as preempted where "each [claim] alleges in essence that [d]efendants [misappropriated] . . . proprietary information").

## III.    CONCLUSION

For the foregoing reasons, the Amended Complaint should be dismissed with prejudice.

---

[24] Plaintiffs' other authorities (*see* Opp. at 33-34) are distinguishable because they concerned claims arising from alleged duties to safeguard information, rather than misappropriation of confidential information. *See Erhart*, 612 F. Supp. 3d at 1118-19 (noting plaintiff's claims were "more akin to a data breach claim"); *Chromadex, Inc. v. Elysium Health, Inc.*, 369 F. Supp. 3d 983, 989 (C.D. Cal. 2019) (noting plaintiff's claims arose from alleged breach of fiduciary duty, not from "misappropriation of confidential information").

Dated: March 28, 2024

COOLEY LLP

By: /s/ *Matthew D. Brown*

Matthew D. Brown

Attorneys for Defendants
OPENAI LP, OPENAI INCORPORATED,
OPENAI GP, LLC, OPENAI STARTUP FUND I,
LP, OPENAI STARTUP FUND GP I, LLC and
OPENAI STARTUP FUND MANAGEMENT LLC