Emily Johnson Henn (Bar No. 269482)
Kathryn E. Cahoy (Bar No. 298777)
COVINGTON & BURLING LLP
3000 El Camino Real
5 Palo Alto Square, 10th Floor
Palo Alto, California 94306
Telephone: + 1 (650) 632-4700
Facsimile: + 1 (650) 632-4800
Email: ehenn@cov.com
Email: kcahoy@cov.com

Isaac D. Chaput (Bar No. 326923)
COVINGTON & BURLING LLP
Salesforce Tower
415 Mission Street, Suite 5400
San Francisco, California 94105
Telephone: + 1 (415) 591-6000
Facsimile: + 1 (415) 591-6091
Email: ichaput@cov.com

Ashley M. Simonsen (Bar No. 275203)
COVINGTON & BURLING LLP
1999 Avenue of the Stars
Los Angeles, California 90067
Telephone: + 1 (424) 332-4800
Facsimile: + 1 (424) 332-4749
Email: asimonsen@cov.com

*Attorneys for Defendant Microsoft Corporation*

**UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| A.T., et al., individually and on behalf of all others similarly situated,<br><br>    Plaintiffs,<br><br>    v.<br><br>OPENAI LP, et al.,<br><br>    Defendants. | Civil Case No.: 3:23-cv-4557-VC<br><br>**MICROSOFT CORPORATION'S REPLY IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT**<br><br>Date: May 16, 2024<br>Time: 10:00 a.m.<br>Place: Courtroom 4<br><br>Judge: The Honorable Vince Chhabria |

**TABLE OF CONTENTS**

I. INTRODUCTION ........................................................................................................................1

II. ARGUMENT ..............................................................................................................................1

    A.    Plaintiffs Identify No Allegations Showing They Were Affected by the Alleged Conduct. ...............................................................................................................................1

    B.    Plaintiffs Cannot Explain Away Their Shotgun Pleading. ....................................................4

    C.    Plaintiffs Cannot Resuscitate Their "Interception" Claim Against Microsoft....................7

    D.    The Court Should Dismiss Plaintiffs' Remaining Claims. ...................................................9

    E.    Plaintiffs Cannot Connect Their Frivolous Injunctive Relief Demand to Their Actual Claims. ......................................................................................................................10

III. CONCLUSION ........................................................................................................................10

## TABLE OF AUTHORITIES

**Cases**

*In re Am. Apparel, Inc. S'holder Derivative Litig.*,
2012 WL 9506072 (C.D. Cal. July 31, 2012)..................................................................................5

*Cook v. GameStop, Inc.*,
2023 WL 5529772 (W.D. Pa. Aug. 28, 2023)..................................................................................8

*Davenport v. Litton Loan Servicing, LP*,
725 F. Supp. 2d 862 (N.D. Cal. 2010)..............................................................................................6

*Diamond v. Corizon Health, Inc.*,
2016 WL 7034036 (N.D. Cal. Dec. 2, 2016)..................................................................................10

*Doe I v. Google LLC*,
2023 WL 6882766 (N.D. Cal. Oct. 18, 2023)...................................................................................9

*In re Facebook, Inc., Consumer Priv. User Profile Litig.*,
402 F. Supp. 3d 767 (N.D. Cal. 2019)..............................................................................................3

*Flores v. EMC Mortg. Co.*,
997 F. Supp. 2d 1088 (E.D. Cal. 2014)............................................................................................5

*In re Google Assistant Priv. Litig.*,
457 F. Supp. 3d 797 (N.D. Cal. 2020)..............................................................................................8

*In re iPhone Application Litig.*,
2011 WL 4403963 (N.D. Cal. Sept. 20, 2011).................................................................................4

*James v. Agnew*,
2016 WL 11448147 (S.D. Cal. Aug. 18, 2016)..............................................................................10

*Juliana v. United States*,
947 F.3d 1159 (9th Cir. 2020)........................................................................................................10

*Katz-Lacabe v. Oracle Am., Inc.*,
668 F. Supp. 3d 928 (N.D. Cal. 2023)..............................................................................................9

*Khoros, LLC v. Lenovo (United States), Inc.*,
2020 WL 12655516 (N.D. Cal. Oct. 5, 2020)...................................................................................6

*Konop v. Hawaiian Airlines, Inc.*,
302 F.3d 868 (9th Cir. 2002)............................................................................................................8

*Maciel Builders LLC v. US Framing Int'l LLC*,
2020 WL 759509 (N.D. Cal. Feb. 14, 2020)....................................................................................9

MICROSOFT'S REPLY IN SUPPORT OF
MOTION TO DISMISS FIRST AMENDED COMPLAINT

Case No. 3:23-cv-04557-VC

*Masimo Corp. v. Wireless*,
   2020 WL 7260660 (S.D. Cal. Dec. 10, 2020) .................................................................................7

*Motul S.A. v. USA Wholesale Lubricant, Inc.*,
   2023 WL 5061945 (N.D. Cal. Aug. 8, 2023) ..................................................................................6

*Noel v. Hall*,
   568 F.3d 743 (9th Cir. 2009) ..........................................................................................................8

*Pac. Radiation Oncology, LLC v. Queen's Med. Ctr.*,
   810 F.3d 631 (9th Cir. 2015) .......................................................................................................10

*Peasley v. Spearman*,
   2018 WL 500198 (N.D. Cal. Jan. 19, 2018) ................................................................................10

*Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*,
   214 F. Supp. 3d 808 (N.D. Cal. 2016) ...........................................................................................9

*Resh, Inc. v. Skimlite Mfg. Inc.*,
   666 F. Supp. 3d 1054 (N.D. Cal. 2023) .........................................................................................5

*Toho-Towa Co. v. Morgan Creek Prods., Inc.*,
   217 Cal. App. 4th 1096 (2013) ......................................................................................................5

*Twitter, Inc. v. Taamneh*,
   598 U.S. 471 (2023) .......................................................................................................................6

*United States v. Smith*,
   155 F.3d 1051 (9th Cir. 1998) .......................................................................................................7

*Valenzuela v. Nationwide Mut. Ins. Co.*,
   2023 WL 5266033 (C.D. Cal. Aug. 14, 2023) ...............................................................................7

*Whitaker v. Tesla Motors, Inc.*,
   985 F.3d 1173 (9th Cir. 2021) .......................................................................................................7

**Statutes**

18 U.S.C. § 2511 ...................................................................................................................................9

I.   INTRODUCTION

Plaintiffs cannot allege facts showing that Microsoft caused them harm.  To obscure this problem, Plaintiffs filed a shotgun pleading that improperly blurs which defendant allegedly did what, and attempt to treat Microsoft and OpenAI as if they were one and the same, without any legal basis.  Although Microsoft's Motion to Dismiss pointed all of this out, Plaintiffs' Opposition ignores these flaws in favor of rhetoric and inaccurate characterizations of their allegations.  The Opposition further muddies the waters of the basis of Microsoft's purported liability—sometimes treating it as direct, sometimes as derivative of OpenAI's, but never with any coherent explanation.

These flaws require dismissal.  *First*, Plaintiffs do not dispute that each of their claims requires pleading concrete, personal harm and causation.  But the Opposition relies entirely on unrealized and hyperbolic "concerns" about the potential impact of AI on society, not on any distinct harm *to these plaintiffs caused by Microsoft*.  *Second*, the Opposition barely attempts to defend Plaintiffs' shotgun pleading or backup invocation of the alter ego doctrine.  In addressing the two-element alter ego doctrine, the Opposition ignores the relevant factors of the first element and does not *mention* the second; instead, it relies on factors that do not suffice as a matter of law.  *Third*, Plaintiffs' theory of "interception" by Microsoft remains implausible.  Plaintiffs do not explain how Microsoft could intercept communications on non-Microsoft platforms or how its "interception" of communications on its own services could have been improper.  *Fourth*, Plaintiffs cannot defend their frivolous request for injunctive relief, under which the Court would place a commercial pause on generative artificial intelligence ("GenAI") and empanel an "independent body of thought leaders" to direct further development.  Courts do not issue public policy dictates to reshape industries based on nebulous concerns about hypothetical future problems.

Because this is Plaintiffs' second attempt at a complaint in the face of similar arguments for dismissal, the Court should dismiss Plaintiffs' claims without leave to amend.

II.   ARGUMENT

   A.   **Plaintiffs Identify No Allegations Showing They Were Affected by the Alleged Conduct.**

The FAC does not allege how *Plaintiffs* were injured (or even affected) by any alleged misconduct and does not allege how *Microsoft* caused any alleged injuries to them.  *See* Mot. (ECF 53) 7–10.

Although Plaintiffs do not dispute that allegations on both points are essential for each of their claims to survive, their Opposition relies on three irrelevant points and identifies no allegations that support the actual elements of Plaintiffs' claims.

*First*, Plaintiffs argue they "devote dozens of pages in their FAC to explaining what products they used." Opp. (ECF 60) 5. In fact, all but two of the cited allegations simply say they used ChatGPT. *See* FAC ¶¶ 20, 30, 41, 53, 62, 72, 82, 92, 101, 106, 115, 120, 129, 460. The remaining two allege their use of the "Products" (defined to include OpenAI's technology, *see* FAC ¶ 3), OpenAI's website, and "Defendants' Products and websites," without specificity. *Id.* ¶¶ 453, 456. And these are merely allegations of *use*, not of injury; none of the cited paragraphs alleges what *Microsoft* services Plaintiffs used or how those services caused injury to them.

*Second*, Plaintiffs argue they "explain what information was taken." Opp. 5. The only paragraph they point to alleges vaguely that Defendants collected "Private Information of millions of users," FAC ¶ 16, and addresses only two types of information: (i) that entered into ChatGPT and third-party services using ChatGPT plug-ins, and (ii) vague, broad categories like "social media information" and "typed searches, as well as other online activity." *Id*. Paragraph 16 does *not* identify what specific information was "taken" from *these* Plaintiffs, much less by Microsoft. Indeed, Plaintiffs do not cite any Plaintiff-specific allegations in arguing they have alleged injury—because the Plaintiff-specific paragraphs do not allege how they were injured or how Microsoft's conduct supposedly caused their injuries. Mot. 7–10.

*Third*, Plaintiffs argue that use of "that information" has "materialized into real and concrete concerns," citing various paragraphs scattered throughout their FAC. Opp. 5. But these "concerns" are not personal or legally cognizable injuries; the concerns Plaintiffs cite range from "risks to humanity," FAC ¶ 9, to "OpenAI's organizational structure" being partially for-profit, *id.* ¶ 159, to statements by commentators criticizing "scraping" and data security of GenAI training data, *id.* ¶ 184.[1] None of the

---

[1] *See also* FAC ¶¶ 11 (societal concerns such as AI "decid[ing] to eliminate the human species"), 14 (statement by OpenAI employee about need to carefully consider AI development), 157 ("collapse of civilization"), 160–65 (Elon Musk's and employees' criticisms of OpenAI's corporate structure), 182–85 (commentator concerns about data privacy and security), 188 (Reddit CEO's criticism of OpenAI), 259 (continued…)

cited paragraphs alleges any concrete injury personal to any Plaintiff.

Plaintiffs also rely on an argument that data was taken from "restricted and password-protected websites" without authorization. Opp. 1; *see also* Opp. to OpenAI's Mot. (ECF 59) 2, 11. Those allegations are implausible and conclusory. For instance, Plaintiffs allege that, among the data from "millions of users," some came from "private health information obtained through the management of patient portals such as MyChart." FAC ¶ 16. But, despite "devot[ing] dozens of pages in their FAC to explaining what products they used," no Plaintiff alleges ever using MyChart let alone specify "what information was taken." Opp. 5. Plaintiffs allege no facts supporting the notion that OpenAI or Microsoft accessed *any* password-protected websites (none of which have allegedly integrated OpenAI's services) to "scrape" data from them without permission. *See* OpenAI Mot. (ECF 50) 12, n.14.

Unable to find support in their FAC, Plaintiffs cite this Court's decision in *In re Facebook, Inc., Consumer Priv. User Profile Litig.*, 402 F. Supp. 3d 767 (N.D. Cal. 2019). The Court held that plaintiffs had Article III standing because they alleged Facebook had provided third-party companies with sensitive personal information that users originally shared only with friends on Facebook. *Id.* at 783–87. The Court found that "if you use a company's social media platform to share sensitive information with only your friends, then you suffer a concrete injury when the company disseminates that information widely." *Id.* at 786. Here, Plaintiffs do not allege either that they shared sensitive information with Microsoft (they would know if they did) or that Microsoft then shared their sensitive information with third parties without authorization. Plaintiffs' theory is the inverse: millions of other individuals shared information online that OpenAI potentially (though not certainly) used to train its GenAI. Further, *Facebook* emphasized that the injury must be "suffered directly by the individual plaintiff, and it must be distinct from the more general type of objection that members of the public at large might have to a defendant's unlawful conduct." *Id.* Plaintiffs offer only non-particularized, speculative, and hypothetical injuries to "the public at large."

Plaintiffs ignore most of the cases cited in Microsoft's Motion. And while they attempt to escape

---

(study concerning data used to train ChatGPT 2), 262, 287–88 (FTC investigation regarding data security), 270 (researchers' data security concerns), 282–84 (purported "risks to humanity"), 290–94 (Italian authorities' data security investigation), 442 (ChatGPT data has "sparked outrage").

*Russo v. Microsoft*'s clear holding, they miss the point of that case. Even in the sentence Plaintiffs cite, the court held that plaintiffs must "allege that *their* emails were scanned" to have standing, rather than relying on scanning of other data. 2021 WL 2688850, at *4 (N.D. Cal. June 30, 2021) (emphasis original). The court found the plaintiffs had satisfied their pleading obligations in a few limited and specific respects. *Id.* Here, by contrast, Plaintiffs fail to allege *their* data was wrongfully used (let alone by Microsoft), necessitating dismissal—for the same reason the court dismissed most of the claims in *Russo*.[2]

Finally, Plaintiffs do not respond at all to Microsoft's argument that Plaintiff Roberts' BIPA claim must be dismissed. *See* Mot. 9. Plaintiffs' concession requires dismissal.

### B.  Plaintiffs Cannot Explain Away Their Shotgun Pleading.

Shotgun pleading is improper—and the FAC is a stark example of why: it appears calculated to hold an investor liable for the acts of the company in which it invested without satisfying the alter ego doctrine. *See* Mot. 10–12. The Opposition betrays Plaintiffs' lack of precision regarding the basis for Microsoft's alleged liability. At times Plaintiffs seem to say Microsoft is directly liable for (unspecified) acts; at other times they seem to say Microsoft is liable for OpenAI's actions. Either way, Plaintiffs do not dispute they lump OpenAI and Microsoft together, *e.g.*, Opp. 9 (arguing that "group pleading[]" is permissible). And Plaintiffs' alter ego argument proves their claims are based on precisely the sort of allegations (like mere investment) that courts routinely find insufficient to satisfy that standard.

***Improper Grouping of Defendants***. Plaintiffs first argue it is permissible to make undifferentiated allegations against OpenAI and Microsoft. *See, e.g.*, *id.*; *see also* Opp. 6–7 (asserting "Defendants (OpenAI and Microsoft) are liable for their interception, scraping, collection, and use"). This is incorrect as a matter of law. Plaintiffs' sweeping FAC "makes it exceedingly difficult, if not impossible, for [Microsoft] to respond." *In re iPhone Application Litig.*, 2011 WL 4403963, at *8 (N.D. Cal. Sept. 20, 2011). Plaintiffs must instead "identify what action each Defendant took that caused [their] harm, without resort to generalized allegations against Defendants as a whole." *Id.*

---

[2] Similarly, Plaintiffs' "puzzl[ement]," Opp. 6, at *Graham v. Noom, Inc.* is misplaced: that case held that a lack of injury required dismissal. 2021 WL 3602215, at *1 (N.D. Cal. Aug. 13, 2021). Plaintiffs' response is simply to insist that there *is* wiretapping here, Opp. 6, but that is question-begging; for the reasons explained, Plaintiffs do not adequately allege any injury.

Plaintiffs respond only by attempting to distinguish on the facts a single case dismissing a complaint for shotgun pleading. Opp. 7–8. Their argument ignores the larger point: as courts routinely explain, a complaint that "lumps" defendants together and "fails to distinguish adequately claims and alleged wrongs among defendants" does not satisfy Rule 8; instead, complaints must include "specific, clearly defined allegations of *each defendant's* alleged wrongs[.]" *Flores v. EMC Mortg. Co.*, 997 F. Supp. 2d 1088, 1103 (E.D. Cal. 2014) (emphasis added); *see also Resh, Inc. v. Skimlite Mfg. Inc.*, 666 F. Supp. 3d 1054, 1059 (N.D. Cal. 2023) (citing *Flores* on this issue). Plaintiffs do not attempt to explain how their FAC satisfies this obligation.[3]

Plaintiffs also argue the FAC adequately alleges Microsoft's "culpability" in certain respects distinct from the proliferation of shotgun allegations about "Defendants" generally. *See* Opp. 7. To the extent Plaintiffs alleged specific conduct by Microsoft, *e.g.*, FAC ¶¶ 577–86, 623–33, Microsoft addressed the allegations in its Motion and showed that Plaintiffs failed to state a claim. Mot. 12–14; *infra* Part II.C.

***Alter Ego Theory***. Courts regularly dismiss claims based on alter ego allegations far more robust than those in the FAC. Mot. 11–12. Plaintiffs' Opposition breaks no new ground, arguing alter ego liability is appropriate here due to: (i) Microsoft being an "early investor" in OpenAI, (ii) the two "build[ing] a supercomputer together" that "eventually result[ed]" in ChatGPT and DALL-E, (iii) a subsequent investment by Microsoft of $10 billion, (iv) and Microsoft exerting unspecified "substantial influence" and "sitting" on OpenAI's board. Opp. 8. Microsoft explained in its Motion how such factors are inadequate to invoke the alter ego doctrine, Mot. 11–12, and Plaintiffs do not address those arguments.

None of these allegations, even taken together, come close to the "narrowly defined circumstances" in which there is "such a unity of interest between a corporation and its shareholder that separateness has ceased." *Toho-Towa Co. v. Morgan Creek Prods., Inc.*, 217 Cal. App. 4th 1096, 1107 (2013) (cleaned up). Indeed, the Opposition makes *no* attempt to argue the FAC satisfies *any* of the factors

---

[3] Plaintiffs tack on a citation that "group pleading" can be appropriate, but the case they cite concerned allegations against the board of directors in a securities action, and the case held that similarly situated individual directors could sometimes be grouped together in that limited context. *See In re Am. Apparel, Inc. S'holder Derivative Litig.*, 2012 WL 9506072, at *40–41 (C.D. Cal. July 31, 2012).

courts consider. *See id*. at 1108–09 (factors include "commingling of funds and assets of the two entities, identical equitable ownership in the two entities, use of the same offices and employees, disregard of corporate formalities, identical directors and officers, and use of one as a mere shell or conduit").

The allegations Plaintiffs do identify are insufficient as a matter of law. If the investment, board participation, and ordinary business cooperation alleged here were sufficient to render entities alter egos, then any significant investment or common business collaboration would result in alter ego liability, expanding the doctrine far beyond what courts allow. Mot. 11–12. In fact, even "[t]otal ownership and shared management personnel are insufficient to establish the requisite level of control." *Motul S.A. v. USA Wholesale Lubricant, Inc.*, 2023 WL 5061945, at *6 (N.D. Cal. Aug. 8, 2023). Plaintiffs' reliance on OpenAI allegedly using Microsoft's generally available Azure cloud computing in its work (Opp. 7, 8) is especially egregious: no authority supports Plaintiffs' argument that one company can be subject to alter ego liability just by allowing another to use its generally available services. *Cf. Twitter, Inc. v. Taamneh*, 598 U.S. 471, 506 (2023) (holding that online platforms do not aid and abet tortfeasors on their platforms merely by providing services to the public).

Microsoft's Motion also explained there was not a single allegation supporting the second essential element of the alter ego test: that the entities exist separately to perpetrate fraud or similar injustice. Mot. 11–12. The Opposition fails to even mention this requirement, let alone show how the FAC meets it. That alone requires dismissal of the alter ego claims. *See, e.g.*, *Khoros, LLC v. Lenovo (United States), Inc.*, 2020 WL 12655516, at *16 (N.D. Cal. Oct. 5, 2020) (rejecting alter ego liability because the plaintiff "has not alleged any facts that, if true, would demonstrate that [one defendant] existed separately from the other entities to perpetrate fraud or similarly unjust activities").

Finally, Plaintiffs make the fleeting argument that "OpenAI and Microsoft worked as agents of one another to harvest data to continue feeding the supercomputer, including another capital injection of $10 billion from Microsoft." Opp. 8. This conclusory statement does not adequately allege an agency relationship. "In California, the law indulges no presumption that an agency exists but instead presumes that a person is acting for himself and not as agent for another." *Davenport v. Litton Loan Servicing, LP*, 725 F. Supp. 2d 862, 882 (N.D. Cal. 2010) (cleaned up); *see also Masimo Corp. v. Wireless*, 2020 WL

7260660, at *16 (S.D. Cal. Dec. 10, 2020) (applying a similarly stringent test for agency as for alter ego theory).  Plaintiffs plead no facts from which an agency relationship could be inferred.  Further, Plaintiffs' allegation about data "harvesting" underscores the impropriety of their shotgun pleading: there is no way to divine from Plaintiffs' argument whether they mean that OpenAI trained ChatGPT and Microsoft is liable for harm from OpenAI's conduct, or that Microsoft (in some unspecified way) directly participated.

        **C.**      **Plaintiffs Cannot Resuscitate Their "Interception" Claim Against Microsoft.**

Plaintiffs do nothing to clarify the FAC's incoherent claim that Microsoft "intercepts" Plaintiffs' "communications."  *See* Mot. 12–14.  And Plaintiffs do not answer Microsoft's argument that, based on the facts alleged in the FAC, neither of their apparent theories is plausible—i.e., that Microsoft can somehow intercept communications on non-Microsoft platforms or that Microsoft, in an unspecified way, intercepted communications between Plaintiffs and its own services.  *Id.*

Instead, Plaintiffs say two things: that they address the issue in their Opposition to OpenAI's Motion and that "twenty paragraphs . . . detail[] Microsoft's interception."  Opp. 9.  Plaintiffs' Opposition to OpenAI's Motion in fact ignores the issue, saying nothing about Microsoft's alleged interception of communications.  *See* Opp. to OpenAI's Mot. 5–12.  And Microsoft has already explained that the conclusory paragraphs Plaintiffs cite fail to allege *how* Microsoft could have intercepted any Plaintiff's data.  *See* FAC ¶¶ 577–86, 623–33; Mot. 12–14.  Those paragraphs contain either legal conclusions or bald assertions that Microsoft intercepts data, without more.  Plaintiffs never explain *how* data was intercepted, how *their* data was intercepted, or even what they mean by interception.  "The plausibility of a pleading . . . derives from its well-pleaded factual allegations," which must explain "how" alleged facts amount to a legal violation.  *Whitaker v. Tesla Motors, Inc.*, 985 F.3d 1173, 1176–77 (9th Cir. 2021).  Plaintiffs rely on broad allegations that fail to move their claims "across the line from conceivable to plausible."  *Id.* at 1176 (citation omitted, cleaned up).

This case is nothing like those cited by Plaintiffs, in which parties alleged what data was intercepted and how—for instance, when a *particular, identified voicemail* was retrieved and recorded.  *See United States v. Smith*, 155 F.3d 1051, 1059 (9th Cir. 1998); *see also Valenzuela v. Nationwide Mut. Ins. Co.*, 2023 WL 5266033, at *4 (C.D. Cal. Aug. 14, 2023) (interception adequately pleaded based on

allegations a company embedded code in a third-party website used by the Plaintiff that intercepted real-time chats to store transcripts of them). Plaintiffs' other cases are even farther afield, holding that conduct was *not* interception—even though the conduct was, unlike here, identified. *See Noel v. Hall*, 568 F.3d 743, 750 (9th Cir. 2009) (listening to copies of phone conversations); *Konop v. Hawaiian Airlines, Inc.*, 302 F.3d 868, 879 (9th Cir. 2002) (one party accessing another's "secure website").

Plaintiffs also assert they "have detailed the information that was taken from the platforms they frequent," Opp. 11, but actually do nothing of the kind. They cite only the same paragraphs discussed above, *supra* II.A, which allege that Plaintiffs used ChatGPT, *see* FAC ¶¶ 20, 30, 41, 53, 62, 72, 82, 92, 101, 106, 115, 120, 129, 460, and the "Products" (defined to include OpenAI's technology), OpenAI's website, and "Defendants' Products and websites," *id.* ¶¶ 453, 456. These allegations fail to show the specific information that *Microsoft* allegedly intercepted from Plaintiffs; instead, Plaintiffs' reliance on these paragraphs reinforces the flaws of their shotgun pleading and their inability to plead a plausible theory of Microsoft's interception of *their* communications. *See, e.g.*, *In re Google Assistant Priv. Litig.*, 457 F. Supp. 3d 797, 817 (N.D. Cal. 2020) (dismissing claims based on allegations more detailed than here because plaintiffs failed to show they interacted with defendant's technology and were recorded).[4]

Plaintiffs also fail to come to grips with the fact that ECPA is a one-party consent statute. Plaintiffs argue that "any suggestion that one defendant could consent for another's violation of the ECPA is wrong." Opp. 10. That is a smokescreen, and Plaintiffs do not contest that consent bars ECPA liability. *See* Mot. 13; OpenAI Mot. 8–9. Plaintiffs' prompts entered into OpenAI's services were communications *with OpenAI*; Plaintiffs' prompts entered into Microsoft's services were communications *with Microsoft*. In either case, OpenAI or Microsoft could consent to any alleged interception of its own communications. Nothing in ECPA forbids a consenting party from allowing another entity to use data acquired from the communications; the consent is what matters. Mot. 12–14.

---

[4] *See also, e.g.*, *Cook v. GameStop, Inc.*, 2023 WL 5529772, at *7 (W.D. Pa. Aug. 28, 2023) ("It's not enough for Ms. Cook to allege the potential capabilities of the [technology]. Rather, she needed to allege that GameStop, in fact, harnessed the capabilities she describes, and it had the result of capturing the contents of specific communications.").

Plaintiffs allude to an exception to one-party consent that makes interception unlawful if it is "for the purpose of committing any criminal or tortious acts." *See* Opp. 10; 18 U.S.C. § 2511(2)(d). They rely on a completely different factual scenario involving "a complex criminal enterprise involving fake companies, fake identifications, and large-scale illegal taping" for the unlawful purpose of interfering with women's reproductive choice. *Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*, 214 F. Supp. 3d 808, 816 (N.D. Cal. 2016) (cited at Opp. 10). But Plaintiffs have not alleged the elements of the crime-tort exception, because it "is not enough for the interception itself to have violated the law, the interception must be 'done for the purpose of facilitating some further impropriety.'" *Doe I v. Google LLC*, 2023 WL 6882766, at *2 (N.D. Cal. Oct. 18, 2023); *see also Katz-Lacabe v. Oracle Am., Inc.*, 668 F. Supp. 3d 928, 945 (N.D. Cal. 2023) (requiring allegations that "the primary motivation or a determining factor in the interceptor's actions [was] to injure plaintiffs tortiously"). The exception "does not apply to a case such as this, where Defendant's [alleged] purpose has plainly not been to perpetuate torts on millions of Internet users, but to" advance development of OpenAI and Microsoft's services. *Katz-Lacabe*, 668 F. Supp. 3d at 945 (collecting cases).

**D.     The Court Should Dismiss Plaintiffs' Remaining Claims.**

Plaintiffs' claims against Microsoft also fail for the reasons explained in OpenAI's Motion, which Microsoft incorporated into its Motion, Mot. 14, and OpenAI's Reply, which is incorporated here. The practice of incorporation by reference is common in this District and saves the Parties and Court resources—no different than if Microsoft had filed a notice of joinder (also an accepted practice). *E.g.*, *Maciel Builders LLC v. US Framing Int'l LLC*, 2020 WL 759509, at *2 (N.D. Cal. Feb. 14, 2020) (approving joinder in co-defendants' arguments). Plaintiffs challenge this incorporation and suggest it violates page-limit rules and requires Plaintiffs to do more work. Opp. 11–12. To the contrary, it results in no added work for Plaintiffs (who need respond only once to the incorporated arguments) and saves the Court time by avoiding the need to review a duplicative motion. It is particularly appropriate here since Plaintiffs' FAC primarily seeks to hold Microsoft liable as OpenAI's alter ego. Plaintiffs' assertion that these incorporated arguments are "waived"—for which it cites no authority—makes no sense.

### E. Plaintiffs Cannot Connect Their Frivolous Injunctive Relief Demand to Their Actual Claims.

Plaintiffs do not defend the merits of their unprecedented injunctive relief. They fail to explain how a court could possibly have the power to impose a broad commercial pause on any development of a broad category of technology in the name of avoiding purely hypothetical future harm, enact a "code of human-like [sic] ethical principles" for it, and empanel an "independent body of thought leaders" to dictate how it can and cannot be developed. Mot. 14 (citing cases). They fail to explain how this sweeping relief has any "nexus" to their own injuries. *Pac. Radiation Oncology, LLC v. Queen's Med. Ctr.*, 810 F.3d 631, 636 (9th Cir. 2015). They fail to respond to the argument that courts should stay their hand when an issue is properly considered by the political branches and through the democratic process—as regulation of GenAI is at this moment. *Cf. Juliana v. United States*, 947 F.3d 1159, 1175 (9th Cir. 2020) (claims not judicially redressable in part because "plaintiffs' case must be made to the political branches or to the electorate at large, the latter of which can change the composition of the political branches through the ballot box"). And they fail to cite a single case that entertained any similar relief—let alone granted it.

Instead of defending the merits of this request, Plaintiffs argue it is too soon to decide the issue and that the Motion is a "veiled attempt to strike class allegations." Opp. 13. But Plaintiffs must plead adequate and cognizable requests for injunctive relief just like any other part of a complaint, and courts dismiss deficient requests for injunctive relief on the pleadings. *See, e.g.*, *James v. Agnew*, 2016 WL 11448147, at *2 (S.D. Cal. Aug. 18, 2016), *R. & R. adopted*, 2016 WL 5662073 (S.D. Cal. Oct. 3, 2016) (dismissing request for injunctive relief because future injuries were "conjectural" and "hypothetical"); *see also, e.g.*, *Peasley v. Spearman*, 2018 WL 500198, at *4 (N.D. Cal. Jan. 19, 2018); *Diamond v. Corizon Health, Inc.*, 2016 WL 7034036, at *5 (N.D. Cal. Dec. 2, 2016). None of Plaintiffs' authority holds otherwise. Plaintiffs' cases all concern whether to strike *class allegations*—things like the class definition—at the pleadings stage or at class certification. *See* Opp. 13.

Plaintiffs' request for injunctive relief, like their suit as a whole, is incoherent, not founded in law, and untethered to any harm *these Plaintiffs* allegedly experienced.

### III. CONCLUSION

Microsoft respectfully requests that the Court dismiss all claims against it with prejudice.

| | |
|---|---|
| DATED:  March 28, 2024 | Respectfully submitted, |
| | /s/ Isaac D. Chaput |

    Emily Johnson Henn (Bar No. 269482)
    Kathryn E. Cahoy (Bar No. 298777)
    COVINGTON & BURLING LLP
    3000 El Camino Real
    5 Palo Alto Square, 10th Floor
    Palo Alto, California 94306
    Telephone: + 1 (650) 632-4700
    Facsimile: + 1 (650) 632-4800
    Email:  ehenn@cov.com
    Email:  kcahoy@cov.com

    Ashley M. Simonsen (Bar No. 275203)
    COVINGTON & BURLING LLP
    1999 Avenue of the Stars
    Los Angeles, California 90067
    Telephone: + 1 (424) 332-4800
    Facsimile: + 1 (424) 332-4749
    Email:  asimonsen@cov.com

    Isaac D. Chaput (Bar No. 326923)
    COVINGTON & BURLING LLP
    Salesforce Tower
    415 Mission Street, Suite 5400
    San Francisco, California 94105
    Telephone: + 1 (415) 591-6000
    Facsimile: + 1 (415) 591-6091
    Email:  ichaput@cov.com

    *Attorneys for Defendant Microsoft Corporation*